1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Hon. Thomas S. Zilly
**Note on Motion Calendar: August 21, 2020**
**(Oral Argument Requested)**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

HUNTERS CAPITAL, LLC, a Washington
limited liability company, NORTHWEST
LIQUOR AND WINE LLC, a Washington
limited liability company, SRJ
ENTERPRISES, d/b/a CAR TENDER, a
Washington corporation, THE RICHMARK
COMPANY d/b/a RICHMARK LABEL, a
Washington company, SAGE PHYSICAL
THERAPY PLLC, a Washington professional
limited liability company, KATHLEEN
CAPLES, an individual, ONYX
HOMEOWNERS ASSOCIATION, a
Washington registered homeowners
association, WADE BILLER, an individual,
MADRONA REAL ESTATE SERVICES
LLC, a Washington limited liability company,
MADRONA REAL ESTATE INVESTORS
IV LLC, a Washington limited liability
company, MADRONA REAL ESTATE
INVESTORS VI LLC, a Washington limited
liability company, 12TH AND PIKE
ASSOCIATES LLC, a Washington limited
liability company, REDSIDE PARTNERS
LLC, a Washington limited liability company,
MAGDALENA SKY, an individual, OLIVE
ST APARTMENTS LLC, a Washington
limited liability corporation, and
BERGMAN'S LOCK AND KEY SERVICES

No.     2:20-CV-00983

**DEFENDANT'S MOTION TO DISMISS
AND DENY CLASS CERTIFICATION**

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 1
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1  LLC, a Washington limited liability company, on behalf of themselves and others similarly
2  situated,

3                              Plaintiffs,

4          vs.

5  CITY OF SEATTLE,

6                              Defendant.

7

8          Under Federal Rules of Civil Procedure 12(b)(6) and 23, the City moves to dismiss plaintiffs'

9  Complaint for failure to state a claim upon which relief can be granted and to deny class certification.

10                        I.        **INTRODUCTION**

11         Plaintiffs seek to hold the City responsible for the acts of private parties in and around the

12 Capitol Hill Organized Protest ("CHOP").[1] However, the City is not liable for those private acts and

13 the complaint fails to state a claim as a matter of law. The City took measured, appropriate steps to

14 rapidly unfolding events in responding to the CHOP. As has been widely reported, the City supported

15 the exercise of First Amendment rights by peaceful protesters in public streets and a park in the

16 Capitol Hill neighborhood of Seattle following the killing of George Floyd in Minneapolis.[2] Plaintiffs

17 expressly "support the free-speech rights of many of those who gathered on Capitol Hill" but are

18 unclear about whose free-speech rights they do not support. *Complaint* at ¶1. As the amended

19
20 [1] The CHOP has also been referred to as the Capitol Hill Occupied Protest and the Capitol Hill Autonomous Zone ("CHAZ").
   [2] "The protections afforded by the First Amendment are nowhere stronger than in streets and parks, both categorized for
21 First Amendment purposes as traditional public fora. In such fora, the government's right 'to limit expressive activity [is]
   sharply circumscribed.' *Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948. Among traditional public fora, public parks …
22 are especially important locales for communication among the citizenry, as they have immemorially been held in trust for
   the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between
   citizens, and discussing public questions." *Berger v. City of Seattle*, 569 F.3d 1029, 1035–36 (9th Cir. 2009) (some
23 citations, quotations, and footnotes omitted).

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 2
2:20-CV-00983

complaint acknowledges, when opportunistic criminal and other activity in and around the CHOP overshadowed important free speech activity, the City cleared the CHOP.

Plaintiffs allege they were deprived of their rights to due process and equal protection and that they suffered takings of their property because the City did not act sooner to clear the CHOP. They bring federal claims under 42 USC §1983. However, plaintiffs fail to state any claims upon which relief may be granted.

