1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Hon. Thomas S. Zilly
Note on Motion Calendar: August 21, 2020
(Oral Argument Requested)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

HUNTERS CAPITAL, LLC, a Washington
limited liability company, NORTHWEST
LIQUOR AND WINE LLC, a Washington
limited liability company, SRJ
ENTERPRISES, d/b/a CAR TENDER, a
Washington corporation, THE RICHMARK
COMPANY d/b/a RICHMARK LABEL, a
Washington company, SAGE PHYSICAL
THERAPY PLLC, a Washington professional
limited liability company, KATHLEEN
CAPLES, an individual, ONYX
HOMEOWNERS ASSOCIATION, a
Washington registered homeowners
association, WADE BILLER, an individual,
MADRONA REAL ESTATE SERVICES
LLC, a Washington limited liability company,
MADRONA REAL ESTATE INVESTORS
IV LLC, a Washington limited liability
company, MADRONA REAL ESTATE
INVESTORS VI LLC, a Washington limited
liability company, 12TH AND PIKE
ASSOCIATES LLC, a Washington limited
liability company, REDSIDE PARTNERS
LLC, a Washington limited liability company,
MAGDALENA SKY, an individual, OLIVE
ST APARTMENTS LLC, a Washington
limited liability corporation, and
BERGMAN'S LOCK AND KEY SERVICES

No.     2:20-CV-00983

**DEFENDANT CITY OF SEATTLE'S
REPLY IN SUPPORT OF ITS MOTION
TO DISMISS AND DENY CLASS
CERTIFICATION**

ORAL ARGUMENT REQUESTED

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 1
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    LLC, a Washington limited liability company,
     on behalf of themselves and others similarly
2    situated,

3                                Plaintiffs,

4              vs.

5    CITY OF SEATTLE,

6                                Defendant.

7

8                   **I.    <u>INTRODUCTION</u>**

9           Plaintiffs' response to the City's Motion to Dismiss invites this Court to second guess the

10   City's management of protests in the Capitol Hill area of Seattle by comparing the CHOP to other

11   parts of the City that had no ongoing protests. That is not a valid comparison. The unprecedented

12   protests in Seattle following the killing of George Floyd by Minneapolis police officers were focused

13   in the CHOP, both before and after its creation.  This did not occur because the City directed protesters

14   to the CHOP, but because protesters independently gathered there.  In responding to the CHOP, the

15   City had to balance the rights of protesters—including free speech—against violence, property

16   destruction and other factors. The City allowed free speech to occur but did not engage in the acts

17   that caused the damage the Plaintiffs complain of—vandalism, property destruction, and other

18   criminal and nuisance activity. At its core, the Plaintiffs' theory is that the City is liable because it did

19   not stop private actors from committing crimes or violating non-criminal laws.  That theory is not

20   valid as a matter of law.

21          Plaintiffs' complaint reduces to a political one and is unsupported by current law.  Because

22   amendment would be futile, this Court should dismiss Plaintiffs' complaint with prejudice.

23

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 2
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

## II.   <u>**PROCEDURAL DUE PROCESS**</u>

In response to the City's Motion, Plaintiffs argue that they have stated a procedural due process claim for deprivation of access based on temporary interference with vehicular access. *See Response* at 8:15-26. As noted in the City's Motion, a temporary, partial interference with vehicular access is not a taking as a matter of law. That means that without a permanent interference, there has been no "deprivation" covered by the procedural due process clause. The two cases Plaintiffs cite are not on point as they both involve permanent deprivations. *Keiffer v. King Cnty.*, 89 Wash 2d 369, 572 P.2d 408 (1977) dealt with a permanent change in access caused by the County's installation of curbs that eliminated an ingress/egress point to the plaintiffs' property. *Warren v. City of Athens*, 411 F.3d 697, 702, 709 (6th Cir . 2005) also involved installation of "'permanent curbs.'" (Quotation in original) (Applying Ohio law and noting that acts that affected the general public, as opposed to a particular property owner, were not takings.).

