HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

HUNTERS CAPITAL, LLC et al,

Plaintiffs,

v.

CITY OF SEATTLE,

Defendant.

Case No. 20-cv-00983 TSZ

CITY OF SEATTLE'S MOTION FOR A
PROTECTIVE ORDER

**NOTE ON MOTION CALENDAR:**
**Friday, November 26, 2021**

### I.    RELIEF REQUESTED

15
16
17
18
19
20
21
22
23
24
25
26

The City of Seattle requests that the Court enter a protective order limiting the scope of disclosure or discovery.  *See* Fed. R. Civ. P. 26(c)(1)(D).  Specifically, the City seeks an order that the City need not search for documents responsive to the plaintiffs' Requests for Production Nos. 45–47 and 49–51.  Those requests are reprinted in the first section below.

The City seeks this relief because the requests at issue seek documents regarding events, and alleged City action or inaction, after July 1, 2020, i.e., after the events that are the subject of the plaintiffs' complaint.  The documents sought thus are not relevant to the claims pled.  Nor are the requests proportional to the needs of the case.  Plaintiffs claim that the new requests bear on causation, specifically to prove that the events of June 8 to July 1, 2020, continued to harm them. But the City has <u>agreed</u> to search for documents responsive to the plaintiffs' request (No. 48) bearing on that issue.  The City has conferred with plaintiffs' counsel regarding these concerns and

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 1
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

been unable to reach agreement.  Accordingly, it brings this motion for a protective order.

## II.    FACTS RELEVANT TO MOTION

**A.    Plaintiffs on November 8, 2021, for the First Time Sought Documents Concerning City Actions Not Alleged (and Post-Dating the City Actions Alleged) in the Complaint.**

On November 8, 2021, and with the exception of requests relating to the inadvertent loss of text messages, plaintiffs for the first time sought discovery about events occurring after July 1, 2020.[1]  Plaintiffs' requests for production numbered 45–47 and 49–51 address City action or inaction after July 1, 2020 (to the extent these requests also relate to City action or inaction in June 2020, responsive documents already have been produced[2]).  The following are the requests at issue, which are filed at Ballinger Declaration, Exhibit 1.

Request for Production No. 45, which concerns the City's allowance of encampments and protesters in Cal Anderson through December 2020 (plaintiffs already have responsive documents for June 2020):

> **REQUEST FOR PRODUCTION NO. 45:** All documents from June 2020 to December 2020 regarding the <u>safety or condition of, and encampments in, or gatherings of protestors in Cal Anderson Park and any plan to empty the park and/or adjacent area of encampments or gatherings of protestors</u>. This includes, but is not limited to, all documents related to the "new approach" and Cal Anderson Park discussed by Casey Sixkiller in his October 12, 2021 deposition at pages 208-212.

Request for Production No. 46, which concerns the City's protection of the East Precinct through April 2021:

> **REQUEST FOR PRODUCTION NO. 46:** All documents regarding the <u>creation, construction, existence of, necessity of, and/or removal of the temporary barrier</u> that was in place near and around the East Precinct from July 2020 to approximately April 2021.

Request for Production No. 47, which concerns whether the City enforced noise ordinances against persons in the area of Cal Anderson Park to the present day:

---

[1] Ballinger Decl. Ex. 2.

[2] Ballinger Decl. ¶ 6.

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 2
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**REQUEST FOR PRODUCTION NO. 47:** All documents regarding complaints of <u>excessive noise in the CHOP Zone from July 2020 through the present</u> in the CHOP zone due to the activities related to or involving <u>encampments in Cal Anderson Park, protests or demonstrations in the CHOP zone, and/or or any enforcement actions initiated by the City</u> regarding those encampments, protests, or demonstrations.

Request for Production No. 49, which concerns the City's allowance (or disallowance) of protests and gatherings to the present day:

**REQUEST FOR PRODUCTION NO. 49:** All documents related to any <u>protests, crowds, or large gatherings of people</u> that occurred or originated in, or passed through, the CHOP Zone at any time between July 1, 2020, the present. This includes, but is not limited to, any of the "rolling protests" described by Sam Zimbabwe in his October 28, 2021, deposition at 172-175, all documents regarding <u>applications for or permits granted (or denied)</u> for any marches through the CHOP zone between July 1, 2020, and the present, and any enforcement action by the City to prevent unpermitted marches from occurring for that same area and same time.

Request for Production No. 50, which concerns the City's allowing street blockages and allowing property damage to the present day:

**REQUEST FOR PRODUCTION NO. 50:** All documents related to any <u>temporary blockage of City streets by protesters, demonstrators, and/or police</u> in the CHOP Zone from July 1, 2020, to the present and police or other reports of <u>vandalism and property damage done by protesters</u> in the CHOP Zone during the same time period.

