HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC et al,

                Plaintiffs,

      v.

CITY OF SEATTLE,

                Defendant.

Case No. 20-cv-00983 TSZ

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER

NOTED ON MOTION CALENDAR:
Friday, November 26, 2021

## I.      REPLY

Plaintiffs' response indicates that they view everything they complain about during and following the protests in their neighborhood (up to the present day) as caused by the protests.  This view is unavailing, as plaintiffs did not sue the City for allowing the protests (which began June 1), but for the City response to a particular outgrowth of those protests (which began June 8 and ended July 1).  In any event, a claim that the City's response to protests following July 1 caused additional damages would be a distinct claim that the City violated plaintiffs' rights or breached a duty owed to them.  Plaintiffs have no present right to discovery about such new, unpled claims.

But the Court need not reach the question of the scope of plaintiffs' claims.  Taking plaintiffs at their word, plaintiffs seek information only about what happened in the neighborhood after July 1, 2020, and not about whether the City properly responded to those happenings.  Proportionality considerations dictate that plaintiffs have no need for this documentary evidence

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR
A PROTECTIVE ORDER - 1
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  which will be unduly burdensome to collect, review, and produce, because they have first-hand

2  knowledge about what happened.  They say that the City's records could help establish that the

3  later events were caused by the City's response to the armed takeover of their neighborhood (*e.g.*,

4  Opp'n, Dkt. 56, p. 9), but provide no explanation about how that is so.

5         The Court should grant the City's motion for a protective order.

6  **A.        Plaintiffs' Attenuated Causation Argument Fails.**

7         Plaintiffs seek to hold the City responsible for an extraordinary and unprecedented armed

8  takeover of their neighborhood, which they pled ended on July 1, 2020.  *See* Second Am. Compl.,

9  Dkt. 28, p. 5 ¶ 12, p. 53 ¶¶ 174 & 175.[1]  The Court held that plaintiffs had plausibly alleged that

10  the City was responsible for plaintiffs' "properties [being] blocked off from access to public streets

11  and rights-of-way," their inability "to use and enjoy their properties," and the "depriv[ation] of

12  basic public-safety services" during that armed takeover.  Order, Dkt. 23, p. 14.

13         But the discovery plaintiffs now seek concerns City action or inaction of a different sort

14  and occurring at a different time, up to 16 months after July 1, 2020.  The post-July 1 City acts and

15  omissions plaintiffs complain about are of an entirely different type from that pled in the

16  complaint.

17         For this later period, instead of claiming that the City "supported the establishment of an

18  autonomous zone within CHOP's boundaries," including "adopt[ing] a 'no response' policy and

19  practice within CHOP," (Order, Dkt. 23, p. 13 (quoting complaint)), plaintiffs claim that, for

20  instance,

21         –        the City should not have treated people humanely.  *See* Opp'n, Dkt. 56, pp. 5-6

22  ("the City provided the occupiers with social services and alternative housing arrangements" and

23  "offered to (and did) preserve the occupiers' art").

24

25

26

---

[1] "[T]his case . . . is about the City's active, knowing endorsement and support of a destructive occupation of a neighborhood to the detriment of the well-being of those who live and work in that neighborhood."  Second Am. Compl., Dkt. 28, p. 5 ¶ 12.

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR
A PROTECTIVE ORDER - 2
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

–        the City should not have allowed encampments to be established and remain in Cal Anderson Park, a complaint echoed as to parks throughout the city.  *Compare* Opp'n, Dkt. 56, p. 6 ("another large encampment appeared in Cal Anderson Park in July 2020 and remained there until the City finally cleared it out again in December 2020"), *with Encampments, Conditions at Seattle Parks Draw Scrutiny As Coronavirus Pandemic Drags on*, Seattle Times, Oct. 27, 2020, at A1 ("Calling the situation in many of Seattle's large parks 'a spiraling public-health and public-safety crisis,' more than a dozen business and neighborhood groups sent a letter Monday to the mayor and City Council lobbying them to act. . . . The letter claims that Albert Davis Park in Lake City has 'become completely unusable' due to an encampment with nearly 30 tents. More than 40 tents and structures have cropped up at Ballard Commons Park, and more than 75 tents occupy City Hall Park downtown, according to the letter.").

