THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6

7

8

9       IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF WASHINGTON

10

| | |
|---|---|
| 11  HUNTERS CAPITAL, LLC, a Washington | Case No. 2:20-cv-00983-TSZ |
| 12  limited liability company, HUNTERS PROPERTY HOLDINGS, LLC, a | |
| 13  Washington limited liability company, GREENUS BUILDING, INC., a | PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| 14  Washington corporation. SRJ ENTERPRISES, d/b/a CAR TENDER, a | NOTE ON MOTION CALENDAR: |
| 15  Washington corporation, THE RICHMARK COMPANY d/b/a RICHMARK LABEL, a | February 18, 2022 |

11  HUNTERS CAPITAL, LLC, a Washington
12  limited liability company, HUNTERS
    PROPERTY HOLDINGS, LLC, a
13  Washington limited liability company,
    GREENUS BUILDING, INC., a
14  Washington corporation. SRJ
    ENTERPRISES, d/b/a CAR TENDER, a
15  Washington corporation, THE RICHMARK
    COMPANY d/b/a RICHMARK LABEL, a
16  Washington company, ONYX
    HOMEOWNERS ASSOCIATION, a
17  Washington registered homeowners
    association, MATTHEW PLOSZAJ, an
18  individual, WADE BILLER, an individual,
    MADRONA REAL ESTATE SERVICES
19  LLC, a Washington limited liability
    company, MADRONA REAL ESTATE
20  INVESTORS IV LLC, a Washington
21  limited liability company, MADRONA
    REAL ESTATE INVESTORS VI LLC, a
22  Washington limited liability company, 12TH
    AND PIKE ASSOCIATES LLC, a
23  Washington limited liability company,
    REDSIDE PARTNERS LLC, a Washington
24  limited liability company, OLIVE ST
25  APARTMENTS LLC, a Washington limited
    liability corporation, BERGMAN'S LOCK
26  AND KEY SERVICES LLC, a Washington

27

Case No. 2:20-cv-00983-TSZ

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**NOTE ON MOTION CALENDAR:
February 18, 2022**

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ)

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

1

limited liability company, on behalf of
themselves and others similarly situated,
SHUFFLE LLC d/b/a CURE COCKTAIL, a
Washington limited liability company, and
SWAY AND CAKE LLC, a Washington
limited liability company,

2

3

4

                         Plaintiffs,

5

6

     vs.

7

CITY OF SEATTLE,

8

                         Defendant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ)

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II. FACTS ...................................................................................................................... 2

   A.  The City Has Not Demonstrated That Any Class Member Was Unharmed ..................... 2

     1. The City cannot support its claim that if a class member supported CHOP, it was not injured by the City or disagrees with this litigation. .......................................................... 2

     2. The City cannot support its claim that some Class members were not harmed because of COVID. ......................................................................................................................... 4

     3. The City cannot support its claim that Class members outside the "red zone" or the barriers were not harmed. ................................................................................................. 5

     4.   The City cannot support its other claims of a lack of harm. ........................................... 6

     5. The City cannot support its allegations about other litigation and its tort-claims process. 7

   B.  The City's proffered self-justifications raise common issues. ............................................. 7

III.  ARGUMENT ......................................................................................................... 8

   A.  Pursuant to Rule 23(c)(4), the Court Should Analyze Whether Plaintiffs Satisfy Rule 23 As to the Issues Sought to Be Certified ...................................................................... 8

   B.  Plaintiffs Satisfy the Requirements of Rule 23(a). ...................................................... 8

     1.   Plaintiffs have demonstrated commonality. ......................................................... 8

     2.   Plaintiffs have demonstrated typicality. .............................................................. 13

     3.   Plaintiffs have demonstrated adequacy. .............................................................. 14

   C.  Plaintiffs Satisfy the Requirements of Rule 23(b) ...................................................... 16

     1.   Common issues predominate as to the issues sought to be certified. ............................ 16

     2.   A class action is the most efficient, and therefore superior, path forward. ................... 17

   D.  All Class Members Have Standing ....................................................................... 19

IV.  CONCLUSION ...................................................................................................... 20

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - i

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

# TABLE OF AUTHORITIES

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 617, 117 S.Ct. 223 (1997) ................................................................ 18

*Burton v. Nationstar Mortg., LLC,*
2014 WL 5035163 (E.D. Cal. Oct. 8, 2014) ........................................................... 14

*Cedar Point Nursery v. Hassid,*
__ U.S. __, 141 S. Ct. 2063, 2072-76 (2021) ......................................................... 9

*Cf. Probe v. State Teachers' Ret. Sys.,*
780 F.2d 776, 779–81 (9th Cir. 1986) ................................................................... 15

*Compare Castano v. Am. Tobacco Co.,*
84 F.3d 734, 745 n.21 (5th Cir. 1996) ................................................................... 16

*Cottrell v. Virginia Elec. & Power Co.,*
62 F.R.D. 516, 520 (E.D. Va. 1974) ...................................................................... 16

*Ferguson v. Randy's Trucking, Inc.,*
2106 WL 2082900, at *10 n.7 (E.D. Cal. Mar. 11, 2016) ...................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.,*
528 U.S. 167, 181–84, 120 S. Ct. 693 (2000) ........................................................ 20

*Hanon v. Dataproducts Corp.,*
976 F.2d 497, 508 (9th Cir. 1992) ......................................................................... 13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
299 F. Supp. 3d. 430, 464 (SDNY 2018) ............................................................... 16

*In re Online DVD-Rental Antitrust Litig.,*
779 F.3d 934, 942 (9th Cir. 2015) ......................................................................... 15

*In re: Lamictal Direct Purchaser Antitrust Litig.,*
957 F.3d 184, 194 (3d Cir. 2020) .......................................................................... 20

*Jimenez v. Allstate Ins. Co.,*
765 F.3d 1161, 1167-68 (9th Cir. 2014) ................................................................. 8

*Just Film, Inc. v. Buono,*
847 F.3d 1108, 1116 (9th Cir. 2017) ...................................................................... 13

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - ii

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

*Kamakahi v. Am. Soc. for Reproductive Medicine*,
   305 F.R.D. 164 (N.D. Cal. 2015) ................................................................ 8

*Martin v. Behr Dayton Thermal Prods. LLC*,
   896 F.3d 405, 412 (6th Cir. 2018) ............................................................. 16

*Martino v. McDonald's System, Inc.*,
   81 F.R.D. 81, 85-86 (N.D. Ill. 1979) ........................................................ 16

*Mayfield v. Dalton*,
   109 F.3d 1423, 1424 (9th Cir. 1997) .................................................... 15, 16

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581, 588-89 (9th Cir. 2012) ........................................................ 8

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215, 234 (2nd 2008) ................................................................. 19

*Motor Fuel Temperature Sales Pracs. Litig.*,
   292 F.R.D. 652, 674 (D. Kan. 2013) .......................................................... 8

