# Exhibit 42

SEAN SHEFFER
5/18/2021

## Page 1

```
          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE
_____
HUNTERS CAPITAL, LLC, et al.,  )
                               )
         Plaintiffs,           )
                               )
     vs.           )  No. 20-cv-00983-TSZ
                               )
CITY OF SEATTLE,               )
                               )
         Defendant.            )
_____

       Zoom Video Deposition Upon Oral Examination

                            Of
                       SEAN SHEFFER
                    Shuffle LLC  30(b)6
_____




       *** Contains Confidential Testimony and Exhibits ***



DATE:  Tuesday, May 18, 2021
REPORTED BY:  Mindy L. Suurs, CSR No. 2195
```

## Page 2

```
 1               A P P E A R A N C E S
 2
 3    For the Plaintiff:
 4     TYLER S. WEAVER
       Calfo Eakes
 5     1301 Second Avenue
       Suite 2800
 6     Seattle, Washington 98101
 7
 8    For the Defendant:
 9     CAITLIN B. PRATT
       Harrigan Leyh Farmer Thomsen
10     999 Third Avenue
       Suite 4400
11     Seattle, Washington 98104
12
13
14
15
16
17
18
19
20
21
22
23    Also Present:  Karl Benitez, Royal Video Productions
24
25                       --oOo--
```

## Page 3

```
 1                      I N D E X
 2   EXAMINATION BY                          PAGE
 3   Ms. Pratt                                5
 4
 5
 6
 7                    EXHIBIT INDEX
 8   NO.   DESCRIPTION                       PAGE
 9   28   Business Opportunity Purchase & Sale  19
          Agreement
10
     29   Aerial map                          38
11
     30   Public announcement re move         79
12
     31   Reddit post                         88
13
     32   Purchase and Sale Agreement between Orizume   93
14        and Shuffle
15   33   Shuffle P & L for 2020             115
16   34   Shuffle P & L for 2019             115
17   35   Shuffle P & L for 2018             115
18   36   Cure Cocktail daily sales spreadsheet for  117
          2020
19
     37   Remedium daily sales for May-Dec 2020  118
20
     38   Point of sale for Cure, Nagle location  119
21
     39   Cure Estimated Damage Total spreadsheet  154
22
23
24
25
```

## Page 4

```
 1                Tuesday, May 18, 2021
 2                       9:00 a.m.
 3
 4                         --oOo--
 5          THE VIDEOGRAPHER:  We are now on the record.
 6   Today is May 18, 2021.  The time is now 9:00 a.m.  This is
 7   Volume No. 1, Media No. 1 in the deposition of Shuffle LLC
 8   30(b)6 representative Sean Sheffer, in the matter of
 9   Hunters Capital LLC, et al., versus City of Seattle.
10          We are recording via the internet using Zoom
11   video conferencing.  My name is Karl Benitez.  I'm
12   representing Royal Video Productions on behalf of Rough &
13   Associates.  Today's court reporter is Mindy Suurs.  At
14   this time I would like to ask all counsel present to
15   identify themselves.
16          MS. PRATT:  Good morning.  My name is Caitlin
17   Pratt from Harrigan Leyh Farmer & Thomsen.  We represent
18   the City of Seattle in this matter.
19          MR. WEAVER:  Tyler Weaver from Calfo Eakes on
20   behalf of the plaintiffs.
21          THE VIDEOGRAPHER:  Thank you very much.
22          Madam court reporter, would you please swear in
23   the witness.
24
25
```

ROUGH & ASSOCIATES INC
office@roughandassociates.com     206.682.1427 3515 SW Alaska St Seattle WA 98126

Electronically signed by Mindy Suurs (101-257-931-8021)     36f5bcb4-9f90-43df-bf20-cf99bbc6a5d6

SEAN SHEFFER
5/18/2021

Page 161

1  at Shuffle?
2       A.  No, I meant Sean Sheffer, like me as a person.
3       Q.  But you weren't vandalized, Cure was; right?
4       A.  Yes, storefront of Nagle Place was vandalized.
5       Q.  And that could have been targeted at you because
6  of your position on opening Cal Anderson Park, you thought
7  earlier?
8       A.  Yes, I suspect that.
9       Q.  And in fact, it wasn't the only time that you had
10 made statements on behalf of Cure that had provoked ire of
11 people related to racial justice protests; right?
12          MR. WEAVER:  Objection.
13      A.  Yes.
14 BY MS. PRATT:
15      Q.  Yeah, because there were incidents in May or June
16 of 2020 where you had made statements about
17 violence-related or protest-related vandalism of property;
18 right?
19          MR. WEAVER:  Objection.
20      A.  Yes.
21 BY MS. PRATT:
22      Q.  And what sort of public response did you get from
23 those public statements that you made?
24      A.  It was learning for all of us.  We were trying
25 our best to just stay open and stand with other small

Page 162

1  business owners, and then yeah, we quickly realized that
2  people can get -- there's politics involved and people can
3  get happy or angry with what you say.
4       Q.  And what you said did make people angry; right?
5       A.  If I'm defining "We Strike" and the 12 broken
6  windows, yes, they must have been pretty angry.  I just
7  wanted to support small business.  I was trying my best to
8  do everything to maintain the location.
9       Q.  But apart from the "We Strike" vandalism, you had
10 social media feedback and comments where people were quite
11 upset with the public stance made through Cure; right?
12          MR. WEAVER:  Objection.
13      A.  Yes.  The -- we were asked, Why isn't your
14 facilities open fully to the residents of CHOP and CHAZ,
15 you know, why didn't you open 24/7 your bathroom or
16 something like that, and I produced that.
17 BY MS. PRATT:
18      Q.  So there were people who were unhappy with Cure.
19      A.  Yes.
20      Q.  How do you know that people didn't avoid Cure for
21 that reason?
22          MR. WEAVER:  Objection.
23      A.  We just at the moment wanted to -- well, same
24 reason as before:  Sales.  We saw sales at the time even
25 with these comments.  You can see them in the store Nagle

