# Exhibit 46

LONNIE THOMPSON
5/4/2021

Page 1

```
          UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
                  AT SEATTLE
_____
HUNTERS CAPITAL, LLC, et al.,  )
                               )
        Plaintiffs,            )
                               )
   vs.          ) No. 20-cv-00983-TSZ
                               )
CITY OF SEATTLE,               )
                               )
        Defendant.             )
_____

   Zoom 30(b)6 Video Deposition Upon Oral Examination
                          Of
                   LONNIE THOMPSON
_____
```

DATE:  Tuesday, May 4, 2021
REPORTED BY:  Mindy L. Suurs, CSR No. 2195

Page 2

```
             A P P E A R A N C E S

For the Plaintiff:
   TYLER S. WEAVER
   Calfo Eakes
   1301 Second Avenue
   Suite 2800
   Seattle, Washington 98101

For the Defendant:
   CAITLIN B. PRATT
   KRISTIN E. BALLINGER
   TYLER L. FARMER
   Harrigan Leyh Farmer Thomsen
   999 Third Avenue
   Suite 4400
   Seattle, Washington 98104

For the City of Seattle:
   JOSEPH GROSHONG
   Assistant City Attorney
   Seattle City Attorney's Office
   701 Fifth Avenue
   Suite 2050
   Seattle, Washington 98104




   Also present:  Karl Benitez, Royal Video Productions


              --oOo--
```

Page 3

```
                    I N D E X
EXAMINATION BY                         PAGE
 Ms. Pratt                              5


               EXHIBIT INDEX
NO.   DESCRIPTION                      PAGE
 1    Google map                        12
 2    Bergman's Lock and Key Service, LLC, Profit   38
      and Loss, May 1, 2020

 3    Summary of profit and loss information   46

 4    Annual Profit and Loss Statements from 2016   47
      through 2020
 5    Bergman's Lock and Key Service, LLC, Profit   56
      and Loss, May 1, 2020

 6    Bergman's Lock and Key Service, LLC, Profit   57
      and Loss, May 1, 2019
 7    Estimated Losses for Bergman's Lock & Key    89
 8    Plaintiffs' Initial Disclosures       93
 9    Photos                              108
```

Page 4

Tuesday, May 4, 2021
9:10 a.m.
--oOo--

    THE VIDEOGRAPHER:  We are now on the record. Today is May 4th, 2021.  The time is now 9:10 a.m.  This is Volume No. 1, Media No. 1 in the deposition of Bergman's Lock and Key Services, LLC, 30(b)6 representative Lonnie Thompson in the United States District Court Western District of Washington at Seattle in the matter of Hunters Capital, LLC, versus City of Seattle, Case No. 20-cv-00983-TSZ.  We are recording via the internet using Zoom video conferencing.
    My name is Karl Benitez.  I'm representing Royal Video Productions, Inc., of Issaquah, Washington 98027 by invitation of Rough & Associates.
    At this time I would like to ask all counsel present to identify themselves.  Please state your name, the firm you're working for, and whom you're representing in this matter.
    MS. PRATT:  My name is Caitlin Pratt.  I work for Harrigan Leyh.  We represent the City of Seattle.  I'm joined on this call by Kristin Ballinger, also with my firm, and Joe Groshong of the City of Seattle.
    MR. WEAVER:  My name is Tyler Weaver.  I'm at

ROUGH & ASSOCIATES INC
office@roughandassociates.com    206.682.1427 3515 SW Alaska St Seattle WA 98126

Electronically signed by Mindy Suurs (101-257-931-8021)    25b1dea6-5462-4263-95dd-96b16ceeea9a7

LONNIE THOMPSON
5/4/2021

Page 77

1   to your storefront.  Was the road in front of you -- 12th,
2   I believe; correct?
3       A.  Correct.
4       Q.  Was 12th in front of your storefront blocked off
5   to traffic?
6       A.  At Olive, yes, would be about 50 yards south of
7   our door.
8       Q.  But it was not blocked off in front of your door;
9   is that right?
10      A.  No, it was not.
11      Q.  And that's why those service tech vehicles could
12  have driven in front of the building if you had chosen
13  that -- you know, to ask them to do that; right?
14      A.  Yes.
15      Q.  So you said the street was blocked off at 12th
16  and Olive.  When was that blocked off?
17      A.  It would be after June 8th.  That's to my best of
18  knowledge.
19      Q.  What was it blocked by?
20      A.  The concrete barricades.
21      Q.  And is your memory that there's concrete
22  barricades were there through the time when the park was
23  cleared out on June 30th, or July 1st, excuse me?
24      A.  Yeah.
25      Q.  Are you aware of any other areas where the road

Page 78

1   was blocked off?
2           MR. WEAVER:  Objection.  Go ahead and answer.
3       A.  No, I mean it's just kind of my little
4   neighborhood there.  That was kind of what I paid attention
5   to.
6   BY MS. PRATT:
7       Q.  When you say that 12th at Olive was blocked off
8   after June 1st -- or excuse me, after June 8th with
9   concrete barricades, what do you mean that it was blocked
10  off?
11      A.  It was not possible for car traffic to get
12  through.
13      Q.  Could pedestrian traffic get through?
14      A.  Oh, yes.
15      Q.  You mentioned that some customers had made it
16  clear that they did not feel safe; is that right?
17      A.  Yes.
18      Q.  Do you remember what they said specifically?
19      A.  No.  They were on the phone, several of them.  As
20  soon as they found out where we were at, the -- yeah.
21      Q.  I'm sorry, were you finished with your sentence?
22      A.  Yes.
23      Q.  Oh, okay, sorry.  So other than you having the
24  impression that they did not feel safe, what did they
25  actually say?