Governments are not required to prevent third-party conduct, including criminal conduct, absent rare exceptions to the rule not presented here. Although they attempt to blame the City for private acts, the conduct that the plaintiffs complain of is that of private parties who plaintiffs have not named in this suit. Their complaint also fails to comply with requirements for a damages class under FRCP 23. This Court should dismiss plaintiffs' complaint with prejudice. If the Court does not dismiss the Complaint outright, it should deny class certification.

## II.   **FACTS**

As a purported class, plaintiffs allege that the City violated their civil rights by leaving the East Precinct building and not clearing the CHOP sooner. *Complaint* at ¶¶3, 35-38.[3] As required in a Rule 12(b)(6) motion, all well-pled factual allegations in the Complaint are treated as true for purposes of this motion.  They note that City barriers were used by protesters to block City streets and vehicular access to residences and buildings. *Id.* at ¶¶4, 7. They allege that the City is responsible for the acts of those they allege are "CHOP participants" because the City "endorse[d], enable[d], and

---

[3] Plaintiffs suggest that the City cleared the CHOP in response to a threatened TRO motion from Plaintiffs. Although it has no bearing on the motion before the Court, the City feels compelled to note that plaintiffs are mistaken. The City made its decision to clear the CHOP based on events in the CHOP, not this lawsuit. That the clearing of the CHOP was a success speaks to the City's careful approach and operational planning and provides no support for the contention that there was undue delay on the City's part.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 3
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

participate[d] in the occupation of CHOP." *E.g., id.* at ¶5.[4]  Generally, plaintiffs complain that they were harmed by the criminal and other acts of CHOP participants, not City actors. *Id.* ¶¶8-9, 40-48, 51-53.

Plaintiffs complain that the City's non-enforcement of laws led to pervasive crimes of vandalism by non-City actors. *Id.* at ¶9. They allege that the City's support for the Black Lives Matter movement and attempts to find a peaceful resolution to the CHOP amounts to an endorsement of criminal and other activity. *Id.* at ¶10.

As a group, plaintiffs complain of a variety of harm, including graffiti, different provision of emergency services inside the CHOP than outside it, and loss of vehicular access to their property stemming from CHOP participants' use of barriers.  They complain that the City did not engage in regular policing within CHOP and declined to enforce criminal laws. *Id.* at ¶174, 219. They allege the City "enabled" CHOP participants to block vehicular access and physically aided CHOP participants by leaving barriers in the area, providing more barriers, and providing portable toilets and other equipment. ¶¶177, 179. They further contend that the City "effectively authorized" the actions of CHOP participants by allowing CHOP to exist for weeks. *Id.* at ¶181.

Individual members of the purported class make other complaints, including that the "police refused to protect… property." *Id.* at ¶91. They also allege lost revenue, lost access, feeling unsafe, decreased property values, physical property damage, reduced rents, criminal activity of CHOP participants, non-response to 911 calls, inability to receive deliveries, and harassment by CHOP participants. *Id.* at ¶¶85, 91, 99, 104-106, 135, 143, 149.

---

[4] Although the City uses the term "CHOP participants" to match up with the amended complaint here and elsewhere, it does not agree that it is appropriate to lump the many peaceful protesters who participated or visited the CHOP into a group with those committing crimes and the other acts identified in the amended complaint.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 4
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### III.    ARGUMENT AND AUTHORITIES

**A.    Motion to Dismiss Standard**

Dismissal under Rule 12(b)(6) requires a court to determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys. Inc.,* 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949–50 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 (citation omitted). When determining the sufficiency of a claim, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). The court, however, need "not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.* "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.; see also Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (Citations and internal quotation marks omitted).

**B.    §1983 claims require allegations that the government directly caused harm: plaintiffs' complaint does not allege such harm**

A municipality cannot be liable under §1983 on a respondeat superior theory. Rather, liability only attaches **where the municipality itself** causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may be fairly said to represent official policy." *Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, municipal liability in a section 1983 case may be premised upon (1) an

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 5
2:20-CV-00983

official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (3) the act of an "official whose acts fairly represent official policy such that the challenged actions constituted official policy; or (4) where "an official with final policy making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery,* 513 F.3d 962, 966 (9th Cir. 2008).