Plaintiffs cite no cases that support of their novel argument that the City "re-zoned" their property without actually rezoning it. Their quotation of *Harris v. Cnty. Of Riverside*, 904 F.2d 497 (9th Cir. 1990) for the proposition that any court has recognized their argument is misleading. The *Harris* court was discussing the difference between "legislative," "adjudicatory" and "administrative government actions." *Id.* at 501-02. Unlike the Plaintiffs, Harris challenged a decision actually "rezoning his property." *Id.* at 500. Again, no cases support the proposition that a City can effectively rezone a property on a short-term basis without actually re-zoning it.

Plaintiffs' citation to formal delegation of authority cases do not support their arguments that the City denied Plaintiffs the right of free movement.  The complaint does not allege the City enacted an ordinance, delegated licensing authority, or otherwise formally gave CHOP participants any "final decision-making authority."   "The private non-delegation doctrine prohibits States from granting to

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 3
2:20-CV-00983

private individuals or entities final decision-making authority with regard to others' rights." *Planned Parenthood Se., Inc. v. Strange*, 9 F. Supp. 3d 1272, 1278 (M.D. Ala. 2014) (citing *Wash. ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 121–22, 49 S.Ct. 50, 73 L.Ed. 210 (1928)). In *Roberge*, cited by Plaintiffs, the Court determined that the delegation of final decision-making authority on a zoning application to neighboring property owners violated the non-delegation doctrine of the procedural due process clause. Plaintiffs allege no such formal delegation here. The Plaintiffs again do not ask this Court to apply current law, but to create new law, arguing that no "delegation" is needed to support an anti-delegation argument.

### III.   <u>SUBSTANTIVE DUE PROCESS</u>

Plaintiffs argue that the government can be liable for a substantive due process violation where "the government acts in such a way that a person is placed at a foreseeably increased risk of harm from third parties." *Response* at 11:7-8. They further contend that all they need show is that the City left them in a more dangerous situation than they otherwise would have been in. *Response* at 11. The cases cited by Plaintiffs contradict their argument. Those cases require the three elements argued by the City in its Motion: (1) affirmative government actions that created or exposed plaintiffs to an actual, particularized danger that they would not otherwise have faced; (2) foreseeable injury; (3) deliberate indifference of the government to the known danger. *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

Plaintiffs misconstrue the "affirmative government action" element of the state created danger test in *Martinez* and *Hernandez.* Both cases clarify that the exposure must be to an immediate and particularized harm—battery in both cases. *Martinez* held that failure to arrest is not an affirmative act that creates an actual, particularized danger. 943 F.3d at 1272. The court ruled that an issue of fact existed whether an officer created or exposed Martinez to a new danger because the officer said

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 4
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

something that provoked the abuser while on scene with Martinez and the abuser, and emboldened the abuser to believe that he could further abuse Martinez, including by retaliating against her for her testimony, with impunity. *Id.* "The causal link between [the officer's] affirmative conduct and the abuse Martinez suffered that night is supported by Martinez's testimony that [the abuser] asked Martinez what she had told the officer while he was hitting her." *Id.* In *Hernandez* the plaintiffs were funneled into a hostile crowd that caused them harm after officers (1) prevented them from using safer alternative exits, (2) directed them to a particular exit and then (3) required them to turn into a crowd of violent protestors. 897 F.3d at 1133.

Plaintiffs identify no particularized danger that the City exposed them to that is equivalent to the risk of immediate battery created by the officers in *Martinez* and *Hernandez*. Instead, they describe general risks of "property damage, loss of income, impeded access to their property, and crime[.]" That is not enough to state a claim as to the element of "affirmative government action." Plaintiffs do not plausibly allege that they would not have been exposed to this danger but for City action.  As noted in the Executive Order cited by Plaintiffs, the City facilitated free speech and de-escalated in response to ongoing protests.  The damages the plaintiffs allege simply do not flow directly from City action, but from the decisions of private individuals.  The Plaintiffs would have this Court eliminate the City's discretion in determining how to respond to situations like the CHOP.  That approach was rejected in *Johnson v. City of Seattle*, 474 F.3d 634, 635 (9th Cir. 2007) another case holding that the City cannot be liable for not engaging in more aggressive policing.  *Motion* at 10.