Request for Production No. 51, which concerns the effectiveness of the City's law enforcement efforts:

**REQUEST FOR PRODUCTION NO. 51:** All documents related to, describing, summarizing, or analyzing crimes reported or committed in (1) the CHOP Zone and (2) SPD Beat E2between [sic] July 1, 2020, and the present, and any documents showing a comparison of the numbers of crimes reported from 2019 – 2020, and 2020 – 2021, organized by category or type of crime committed (for example only, assault, aggravated assault, battery, robbery, burglary, damage to property, sexual assault, rape, homicide).

The City has considerable experience in responding to document requests, has the benefit of very recent experience in responding to requests relating to the so-called CHOP area and its occupants, and is in a good position to estimate the cost of responding to those new requests

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 3
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

enumerated above.  The City anticipates that collecting, reviewing, and producing documents responsive to these requests (which concern 6- to 16-month periods) will cost some multiple of the $300,000 costs incurred collecting, reviewing, and producing documents responsive to the plaintiffs' initial requests (which related to a five-week period).[3]  *See also infra* page 7.

Request for Production No. 48, by contrast, seeks "All documents dated at any time from June 2020 the present discussing any impacts or effects CHOP had, or continues to have, on any part of the CHOP Zone," and the City has agreed to perform a reasonable search for such documents.

**B.    The Plaintiffs' Operative Complaint, Amended Three Times, Concerns City Actions and Inactions between June 8 and July 1, 2020.**

The plaintiffs have amended their complaint three times, in July 2020, October 2020, and July 2021.  Their deadline to file a motion to certify the class is January 13, 2022.  Dkt. 53.

The plaintiffs' operative complaint, filed on July 2, 2021 (i.e., one year after the initial filing), states:

this lawsuit is about the constitutional and other legal rights of Plaintiffs— businesses, employees, and residents in and around CHOP—which were overrun by the City of Seattle's unprecedented decision to abandon and close off an entire city neighborhood, leaving it unchecked by the police, unserved by fire and emergency health services, and inaccessible to the public at large.

. . .

The property owners, businesses, and residents in the area suffered ever- increasing property damage and economic loss every day that CHOP existed in their neighborhood, all because of the City's active support, encouragement, and endorsement of the occupation.

. . .

. . . it was only after Plaintiffs had to resort to litigation to make themselves heard that the City finally took action to disband CHOP.[4]

All City actions that plaintiffs allege in this July 2021 complaint relate directly to this

---

[3] Ballinger Decl. ¶ 8.

[4] Third Am. Compl. (Dkt. 47) ¶¶ 2, 10, 11 (emphasis added).

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 4
(Case No. 20-cv-00983 TSZ)

alleged decision "to abandon and close off" an area of Seattle.  Plaintiffs allege that between June 8 and July 1, 2020, the City: ceased using a police department building;[5] left barriers[6] and added additional barriers;[7] allowed people to use a park;[8] chose not to enter the area except during life-and-death emergencies;[9] endorsed and supported the occupation by making statements, including that the occupation would be allowed to continue;[10] failed to respond to reports of criminal activity;[11] failed to respond to stated concerns;[12] and provided lighting, cleaning stations, sinks, portable toilets, fire extinguishers, and medical equipment.[13]

All City actions and inactions alleged or referred to in this July 2021 complaint were over by July 1, 2020:

> The City's conduct enabled the widespread destruction and vandalism of private property. . . . The City did nothing to prevent this conduct from June 8, 2020 to July 1, 2020, but instead, actively endorsed and supported the ongoing occupation of the CHOP area and the destruction of property that accompanied it.  As a result, property owners and their tenants were not able to fully use their properties. . . . The property owners, businesses, and residents in the area suffered ever-increasing property damage and economic loss every day that CHOP existed in their neighborhood, all because of the City's active support, encouragement, and endorsement of the occupation.[14]

> Members of the public could not use Cal Anderson Park. CHOP's control of the park continued unabated until July 1, 2020.[15]

> The City changed its tone after it learned that this lawsuit would be filed, and

[5] Third Am. Compl. (Dkt. 47) ¶¶ 3, 36.

[6] Third Am. Compl. (Dkt. 47) ¶¶ 3, 7, 37, 172(a).

[7] Third Am. Compl. (Dkt. 47) ¶ 170, 172(b).

[8] Third Am. Compl. (Dkt. 47) ¶ 5.