–        the City allowed "rolling protests" originating at or near Cal Anderson Park (Opp'n, Dkt. 56, p. 8), despite their neighborhood having been the focus of Seattle protest activity for decades,[2] including the many recent protests that originated at Cal Anderson.[3]  Moreover, plaintiffs plainly misrepresent the deposition testimony about those "rolling protests" as supporting

---

[2] *See Seattle in the Calm after the Storm*, Seattle Post-Intelligencer, May 4, 1992, at A6 (news article following the acquittals in the beating of Rodney King: "Police arrested more than 150 people . . . , where store windows were smashed and bottles and rocks lobbed at police. The violence, confined to downtown and Capitol Hill, also included a few instances of looting.  Seattle police reports showed only two more incidents yesterday: [including] the smashing of windows in . . . a Capitol Hill auto shop. . . . Seattle firefighters responded to at least five major blazes linked to civil disturbances [including] . . . on Capitol Hill . . . . In the most serious fire, an undetermined number of residents were forced from apartments at 411 E. John St. and 205 Summit Ave. E. . . . On Capitol Hill, . . . a peaceful march turned violent as it approached the East Precinct police station late Friday night . . . .").

[3] *E.g.*, *Seattle-area Students Fill Cal Anderson Park to Demand Action on Climate Change*, Seattle Times, March 15, 2019; *Seattle Womxn's March Starts at Cal Anderson*, Capitol Hill Seattle Blog, Jan. 8, 2019 ("a third year of January marching and organizing for women's rights activism is coming to Seattle with Cal Anderson again an epicenter of action"); *Thousands Expected to Attend Seattle Women's March*, Seattle Times, Jan. 18, 2018 ("[O]rganizers expect thousands of people . . . to gather at Capitol Hill's Cal Anderson Park . . . similar to last year's record-breaking demonstration."); *Seattle's March for Science Will Start on Capitol Hill*, Capitol Hill Seattle Blog, April 4, 2017 ("Cal Anderson's role as a center of protest against the Trump administration will continue . . . as the Seattle component of the nationwide March for Science will start in the Capitol Hill park."); *The Lesser-Known History of Cal Anderson Park on Capitol Hill*, Seattle Times, April 4, 2021 ("Since it was first designed . . . in 1904, [Cal Anderson P]ark has been . . . a zone of controversy and resistance. . . . In recent decades, the park has been a rallying point, and sometimes a flashpoint, for many political movements: anti-war protests, anti-capitalism protests, the 1999 WTO demonstrations, the 2017 Womxn's March (by some estimates, the largest in Seattle history) and years of gay pride events.") (all emphasis added).

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR A PROTECTIVE ORDER - 3
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

their causation argument. The witness <u>did not</u> testify that Capitol Hill was a focus of protest activity in later months "'because of' what had happened with CHOP." Opp'n, Dkt. 56, p. 8 (quoting Dep. 175, lines 2-3). Rather, the cited testimony says this: "I think that it -- because of the -- the <u>summer protests</u>, it became -- it was still a place where people would sort of organize and -- depart from." Dkt. 57, p. 29, lines 1-4 (emphasis added). The "summer protests" on Capitol Hill began on June 1, 2020, *see East Precinct Demonstration Declared a Riot*, SPD Blotter (June 1, 2020), and plaintiffs took pains to plead in their complaint that "this case is not about" those protests, *see* Second Am. Compl., Dkt. 28, p. 5 ¶ 12.