*O'Neill v. Gourmet Sys. of Minnesota, Inc.*,
   219 F.R.D. 445, 453 (W.D. Wisc. 2002) ................................................... 14

*Pelman v. McDonald's Corp.*,
   272 F.R.D. 82, 96 (S.D.N.Y. 2010) ........................................................... 8

*Pimentel-Estrada v. Barr*,
   458 F. Supp. 3d 1226, 1240–42 (W.D. Wash. 2020) .................................. 20

*Portman v. County of Santa Clara*,
   995 F.2d 898, 904-07 (9th Cir. 1993) ....................................................... 11

*Real v. City of Long Beach*,
   852 F.3d 929, 934-35 (9th Cir. 2017) ....................................................... 20

*Ridge Line, Inc. v. U.S.*,
   346 F.3d 1346, 1355-56 (Fed. Cir 2003) .................................................... 9

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996, 1011 (9th Cir. 2018) .......................................................... 14

*Schumacher v. Inslee*,
   2021 WL 1019823, at *2-3 (W.D. Wash. Mar. 17, 2021) ........................... 16

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - iii

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

*Stickles v. Atria Senior Living,*
    2021 WL 6117702, at *9-*10 (N.D. Cal., Dec. 27, 2021) ......................... 8, 16

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149, 158, 134 S. Ct. 2334 (2014) ............................................. 19

*Tasion Comms., Inc. v. Ubiquiti Networks, Inc.,*
    308 F.R.D. 630, 640-42 (N.D. Cal. 2015) .............................................. 19

*Tonya K. v . Chicago Bd. of Ed.,*
    551 F. Supp. 1107, 1111 n.4 (N.D. Ill. 1982) ....................................... 16

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442, 459-50, 455-58, 136 S. Ct. 1036 (2016) ......................... 17

*Uzuegbunam v. Preczewski,*
    __ U.S. __, 141 S. Ct. 792, 800 (2021) ............................................. 10, 20

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227, 1234 (9th Cir. 1996) ..................................................... 8, 16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, 350-52 (2011) .............................................................. 12

*Wolin v. Jaguar Land Rover N. Am.,*
    LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) ........................................... 18

**RULES, STATUTES, OTHER**

RCW 9A.46.020 ...................................................................................... 12

SMC § 11.25 ........................................................................................... 11

SMC § 15.52 ........................................................................................... 11

Rule 23 ................................................................................................ 1, 8

Rule 23(a) .................................................................................................. 8

Rule 23(a)(4) ............................................................................................ 15

Rule 23(b) ................................................................................................ 16

Rule 23(b)(3) ............................................................................................ 16

Rule 23(c)(4) .......................................................................................... 1, 8

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - iv

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

# I.   INTRODUCTION

The City does not dispute most of the facts Plaintiffs set forth. It is unchallenged that the City encouraged, supported, and assisted the hostile takeover of an entire neighborhood in June 2020, resulting in violence, crime, vandalism, harassment, blocked streets and sidewalks, increased noise, and decreased business revenues. It is also undisputed this happened with the City's full knowledge. Unable to dispute any of this, the City instead makes hollow factual arguments about how Class members were supposedly unharmed, Opp.[1] at 2-8, and spurious legal arguments.

The City's brief has four themes: (1) some Class members were unharmed, (2) some Class members disagree with this lawsuit, (3) damages vary, and (4) Plaintiffs' proposal would leave unresolved issues for the second phase of trial. Two of these assertions are incorrect, and the other two do not defeat class certification. A close look at the City's evidence for the first two themes shows there is no evidence any Class member was unharmed, or that any Class member disagrees with the current lawsuit. Arguments the City bases on these factual assertions – as to typicality, adequacy, predominance, and standing – fail for that reason, in addition to other inadequacies.

As to variation in damages, Plaintiffs have not sought to certify the calculation of substantive damages. Therefore, under Rule 23(c)(4), which focuses on whether the Plaintiff has satisfied Rule 23 as to the specific issues to be certified, variation in damages is irrelevant. The City has tried to inject damages variation into elements such as commonality, but the common issues can and will be decided based on common legal argument and common evidence.

Finally, as to issues being left for a proposed second phase of this case, that is inherent to Plaintiffs' proposal. However, Plaintiffs' proposal is likely the only efficient means for resolving this litigation for the thousands of Class members the City harmed. Plaintiffs have constructed a logical series of steps for resolving common issues and avoiding the duplication and chaos of multiple lawsuits. The City opposes that proposal, but offers no alternative other than to simply throw caution to the wind and see what happens next. Plaintiffs' proposal is superior.

---

[1] "Opp." refers to the City's brief in opposition to class certification, Dkt. 74.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 1

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## II.      FACTS

**A.  The City Has Not Demonstrated That Any Class Member Was Unharmed**

Several of the City's arguments turn on its contention that some class members were not harmed by CHOP. Opp. at 4-6, 24, 33-35. But a close look at the City's "evidence" of this allegation shows the City is simply incorrect.

**1.    The City cannot support its claim that if a class member supported CHOP, it was not injured by the City or disagrees with this litigation.**

Most of the City's evidence is that some Class members who posted statements supporting Black Lives Matter ("BLM") and racial justice generally, may have participated in some of the CHOP activities. Opp. at 4-5, 25, 35 & nn. 5-8. As an initial matter, every one of the cited statements is inadmissible hearsay. But even if they were admissible, _not even one of these communications_ states the person writing it believes they were not injured in any way by the City's actions related to CHOP, or that they disagree with this lawsuit. *See* City Exs.[2] 22-24, 30-38, 41. One of the posts the City relies on is from Hunters Capital, City Ex. 36, who is a Plaintiff and does not feel it was unharmed or that this suit is contrary to its values. And other messages indicate that, despite supporting racial equity, the businesses had to shut their doors. City Ex. 33 (as of 6/16/2020: "we pressed pause on our social distance-sing karaoke contest for the past couple of weeks."); City Ex. 41 (as of 6/14/2020: "closed for … two days out of concern for the staff" and had lost sales). Support for BLM does not mean a person was unharmed by CHOP.

The claim that Sunset Electric Apartment residents supported CHOP because one of the tenants was a media organization that hosted a conversation there in late June 2020 (Opp. at 6; City Ex. 38) is another exaggeration. Not only does the cited evidence not support the City's claim, but in early July 2020, Sunset tenants stated that "this past month has been an ARDUOUS one for us … made all the more so by the feeling that our calls to the city for help were met with silence."

---

[2] "City Ex." refers to exhibits attached to the Dkt. 75, Declaration of Tyler Farmer in Support of City of Seattle's Opposition to Motion for Class Certification.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 2

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

Ptlfs. Ex. 38.[3] *See also* Pltfs. Ex. 39 (Sunset residents experienced "stress and trauma … over the past month"); Weaver Reply Decl. ¶ 5 (Sunset residents filed claims with the City over CHOP).