Page 163

1  CSD, so just want to be consistent that we saw sales during
2  that time.
3  BY MS. PRATT:
4       Q.  You made an insurance claim about these stolen
5  items and vandalism; right?
6       A.  Yes.
7       Q.  And how much did you get reimbursed from your
8  insurance company?
9       A.  The total about -- I think what was quoted in the
10 glass estimate is about $6,000.
11      Q.  Have you included that $6,000 in this $7,068?
12      A.  No.
13      Q.  So the total damages from that vandalism were
14 higher than $7,068?
15      A.  No, that is like the damage total.  Yeah.
16      Q.  I don't understand.  The $7,068 -- does that
17 include amounts that you were later reimbursed by
18 insurance?
19      A.  No, it doesn't.  So you could subtract the two.
20      Q.  Okay.  If you had never been paid by insurance
21 for that vandalism, what would your out-of-pocket expenses
22 have been?
23      A.  That number.
24      Q.  Okay.  But you were paid by insurance.
25      A.  Yes.

Page 164

1       Q.  Okay.  And so how much were you paid by
2  insurance?
3       A.  About that number.  That's a safe estimate to
4  say -- 7,068.
5       Q.  Is what you were paid by insurance?
6       A.  I'm verifying here.  Yes.
7       Q.  You're verifying where?
8       A.  I'm verifying in cell B7, just looking at the
9  sum.  It looks -- yeah, looks like the glass repair plus
10 the iPad plus the cash in the register.
11      Q.  Why would the City pay you for something that
12 your insurance company already paid you for?
13          MR. WEAVER:  Objection.
14      A.  Well, a lot of this -- it was insurance renewal
15 for the area.  They could raise our insurance rates, and I
16 didn't know at the time if it would be, you know,
17 reimbursed or not, and I never want to -- again, I was in
18 my van watching the place, and I wanted to make sure it
19 wasn't damaged.  And there's also deductibles related to
20 insurance and everything like that.
21 BY MS. PRATT:
22      Q.  Okay.  So what is your actual out-of-pocket cost
23 for the vandalism in December?
24      A.  Oh, the out-of-pocket costs, we're looking at the
25 actual value of the stolen items, but you cannot serve and

41 (Pages 161 to 164)

SEAN SHEFFER
5/18/2021

Page 209

1    A.  No.
2    Q.  So what is the basis for your opinion that only
3  those businesses were affected by your perceived decrease
4  in safety?
5        MR. WEAVER:  Objection.
6    A.  My other location grew in sales.
7  BY MS. PRATT:
8    Q.  So you don't think that businesses located, for
9  example, where your other location is located would show
10  any decrease in sales in 2020; is that right?
11        MR. WEAVER:  Objection.
12    A.  Yes.
13        MS. PRATT:  Okay.  All right.  I think that's
14  everything that I have for today.  I'll get back to you
15  about some of the documents that have been discussed.
16        THE VIDEOGRAPHER:  Should we go off the record?
17        MR. WEAVER:  I don't have any questions.
18        THE VIDEOGRAPHER:  The time is 5:43 p.m.  We are
19  off the record.
20
21
22        (The deposition concluded at
23         5:45 p.m.)
24        (Signature was reserved.)
25

Page 210

1            S I G N A T U R E
2
3        I declare that I have read my within deposition,
4  taken on Tuesday, May 18, 2021, and the same is true and
5  correct save and except for changes and/or corrections, if
6  any, as indicated by me on the "CORRECTIONS" flyleaf page
7  hereof.
8        Signed in _____, Washington,
9  this _____ day of _____, 2021.
10
11
12
13
14
15            _____
16            SEAN SHEFFER
17
18
19
20
21
22
23
24
25

Page 211

1            REPORTER'S CERTIFICATE
2
3     I, Mindy L. Suurs, the undersigned Certified Court
  Reporter, pursuant to RCW 5.28.010, authorized to
4  administer oaths and affirmations in and for the State of
  Washington, do hereby certify:
5
6     That the foregoing testimony of SEAN SHEFFER was
  given before me at the time and place stated therein and
7  thereafter was transcribed under my direction;
8     That the sworn testimony and/or proceedings were by me
  stenographically recorded and transcribed under my
9  supervision, to the best of my ability;
10    That the foregoing transcript contains a full, true,
  and accurate record of all the sworn testimony and/or
11  proceedings given and occurring at the time and place
  stated in the transcript;
12
      That the witness, before examination, was by me duly
13  sworn to testify the truth, the whole truth, and nothing
  but the truth;
14
      That I am not a relative, employee, attorney, or
15  counsel of any party to this action or relative or employee
  of any such attorney or counsel and that I am not
16  financially interested in the said action or the outcome
  thereof;
17
18  DATE:  May 23, 2021
19
20
21
22
23  _Mindy L. Suurs_
    Mindy L. Suurs
24  Certified Court Reporter #2195
25

53 (Pages 209 to 211)