Page 79

1       A.  Oh, I can't go out there, it's not safe up there.
2   You're in that -- you're in that zone?  Yes.  Oh, okay.  Is
3   there any way you can help -- you know, yeah.
4       Q.  They said, "Is there any way you can help --"
5       A.  Help us out, yes.  And we would.  We would find
6   some way.  We can't make everybody happy, but you would do
7   your best.  That's what we do.
8       Q.  So for the customers who didn't feel safe, you
9   made alternative arrangements; is that right?
10      A.  Yeah, sometimes I referred them to other lock
11  companies that were just as friendly and as knowledgeable.
12      Q.  How many times did that happen?
13          MR. WEAVER:  Objection, vague.
14      A.  I couldn't keep track of that.
15  BY MS. PRATT:
16      Q.  Can you estimate?
17      A.  At least over ten times.
18      Q.  Are you aware of anytime when a customer wasn't
19  able to reach your business -- not that they didn't feel
20  comfortable but that they physically weren't able to reach
21  it?
22          MR. WEAVER:  Objection.  Answer if you can,
23  Lonnie.
24      A.  I wouldn't be aware of.  Can you ask me -- can
25  you ask me the question again?

Page 80

1   BY MS. PRATT:
2       Q.  Yeah, absolutely.  So are you aware of a time
3   when a customer of Bergman's was actually unable to access
4   the storefront because of the CHOP?
5           MR. WEAVER:  Same objection.  Go ahead.
6       A.  I never heard from any of our customers directly
7   saying, hey, we could never get there, but there were many
8   times the street was blocked off with marchers and
9   protestors and people that were angry that wouldn't leave
10  and -- yeah.
11  BY MS. PRATT:
12      Q.  When you say "the street," what do you mean?
13      A.  12th Avenue.
14      Q.  Is that 12th Avenue at Olive?
15      A.  No, that would be between Olive and Howell.
16  We're right in the middle of Olive and Howell.  And the
17  people didn't stay inside the barricades; they were
18  everywhere, so --
19      Q.  Do I understand you that the only times that the
20  street in front of Bergman's was unpassable by vehicular
21  traffic was because there were actual live people moving in
22  and out of that street?
23      A.  Yes.
24          MR. WEAVER:  Objection.
25  BY MS. PRATT:

20 (Pages 77 to 80)

Page 113

1  can keep it open on the record.
2          MS. PRATT:  All right.  Well, we'll keep it open,
3  we'll continue it, and you and I will continue our
4  discussions.
5          Mr. Thompson, again, I really appreciate your
6  time.  Thank you.
7          THE WITNESS:  Thank you.
8          THE VIDEOGRAPHER:  Counsel, any redirect
9  questions?
10         MR. WEAVER:  I do not have any questions.
11         THE VIDEOGRAPHER:  Should we go off the record?
12         MS. PRATT:  Yes.
13         MR. WEAVER:  That's fine.
14         THE VIDEOGRAPHER:  The time is 2:19 p.m.  We are
15  off the record.
16
17             (The deposition adjourned at
18             2:19 p.m.)
19             (Signature was reserved.)
20
21
22
23
24         S I G N A T U R E
25

Page 114

1       I declare that I have read my within deposition,
2  taken on Tuesday, May 4, 2016, and the same is true and
3  correct save and except for changes and/or corrections, if
4  any, as indicated by me on the "CORRECTIONS" flyleaf page
5  hereof.
6          Signed in _____, Washington,
7  this _____ day of _____, 2016.
8
9
10
11          _____
12             LONNIE THOMPSON
13
14
15
16
17
18
19
20
21
22
23
24         REPORTER'S CERTIFICATE
25

Page 115

1       I, Mindy L. Suurs, the undersigned Certified Court
   Reporter, pursuant to RCW 5.28.010, authorized to
2  administer oaths and affirmations in and for the State of
   Washington, do hereby certify:
3
4       That the foregoing testimony of LONNIE THOMPSON
   was given before me at the time and place stated therein
5  and thereafter was transcribed under my direction;
6       That the sworn testimony and/or proceedings were by me
   stenographically recorded and transcribed under my
7  supervision, to the best of my ability;
8       That the foregoing transcript contains a full, true,
   and accurate record of all the sworn testimony and/or
9  proceedings given and occurring at the time and place
   stated in the transcript;
10
       That the witness, before examination, was by me duly
11 sworn to testify the truth, the whole truth, and nothing
   but the truth;
12
       That I am not a relative, employee, attorney, or
13 counsel of any party to this action or relative or employee
   of any such attorney or counsel and that I am not
14 financially interested in the said action or the outcome
   thereof;
15
16 DATE:  May 6, 2021
17
18
19
20
21         _Mindy L. Suurs_
22         Mindy L. Suurs
           Certified Court Reporter #2195
23
24
25

29 (Pages 113 to 115)