To maintain a claim under §1983, a Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "The state-action element in § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc*., 590 F.3d 806, 812 (9th Cir. 2010)(*internal quotation marks and citations omitted* ). It exists to "avoid[ ] imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Here, while City officials were unmistakably supportive of peaceful protected speech and seriously concerned about accompanying criminal activity, even had they exhibited the total nonchalance about CHOP activities which Plaintiffs' claim, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Caviness*, 590 F.3d at 817. Regarding alleged failures to act, such omissions are not actionable under section 1983 unless they involve a failure to perform a legally required act. *Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012).

Generally, a municipality is liable under *Monell* only if a municipal policy or custom was the "moving force" behind the constitutional violation. *See Galen v. County of Los Angeles,* 477 F.3d

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS CERTIFICATION - 6
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

652, 667 (9th Cir. 2007). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In other words, there must be proximate cause. The Supreme Court has noted that "[p]roximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Paroline v. United States*, 572 U.S. 464, 134 S.Ct. 1710, 1719, 188 L.Ed.2d 714 (2014). "A requirement of proximate cause thus serves, *inter alia*, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id.*

Plaintiffs' attempt to draw connections between City acts and CHOP participant activity is not supported by the facts or the law. The City did nothing that directly exposed plaintiffs to harms. The harms that the plaintiffs allege occurred over a period of weeks, and plaintiffs have alleged "mere acquiescence" inadequate to support their claim.  *See, e.g. Caviness,* 590 F.3d at 812. There are **no** allegations that the City directly interacted with plaintiffs and left them in a worse position than the one they were in before the City interacted with them.

The plaintiffs simply do not, and cannot, allege that any City action directly injured them. Rather, they complain of City inaction. Under well-established case law, their Complaint falls short of raising any legally viable claim. Plaintiffs were not directly harmed by the City's allowance of first-amendment activity, provision of sanitation services to protesters, attempts to improve safety in the area with barriers, and temporary departure from the East Precinct building. Rather, the harm they identify was caused by private actors, and Plaintiffs allege the City violated their rights by (1) not preventing such harm from occurring in the first place and (2) not preventing additional harm once the City was on notice such harm was occurring. As explained below, the City is not liable where it

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 7
2:20-CV-00983

does not act to prevent private conduct.  Were it otherwise, the City would face liability for all crime that occurred within the City.

**C.     The Due Process Clause does not require governments to exercise discretion to prevent private actors from harming others**

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. **It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.**"

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989)(emphasis added). "As a general rule, members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citing *DeShaney* 489 U.S. at 197). This rule is rooted in the discretionary nature of law enforcement activity:

The deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands, is illustrated by *Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), which involved an ordinance that said a police officer " 'shall order' " persons to disperse in certain circumstances, *id.,* at 47, n. 2, 119 S.Ct. 1849. This Court rejected out of hand the possibility that "the mandatory language of the ordinance ... afford[ed] the police *no* discretion." *Id.,* at 62, n. 32, 119 S.Ct. 1849. It is, the Court proclaimed, simply "common sense that *all* police officers must use some discretion in deciding when and where to enforce city ordinances." *Ibid.* (emphasis added).

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761, 125 S. Ct. 2796, 2806, 162 L. Ed. 2d 658 (2005). The "benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Id.* at 768; 125 S.Ct. at 2810. The Fourteenth Amendment and Civil Rights Act of 1871 "did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented." *Id.* Again, plaintiffs

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

complain not of direct harm from City action, but that the City failed to stop private actors from causing harm. Absent an exception to the general rule that no claim arises from an alleged failure to exercise discretion to enforce laws—none applies here—the claim fails as a matter of law.