Plaintiffs' argument as to the deliberate indifference element of the created-danger test also fails because they do not identify a particular risk that the City intended to expose them to. To establish deliberate indifference on a motion to dismiss, plaintiffs must have alleged that a "municipal actor disregarded a known or obvious consequence of [their] action" to plaintiffs. *Hernandez*, 897

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

F.3d at 1135. Plaintiffs appear to argue that the City can be deliberately indifferent to a neighborhood where the City is aware of a general risk of increased crime or ongoing crime. That is not the law. Plaintiffs' theory would remove governmental discretion in law enforcement and require the City to act whenever laws were violated or face liability.

The deliberate indifference cases cited by Plaintiffs follow the rule that for deliberate indifference to be found the government must have been aware of a "known or obvious consequence" of its action and of particularized harms that a government employee was aware of when interacting with a plaintiff. The City could find no case in which the government was found deliberately indifferent based on the abstract risks identified by Plaintiffs, nor a deliberate indifference case where no direct interaction between the government and the plaintiff was alleged. As discussed above, *Martinez* and *Hernandez* involved battery from known actors that the police officers were aware of, and the police interacted with both Martinez and Hernandez. In *Wood v. Ostrander,* 879 F.2d 583, 588 (9th Cir. 1989), the court found an issue of fact on deliberate indifference to personal security where a state trooper arrested the plaintiff, impounded the plaintiff's car, and left the plaintiff stranded five miles from her home in a known high-crime area along the road at 2:30 a.m.

Plaintiffs incorrectly describe *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1058-65 (9th Cir. 2006) as a case involving a husband's violent tendencies. The case is worth discussing in some detail because it illustrates what is required to satisfy the "affirmative government action" and "deliberate indifference" prongs of the state-created danger substantive due process test. In *Kennedy* an officer failed to give Kennedy notice he promised to give before he told her thirteen-year-old neighbor that Kennedy had accused the neighbor of sexually abusing her nine-year-old daughter. The officer knew the neighbor was violent. After failing to give Kennedy the promised warning, he then assured her that police would patrol the area that night to keep an eye on her neighbor. The police did not do that,

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 6
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

and the neighbor broke into Kennedy's home that night and shot her and her husband.  The court determined that the officer had created an affirmative danger by telling the neighbor of the allegations against him and thus creating a danger to Kennedy she would otherwise not have faced. *Id.* at 1062. Based on the repeated interactions between the officer and Kennedy, and his failure to request or provide the promised security, there was a question of fact on deliberate indifference. *Id.* at 1065.

Plaintiffs do not allege that the government was aware of particular risks to them that were substantially certain to occur based on City acts. Rather, they allege a generalized risk of increased crime stemming from how the City responded to the CHOP. That is not enough to state a claim.

## IV.   **EQUAL PROTECTION**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Groups of individuals are "similarly situated" when their circumstances are "arguably indistinguishable" or "in all relevant respects alike." *Ross v. Moffitt*, 417 U.S. 600, 609 (1974); *Sturm v. Cal. Adult Auth.*, 395 F.2d 446, 448 (9th Cir. 1967) ("The equal protection clause of the Fourteenth Amendment requires only that state laws be applied uniformly to situations that cannot be reasonably distinguished.") Differing treatment of dissimilar groups does not violate the Equal Protection clause. *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) ("Evidence of different treatment of unlike groups does not support an equal protection claim.").

Plaintiffs argue that the CHOP neighborhood is similarly situated to other neighborhoods in the City of Seattle. That argument is defeated on the face of their complaint. The CHOP was unique,

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 7
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1   and the result of protests that did not occur in other parts of the City. The circumstances of other

2   neighborhoods are not "arguably indistinguishable" from the CHOP, but readily distinguishable.

3   Simply, the CHOP cannot be considered "in all relevant respects" alike to neighborhoods that lacked

4   similar protest activity.

5       *Schwartz v. Uribe*, the only Ninth Circuit case cited by Plaintiffs to support their argument

6   that a neighborhood can be a protected class, considered and rejected an argument in a *habeas corpus*

7   proceeding that the petitioner was denied equal protection because he was apprehended in San

8   Bernardino County, as opposed to Los Angeles County, and therefore faced additional criminal

9   penalties. *Schwartz v. Uribe*, 5:11-CV-1174-MWF-KES, 2018 WL 7825799, at \*20 (C.D. Cal. Oct.