[9] Third Am. Compl. (Dkt. 47) ¶¶ 8, 56, 57, 58, 173.

[10] Third Am. Compl. (Dkt. 47) ¶¶ 9, 10, 166, 167, 174, 175.

[11] Third Am. Compl. (Dkt. 47) ¶¶ 90–Car Tender; 117, 118, 119–Ploszaj; 122–Argento; 128, 130–Onyx; 136, 139, 140–Madrona Real Estate; 148–Hunter's Capital; 158–Redside Partners.

[12] Third Am. Compl. (Dkt. 47) ¶¶ 107–Magdalena Sky; 113–Bergman's Lock and Key; 125–Argento; 132–Onyx; 145–Madrona Real Estate; 149–Hunter's Capital; 160–Ranch Bravo.

[13] Third Am. Compl. (Dkt. 47) ¶¶ 172(c), 172(d), 173, 112–Bergman's Lock and Key; 156–Olive ST.

[14] Third Am. Compl. (Dkt. 47) ¶¶ 9, 10 (emphasis added).

[15] Third Am. Compl. (Dkt. 47) ¶ 52 (emphasis added).

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 5
(Case No. 20-cv-00983 TSZ)

especially after Plaintiffs filed their first complaint.  This included finally clearing CHOP of barricades and CHOP participants on July 1, 2020, in the face of an impending motion for a temporary restraining order.  But the City's earlier assistance and endorsement of CHOP and CHOP participants caused, and continue to cause, harm to Plaintiffs and the Class that would not have occurred absent the City's actions.[16]

The clearing of the area on July 1, 2020, was easily and accomplished without violence on either side, demonstrating that the City could have and should have cleared the area far earlier.[17]

Plaintiffs' complaint says nothing about City action or inaction after the City "clear[ed] the area on July 1, 2020." Id.

**C.    The Court's Denial of the City's Motion to Dismiss Confirms That the Case Concerns Only a Discrete Time Period.**

The Court denied the City's motion to dismiss.[18]  The Court's analysis of each claim makes clear that only the City's actions and inactions during the period of the so-called CHOP (June 8 to July 1, 2020) are at issue, and that only the damages proximately caused by those actions and inactions are recoverable:

*Procedural due process*:

Plaintiffs plausibly allege that they had a protected property interest in the full use and enjoyment of their property and that the City's affirmative actions in support of CHOP caused Plaintiffs to suffer a temporary deprivation of those interests. Specifically, Plaintiffs allege that from June 8 to July 1, 2020, CHOP participants used City-provided barriers, with the City's approval, to block access from their properties to streets, sidewalks, and other public rights-of-way.  Many of the Plaintiffs also allege that because of CHOP's existence, and the rampant crime and vandalism that ensued, they were deprived of all (or nearly all) economic use of their properties.[19]

*Substantive due process*:

Specifically, Plaintiffs allege that on or around June 16, 2020, the City adopted in a "no response" strategy with respect to CHOP, after negotiating with CHOP participants.  This strategy purportedly resulted in police and other emergency

---

[16] Third Am. Compl. (Dkt. 47) ¶ 176 (emphasis added).

[17] Third Am. Compl. (Dkt. 47) ¶ 177 (emphasis added).

[18] Order (Dkt. 23) (Oct. 16, 2020).

[19] Order (Dkt. 23) p. 15 (emphasis added) (citations omitted).

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 6
(Case No. 20-cv-00983 TSZ)

personnel refusing to respond to 9-1-1 calls made from within or near CHOP. . . .
[¶] The Court concludes that these allegations are sufficient to state a substantive
due process claim under the state-created danger exception. Plaintiffs plausibly
allege that the City's actions—encouraging CHOP participants to wall off the area
and agreeing to a "no response" zone within and near CHOP's borders—
<u>foreseeably placed Plaintiffs in a worse position than they would have been in
absent any City intervention whatsoever</u>.[20]

*Unlawful taking*:

Plaintiffs allege that from June 8 to July 1, 2020, <u>the City allowed and encouraged
CHOP participants to block access from Plaintiffs' properties to streets and other
public rights-of-way</u>, resulting in the <u>deprivation of all or nearly all economic use
of their properties</u>. Those allegations support Plaintiffs' assertion that the City's
policies and practices related to CHOP deprived them of protected property
interests, albeit temporarily, without just compensation.[21]

**D.      For Over a Year and with Plaintiffs' Agreement, the City Has Produced Documents
Properly Discoverable Based on the Temporal Scope of the Plaintiffs' Complaint.**

Plaintiffs agreed to discovery limitations driven by the temporal limitations of the

complaint.  In October 2020, the parties came to agreement on search terms, custodians, and date

limitations (June 8, 2020 through July 10, 2020), as required by the ESI Agreement,[22] which terms,

custodians, and date limitations were stated in the City's October 30, 2020 discovery responses.[23]

The City then began the time-consuming and expensive process of collecting, reviewing, and

producing responsive documents.[24]  Over the course of the next few months, the City produced

tens of thousands of pages of documents.[25]  The City spent more than $300,000 in that effort.[26]

This sum excludes the cost of extensive efforts to address the inadvertent loss of text messages

during the same time period.[27]

---

[20] Order (Dkt. 23) p. 19 (emphasis added) (citations omitted).