Plaintiffs make these new allegations—about later events and the City's acts and failures to act—in their response to the City's motion for a protective order, not in seeking leave to amend their complaint to assert new claims. Under plaintiffs' theory of causation (and demonstrated in their requests which seek documents "to the present"), the City is responsible for any harm caused by future criminal activity, encampments, protests, crowds, and noise in the Cal Anderson Park area because, in June 2020, it allegedly allowed and then supported the armed takeover of the neighborhood.

Any such causation argument fails: claiming that the City <u>later</u> allowed criminal activity, encampments, protests, crowds, and noise requires that plaintiffs plead and prove that those <u>later</u> City acts or omissions violated plaintiffs' rights. Foreseeability permits proof of harm caused by "acts of <u>others</u>" precipitated by the defendant's acts or omissions (Dkt. 56, p. 14 (emphasis added) (citations omitted)), and that is exactly what this case is about: whether the City is liable for the criminal acts of third parties during the armed takeover of the neighborhood. But plaintiffs now propose to prove new, distinct damage caused by <u>City</u> acts or failures to act weeks, months, and years later. Plaintiffs cite no case allowing for such boot-strapped, untethered liability.

**B.      The Discovery Sought Is Not Proportional Because Plaintiffs' Causation Theory Necessarily Disavows an Intent to Prove That Later City Acts or Omissions Caused the Later Happenings.**

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR
A PROTECTIVE ORDER - 4
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    Even if the Court believes evidence of such alleged acts or omissions might be relevant,

2   plaintiffs have identified no reason to believe that the documents sought will even marginally (let

3   alone materially) advance their understanding of those later events or of a causal tie.  I.e., the Court

4   may issue a protective order without reaching the question of the scope of plaintiffs' claims.

5    Plaintiffs' opposition (Dkt. 56) and deposition testimony (*e.g.*, Dkt. 55-5, pp. 3-7)

6   demonstrate that they have a firm grasp of what happened in their neighborhood in the days,

7   weeks, and months after July 1, 2020.  In arguing that those events were caused by the City's acts

8   and omissions between June 8 and July 1, plaintiffs necessarily disavow an intent to claim that the

9   City's post-July 1 acts or omissions caused that later harm.  (Were it otherwise, plaintiffs would

10   have to plead and prove that the City's later acts or omissions violated their constitutional rights, as

11   discussed in the preceding section.)  If that is the case, then it is <u>irrelevant</u> what the City knew or

12   did not know, or did or failed to do, during those later months.  Proportionality dictates that where

13   the information is equally known to a party, the discovery should not be had, especially when it is

14   marginally relevant and will be burdensome to search for and produce.  *See* Fed. R. Civ. P.

15   26(b)(1) (court must consider "whether the burden or expense of the proposed discovery outweighs

16   its likely benefit" and "the parties' relative access to relevant information").  This is true even of

17   the crime statistics: plaintiffs say they seek crime statistics to prove that crime rates went up in

18   their neighborhood (Dkt. 56, p. 10), but their causation theory is that the <u>public's perception</u> of the

19   crime in their neighborhood caused people to stay away (Dkt. 56, p. 7).

20    That the City has not directed its witnesses not to answer deposition questions on these

21   issues (Dkt. 56, p. 12) shows nothing more than sensible restraint.  The deposition discovery was

22   not relevant but there is an inherent limitation on the burden of such discovery—plaintiffs must be

23   judicious about the use of their deposition time.  *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise

24   stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.").  The City

25   concluded that the time, expense, and disruption caused by halting a deposition to seek a protective

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR
A PROTECTIVE ORDER - 5
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  order as would have been required (*see* Fed. R. Civ. P. 30(c)(2), (d)(3)) was unwarranted.  A

2  different calculus applies to burdensome requests for production.  The federal rules provide no

3  restriction on the number of requests (*see* Fed. R. Civ. P. 34) and the burden of searching for,

4  reviewing, and producing documents is far greater than any deposition time that plaintiffs choose

5  to spend.