Other messages are by people not in the proposed Class (City Ex. 32), and almost without exception the messages the City relies on were sent during the first week of CHOP, before shootings, murders, and other violent crime skyrocketed. City Exs. 22-24, 30-36. *See also* Pltfs. Ex. 7 at p. 2 (violent incidents on June 20, 22, 26, 28, 29, and 30). There is no indication of how the authors felt later in June, much less how they feel now.

For example, the City relies on a June 17 email from a residential tenant who wrote Hunters Capital that they might have a different political stance from Hunters as to CHOP. Opp. at 25; City Ex. 23. However, those same tenants renewed their lease with Hunters in late June, Pltfs. Ex. 40, even after Hunters filed this lawsuit as lead plaintiff.

And while the City relies on a letter written in early June by Community Roots Housing, City Ex. 22, it fails to point out the same group wrote the following just days later:

> We are writing to convey our deep sorrow and dismay at the events in the CHOP area … and express our profound concern for the safety of our residents, business owners, nonprofits and students.
> …
> These residents have become victims of an occupation better characterized today by its violence, chaos, and killings than anything else. [I]t is time for the CHOP to come down.
>
> We are adamantly supportive of the Black Lives Matter movement and of all Black lives …. But forcing us to choose between anarchy and police brutality is a false dichotomy.

Pltfs. Ex. 41, at pp. 2, 3-4.

And another Class member explains:
> I support Black Lives Matter and I was a supporter in June 2020. …
> However, I am very upset that the City allowed and encouraged

---

[3] "Pltfs. Ex." refers to exhibits submitted by Plaintiffs in support of their motion for class certification and this brief, as attached to the Declaration of Tyler Weaver in Support of Plaintiffs' Motion for Class Certification ("Weaver Decl."), Dkt. No. 66, and the Declaration of Tyler Weaver in Support of Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification ("Weaver Reply Decl."), filed concurrently with this brief. Plaintiffs have numbered the exhibits sequentially, so that Pltfs. Ex. 1-37 refers to exhibits filed with the Weaver Decl., and Pltfs. Ex. 38-51 refer to exhibits filed with the Weaver Reply Decl.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 3

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

> CHOP to cause so much harm to [my business] and the rest of the neighborhood. I am also supportive of this lawsuit. These feelings about the City are not inconsistent with my support for the need for racial equity ….

Declaration of Peter Pak in Support of Reply Regarding Plaintiffs' Motion for Class Certification ("Pak Decl."), ¶ 6. *See also* Declaration of Rick Fox in Support of Reply Regarding Plaintiffs' Motion for Class Certification ("Fox Decl."), ¶¶ 4-9 (owner of Poquito's; supports BLM but also was damaged and supports this lawsuit).

Further, any message in June 2020 by a business expressing support for the protests must be viewed in context. Businesses in the Class were held hostage; a lack of sufficient support was often seen as a reason to retaliate. Pltfs. Ex. 42, 161:9-162:16 (Sheffer dep.) (describing the angry reaction to his speaking out and not making restaurant bathrooms available); Pak Decl., ¶ 4 ("I have been reluctant to make [my] damages known publicly, because I have been afraid that my business would be targeted for reprisals by people who were involved in CHOP.")[4]

### 2. The City cannot support its claim that some Class members were not harmed because of COVID.

The City also fails to demonstrate the COVID pandemic entirely negates damages for some Class members. A look at the City's "evidence" makes clear how far the City is reaching.

The City claims "it is a near certainty that [Class] members … left their homes … because of the COVID-19 pandemic …" Opp. at 5, 34. The City does not identify a single Class member. Instead, it relies on newspaper articles talking about a general phenomenon of people moving. City Exs. 25-27. If someone left before June 9, 2020, they would not be a member of the Class. And if a Class member left after June 9, 2020, that would affect the *amount* of their damage.

The City also claims, four different times, that the Unicorn Bar has no damages because it was closed until August 2020 due solely to COVID. Opp. at 3, 6, 24, 27. The evidence for this statement is a social media post that announces the bar's reopening but says nothing about whether

---

[4] The City also quotes a portion of a Mr. Biller's deposition in which he states that different people might have had different experiences. Opp. at 5; City Ex. 28. But as that quote makes clear, Mr. Biller was speculating, and in any event, Plaintiffs are not seeking to certify the amount of damages any person had.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 4

it was damaged by CHOP or the City. City Ex. 10. In fact, the Unicorn Bar had built outdoor seating to use in June 2020 but could not because "they were at the front door of the corner of 12[th] and Pike, which is where literally guards were standing to protect and enforce … CHOP," and that 9-1-1 calls made in June 2020 about conditions at the bar had gone without a police response. Pltfs. Ex. 43, 22:9-:14, 23:1--26:22 (Augustine dep.). The City's claims about Unicorn Bar are baseless.

The City also remarkably claims that the Riveter was forced to terminate its lease prior to June 2020. Opp. at 3. We know that it did not, however, because Mayor Durkan (a former Riveter investor) tried to spin a deal in June 2020 that would have had the City assume the lease and donate it to BLM. Mtn. at 9; Pltfs.' Ex. 25. And the City's "evidence" shows the Riveter was not seeking to terminate the lease but rather renegotiate terms, and that when it attempted to reopen in June 2020, CHOP rendered its space inaccessible and unsafe. City Ex. 14, 101:2-:20; City Ex. 15.

Finally, the City claims, solely on the basis of a social media post about its reopening, that the Rock Box was unaffected by CHOP and closed solely due to COVID. Opp. at 3; City Ex. 13. However, the post makes no such statement, and the City submitted another Rock Box post indicating it was open in early June 2020 before it had to close, City Ex. 33, presumably because CHOP made it unsafe to do so in its location adjacent to Cal Anderson Park.

### 3. The City cannot support its claim that Class members outside the "red zone" or the barriers were not harmed.

To the extent the City claims that Plaintiffs or Class members outside of the "red zones" created by the police and fire departments were unaffected by those zones (Opp. at 7-8 & Appx. A, B), it is again incorrect. As explained in Plaintiffs' motion, the SFD's modified response area was always precisely contiguous with the Class Area. Mtn. at 6-7 & n. 4. *See also* City Ex. 45, p. 11. Further, the "red zones" were clearly closed to police and fire, but even outside those areas, it was consistent with those policies to not provide services due to CHOP. Mtn. at 6, 7; Pltfs. Exs. 8 (at 69:3-70:4), 15, 19. *See also* Pltfs. Ex. 44, 43:20-45:19, 46:10-47:12 (Mahaffey dep.). Indeed, in June 2020, for all of Capitol Hill, the SPD required four officers before it would respond to calls that usually require one officer. Pltfs. Ex. 44, 12:10-:15, 36:22-38:11 (Mahaffey dep.). And the

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 5

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

City has admitted the response was "modified" throughout the entire Class Area. Pltfs. Ex. 7, p. 2.