Perhaps in an effort to avoid the rule that failing to take discretionary acts cannot support liability, plaintiffs identify a municipal code provision, claim with no factual support that it applies here, and then allege that the statute required a single mandatory action that the City failed to take. This allegation is defeated on the face of the pleadings because Plaintiffs admit the protesters "lacked a permit", *Complaint* at ¶218. They attempt to argue that the City was required to "designate an alternative proposal" *i.e.* impose conditions on the CHOP by permit to reduce its impacts on the neighborhood. However, by the plain terms of SMC 15.52.060, the City is only required to take the action plaintiffs suggest when it *denies a permit application* that meets certain statutory criteria. See SMC 15.52.060(B) (If the Special Events Committee **denies** an application for a special event permit for a "free speech" event, "the City shall designate an alternative proposal and may impose conditions…."). The City did not fail to take any mandatory action.

**D.    The "state-created danger" exception does not apply here: the City did not directly place plaintiffs in danger**

Again, "[t]he general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to protect individuals from third parties." *Martinez v. City of Clovis,* 943 F.3d 1260, 1271 (9th Cir. 2019) (citations and quotations omitted). The Due Process Clause does not provide a baseline level of protection against the acts of private parties that the City must provide to persons or property. The City anticipates that plaintiffs will argue the "state-created danger" exception applies here.  This exception only applies, however, when government employees **affirmatively** place a plaintiff in a position of danger which the plaintiff would not have otherwise

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS CERTIFICATION - 9
2:20-CV-00983

faced. *DeShaney*, 489 U.S. at 197, 109 S.Ct. 998. A plaintiff must prove three elements to prevail on a "state-created danger" argument. "First, she must show that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced. Second, she must show that the injury she suffered was foreseeable. Third, she must show that the officers were deliberately indifferent to the known danger." *Martinez*, 943 F.3d at 1271. The City discusses how the complaint fails to allege facts supporting the first and third elements of this test below.[5]

> ### 1. The City did not expose plaintiffs to actual or particularized danger that plaintiffs would not have faced but for City action.

Plaintiffs simply do not plead a single circumstance where City action exposed them to an actual, particularized danger. In *Johnson v. City of Seattle*, 474 F.3d 634, 635 (9th Cir. 2007) the Ninth Circuit rejected the argument that by failing to engage in more aggressive policing in response to civil unrest, the City placed Johnson and others in "a position of enhanced danger." The court rejected that argument because: "the more passive operational plan that the police ultimately implemented did not violate substantive due process because it 'placed [the Pioneer Square Plaintiffs] in no worse position than that in which [they] would have been had [the Defendants] not acted at all.' *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998.)." *See also Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000) (relevant inquiry is "whether the officers left the person in a situation that was more dangerous than the one in which they found him.").

In *Hernandez v. City of San Jose*, 897 F.3d 1125, 1129, 1133-35 (9th Cir. 2018) the Ninth Circuit considered whether the created-danger exception applied to police officers who **affirmatively** directed political rally attendees into a "crowd of violent anti-Trump protesters" and the attendees were beaten, robbed and/or targeted by protesters throwing objects like eggs and bottles. Because the

---

[5] While the City's position is that Plaintiff cannot establish any of the three elements of the test, for the purposes of the Rule 12 motion, the City will limit its discussion to two of the three.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 10
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

rally attendees alleged that they would have made it to safety but for being affirmatively directed into the crowd of protesters, they satisfied this element of the state-created danger test. *Id.*

Plaintiffs do not allege a particularized danger. Rather, they generally complain about private criminal conduct, and the City's knowledge of such crime. It is well-established, however, that these types of complaints are not enough to state a viable cause of action. This matter is controlled by *Johnson v. City of Seattle* and *Munger.*