10  19, 2018), *report and recommendation adopted*, 511CV01174MWFKES, 2019 WL 1365107 (C.D.

11  Cal. Mar. 26, 2019). The Court found that even if "geographic location" could serve as a basis for an

12  equal protection claim, such claims are only subject to rational basis scrutiny, and "[p]reserving

13  prosecutorial discretion and resource allocation within differently situated counties constitute

14  reasonably conceivable sets of facts providing a rational basis for the classification." *Id.* It is unclear

15  why Plaintiffs cited to *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2006), *abrogated*

16  *by United States v. Jimenez-Perez*, 659 F.3d 704 (8th Cir. 2011). *Sebastian* is not an equal protection

17  case and rejected an argument that the plaintiff's sentence in an immigration case should be changed

18  because he was sentenced in a jurisdiction with less-favorable sentencing policies. *Id.*[1]

19

---

20  [1] Other cases Plaintiffs cite do not support their position either. For instance, *Basra v. Morgan,* 316CV06005RBLJRC, 2017 WL 6767394, at \*12 (W.D. Wash. Nov. 1, 2017), *report and recommendation adopted*, 316CV06005RBLJRC,

21  2018 WL 278649 (W.D. Wash. Jan. 3, 2018) considered a motion for summary judgment, and held "plaintiff must allege facts plausibly showing that defendants acted with discriminatory intent or [plaintiff was] treated differently than those similarly situated; different treatment of unlike individuals does not support an equal protection claim." *Id.* (dismissing

22  one equal protection claim based on prison visitation but not another based on religious diet). Critically, *Basra* involved similarly situated prisoners on religious diets. *Id.* at \*13. There are no such similarly situated parties here. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1032 (9th Cir. 1998) affirmed a trial court's dismissal of an equal protection

23  claim on other grounds and contains no substantive discussion of pleading requirements for equal protection claims.

1    Even if the Court determines that other neighborhoods were valid comparators, a rational basis

2    for treating the CHOP neighborhood differently than other neighborhoods exists on the face of the

3    complaint. Other neighborhoods were not experiencing the CHOP.  The rational basis test may be

4    applied on a motion to dismiss. *See Fields v. Palmdale Sch. Dist.,* 427 F.3d 1197, 1208–11 (9th Cir.

5    2005). A court should "take as true all of the complaint's allegations and reasonable inferences that

6    follow," but the "plaintiff must allege facts sufficient to overcome the presumption of rationality that

7    applies to government classifications." *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th

8    Cir.1992) (cited with approval in *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal.

9    2014)). "[A] plaintiff alleging an equal protection violation must still plead facts in their complaint

10   establishing that there is not 'any reasonable conceivable state of facts that could provide a rational

11   basis for the classification.'" *Estate of Vargas v. Binnewies*, 116CV01240DADEPG, 2018 WL

12   1518568, at *7 (E.D. Cal. Mar. 28, 2018) (citing and quoting *Hettinga v. United States*, 677 F.3d 471,

13   479 (D.C. Cir. 2012)).

14       In applying the rational basis test at the motion to dismiss stage, a court may go beyond the

15   pleadings to hypothesize a legitimate governmental purpose. *HSH, Inc.* 44 F. Supp. 3d at 1008. (citing

16   *Mahone v. Addicks Utility Dist. of Harris Cnty.,* 836 F.2d 921, 936 (5th Cir.1988)). "The

17   appropriateness of looking beyond the pleadings to perform a rational relationship analysis depends

18   on (1) the specific facts pleaded by the plaintiff[,] (2) the state of knowledge of the court making the

19   analysis[,] and (3) the complexity of the official action which is being challenged. *Id.* (quotations and

20   citations omitted). Plaintiffs' pleading does not meet their burden of establishing that there is no

21   "reasonable conceivable state of facts" that could provide a rational basis for the City's response to

22   the CHOP.

23

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 9
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    Plaintiffs' failure to plead facts supporting the existence of similarly situated groups means

2  their intentional discrimination argument fails as well. Plaintiffs allege they need only plead that

3  similarly situated groups were treated differently to survive the City's motion. They are mistaken.