[21] Order (Dkt. 23) p. 22 (emphasis added) (citations omitted).

[22] *See* Ballinger Decl. Ex. 3.

[23] Ballinger Decl. Ex. 1, pp. 22, 24, 25, 26, 28, 29, 30, 33-36.

[24] Ballinger Decl. ¶ 7.

[25] Ballinger Decl. ¶ 7.

[26] Ballinger Decl. ¶ 7.

[27] Ballinger Decl. ¶ 7.

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 7
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

**E.      LCR 26(c) and LCR 26(f)(3) Certifications**

The LCR 26(c) and LCR 26(f)(3) certifications are at Ballinger Declaration ¶¶ 4-5.

### III.      ARGUMENT

Rule 26 limits the "scope of discovery" to that which is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). The plaintiffs' "claim" is that the City is liable for "abandon[ing] and clos[ing] off an entire city neighborhood, leaving it unchecked by the police, unserved by fire and emergency health services, and inaccessible to the public at large."[28] By the plaintiffs' own admission, that ended on July 1, 2020.[29]

The City is not basing its current objections on limitations in establishing tail damages caused by the actions or inactions of the City during the June 8 to July 1 period, though such limitations exist and may be the subject of later motion practice if not otherwise resolved. A hypothetical example of such damages could be loss of income because a rental unit vacated during the period and was not re-let until September 1. Request for production number 48, to which the City will respond, is directed at exactly this issue.

By contrast, requests for production numbers 45–47 and 49–51 are not probative of damages allegedly resulting from City action or inaction between June 8 and July 1. Plaintiffs' new requests relate to claims of damage caused by actions or inactions of the City in the period after July 1, 2020, such as allowing encampments (Nos. 45, 47), noise (No. 47), protests (Nos. 45, 47, 49, 50), street blockages (No. 50), and criminal activity (No. 51), and erecting a protective barrier around the East Precinct (No. 46). If plaintiffs want to plead and prove damages from these alleged City actions or inactions, plaintiffs must clear the hurdle of securing leave at this late stage to greatly expand their claims via a fourth amended complaint.

---

[28] Third Am. Compl. (Dkt. 47) ¶ 2 (emphasis added).

[29] Third Am. Compl. (Dkt. 47) ¶¶ 9, 10

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 8
(Case No. 20-cv-00983 TSZ)

1   Plaintiffs' causation argument in support of the proposed new claims covering an extended

2   new time period is so attenuated as to make little sense and is contradicted by their allegations

3   based on the June 8-July 1 time period.  The new causation argument is: the City decided "to

4   abandon and close off an entire city neighborhood, leaving it unchecked by the police, unserved by

5   fire and emergency health services, and inaccessible to the public at large";[30] that decision was the

6   proximate cause of protests, noise, criminal activity, and the decision to harden the East Precinct

7   after (indeed, 16 months after) the "neighborhood" was no longer "abandon[ed] and close[d] off";

8   and those later activities damaged the individuals and businesses in the area.  So the initial claims

9   based on allegedly abandoning the East Precinct and the neighborhood are now to be followed by

10  claims based on the presence of police and emergency vehicles in the same area after July 1.[31]

11  Such an attenuated theory of causation is not actionable.  For example, proximate cause for

12  a state created danger / substantive due process claim includes a foreseeability component, which

13  depends on factors including if "the immediate threat of harm has a limited range and duration."

14  *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993).  That is why in *Martinez v. California*, 444

15  U.S. 277 (1980), the Court concluded that the five months since release of a parolee made a girl's

16  murder "too remote a consequence" of state action for civil rights liability to attach.  *Id.* at 286.

17  Even if the documents now being sought had any bearing on damages allegedly resulting

18  from the armed takeover of the area, the requests are not proportional.  In determining

19  proportionality, the Court must consider "the importance of the discovery in resolving the issues,

20  and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed.

---

[30] Third Am. Compl. (Dkt. 47) ¶ 2.