6        Plaintiffs are mistaken in arguing that there is no burden because they seek only a discrete

7  set of documents from a discrete set of custodians.  In fact, they seek "all documents" "regarding"

8  or "relating to" just about everything concerning Cal Anderson Park and criminal activity,

9  encampments, protests, crowds, and noise in the area.  The parties' ESI Agreement goes only so

10  far: the City's obligation is to fully respond to requests by making a reasonable search for

11  responsive documents.  *See* Fed. R. Civ. P. 34(2).  Had plaintiffs intended to seek a materially

12  smaller set of documents, they could have propounded narrow requests (or suggested such narrow

13  requests when the parties met and conferred), such as for all notice of tort claims or formal

14  complaints received by the City between July 1 and December 31, 2020, for incidents occurring in

15  the area.  As it stands, plaintiffs' offer to narrow the requests was so vague and non-committal as

16  to be meaningless ("we <u>might consider</u> a proposed narrowing of the RFPs or limitation to certain

17  custodians . . . <u>even though</u> we have already limited these RFPs to specific issues" (Dkt. 57, p. 7)

18  (emphasis added)) particularly given that their implicit <u>starting point</u> for the negotiation was the <u>39</u>

19  <u>custodians</u> plaintiff insisted on for the first sets of discovery (*see* Dkt. 55-2, pp. 20-21).

20  **C.**      **Plaintiffs Are Free to Utilize Other Avenues to Obtain Records.**

21        That the state Public Records Act imposes no limitations on scope (*see* Dkt. 56, p. 11) has

22  no bearing on the discovery obligations owed under the federal rules.  Plaintiffs are free to submit

23  public records requests, which the City will respond to as required by state statute.

24  **D.**      **The City's Timely Motion Means There Is No Basis to Compel Responses.**

25        Finally, there is no basis to "compel" responses as plaintiffs request. Dkt. 55, p. 13.  The

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR
A PROTECTIVE ORDER - 6
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

City brought and noted its motion for a protective order well before the December 8 deadline for responding, relieving the City of the duty to respond. *See Rosemere Neighborhood Ass'n v. U.S. E.P.A.*, No. 07-5080, 2007 WL 2220257, at *1 (W.D. Wash. Aug. 1, 2007) (motion for "entry of a protective order relieve[d defendants] of the obligation to respond"); Fed. R. Civ. P. 37(d)(2) (failure to respond "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)"); Fed. R. Civ. P. 37(d) advisory committee's note (1970) ("If [a party] desires . . . not to respond, he must apply for a protective order."). If the Court declines to issue a protective order, the City will respond as required by the federal rules and outlined in the parties' ESI Agreement.

## II.   CONCLUSION

The Court should issue a protective order such that the City need not respond to or search for documents responsive to plaintiffs' requests for production numbered 45–47 and 49–51.

DATED this 26th day of November, 2021.

PETER S. HOLMES
Seattle City Attorney

By:  s/ Joseph Groshong
    Joseph Groshong, WSBA #41593
    Assistant City Attorney
    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
    Seattle, WA 98104
    (206) 684-8200
    Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP

By:  s/ Arthur W. Harrigan, Jr.
By:  s/ Tyler L. Farmer
By:  s/ Shane P. Cramer
By:  s/ Kristin E. Ballinger
    Arthur W. Harrigan, Jr., WSBA #1751
    Tyler L. Farmer, WSBA #39912
    Shane P. Cramer, WSBA #35099
    Kristin E. Ballinger, WSBA #28253
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    (206) 623-1700
    arthurh@harriganleyh.com
    tylerf@harriganleyh.com
    shanec@harriganleyh.com
    kristinb@harriganleyh.com

*Attorneys for the City of Seattle*

REPLY IN SUPPORT OF THE CITY OF SEATTLE'S MOTION FOR
A PROTECTIVE ORDER - 7
(Case No. 20-cv-00983 TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717