Similar problems undermine the City's suggestion that Class members on the outside of the barriers that blocked roads and sidewalks were not harmed or affected by them. Opp. at 9, Appxs. C & D. Businesses "outside" barriers that blocked Twelfth Avenue, for example, have testified that the barriers directly impacted foot traffic as well as the ability (and desire) for customers to drive to their businesses, in addition to other problems. Pltfs. Ex. 45, 129:25-130:2, 170:23-172:6 (McDermott dep.); Pltfs. Ex. 46, 78:7-:20, 80:2-80:23 (Thompson dep.). And the barriers were also not stationary – they were regularly moved and enhanced (Opp. at 8), making the City's barrier "maps" in its Appxs. C & D completely inadequate. Further, the City also created its own "local access" area outside the barriers, complete with additional stop signs, speed bumps, and use of map services to keep people out of the area. Mtn. at 5. And the City admitted that it modified pedestrian and automobile flow throughout the entire Class Area. Pltfs. Ex. 7, p. 2.[5]

### 4. The City cannot support its other claims of a lack of harm.

The City claims Rancho Bravo Tacos could not have been harmed because it had an uptick in sales in June 2020 (Opp. at 6; City Ex. 39), but the true question is whether there would have been ***more*** of an uptick without CHOP. And the City ignores Rancho Bravo's other harm, such as (a) involuntarily having the CHOP "medic" station on its dining patio, and (b) having a homicide victim shot in its parking lot. Pltfs. Ex. 47, 10:15-11:2 (Scoggins dep.), Pltfs. Ex. 48, p. 3.

Similarly, the City's use of a Richmark Label email about positive June 2020 numbers (Opp. at 6; City Ex. 40) ignores that (a) Richmark's revenue in one month is based on deals from *prior* months, and (b) Richmark's damages here arise primarily from the fact that its prized mural was extensively tagged with graffiti during CHOP and its employees had to constantly deal with street blockages. *Id.*, Pltfs. Ex. 49 (Donner dep.), 148:1-151:12, 178:12-180:8, 185:17-188:2. And the City's argument that if a Richmark tenant did not seek rent concession, it could not have been harmed (Opp. at 4), is illogical. If a tenant did not seek rent concessions, that does not prove it was

---

[5] The City also claims that it is "simply false" that City garbage and utility services were curtailed throughout the Class Area. Opp. at 8. Plaintiffs refer the Court to their opening brief on this point. Mtn. at 14; Ex. 7, p. 2.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 6

not harmed by CHOP; it only proves it did not seek rent concessions.

### 5. The City cannot support its allegations about other litigation and its tort-claims process.

The City claims the Class should not be certified because there are 85 related tort claims that have been filed with the City, and that there are "over 50" pieces of related litigation. Opp. at 6, 30. But City has not submitted a single tort claim or complaint to support its assertion.

Plaintiffs' review of City Ex. 42 (a spreadsheet providing minimal details about claims) shows the City's assertions are misleading. It appears there is not even ***one*** other lawsuit that has been filed by a member of the proposed Class against the City over CHOP. Weaver Reply Decl., ¶ 3. The City's listed lawsuits are not related to CHOP or are not brought by Class members. *Id.*

Second, the overwhelming majority of the listed tort claims have nothing to do with the Class or the claims in this lawsuit. Weaver Reply Decl., ¶ 4. Only nine entities who filed tort claims with the City appear to be Class members other than claims Plaintiffs themselves filed. *Id.* If any of them have waived their claims as a result of that process, the City has not produced any evidence of that, and at most it would mean they would not be able to recover as a Class member. The fact that a Class member filed a claim does not mean they are at odds with this lawsuit; at most, it means they filed a claim. And at least some of those who filed claims were offended by the City's position in its brief. Pak Decl., ¶¶ 8, 9; Fox Decl., ¶¶ 7, 9.

### B. The City's proffered self-justifications raise common issues.

The City attempts to justify its exit from the East Precinct and subsequent facilitation of CHOP, Opp. at 9-14, but this simply shows how the City plans to use evidence that is common to all Class members to defend itself. The City's justification is based on evidence about the East Precinct and what it says it did to try to calm an "unprecedented" situation of its own making. *Id.* The nature of the City's defense itself creates common issues based on common evidence.[6]

---

[6] The City also contends it did not foresee CHOP. But Plaintiffs' foreseeability evidence goes to the foreseeability of harm once the City knew CHOP had been created. Mtn. at 9-12. The City has notably not rebutted that showing.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 7

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

## III.   ARGUMENT

### A.  Pursuant to Rule 23(c)(4), the Court Should Analyze Whether Plaintiffs Satisfy Rule 23 <u>As to the Issues Sought to Be Certified</u>

Under Rule 23(c)(4), a court's analysis is limited to whether a plaintiff has satisfied Rule 23 as to the issues to be certified. Mtn. at 15. *See also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (Rule 23(c)(4) certification of issues is proper "[e]ven if the common issues do not predominate over the individual questions [as to the entire action]"); *In re Motor Fuel Temperature Sales Pracs. Litig*., 292 F.R.D. 652, 674 (D. Kan. 2013) (under Rule 23(c)(4), "the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues"); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 96 (S.D.N.Y. 2010) (same).

While the City recognizes that the proper focus is on the issues sought to be certified, Opp. at 26, the City's arguments ignore that lens of analysis. The City, unable to dispute Plaintiffs' argument as to the issues to be certified, instead repeatedly tries to distract the Court by focusing on variations among the damages of Plaintiffs and Class members. But Plaintiffs are not seeking to certify damage calculations, so the City's arguments about variations in harm are irrelevant. *See, e.g., Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-68 (9th Cir. 2014) (affirming certification where trial court certified common liability questions and left for a damages proceeding questions of individualized damages); *Stickles v. Atria Senior Living,* 2021 WL 6117702, at *9-*10 (N.D. Cal., Dec. 27, 2021) (variation in class members' experiences and damages does not defeat issue certification); *Kamakahi v. Am. Soc. for Reproductive Medicine*, 305 F.R.D. 164 (N.D. Cal. 2015) (certifying common issues of liability, reserving damages issues).

### B.  Plaintiffs Satisfy the Requirements of Rule 23(a).

#### 1.  Plaintiffs have demonstrated commonality.

A plaintiff demonstrates commonality if it can show a single issue that, in one stroke, could resolve a claim shared by named Plaintiffs and the Class members. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588-89 (9th Cir. 2012). Here there are numerous common issues that, if decided for the City, would resolve the claims of Plaintiffs and all Class members at the same time.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 8

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

1    _Substantive Due Process_. Plaintiffs demonstrated the key pillars of liability on this claim

2    can be decided on a class-wide basis, using common proof of the City's action and inaction. Mtn.