**2.  Plaintiffs complaint fails to allege facts sufficient to show deliberate indifference.**

Plaintiffs similarly cannot establish the third required element of a "state created danger" exception. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. It requires a culpable mental state, and the standard [the Court] appl[ies] is even higher than gross negligence." *Hernandez* 897 at 1135. To meet the culpable mental state requirement, a plaintiff must demonstrate that governmental actors both recognized and intended to expose plaintiff to an unreasonable risk, and that the exposure was likely to lead to injury. *Id.*

For reasons discussed above, plaintiffs do not come close to alleging facts needed to support an argument the City **intended** to expose plaintiffs to an unreasonable risk. They argue that the City should have known generalized increased criminal activity would result from City acts. That is not enough, even if it were true that City acts were the causal factor in any complained-of criminal activity, which it is not. Plaintiffs have simply not pled any facts that support an inference that the City took action for the purpose of exposing the plaintiffs to a particularized unreasonable risk of harm.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 11
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    **E.      A partial and temporary loss of access to property is not, as a matter of law, a**
            **governmental taking**

2

3           The federal and state constitutions require compensation when public use results in private

4    property being taken or damaged. U.S. Const., Fifth Amendment, WA Const. Art. I Section 16.

5    Washington law controls whether a property interest exists on a Fifth Amendment takings claim. *See,*

6    *e.g. Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Reg'l Transit Auth.*, 610 F. Supp. 2d

7    1288, 1303–06 (W.D. Wash. 2009), *aff'd*, 376 F. App'x 672 (9th Cir. 2010) (considering and rejecting

8    a temporary loss of access claim). "The term inverse condemnation is used to describe an action

9    alleging a governmental taking brought to recover the value of property which has been appropriated

10   in fact, but with no formal exercise of the power." *Bodin v. City of Stanwood,* 79 Wash.App. 313,

11   320, 901 P.2d 1065 (1995), *aff'd,* 130 Wash.2d 726, 927 P.2d 240 (1996) (quotation and citation

12   omitted). "An inverse condemnation plaintiff must prove a 'taking' greater than mere tortious

13   interference." *Id.* (quotation and citation omitted). Plaintiffs allege their property access was

     impaired, but not eliminated, for three weeks.

14

15          Under Washington law, "temporary interferences with a property right are not constitutional

16   takings of property." *Id.* at 1301-02 (citing *Northern Pacific Railway Co. v. Sunnyside Valley*

17   *Irrigation Dist.,* 85 Wash.2d 920, 924, 540 P.2d 1387 (Wash.1975)). "[T]here is no authority under

18   Washington law for a temporary 'right of access' takings claim. While there is authority for a

19   'temporary taking' claim in Washington, that is only in the context of governmental regulation of

20   property that has deprived the owner of all economical use of his or her property." *Pande Cameron*

21   *& Co. of Seattle, Inc.,* 610 F. Supp 2d at 1305 (citing *Guimont v. Clarke,* 121 Wash.2d 586, 598, n.

22   3, 854 P.2d 1 (1993) and *City of Seattle v. McCoy,* 101 Wash.App. 815, 829, 4 P.3d 159 (2000)).

23   Here, none of the plaintiffs even allege they lost the entire economical use of property, and certainly

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 12
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

not because of governmental action or regulation. Such government action is clearly distinguishable from the actions of CHOP participants.

Analogous takings claims made during periods of civil unrest have been rejected. For example, in *Citoli v. City of Seattle*, 115 Wn. App. 459, 465–66, 61 P.3d 1165, 1169 (2002), the court rejected the claim that the City and Puget Sound Energy inversely condemned property by shutting off services to a building for a week in response to occupation by protesters. Claims of failure to prevent damage and affirmative damage to buildings by government during civil unrest and war were also rejected in *National Bd. of Young Men's Christian Ass'ns v. United States,* 395 U.S. 85, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969) and *United States v. Caltex (Philippines), Inc.,* 344 U.S. 149, 73 S.Ct. 200, 97 L.Ed. 157 (1952). Notably, plaintiffs do not allege that the government engaged in any conduct that directly damaged their property.