4  Plaintiffs' claims are properly dismissed if the complaint's factual allegations, together with all

5  reasonable inferences, do not state a plausible claim for relief. *Cafasso, U.S. ex rel. v. Gen. Dynamics*

6  *C4 Sys. Inc.,* 637 F.3d 1047, 1054 (9th Cir. 2011). Conclusory allegations of law and unwarranted

7  inferences will not defeat a motion to dismiss. *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011).

8  Although Plaintiffs repeat their conclusion that similarly situated groups exist several times in their

9  Response, as explained above, no such groups exist on the face of the Amended Complaint. Other

10 neighborhoods in Seattle without mass protests cannot be said to be "arguably indistinguishable" from

11 the CHOP neighborhood as a matter of law.

12    Although whether groups are similarly situated is often a question of fact, the issue need not

13 be presented to the jury where the issue is appropriately decided as a matter of law. *Harlen Associates*

14 *v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (cited by Plaintiffs). Complaints that fail to

15 plausibly allege that a similarly situated group or person exist are appropriately dismissed at the

16 pleading stage.[2]

17    Plaintiffs' intentional discrimination (class-of-one) theory fails because it also requires

18 similarly situated groups. Plaintiffs do not acknowledge they make a "class-of-one" argument.

19

---

20 [2] *Malott v. Placer Cty.*, 2:14-CV-1040 KJM EFB, 2014 WL 6469125, at *12 (E.D. Cal. Nov. 17, 2014) ("Although the
'similarly situated' analysis does not lend itself to formulas, courts have said that 'dismissal at the pleading stage is
21 appropriate where the plaintiff fails to allege facts tending to show that it was similarly situated to any one of the
comparators.'" (citation omitted)); *E.H. v. Brentwood Union Sch. Dist.*, C13-3243 TEH, 2013 WL 5978008, at *4 (N.D.
22 Cal. Nov. 4, 2013) (Dismissal appropriate where no comparison to a similarly situated class of persons, even though
complaint alleged that such persons existed—the alleged facts did not support that anyone similarly situated existed);
23 *Leen v. Thomas*, 212CV01627TLNDMC, 2020 WL 1433143, at *6 (E.D. Cal. Mar. 24, 2020) (rejecting plaintiffs'
argument it was unnecessary to allege specific facts about similarly situated individuals because defendants' animus was
clear and dismissing equal protection claim on motion to dismiss).

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 10
2:20-CV-00983

Peter S. Holmes
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

However, the theory that the City intended to inhibit Plaintiffs' constitutional rights is a class-of-one theory. A "class of one" plaintiff "must prove that he or she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Abel v. City of Algona*, C07-956BHS, 2008 WL 4542428, at *12 (W.D. Wash. Oct. 8, 2008), *aff'd,* 348 Fed. Appx. 313 (9th Cir. 2009) (citation and quotation omitted) (cited in Response at 17:22-18:2). Plaintiffs citation to *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010) does not help them either as that case involved allegations that police had decided to not provide policing services because of race—a protected class. Plaintiffs concede they are not members of a protected class. *Response* at 15, fn 4. Thus, their citation to cases involving protected classes does not help them. Their class-of-one argument fails for reasons stated in the City's Motion to Dismiss.

As to the Plaintiffs' purported free speech claim, Plaintiffs do not allege that the City retaliated against them because of speech, that  the City's conduct—as opposed to the acts of third parties— would generally chill speech, or that but for government retaliation Plaintiffs would not have been injured. *See Motion to Dismiss* 17:6-15. Plaintiffs allege no facts that would plausibly allow the conclusion that the City responded to the CHOP the way it did because it intended to discriminate against plaintiffs' speech.

## V.    TAKINGS

Plaintiffs argue that two takings occurred. First, a taking of access. The second alleged taking is ill-defined. It appears they contend they had property rights in the government stopping private parties from invading their properties. The City is aware of no such property right recognized in law. This appears to be a restatement of Plaintiffs due process claims.

In support of their access claim, they rely on regulatory takings cases. This case does not involve a regulation, and such cases are not applicable here. Similarly, the physical invasion cases

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION TO DISMISS AND DENY CLASS CERTIFICATION - 11
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

they cite do not apply—they do not allege that the government physically invaded their property by flooding it or otherwise. As held in *Pande Cameron*, there is no general property right to have constant access to property, and a temporary access interference takes no property right as a matter of law. *See Motion* at 12.