[31] Ballinger Decl. Ex. 5 at 44, 55-56 (Hunters Capital Rule 30(b)(6) deponent: "After the CHOP -- and I say, quote, unquote, ended because, as you know, there was a reoccupation of the East Precinct -- there was almost immediately an occupation of Cal Anderson Park, which was widely publicized. And during that time, there were several incidences, some of them quite shocking and terrible -- murders, deaths, suicides, rapes -- and the -- our access to our property was blocked as the police and medics came to attend to those issues. Also, there were nightly fires and fights and people driving vehicles into the park, at which time first responders would respond and block the park or access, sorry, to Nagle and our property. Those are just some of the -- some of the examples. . . . I think it's safe to say that that would be a potential loss of revenue if they could not access the property because there are fire trucks and paramedics removing bodies from the park where they're trying to access to come in the door.").

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 9
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

R. Civ. P. 26(b)(1).  The causation argument is at best very attenuated and is fundamentally inconsistent with the original claims of inadequate police protection and the like, and thus is disproportionate to the needs of the case.

Moreover, proportionality requires considering also "the parties' relative access to relevant information."  Fed. R. Civ. P. 26(b)(1).  The plaintiffs, who live and operate businesses in the subject area, are equally (if not more) capable of presenting evidence about what they contend were the ongoing problems caused by the fact that the so-called CHOP had existed, and whether those ongoing problems caused the neighborhood reputational damage they allege.  That the City may have documented particular issues in the area proves nothing that the plaintiffs themselves cannot as readily prove by testimony, whether elicited from residents and businesses or the City itself.  Indeed, the plaintiffs already have testified (extensively), and have deposed the City's Rule 30(b)(6) witnesses (extensively), about the ongoing problems they allege.[32]

The City estimates it will cost some multiple of $300,000 to gather, review, and produce documents responsive to the latest requests.[33]  Given the (at best) attenuated causation argument underlying the requests, the disconnect between the new causation argument and the theory of liability, the ability to gather the information by testimony, and the cost of responding, the new requests are disproportionate to the needs of the case, in addition to being well beyond the scope of the allegations in the current complaint.

The parties have thus far approached the case in a deliberately staged way.  The parties first engaged in document discovery from October 2020 through February 2021—both sides are still producing documents responsive to those requests.  The parties have moved ahead with depositions, which began in May 2021 and are occurring in earnest now.  These efforts will culminate in briefing class certification (with the plaintiffs' motion due in just two months, on

---

[32] *E.g.*, Ballinger Decl. Ex. 4, p. 167-178 (one of the City's Rule 30(b)(6) designees); Ex. 5, p. at 43-44, 51-56, 60-61 (one of Hunters Capital's Rule 30(b)(6) designees).

[33] Ballinger Decl. ¶ 8.

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 10
(Case No. 20-cv-00983 TSZ)

January 13, 2022) and dispositive motions.  The plaintiffs are entitled under the case scheduling order to request additional documents before the discovery cutoff, but these new demands are far beyond the scope of discovery allowable under the current complaint.  These recent requests reflect a decision to expand the scope of the claims against the City in ways that are far beyond the claims on which the current case schedule was based, long after the City has undertaken expensive efforts to deal with document production within the scope of the original complaint, and when the parties are well along in deposition discovery that reflects the claims in the existing complaint.

The City should not be required to respond to an order of magnitude greater scope of document and other discovery while preparing to deal with deposing the remaining witnesses and preparing for class certification and dispositive motions.

## IV.    CONCLUSION

For the foregoing reasons, the City requests that the Court issue a protective order such that the City need not respond to the plaintiffs' Requests for Production Nos. 45–47 and 49–51.

DATED this 18th day of November, 2021.

PETER S. HOLMES
Seattle City Attorney

By: _s/ Joseph Groshong_
    Joseph Groshong, WSBA #41593
    Assistant City Attorney
    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
    Seattle, WA 98104
    Tel:  (206) 684-8200
    Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP

By: _s/ Arthur W. Harrigan, Jr._
By: _s/ Tyler L. Farmer_
By: _s/ Shane P. Cramer_
By: _s/ Kristin E. Ballinger_
    Arthur W. Harrigan, Jr., WSBA #1751
    Tyler L. Farmer, WSBA #39912
    Shane P. Cramer, WSBA #35099
    Kristin E. Ballinger, WSBA #28253
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Tel:  (206) 623-1700
    arthurh@harriganleyh.com
    tylerf@harriganleyh.com
    kristinb@harriganleyh.com

*Attorneys for the City of Seattle*

CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 11
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717