3    at 18-19. The common questions are (1) whether the City took affirmative actions that created or

4    exposed Plaintiffs to a danger that they would not have otherwise faced, (2) whether the kinds of

5    injuries alleged were "foreseeable," (3) whether the City was "deliberately indifferent to the known

6    danger," (4) whether the City's actions were pursuant to municipal policy, and (5) whether Class

7    members are entitled to nominal damages. _Id._ and Pltfs. Ex. 1.

8    The City has not demonstrated these issues require individualized evidence. Instead, the

9    City argues (1) its actions were justified because of the "unprecedented, dynamic, unfolding set of

10   circumstances" it faced, (2) some Class members may have already been closed due to COVID

11   and therefore not significantly harmed by CHOP, and (3) not every Class member suffered the

12   same harm. Opp. at 21-22. The first of these points is subject to common evidence. _See_ § II.B,

13   _infra_. The City's second and third points go directly to damages, which Plaintiffs do not seek to

14   certify. _See also_ § II.A, _infra_ (no evidence that Class members were unharmed).

15   _Takings_. Plaintiffs seek to certify questions about an alleged _per se_ taking pursuant to

16   _Cedar Point Nursery v. Hassid_, __ U.S. __, 141 S. Ct. 2063, 2072-76 (2021). A _per se_ takings

17   claim arises when the government adopts a policy that allows third parties a right to enter upon or

18   damage private property. In _Cedar Point_ itself, the question was whether a regulation that granted

19   union organizers the right to enter upon private farmland constituted a _per se_ taking. _Id._ at 2069-

20   70. The Court concluded that the regulation, simply by "grant[ing] entitlement to physically invade

21   the growers' land," without more, constituted a _per se_ taking entitling the landowners to

22   compensation. _Id._ at 2080. In other words, it was the government's policy alone, and not any actual

23   entry onto private property, that constituted the taking. Plaintiffs have a parallel contention here –

24   that the City's actions allowed and encouraged invasion, impairment, and destruction of Class

25   members' property rights.[7]

26

27   _____

[7] The City also argues the City will be involved in any taking. But the City is liable for any foreseeable physical invasion by others. _E.g._, _Ridge Line, Inc. v. U.S._, 346 F.3d 1346, 1355-56 (Fed. Cir 2003).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 9

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

Plaintiffs therefore seek to certify liability questions related to this alleged *per se* taking, which are common to the Subclasses. The City undoubtedly disputes Plaintiffs' theory of its claim, and its interpretation of the law, but Plaintiffs' argument and the City's dispute of it, raise common issues. The same is true of the other questions Plaintiffs seek to certify as to the takings claim (whether the City was justified, whether the taking was pursuant to municipal policy, and whether Subclass members are entitled to nominal damages).

Most of the City's arguments about this claim go to the *amount* of just compensation, as opposed to whether any Class member can establish a *per se* taking. Opp. at 16-17.  Whether a driveway was blocked, the amount of graffiti or number of broken windows, etc. – these will vary but Plaintiffs are not seeking to certify the amount of damages suffered, and the variations do not mean that the questions of liability are not common to the Subclasses.  Instead, Plaintiffs seek to certify only the question of entitlement to nominal damages. And nominal damages do not require any person to demonstrate an entitlement to compensatory damages. "Nominal damages … are … the damages awarded by default until the plaintiff establishes entitlement to some other form of damages….." *Uzuegbunam v. Preczewski*, __ U.S. __, 141 S. Ct. 792, 800 (2021). And that is precisely what Plaintiffs propose that nominal damages be awarded as a default in phase one of their trial plan, followed by any larger damages claims in phase two.

The City additionally argues that takings law may look at property owners, tenants, and businesses different from each other. Opp. at 17. Plaintiffs do not dispute that possibility, and that is precisely why they have proposed Subclasses.[8]

*Procedural Due Process*. On the procedural-due-process claim, Plaintiffs identified several issues, two of which are pure legal issues. Pltfs. Ex. 1 (the nature and extension of constitutional rights). The City cannot seriously contend these are not common issues. Plaintiffs also seek to certify the question of whether the City's facilitation of CHOP acted to deprive Subclass members of those rights. Plaintiffs have also requested certification of the question of whether the City's

---

[8] The City also suggests some Subclass members might have contracted away their right to sue the City for a taking, or some other right, Opp. at 17, but that is implausible and unsupported speculation.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 10

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

actions were undertaken without due process and pursuant to City policy, and whether any deprivation was justified. *Id.* The legal argument and evidence relevant to those questions will be common because it will all focus on what the City did not only with CHOP but also with any due process. The evidence Plaintiffs will use is set forth in their opening brief. Mtn. at 2-9.

The City's argument again goes not to the issues Plaintiffs seek to certify, but instead to how there may be variation in the *amount* of deprivation each Subclass member suffered. Opp. at 20-21. There will be some variation, but that does not mean that there is no commonality as to the liability issues that must be decided before the amount of deprivation becomes ripe for determination under the proposed second phase.

Defendants cite one case for their argument, but it does not demonstrate that the proposed legal issues are not common. Instead, it demonstrates procedural-due-process claims necessarily involve litigation about the scope of any protected right, which is part of what Plaintiffs seek to certify. *Portman v. County of Santa Clara*, 995 F.2d 898, 904-07 (9th Cir. 1993).

*Negligence*. As the City acknowledges, Plaintiffs' negligence claim turns in large part on whether the City had an affirmative duty to act pursuant to a particular statute or ordinance. Opp. at 18. That issue, and the question of whether the City acted as it was required to do under any such ordinance, are the common questions that Plaintiffs seek to certify.

Plaintiffs preliminarily identified in discovery three ordinances they believe give rise to such an affirmative duty. City Ex. 82 (answer to Rog. No. 3). Those are Seattle Municipal Code ("SMC") § 10.02, which governs civil emergency orders, SMC § 11.25, which requires the City to regulate large protests so that they do not pose unreasonable safety hazards, and SMC § 15.52, which requires the City deny special-event permits for events that create unreasonable disruption of traffic, danger to health or safety, risk of injury, or risk of damage to property. *Id.* Plaintiffs have since become aware of additional similar statutes, such as that the City's fire code requires roads to be opened for fire access. Pltfs. Ex. 47, 185:17-:20 (Scoggins dep.).[9]

---

[9]   Fire Chief Scoggins discussed this and other requirements with occupiers on June 13, 2020. https://www.youtube.com/watch?v=8fGzRtX9ujY at 15:40-17:45, 34:30-36:06 (visited 02/14/2022). *See also*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 11

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

The City likely disputes that these laws create affirmative duties, or that the City breached those duties. However, those issues are common to all Class members and will be decided based on common legal argument and evidence. Unable to dispute this, the City focuses on a statute Plaintiffs have never claimed gives rise to a duty, RCW 9A.46.020.[10] Plaintiffs seek only to certify common questions about (a) the existence of a duty, (b) whether that duty was breached, and (c) whether acts of third parties were unforeseeable. These will be answered in one fell swoop for all Class members and are therefore common.