In *Citoli*, the court quoted Justice Harlan's concurrence in *National Bd. of Young Men's Christian Ass'ns*, 395 U.S. at 95-96, 89 S. Ct. 1511 with approval:

> "If courts were required to consider whether the military or police protection afforded a particular property owner was 'adequate,' they would be required to make judgments which are best left to officials directly responsible to the electorate. In the present case, for example, petitioners could argue that it was possible for the troops to maintain their position in front of the buildings if they had been willing to kill a large number of rioters. In rebuttal, the Government could persuasively argue that the indiscriminate use of deadly force would have enraged the mob still further and would have increased the likelihood of future disturbances. Which strategy is a court to accept? Clearly, it is far sounder to defer to the other duly constituted branches of government in this regard.

*Citoli v. City of Seattle*, 115 Wn. App. at 491, 61 P.3d at 1182 (2002). In another case, the District Court for the District of Columbia rejected similar allegations to those made here:

> Plaintiff's allegations that the riot control program formulated and adopted by officials of the United States and the District of Columbia intentionally sacrificed private property in disturbance zones in order to further the public purpose of disturbance control, likewise do not establish a Fifth Amendment taking of property for public use without just compensation.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 13
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1   *Monarch Ins. Co. of Ohio v. D.C.*, 353 F. Supp. 1249, 1255-1256 (D.D.C. 1973), *aff'd sub nom Aetna*

2   *Insurance Co. v. U.S.* 497 F.2d 683 (1974).

3          Notwithstanding the same argument being considered and rejected by courts, as in *Citoli*,

4   *National Bd. of Young Men's Christian Ass'ns*, and *Monarch Ins.,* the plaintiffs propose that if the

5   government had used a different strategy in response to civil unrest, plaintiffs might have suffered

6   less damage from private parties. Such proposals do not support legally viable takings or other claims.

7   **F.      Plaintiffs arguments under the Equal Protection Clause also fail: the City did not
             discriminate against them, nor violate their free speech rights**

8          Plaintiffs allege that the City violated the Equal Protection clause by expressing support for

9   the political message of some CHOP participants, providing support for CHOP participants even

10  though the participants lacked a permit, declining to enforce criminal and civil laws against CHOP

11  participants, and not providing more police services inside the CHOP. *Complaint* at ¶¶217-219. They

12  allege that because the City engaged in different policing, other law enforcement and provision of

13  governmental services outside the CHOP, the City violated the Plaintiffs' civil rights by expressing a

14  preference for the CHOP participants' speech. *Id.* at ¶¶220-223. They further contend that CHOP

15  participants took action against the plaintiffs based on speech, but do not allege the City did anything

16  because of the plaintiffs' speech. *Id.* at ¶224. Plaintiffs appear to argue that the City violates the Equal

17  Protection clause of the Fourteenth Amendment if it does not provide the same level of policing in

18  different parts of the City, duplicating their due process arguments. Plaintiffs again fail to delineate

19  between peaceful, law-abiding protesters and others who then came to the CHOP area, and between

20  affirmative acts by the City such as provision of sanitation services (which decreased some harms

21  about which Plaintiffs' complain, like feces in the area) and times when the City did not act as

22  Plaintiffs would have preferred.

23

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 14
2:20-CV-00983

1

2

### 1. Plaintiffs do not allege that the City acted with an intent to discriminate against them, and their equal protection claim therefore fails.

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074–75, 145 L. Ed. 2d 1060 (2000) (citations and quotations omitted). To state an equal protection violation under the Fourteenth Amendment, a plaintiff must usually allege a government acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 687 (citation and quotation omitted). An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (citing *Joyce v. Mavromatis,* 783 F.2d 56, 57 (6th Cir. 1986)). Similarly, "evidence of different treatment of unlike groups does not support an equal protection claim." *Id.* at 1168. Here, the Plaintiffs complaint alleges no facts sufficient to support the notion that the City responded to the CHOP with an intent to discriminate against Plaintiffs. The businesses say they supported the protesters message, as the City did. *Complaint* at ¶1. No facts in the complaint support the notion that the City acted as it did because of some animus towards plaintiffs.[6]