Plaintiffs' mischaracterization of *Monarch Insurance Co. v. District of Columbia*, 353 F. Supp. 1249 (D.D.C. 1973) requires correction. Plaintiffs direct the Court to a part of the opinion addressing troops in buildings and a discussion of the appropriate test for analyzing additional damages alleged to have been caused by, or because of the presence of, federal troops. *Id.* at 1255. That does not apply here. But this does: "Plaintiff's allegations that the riot control program formulated and adopted by officials of the United States and the District of Columbia intentionally sacrificed private property in disturbance zones in order to further the public purpose of disturbance control, likewise do not establish a Fifth Amendment taking of property for public use without just compensation." *Id.* (noting judgments about how and when property should be protected during riots are best left to politicians, not the courts).

## VI.   PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND

Amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("A claim in a proposed amended complaint is futile if it would be immediately subject to dismissal pursuant to Rule 12(b)(6) [.]"). Here, amendment by Plaintiffs would be futile. They cannot allege facts that make any of their claims "plausible." Their complaint is appropriately dismissed with prejudice.

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 12
2:20-CV-00983

## VII. <u>CLASS CERTIFICATION</u>

In the alternative, the class certification issue can be decided now. Plaintiffs' Amended Complaint invites this Court to engage in a fiction: that the City is the only entity whose actions are at issue. Plaintiffs do not allege that the City directly damaged property, engaged in criminal acts or deprived Plaintiffs of access to their property. The Plaintiffs acknowledge that non-City actors are responsible for their alleged injuries.  These private actors will undoubtedly vary based on the alleged harm.  Any liability determinations as to the City will inevitably require individualized assessments based on the individual acts complained of by the Plaintiffs and any fault must be allocated. As discussed in the City's motion, damages will also require an individualized assessment. This is not a close case: it does not involve a valid class.

Plaintiffs' citation to *Hickey* is unhelpful. *Response* at 22:26-23:2. There the court certified the following class: "all individuals arrested between 6 a.m. and 12 p.m. on December 1, 1999, in Seattle, Washington, in Westlake Park, or on the streets or sidewalks on Fourth Avenue, between Pike Street and Pine Street, or on Pike or Pine Streets between Fourth and Fifth Avenues." *Hickey v. City of Seattle*, 236 F.R.D. 659, 664 (W.D. Wash. 2006). The Plaintiffs have no argument that their various complaints make their purported class equivalent to that in *Hickey*.

## VIII. <u>CONCLUSION</u>

Plaintiffs' complaint is appropriately dismissed.  Their arguments are contrary to clear law, and they plead no facts that could plausibly entitle them to any relief.  Because they cannot plead facts plausibly establishing a claim, the dismissal of Plaintiffs' complaint should be with prejudice.

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 13
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    DATED this 21st day of August, 2020.

2                                   PETER S. HOLMES
                                    Seattle City Attorney
3
                          By:       /s/ Joseph Groshong
4                                   Joseph Groshong, WSBA# 41593
                                    Assistant City Attorney
5                                   E-mail:  Joseph.Groshong@seattle.gov
                                    Seattle City Attorney's Office
6                                   701 Fifth Avenue, Suite 2050
                                    Seattle, WA 98104
7                                   Phone: (206) 684-8200

8                                   *Attorneys for Defendant City of Seattle*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 14
2:20-CV-00983

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 21ˢᵗ, 2020 I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system which will send notification of such filing to the following:

4

Patty A. Eakes, WSBA #18888

5

Angelo J. Calfo, WSBA #27079
LAW OFFICES

6

CALFO EAKES, LLP
1301 Second Avenue, Suite 2800

7

Seattle, WA 98101
pattye@calfoeakes.com

8

angeloc@calfoeakes.com

9

*s/ Daviana Kadiyan*
Daviana Kadiyan, Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPLY IN SUPPORT OF DEFENDANT CITY OF SEATTLE'S MOTION
TO DISMISS AND DENY CLASS CERTIFICATION - 15
2:20-CV-00983

**Peter S. Holmes**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200