*Nuisance*. The City's argument about the nuisance claim also fails to show that resolution of the common questions will require individual inquiry. As Plaintiffs previously explained, Mtn. at 21, this claim will turn on whether the City's actions endangered Class members' comfort or safety, rendered Class members insecure in the use of property, or obstructed or rendered dangerous any park or public-right of way. The answers to each of these questions (and whether the City's actions were reasonable) will be determined on the basis of common evidence.

Answering those questions will not require, as the City claims, inquiry into how much a particular plaintiff was *exposed* to the nuisance created by the City's actions. Opp. at 21. That is necessarily a question of damages reserved for Class members under the second phase of Plaintiffs' trial plan. And it is one that of course will not need to be resolved if the City prevails.[11]

*Deletion of texts*. Plaintiffs pointed out in their motion that the factual scenario surrounding the deletion of key custodians' texts, and whether any sanction for the missing texts would be appropriate in this case, are issues that are common to each Class member's claims and which will almost certainly come up in any individual cases brought by Class members. The City's only direct

---

Pltfs. Ex. 47, 176:17-179:16 (Scoggins dep.). In the discussion, he listed the violations and made it clear that CHOP was the **only** gathering in the City that was not required to follow permitting requirements.

[10] Plaintiffs identified RCW 9A.46.020 – and numerous other laws – in response to an interrogatory seeking identification of statutes or ordinances that Plaintiffs contend the City did not *enforce*. City Ex. 82 (Rog. No. 4). This is different from Plaintiffs' answer about what laws gave rise to an affirmative duty. *Id.* (Rog. No. 3).

[11] The City's citation to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-52 (2011) is inapposite. The plaintiffs there were seeking to certify a nationwide class of employees, even though the defendants' state of mind in individual circumstances was relevant to whether the statue was violated and what the appropriate remedy was. *Id.* In contrast here, Plaintiffs are clear about what they allege the City did and how it violated state nuisance law, the state of mind is not relevant, and the evidence will be the same for all Class members.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 12

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

response is that this is a "discovery dispute" that it is irrelevant to any business that closed prior to CHOP due to COVID. Opp. at 22. Neither assertion is true, and it is in the City's interests to certify this issue rather than to have multiple lawsuits this highly public issue that has cost the City an enormous sum to address. *Cf.* Pltfs. Ex. 50 (FRCP 26 (a)(2)(B) Expert Report of Kevin T. Faulkner dated February 11, 2022).

The City's only other response is to make broad, unfounded allegations against certain Plaintiffs regarding their texts. *Id.* This has nothing to do with the commonality of the issues.[12]

### 2.  Plaintiffs have demonstrated typicality.

Typicality exists where plaintiffs and class members "have the same or a similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). The focus is on "the nature of the claim…, not the specific facts from which it arose or the relief sought." *Id.* And "the requirement is permissive, such that representative claims are 'typical' if they are reasonably coextensive …, they need not be … identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017).

All Plaintiffs, by virtue of having been in the Class Area on the same date as every other Class member, have the same or similar claims against the City as every Class member, arising out the same facts concerning the City's action and inaction. All Plaintiffs and every Class member have the same claims and therefore they all must reach the identified common issues.

The City cannot dispute that, so it instead claims, again, some class members were not harmed, or that variations in damages can defeat typicality. Opp. at 22-23. But as Plaintiffs addressed above, in § II.A, *infra*, there is no support for the contention that any Class member was unharmed. Indeed, the City has ***admitted*** that in the Class Area in June 2020, it took numerous actions to "facilitate" CHOP that directly impacted Class members. Pltfs. Ex. 7, pp. 2-3. There might be variations in how Class members felt the impacts, but that does not mean that there were

---

[12] To the extent the Court wants more information about this issue at this stage, Plaintiffs refer the Court to the Weaver Reply Decl., ¶¶ 7-10.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 13

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

no impacts. *See also* § III.D, *supra* (regarding the City's arguments about standing).[13]

And those variations in harm do not defeat typicality, either. Plaintiffs are not seeking to certify damages issues, thereby making those variations irrelevant, but even when a plaintiff seeks to certify full damages, variations cannot and do not, on their own, defeat class certification. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1011 (9th Cir. 2018) ("if there is variation in the amount of each class members' damages, this is an insufficient basis by itself to deny certification").[14]

The City contends that the fact there may be some variation in opinions about this litigation defeats typicality. Opp. at 24. But there is no evidence of any material difference, *see* II.A.1, *infra*, and even if there was, that difference of opinion does not bear on the substance of any claim, which is what the typicality standard is concerned with. *See also* § III.B.3, *supra* (discussing adequacy).

### 3. Plaintiffs have demonstrated adequacy.

The City's only argument regarding adequacy is that there is a disqualifying rift between Plaintiffs and some Class members this lawsuit. Opp. at 24-26. The City is wrong.

First, as to the factual basis for the City's argument, as Plaintiffs have already discussed in § II.A.1, *infra*, the City has failed to demonstrate that even a single Class member disagrees with this lawsuit or thinks the City is blameless. At most, the City has shown that some Class members have spoken out in favor of racial equity, but that does not mean that they cannot support this case. To the extent that there is evidence, it is that Class members find no conflict between supporting race equity and supporting efforts to hold the City accountable. *Id.* And that aligns with Plaintiffs, who have made it clear from day one, page one of this lawsuit that:

---

[13] The City's cases are all distinguishable because they addressed class definition clearly including unharmed class members. *Ferguson v. Randy's Trucking, Inc.*, 2106 WL 2082900, at *10 n.7 (E.D. Cal. Mar. 11, 2016) (proposed definition in case seeking overtime pay included workers who never worked overtime); *Burton v. Nationstar Mortg., LLC*, 2014 WL 5035163 (E.D. Cal. Oct. 8, 2014) (no class because plaintiff was the only person who had been harmed by challenged practice); *O'Neill v. Gourmet Sys. of Minnesota, Inc.*, 219 F.R.D. 445, 453 (W.D. Wisc. 2002) (challenge to rule as applied to individuals without ID brought on behalf of class inclusive of individuals with ID).

[14] The City claims that the fact that Plaintiff Hunters Capital's claims are based on both buildings inside and outside the Class Area somehow affects Hunters' typicality. Opp. at 24. But Hunters Capital will have to prevail on the same issues as all Class members both inside and outside the Class Area, regardless of a particular building's location. The claims are identical for Hunters and the Class for Hunters buildings inside the Class Area, and highly similar but maybe not identical for buildings outside the Class area. That is all typicality requires.

---

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 14

> Plaintiffs support free-speech rights and support the efforts of those like Black Lives Matter who, by exercising such rights, are bringing issues such as systemic racism and unfair violence against African Americans by police to the forefront of the national consciousness. Specifically, Plaintiffs support the free speech rights of many of those who have gathered on Capitol Hill to form ["CHOP"]. ….