---

[6] If Plaintiffs are intending to advance a claim based on viewpoint discrimination, they clearly cannot do so when, according to the facts alleged in the Complaint, all of the parties involved (the city, the peaceful protesters, and the plaintiffs) share a similar viewpoint about the relevant matter of public concern. Plaintiffs do not say they the City retaliated against them because of their speech, but that "CHOP participants regularly threatened, bullied, and assaulted

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS CERTIFICATION - 15
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Although unclear from the Amended Complaint, it is possible plaintiffs make a novel "class of one" argument as to each purported class member. *See Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). Such claims require discriminatory intent and cannot be supported by an alleged failure to take a discretionary act alone. *See Engquist,* 553 U.S. at 601-09, 128 S.Ct. at 2152-2157; *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009) (An "officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public."); *Le Fay v. Le Fay*, 1:13-CV-1362 AWI MJS, 2015 WL 106262, at *7 (E.D. Cal. Jan. 7, 2015), *aff'd sub nom. LeFay v. LeFay*, 673 Fed. Appx. 722 (9th Cir. 2016) (malice required to support class of one theory in case involving class of one equal protection theory based on discretionary law enforcement decision). Critically, plaintiffs do not allege that the City was motived by malice and therefore took discriminatory action against them. Rather, they allege that the City failed to stop private actors from conduct which the plaintiffs (often understandably) disliked. Plaintiffs' complaint fails to allege the basic factual elements required to support an equal protection claim. The court's analysis need go no further than this to determine that their equal protection claim fails.

> **2. To the extent the Plaintiffs make a First Amendment claim under the Equal Protection clause, it fails because they do not allege (1) the City took retaliatory action against them because of their speech (2) that would have chilled a person of ordinary firmness from participating in First Amendment speech or (3) that they were injured by government retaliation.**

Government action that suppresses protected speech in a discriminatory manner may violate both the First Amendment and the Equal Protection Clause. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 384 n. 4, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (noting that the Supreme Court "has occasionally

---

individuals whom they *suspected* might hold viewpoints contrary to their own[.]"  *Complaint* at ¶224 (emphasis added). This is not enough to establish governmental retaliation based on an expressed viewpoint.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 16
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

fused the First Amendment into the Equal Protection Clause in this fashion, but ... with the acknowledgment ... that the First Amendment underlies its analysis."). Where plaintiffs allege violations of the Equal Protection Clause relating to expressive conduct, courts analyze those arguments using the framework applicable to alleged content or viewpoint discrimination under the First Amendment. *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 779–80 (9th Cir. 2014).

To demonstrate a First Amendment violation, a plaintiff must (1) provide evidence of retaliatory governmental action motivated by an intention to interfere with First Amendment rights; (2) that defendant's conduct "would chill or silence a person of ordinary firmness from future First Amendment activity," *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (citation omitted) and (3) that but for the government's retaliatory acts an injury to the plaintiff would not have occurred. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012). In the First Amendment context, there is no right to a response or any particular action when a citizen petitions the government for redress of a grievance, including filing a police report. *See, e.g.. Mancini v. City of Cloverdale Police Dep't*, 15-CV-02804-JSC, 2015 WL 4512274, at *6 (N.D. Cal. July 24, 2015); *Doe v. County of San Mateo,* 2009 WL 735149 at *6 (N.D. Cal. March 19, 2009).