Dkt. No. 1, ¶ 1. There is no disagreement.

Yet even if there was, the City is wrong about the law. "Only conflicts … fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015). A conflict is fundamental only if it "goes to the specific issues in controversy," and it is error to find no adequacy exists because of a "speculative conflict[]." *Id.*

Thus, for the City's alleged "conflict" to have any impact on adequacy, it would have to bear on the questions Plaintiffs seek to certify. It doesn't. None of the claims in this case will turn on whether a particular plaintiff supports BLM, or whether a particular person was moved by CHOP's ideals. A ruling in Plaintiffs' favor will not result in a decision that racial equity is not a valid goal, so there is no conflict. At most the City suggests *some* Class members *might* ultimately not pursue damages in this lawsuit. But that is a speculative conflict that does not go to any substantive issue, and therefore it does not defeat adequacy. *Cf. Probe v. State Teachers' Ret. Sys.,* 780 F.2d 776, 779–81 (9th Cir. 1986) ("the fact that there may be some who would prefer that [an annuity retirement plan] remain in operation" is not an intraclass conflict).

The City's cases support Plaintiffs. In *Mayfield v. Dalton*, 109 F.3d 1423, 1424 (9th Cir. 1997), the plaintiffs sought to invalidate a requirement that members of the armed forces submit samples of their DNA because it violated their rights to privacy, and to do it on behalf of a class. The Ninth Circuit concluded that because there were class members who did not oppose the requirement, the plaintiffs were inadequate. *Id.* at 1427. However, the court distinguished cases, like this one, where at most it might be the case "some class members might prefer to leave

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 15

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

violation of their rights unremedied." *Id.*[15] Unlike in *Mayfield*, Plaintiffs are not seeking to negate a policy that some Class members might believe to be beneficial; instead, Plaintiffs seek damages for a policy that has already ceased. If a person does not want those damages,[16] that does not defeat certification; that person can either opt out or just not pursue damages.[17]

### C. Plaintiffs Satisfy the Requirements of Rule 23(b)

#### 1. Common issues predominate as to the issues sought to be certified.

Plaintiffs and the City agree that when considering the issue of predominance under Rule 23(b)(3), the Court's focus is on whether common issues predominate as to the issues to be certified, as opposed to the entire action. Opp. at 26. *See also Valentino*, 97 F.3d at 1234; *Stickles*, 2021 WL 6117702 at *7 ("issue certification requires that common questions predominate over individual questions with respect to only the specific issue that is certified").[18]

As Plaintiffs have demonstrated, Mtn. at 17-21 and § III.B.2, *infra*, resolution of the common issues will not require inquiry into individual circumstances. Instead, they are all questions that will be answered with common evidence. So, by simple logic, common issues predominate over individual issues as to those issues. The City's only rebuttal to this point is to say that is "untrue" and "not so," without offering any support. Opp. at 26-27.

---

[15] The court cited three examples of a situation where differing views did not defeat adequacy, and all of them are parallel to the sort of "conflict" claimed by the City in this case. *See Tonya K. v . Chicago Bd. of Ed.*, 551 F. Supp. 1107, 1111 n.4 (N.D. Ill. 1982) (guardians of named plaintiff in case regarding process of placement of disabled children indicated they were pleased with placement; difference did not defeat certification); *Martino v. McDonald's System, Inc.*, 81 F.R.D. 81, 85-86 (N.D. Ill. 1979) (certification of antitrust action brought by franchisees not defeated by evidence that some franchisees were happy with their arrangement); *Cottrell v. Virginia Elec. & Power Co.*, 62 F.R.D. 516, 520 (E.D. Va. 1974) (certification of case seeking to establish right to be heard before termination of electric services not defeated by evidence that some class members might not want to press claims).

[16] The City's relies on the fact that one Class member, Poquito's, submitted a claim for limited damages. But the owner of Poquito's made clear that was a fraction of its actual damages, he supports this suit, and he does not believe he released any claims. Fox Decl., ¶ 7-8. But even if Poquito's released, they would simply not be part of the Class.

[17] The City's other case on this point is similarly inapposite. In *Schumacher v. Inslee*, 2021 WL 1019823, at *2-3 (W.D. Wash. Mar. 17, 2021), the plaintiffs sought on behalf of a class to stop a union from collecting dues, but there was extensive evidence that many class members supported the union and dues collection. Accordingly, because the two views necessarily conflicted as to whether the union should collect dues, the plaintiffs were inadequate. *Id.*

[18] The City cites to *In re LIBOR-Based Fin. Instruments Antitrust Litig*., 299 F. Supp. 3d. 430, 464 (SDNY 2018), but even in that case the court expressly considered issue certification where it had been requested. And the case cited in *LIBOR* court is an outlier case that contradicts the Ninth Circuit. *Compare Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) *with Valentino*, 97 F.3d at 1234. *See Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 412 (6th Cir. 2018) ("*Castano*'s issue-class footnote has not been adopted by any other circuit.")

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 16

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

Instead, the City erroneously claims that some of the evidence which might be used in the case could not be used by all Class members, and that this defeats predominance. The argument is dubiously based on *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459-50, 455-58, 136 S. Ct. 1036 (2016), in which the court considered whether it was appropriate to use a representative sample to prove classwide liability for unpaid overtime, at a trial that awarded classwide damages. It has no application to a consideration of predominance as to an issue-based class where nobody is proposing to prove liability or damages using a representative sample.

But even if did, the City's argument would still be baseless. The City claims no Class member could use evidence of what happened <u>outside</u> of the Class Area to support claims of what was happening <u>inside</u> the Class Area. The argument is nonsensical. Aside from the fact that the amount of graffiti on a building is not relevant to the common questions, evidence of impacts outside the Class Area can be used to show that what happened inside the Class Area was not an isolated or unforeseeable incident caused by other factors.[19]

### 2.   A class action is the most efficient, and therefore superior, path forward.

The City's arguments regarding superiority boil down to the following: (1) some Class members would have sufficient incentive and ability to bring their own actions, (2) there would be "too many" issues left for the second phase in this case, and (3) there is allegedly some related litigation already pending. Opp. at 28-32. None of these arguments carries the day.

As to the City's first argument, there are some Class members who may have sufficiently large claims to warrant an individual action. However, as the City has stated at length in its brief, many Class members have small damages claims. Plaintiff Wade Biller's claims, for example, consist of nominal damages plus a few deductibles he paid for medical procedures related to CHOP, Pltfs. Ex. 51, 132:10-:14 (Biller dep.), and the City disputes even that. Opp. at 5, n. 6. Claims of Class members such as Mr. Biller will not be brought individually.