Here, plaintiffs allege no facts that the City's response to the CHOP was motivated by a desire to suppress plaintiffs' speech. They do not identify what speech plaintiffs engaged in or even desired to engage in, when the City heard it, nor how the City retaliated against it. The allegedly retaliatory acts they complain—threats of violence, for example—are not City actions, but that of private actors. In short, plaintiffs' complaint satisfies none of the elements of a First Amendment claim, and their First Amendment claim under the Equal Protection clause is properly dismissed as a matter of law.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 17
2:20-CV-00983

1

2

### G.    Class certification is unavailable because plaintiffs complain of distinct harms occurring at different times and differing damages

FRCP 23(c)(1)(A) addresses the timing of a district court's class certification determination, and states: "*Time to Issue*: At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FRCP 23(c)(1)(A). Preemptive motions by the defense to deny class certification are properly considered by the trial court. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 940 (9th Cir. 2009). Whether to permit discovery prior to considering a motion to deny certification is within the discretion of the trial court, and discovery is properly denied where plaintiffs do not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures were "likely to produce persuasive information substantiating the class action allegations." *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977).

Class certification is not appropriate in civil rights cases involving varied incidents that produced differing harms allegedly caused by third parties and governments. Plaintiffs in such cases cannot satisfy Rule 23(a)(2)'s commonality requirement. In a recent, and directly comparable, Northern District of California case, the court denied class certification in a case involving a "created danger" theory where police officers were alleged to have directed plaintiffs into a dangerous crowd. *Hernandez v. City of San Jose*, 16-CV-03957-LHK, 2019 WL 4450930, at *15 (N.D. Cal. Sept. 17, 2019). The court noted that causation "doomed" plaintiffs' class certification motion. *Id.* Each alleged incident would require a causation analysis, and because the incidents involved "third-party attackers" there were unique proximate cause arguments as to each plaintiff: each would be required to show that they would not have been injured by private parties but for the governmental action. *Id.* The same analysis holds true here, and it warrants denial of class certification on this ground alone.

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 18
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The *Hernandez* court also noted that damages issues in cases like this one pose an insurmountable predominance problem under Rule 23(b)(3). *Id.* (citing and quoting *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd and remanded on other grounds*, 139 S. Ct. 710 (2019)("[a] Rule 23(b)(3) plaintiff must show a class wide method for damages calculations as a part of the assessment of whether common questions predominate over individual questions.")). *Hernandez* noted that each plaintiff was alleging different injuries that would not be susceptible to calculation using a damages model, as required by Rule 23. In cases like *Hernandez* and this one "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013) (cited and quoted in *Hernandez* at *17).

As in *Hernandez*, for multiple reasons, there is no class here that can be properly certified. The City therefore respectfully requests the Court deny class certification, in the event that the City's Rule 12 motion is not granted in full.

## IV.    CONCLUSION

Plaintiffs complain of private action, not discriminatory governmental action. Their allegations that the City knew of ongoing criminal and other activity and failed to stop it cannot support their due process and equal protection claims. Similarly, their allegation that property access was temporarily impaired (but never eliminated) by private parties cannot establish a viable takings claim. Similarly, their purported class cannot satisfy basic Rule 23 requirements.

Pursuant to Rule 12, because Plaintiffs fail to state a claim upon which relief can be granted, the City requests plaintiffs' complaint be dismissed with prejudice. In the alternative, the City requests

//

//

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 19
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

that class certification be denied.

DATED this 23rd day of July, 2020.

PETER S. HOLMES
Seattle City Attorney

By:    */s/ Joseph Groshong*
Joseph Groshong, WSBA# 41593
Assistant City Attorney
E-mail:  Joseph.Groshong@seattle.gov
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone: (206) 684-8200

*Attorneys for Defendant City of Seattle*

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 20
2:20-CV-00983

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23rd, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Patty A. Eakes, WSBA #18888
Angelo J. Calfo, WSBA #27079
LAW OFFICES
CALFO EAKES, LLP
1301 Second Avenue, Suite 2800
Seattle, WA 98101
pattye@calfoeakes.com
angeloc@calfoeakes.com


*s/ Daviana Kadiyan*
Daviana Kadiyan, Legal Assistant

DEFENDANT'S MOTION TO DISMISS AND DENY CLASS
CERTIFICATION - 21
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200