---

[19] The City also makes another argument based on its thin evidence about the Unicorn Bar's supposed lack of CHOP-related damages. Opp. at 27. That argument is baseless, as already discussed at § II.A.1, *infra*.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 17

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

And even in the chart of possible Plaintiff damages the City has created,[20] half of the Plaintiffs are well under $100,000, and the City hotly disputes those amounts are hotly disputed. It is at a minimum questionable that a claim of that size would warrant an individual lawsuit, especially considering the discovery demands the City has made. Weaver Reply Decl., ¶ 6.

A primary reason that the class-action mechanism exists is to allow for vindication of the rights not only the most powerful among us, who are likely to have the largest damages and the resources required to litigate, but also "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 223 (1997). *See also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery … would be dwarfed by the cost of litigating on an individual basis, this … weighs in favor of class certification.") There are undoubtedly many class members who lived in the area but who have small damages, or who remain afraid of reprisals, whose interests will not be represented in this case absent certification.

But there may well be individual cases filed if certification is denied, which raises the question of how to best manage the litigation. Plaintiffs' proposed certification has core, material, common issues decided in a single proceeding that will resolve with finality failed claims and provide a structured process for addressing any successful claims. Plaintiffs' proposal is an orderly process: (1) the parties complete discovery on common issues; (2) there is summary judgment on the common questions; (3) there is a trial at which one of the two outcomes is true for any claim: (a) the City prevails on common issues, and the outcome is binding on all Class members who have not opted out, or (b) Plaintiffs prevail on common issues and provide a bellwether of possible damages awards; and (4) for any claims Plaintiffs prevail on, there are additional proceedings on damages informed by the initial trial. The City, in contrast, offers only chaos. The City's approach would lead to multiplication of lawsuits with different counsel and schedules, duplicative discovery, unnecessary costs, and no way to bind other plaintiffs.

---

[20] As the City admits, its table does not reflect several reduced estimates of damages. Opp. at 29 n.21.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 18

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

The City points out that under Plaintiffs' proposal, after the initial trial, there will be additional individual issues to be resolved.[21] That is not true for any claim the City prevails on, but it is correct there will be individual issues to be addressed for any claim on which Plaintiffs prevail. But what the City fails to even acknowledge is that after the common-issues trial, the parties and the Court will have an immense amount of information at their disposal to help them mold the second phase, including whether certification of group treatment of certain damages claims is appropriate. And parameters will have been created for settlement discussions.

The City claims its chaos has already commenced because there are "85 claimants" with related claims, "[a]nd over 50 of those claims are being prosecuted as individual tort actions." Opp. at 30 & City Ex. 42. This is a gross mischaracterization of the facts. *See* § II.A.5, *infra*.

### D. All Class Members Have Standing

The City's final argument against certification is that not all Class members have Article III standing. Opp. at 33-35. This argument is incorrect. The standing argument rests again on the City's contention that some Class members were not harmed by the City's actions. Plaintiffs have demonstrated the shortcomings of the City's "evidence" in § II.A, *infra*.[22] But even if the City could show a Class member could not prove financial damages, or that a Class member thought the City had done a great job, that would not mean the Class member does not have an injury in fact. The injury-in-fact requirement exists to ensure that a "plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334 (2014) (citation omitted). This is not an onerous requirement, nor does it require proof of actual harm. A plaintiff has an injury in fact sufficient to challenge a business regulation as applied

---

[21] The cases the City uses to argue against superiority due to remaining issues, Opp. at 32, are easily distinguished because of the liability issues that would be left open under the proposals in those cases. *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2nd 2008) (key elements of plaintiffs' liability case – fact of injury and reliance could not be litigated commonly); *Tasion Comms., Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 640-42 (N.D. Cal. 2015) (only one issue bearing on liability could be resolved commonly, leaving numerous liability issues undecided, and there were serious adequacy issues)

[22] The City has two new categories of possibly "unharmed" class members in this section of its brief: people who have business licenses in the Class Area but no actual business in the Class Area, and property owners who had signed an agreement but not yet closed on a purchase as of June 9, 2020. Opp. at 34. Aside from there being no evidence any such person exists, neither person would be a Class member under the proposed definitions, which make it clear that the licensed business must be in the Class Area, and that property owners had to own property on June 9, 2020.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 19

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278

to him even if he has not actually been directly affected by the regulation, *Real v. City of Long Beach*, 852 F.3d 929, 934-35 (9th Cir. 2017); a plaintiff has standing to challenge noncompliance with an environmental permit simply because she would like to eventually use an area affected by the noncompliance, *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 181–84, 120 S. Ct. 693 (2000); and a plaintiff has standing to sue over a jail's COVID protocols even though his risk of infection is purely hypothetical, *Pimentel-Estrada v. Barr*, 458 F. Supp. 3d 1226, 1240–42 (W.D. Wash. 2020). Indeed, if a plaintiff has been subject to a government policy, but can only prove nominal damages, he has an injury in fact. *Uzuegbunam*, 141 S. Ct. at 801-02.

The Class members have all suffered a direct and definite injury in fact. Each of them resided, owned or managed property, or had a business in an area that the City has admitted was affected by its actions that facilitated CHOP, such as rerouting traffic, allowing streets to be blocked and parks to be occupied, modifying police and fire response protocols, and modifying the delivery of City services. Pltfs. Ex. 7, p. 2. The City has documented many of the impacts of its acts, *id.* at pp. 2-3, and Plaintiffs have submitted extensive evidence of their own. Mtn. at 9-12. A variation in damages does not mean that Class members do not have standing.[23]

## IV.   CONCLUSION

Plaintiffs respectfully ask the Court to certify the Class and Subclasses pursuant to Rule 23(c)(4).

///

///

---

[23] The City has cited only one case to support the substance of its argument, and that case does not even deal with Article III standing. Opp. at 34. The issue in *In re: Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 194 (3d Cir. 2020) was the difference between antitrust injury and antitrust damages, and how those apply to certification of antitrust claims. That case does not discuss Article III standing in any fashion, and this case does not involve antitrust violations, so *Lamictal* has no application here.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 20

DATED this 18th day of February, 2022.

**CALFO EAKES LLP**

By: */s/ Tyler S. Weaver*
     Patricia A. Eakes, WSBA #18888
     Angelo J. Calfo, WSBA #27079
     Tyler S. Weaver, WSBA #29413
     Gabe Reilly-Bates, WSBA #52257
     Andrew DeCarlow, WSBA #54471
     Henry Phillips, WSBA #55152
     1301 Second Avenue, Suite 2800
     Seattle, WA 98101
     Phone:  (206) 407-2200
     Fax:  (206) 407-2278
     Email:  pattye@calfoeakes.com
            angeloc@calfoeakes.com
            tylerw@calfoeakes.com
            gaber@calfoeakes.com
            andrewd@calfoeakes.com
            henryp@calfoeakes.com

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
(Case No. 2:20-cv-00983-TSZ) - 21

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL: (206) 407-2200   FAX: (206) 407-2278