THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUNTERS CAPITAL, LLC; HUNTERS PROPERTY HOLDINGS, LLC; GREENUS BUILDING, INC.; SRJ ENTERPRISES d/b/a CAR TENDER; THE RICHMARK COMPANY d/b/a RICHMARK LABEL; ONYX HOMEOWNERS ASSOCIATION; WADE BILLER; MADRONA REAL ESTATE SERVICES LLC; MADRONA REAL ESTATE INVESTORS IV LLC; MADRONA REAL ESTATE INVESTORS VI LLC; 12TH AND PIKE ASSOCIATES LLC; REDSIDE PARTNERS LLC; OLIVE ST APARTMENTS LLC; BERGMAN'S LOCK AND KEY SERVICES LLC; MATTHEW PLOSZAJ; SWAY AND CAKE LLC; and SHUFFLE LLC d/b/a CURE COCKTAIL,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE,<br><br>Defendant. | No. 2:20-cv-00983-TSZ<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE**<br><br>**NOTE ON MOTION CALENDAR:**<br>November 15, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-00983-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

    A. The City was aware of CHOP-related litigation in June 2022 .............................. 1

    B. Seven key City officials delete their texts after litigation began. ......................... 2

    C. The City covers up the text deletions, waiting months to inform Plaintiffs. ......... 4

III. ARGUMENT ................................................................................................................... 4

    A. The City Spoliated Evidence Via Bulk Deletion of Key Officials' Text Messages. ................................................................................................................ 4

        1. The City had a duty to preserve the text messages. .................................. 5

        2. The City failed to take reasonable steps to preserve the text messages. ................................................................................................... 6

        3. The deleted text messages cannot be restored or replaced. ...................... 6

    B. Rule 37(e)(2) Sanctions Are Warranted Given the City's Culpable State of Mind. ...................................................................................................................... 7

    C. The Court should enter default judgment as to liability against the City. ........... 10

    D. At the Very Least, The Court Should Issue an Adverse Inference Instruction ............................................................................................................ 12

    E. The Court Should Award Plaintiffs Their Costs and Attorneys' Fees ................ 12

IV. CONCLUSION .............................................................................................................. 13

## I. INTRODUCTION

This is a civil rights case alleging the City of Seattle encouraged and provided material support to the lawless and foreseeably destructive occupation of the Capitol Hill area known as CHOP. Plaintiffs (local business owners and residents) bring claims for due process and takings violations, negligence, and nuisance resulting in business loss, property damage, and other harms. The claims depend on evidence such as communications between City policymakers.

Yet Plaintiffs will never be able to access many of these critical communications because Seattle Mayor Durkan, Police Chief Best, Fire Chief Scoggins, and four other key officials deleted their text messages, *well after this case began* and in blatant disregard of their duties as public officials to preserve their texts. The City's explanation for the delay and why the officials deleted the texts—using factory resets, 30-day auto deletions, and manual deletions—are either non-existent or incredible.

There's only one plausible explanation. These officials intended to deprive Plaintiffs of crucial evidence, prejudicing Plaintiffs' case and rendering the City's defenses difficult to rebut. This prejudice calls for severe sanctions: default judgment on the City's liability, or at the very least adverse inference jury instructions, as well as monetary sanctions.

This Court already remarked that the spoliation is "troubling." ECF 96 at 36. More than that, it has undermined the integrity of the judicial process, and calls for the strongest response.

## II. BACKGROUND

**A. The City was aware of CHOP-related litigation in June 2022.**

The Court is already generally aware of the basic facts of this case, which are set forth in its prior orders, Dkt. Nos. 23 and 96, and briefs such as Plaintiffs' motion for class certification, Dkt. No. 65, pp. 1-12. However, a brief summary of the related litigation is important to understanding what the City's highest officials did in deleting their texts.

The City was sued on June 9, 2020 by Black Lives Matter for its response to protests following the death of George Floyd. Calfo Decl. Ex. 1. On June 19, a memo to Mayor's office employees stated City employees must retain all texts. *Id.*, Ex. 2. On June 24, Plaintiffs filed suit

PLAINTIFFS' MOTION FOR SANCTIONS -1-
(No. 20-cv-983 TSZ)

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

and wrote Mayor Durkan informing her they would seek a TRO to end CHOP. *Id.* Ex. 3. On June 27, Plaintiffs' counsel wrote City attorneys explaining the City's "obligation to ensure that evidence related to our lawsuit is not discarded or destroyed," including "text messages on the … phones of the Mayor and her staff, the Chief of Police," "and the Fire Chief," given their involvement "in CHOP issues." *Id.* Ex. 4. Another ESI preservation letter followed on June 30, 2020, *id.* Ex. 5, and these officials received personal litigation holds in July. *Id.*, Ex. 7, Att. A.

Yet, as detailed below, seven key City officials deleted all their texts from the build up to and the first weeks of CHOP over the next five months. The City waited until Dec. 2020 to "implement [any] automatic text message preservation." Calfo Decl., Ex. 7, ROG 34. And it did not attempt to collect text messages from some of the officials until February 2021. *Id.*, Ex. 8, at 10. In the meantime, these City officials, including Mayor Durkan, continued to manually delete messages from their phones, even after they had wiped all their earlier messages, further covering up the coverup.

**B.  Seven key City officials delete their texts after litigation began.**

Seven officials—including the mayor and police and fire chiefs—used three methods to delete their texts during this litigation. A timeline sums up the deletions at Calfo Decl., ¶ 9.

**Mayor Durkan:** She factory reset her phone on July 4, 2020, wiping her texts, and loaded an old backup onto her iPhone that did not contain any text messages later than February 2020. *Id.*, Ex. 6, 13. Minutes later—while the Mayor had sole possession of the phone—the "disable & delete" feature in her "Messages in iCloud" settings was selected, which could have resulted in the deletion of 6,000 texts from Mayor Durkan's iCloud. *Id.*, Ex. 6, 14; *Id.*, Ex. 8, 18, 29; *Id.*, Ex. 9, 131, 138–39 (no way to perform "disable & delete" remotely).[1] Later, someone (never identified) turned on the "30-day auto delete" function on the mayor's phone, and it was not turned off until after July 22. *Id.*, Ex. 8, 30–34; *Id.*, Ex. 6, 3, 12. All this resulted in her texts being wiped from Oct. 30, 2019, through June 25, 2020. *Id.*, Ex. 8, 3. IT also failed to back up her old phone when

---

[1] While the Mayor's messages in her iCloud account remained recoverable for 30 days, the Mayor took no action to recover them, and concealed her actions from the Mayor's Office IT staff, which resulted in the permanent deletion of these text messages from the Mayor's iCloud account. Faulkner 17, 28-29; Leatha 12-14.

she got a new one, *Id.*, Ex. 14, 63, despite the "customary practice" being "to create an iCloud backup." *Id.*, Ex. 8, 11; *Id.*, Ex. 9 36. In addition, between June and Nov. 2020, she also manually deleted nearly 200 texts. *Id.*, Ex. 6, 14.

Her explanations for these deletions have been, at best, inconsistent and incomplete. She claims she dropped her phone in water, and that she restored it itself. *Id.*, Ex. 11, 255–58. But she never told IT staff the phone fell in water, just that it "crashed," Ex. 13, 49–50; *Id.*, Ex. 15, 34–35, and has admitted she reset the phone, *Id.*, Ex. 10. She says she does not remember deleting her messages from iCloud, despite no one else having access to her phone at the time, *Id.*, Ex. 12, 93–95, and claims ignorance on who turned on the 30-day auto delete. *Id.* 261–62. Nobody has admitted to turning on the auto-delete function on the Mayor's phone. Given the fact the phone was in the mayor's possession, and her other actions to delete messages and conceal it, it is likely the Mayor herself selected this feature.

**SPD Chief Best:** Her last day on the job was Sept. 2, 2020, when she turned her phone over to the City. Only after reviewing it *five months later* in Feb. 2021, Faulkner 10, did the City discover it had "no text messages on it dated before" Sept. 2, *Id.*, Ex. 7, 31. Chief Best admitted she periodically deleted messages from her phone, *Id.*, Ex. 26, 212, though denied deleting all her texts. *Id.* 218. No explanation has been given for the delay in checking Chief Best's phone or how all messages before Sept. 2 were deleted, though it is now clear 27,138 messages were deleted before she turned the phone in, either manually or by the 30-day delete function. *Id.*, Ex. 6, 16. This is despite the fact that the City knew on Aug. 21, 2020, that the Mayor's messages were missing. Chief Best had received two litigation holds in July 2020. *Id.*, Ex. 7, Att. A. In May 2021, Plaintiffs' counsel informed the City they intended to serve a subpoena on Chief Best for texts on her personal iPhone. After Plaintiffs' counsel served the subpoena, Plaintiffs learned that Chief Best's personal iPhone had been factory reset in May 2021, again erasing all messages. *Id.* ¶ 62. Chief Best claimed that she took her iPhone to the Apple Store, and the iPhone was factory reset there. *Id.*

**SFD Chief Scoggins:** He has no text messages pre-dating Oct. 8, 2020, because (according

to him), he was locked out of his phone, forgot its passcode, and took it to the Apple Store where he too authorized a factory reset. *Id.*, Ex. 31, 100. He did this 3.5 months after this case began and 2.5 months after he received a litigation hold notice. *Id.*, ¶¶ 66-70. And despite his phone being configured to backup to iCloud, *Id.*, Ex.6, 25, Scoggins didn't preserve these backups. *Id.*, Ex. 31, 110–11. The City claims it did not realize Chief Scoggins was missing texts until February 2021.

Four other officials also deleted all their texts from June 2020 after litigation began.[2]

### C. The City covers up the text deletions, waiting months to inform Plaintiffs.

For several months, the City attempted to hide these deletions from Plaintiffs (and the public). Despite learning about the mayor's missing text messages in August 2020, the City did not inform Plaintiffs until the spring of 2021. Calfo Decl. ¶55. Nor did they do so voluntarily. That texts were missing "came to light" only "after a public records officer in Durkan's office filed a whistleblower complaint." *Id.,* Ex. 23. And even after the missing texts were public knowledge, the City misrepresented the cause: "initially attribut[ing] the loss to an 'unknown technology issue,'" even though officials "already had known for months" the mayor's 30-day auto-delete feature was turned on. *Id.* Ex.24. The City also did not turn over phone data until Oct. 31, 2021. *Id.*, Ex. 6, 2. Only then was Plaintiffs' expert able to evaluate the deletions. *Id.*, 1-5.

### III.   ARGUMENT

### A. The City Spoliated Evidence Via Bulk Deletion of Key Officials' Text Messages.

"Spoliation occurs when a party destroys … material evidence or fails to preserve evidence when the party is under a duty to preserve it." *Edifecs, Inc. v. Welltok, Inc.*, 2019 WL 5862771, at *3 (W.D. Wash. 2019). Rule 37(e) covers sanctions for spoliating electronically stored information (ESI). *See Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018); *First Fin.*

---

[2] These officials supposedly forgot their passwords and reset their phones months after they received litigation holds: Beauregard on Oct. 9, Greening on Oct. 26, Neafcy on Oct. 27, and Fisher on Nov. 3. *Id.*, Ex.6, Fig. 1. Beyond the incredible coincidence of all wiping their phones within a few weeks, their stories do not add up for other reasons too. *Compare Id.*, Ex. 7, 31 (Beauregard's phone "reset itself"), *with Id.*, Ex. 32 (IT ticket showing Beauregard chose to reset). *See id.*, Ex.6,18-19 (Fisher factory reset his iPhone on November 2, 2020, about a month *before* the City claimed his phone was reset after Fisher had been locked out, *Id.*, Ex.7, ROG 31, and prior to that, Fisher manually deleted 15,843 text messages from his iPhone and someone set his phone to 30-day auto delete).

*Sec., Inc. v. Freedom Equity Grp.*, 2016 WL 5870218, at *3 (N.D. Cal. 2016). The rule calls for sanctions where, as here, ESI "should have been preserved," "is lost because a party failed to take reasonable steps to preserve it," and "cannot be restored or replaced." Fed. R. Civ. P. 37(e).

### 1.  The City had a duty to preserve the text messages.

A duty to preserve "arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Ski Lifts, Inc. v. Schaeffer Mfg. Co.*, 2020 WL 1492676, at *4 (W.D. Wash. 2020). The duty is triggered "when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.*; *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). Where one party has asked the other to preserve data, a duty has clearly attached. *Leon*, 464 F.3d at 956. A duty to preserve can also arise from anticipation of a separate lawsuit. *See Musse v. King Cty.*, 2021 WL 4709875, at *2-3 (W.D. Wash. 2021).

The City had at least three independent duties to preserve the texts. First, this litigation had commenced when each official deleted their messages. Plaintiffs sent two letters to the City in June 2020. Calfo Decl. ¶¶ 5-6. On June 24, Plaintiffs wrote Mayor Durkan with intent to seek injunctive relief. *Id.*, ¶4. On June 27, Plaintiffs wrote City attorneys explaining the City's "obligation to" preserve the "text messages" of the Mayor, Police Chief, and Fire Chief, and their respective staff. *Id.*, ¶5. On June 30, Plaintiffs sent another letter that these officials' ESI, including "text messages" on "both personal and City-owned … cell phones," should be preserved. *Id.*, ¶6.

Second, the City had already been sued by BLM on June 9, 2020, *id.*, ¶3, Ex. 1—creating "a duty to preserve" the text messages related to CHOP for that case too. *Musse*, 2021 WL 4709875, at *3.

Third, the City had an additional duty to preserve the texts under Washington's Public Records Act, 42 RCW 42.56 (PRA). A June 19, 2020 memo to Mayor's office staff noted, "City employee[s] [must] retain public records, including those on City-owned or personal smartphones and mobile devices." Calfo Decl., Ex. 2. The City had a policy against deleting "text messages," *id.*, yet several high-ranking officials "did not follow [their] own record-retention policy," *Musse*, 2021 WL 4709875, at *1. They deleted texts despite several independent duties to preserve them.

PLAINTIFFS' MOTION FOR SANCTIONS -5-
(No. 20-cv-983 TSZ)

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

### 2. The City failed to take reasonable steps to preserve the text messages.

Seven key City officials *deleted all their texts from the relevant period*: six initiated factory resets without backups, four manually deleted text messages, and three programmed their phones to automatically delete texts after 30 days. *See* Calfo Decl., Ex. 6, Fig. 1. Intentionally deleting texts clearly "satisfies the standard for failing to take reasonable steps to preserve that evidence." *Univ. Acct'g Serv., LLC v. Schulton*, 2019 WL 2404512, at *6 (D. Or. 2019); *see Schnider v. Providence Health & Servs.*, 2018 WL 1558554, at *2 (D. Alaska 2018). And parties must communicate discovery obligations to employees to ensure materials are not destroyed. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2007 WL 1848665, at *4 (N.D. Cal. 2007); *see Dykes v. BNSF Ry. Co.*, 2019 WL 1128521, at *6 (W.D. Wash. 2019) ("[P]rincipals [are] liable for spoliation committed by their agents."). The City has admitted these texts were deleted, Supp. ROG 31, so this criterion is met. *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *7 (N.D. Cal. 2022).

Reasonable steps include instituting "a 'litigation hold' to ensure the preservation of relevant documents." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006). Failing to halt a "regular deletion schedule" shows failure "to take reasonable steps." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *6 (N.D. Cal. 2022). Here, the City failed to initiate a hold effective at preserving these texts or to "deactivate" 30-day auto-deletions after litigation began. *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. 2020).[3]

### 3. The deleted text messages cannot be restored or replaced.

Many of these texts can never be recovered. Text messages "cannot be recovered" from an iPhone after it has been factory reset, Calfo Decl., Ex. 6, and Fisher, Neafcy, Chief Scoggins, Greening, and Beauregard all reset their phones, *id.*, Ex.8, at 4–5. None of the Mayor's texts could be recovered from her phone between Oct. 30, 2019, and June 25, 2020, given her factory resets and auto deletion. *Id.*, 3. Nearly all Chief Best's texts were unrecoverable given her manual

---

[3] Moreover, the City waited *five months after the case began* to "implement[] automatic text message preservation for [some] City personnel." *Id.*, Ex. 7, ROG 34. That reasonable measure was available, but not taken, earlier. *Hill v. NaphCare, Inc.*, 2022 WL 1464830, at *10–11 (E.D. Wash. 2022)

deletions. *Id.*, 37–43. "The missing text messages could not be located or recovered[.]" *Id.*, Ex. 7,. ROG 28.

While the City is attempting to "reconstruct" texts from other employees who texted with the officials and has provided Plaintiffs with these texts, *id.* 29, the recovery of many texts when thousands have been deleted does not undermine this factor. *See WeRide*, 2020 WL 1967209, at *12 (producing hundreds of files when thousands were deleted not enough). And the City ignores that the texts *most relevant to this case* were sent between officials who *all* deleted their texts— e.g., from the Mayor to the Police and Fire Chiefs—and the City cannot recover texts sent only among the deleting officials. If only one had not deleted their texts, whole conversations may have been recoverable, but *all these officials who responded to CHOP did*, so the texts are lost forever.

### B.     Rule 37(e)(2) Sanctions Are Warranted Given the City's Culpable State of Mind.

Since the above components of spoliation are satisfied, the Court may impose sanctions as necessary to cure the prejudice to Plaintiffs, Fed. R. Civ. P. 37(e)(1) and, if the City "acted with the intent to deprive another party of the information's use in the litigation," may draw an adverse inference, give an adverse inference instruction to the jury, or "enter a default judgment" of liability. *Id.* 37(e)(2). These severer sanctions are appropriate here.

While Rule 37(e)(2) does not define "intent," courts hold it "may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve" them. *Hill*, 2022 WL 1464830, at *11; *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017); *Leon*, 464 F.3d at 959 (deletion of files despite knowledge of duty is "willful spoliation"). "[C]onscious disregard" also satisfies Rule 37(e)(2). *Musse*, 2021 WL 4709875, at *4.

Plaintiffs need not produce direct evidence of intent; circumstantial evidence suffices. *Hill*, 2022 WL 1464830, at *12. Such evidence may include no credible explanation for departing from standard operating procedure and failing to preserve ESI. *Id.*; *EEOC v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042, 1045–47 (W.D. Wash. 2012) (wilfulness given "no justification or explanation for the[] destruction"); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017),

*aff'd*, 2022 WL 433457 (11th Cir. 2022) ("ESI was intentionally destroyed by an affirmative act which has not been credibly explained. … [Such] unexplained, blatantly irresponsible behavior" supports intent); *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019) (selective preservation of evidence without a credible explanation, or simply not remembering deleting the texts, allows court to "infer an intent to deprive"). Here, there is overwhelming evidence of intent. Despite knowing their legal obligation to preserve texts, key City officials intentionally deleted all or nearly all their texts from the relevant time period (manually, via 30-day auto deletion, *and* factory resets) without any credible explanation.

So many key players deleting their texts, via different (and sometimes redundant) means, shows wilfulness. Courts disbelieve explanations where multiple employees "happened to have a habit of routinely deleting text messages" that continued deleting after litigation began—inferring that they "created incriminating text messages, realized the text messages would be discoverable, and … acted improperly upon their shared intent to keep incriminating facts out of evidence." *First Fin. Sec.*, 2016 WL 5870218, at *3; *Klipsch Grp. v. ePRO E-Com.*, 880 F.3d 620, 628–29 (2d Cir. 2018) (several employees deleting files using "various means"—manual deletion, data-wiping programs, and operating system upgrades—meant "spoliation was willful"); *FTC v. Noland*, 2021 WL 3857413, at *13 (D. Ariz. 2021) ("coordinated deletion … [wa]s the pièce de resistance").[4]

In addition, the City's explanations for the various deletions are inconsistent and incredible.

**Factory Resets:**
- The facts regarding Mayor Durkan's reset are set forth in section II.B., *supra*.
- The facts regarding Chief Scoggins' reset are also set forth in section II.B,. *supra*.
- Asst. Chief Greening forgot his password, gave his phone to Seattle IT, and received it back reset. Supp. Calfo Decl., Ex.7, ROG 31. No explanation has been given for why IT reset it, as they could not recall any details, but they indicated that they would not have reset the phone had they been informed that Greening was subject to a litigation hold. *Id.*, ¶¶ 83 - 85.
- Fisher also supposedly forgot his password, and Seattle IT told him to reset the phone in Dec. 2020. *Id.*, Ex. 7, ROG 31. But his phone was also reset a month earlier, and there is

---

[4] The City's "failu[re] to notify" Plaintiffs for months about the missing texts, *see* Calfo Decl. ¶¶ 48 and 55, and misrepresentations about why they were missing, *Id.* Ex. 24also evince intent. *See Moreno v. Corr. Healthcare Cos.*, 2020 WL 5740265, at *10 (E.D. Wash. 2020).

- evidence that he used a *different, undisclosed phone* to text with the Mayor and Chief Best. *Id.*, Ex. 6, 18–19.
- Even though an IT ticket indicates Beauregard affirmatively chose to reset his phone, *Id.*, Ex. 32, the City claims his phone crashed and "reset itself." *Id.*, Ex.7, ROG 31.
- Neafcy changed his phone's password, and the new code supposedly failed to work, so he moved his SIM card to an old phone. *Id.* It is unclear how this would have wiped the texts, and the City concedes its explanation has changed over time. *Id.* n.2; ¶¶ 79-82 .
- Chief Best's personal iPhone was reset at an Apple store in May 2021, around the time that Plaintiff's counsel reached out to counsel for the City regarding a subpoena. Calfo Decl., ¶¶ 62-65, and Ex. 28.

The "coincidence" of so many custodians losing passwords, resetting phones, and erasing iCloud backups is incredible. *First Fin.*, 2016 WL 5870218, at *3. The changing stories, spotty memories, undisclosed manual deletions, and IT deviations from normal practice make intent even clearer.

The simple fact that the officials and staff casually deleted the texts through factory resets "without ever confirming that the data had been preserved" through a backup is enough to infer intent. *Moody*, 271 F. Supp. 3d at 431. Other options were available: "If a technical issue prevented the City Officials from accessing their phones, a temporary replacement should have been issued instead of factory resetting and deleting all the data. A qualified digital forensic vendor could then have assisted with preserving the data." Calfo Decl., Ex. 6, 5. Yet they reset and wiped their phones despite their litigation obligations.

**30-Day Automatic Deletion:** The phones of three officials (Mayor Durkan, Chief Best, and Fisher) all were set to automatically delete texts after 30 days, leading to deletion during the relevant timeframe. *Id.*, Ex. 6, 3–4, 12–17; *Id.*, Ex.8, 33–34. No one has taken responsibility for doing so but *someone* at the City changed these settings. As then-City Attorney Pete Holmes said, "[s]omeone changed the mayor's settings from retain to delete—that **is a deliberate act**." *Id.*, Ex. 24 (emphasis added).  The mayor claimed no knowledge of "who turned on the 30-day delete function." *Id.*, Ex. 11, 261–62. And her IT staff claim they did not change the settings. *Id.*, Ex. 13,. 75, 102; *Id.*, Ex. 14, 54–55. In cases like this, where the City "has not identified the individual responsible for making the relevant decision" and offers "no explanation … about why someone" chose to set the auto-delete function, intent is present. *Hill*, 2022 WL 1464830, at *12.

**Manual Deletion:** Three key officials (Mayor Durkan, Chief Best, and Beauregard) also

PLAINTIFFS' MOTION FOR SANCTIONS -9-
(No. 20-cv-983 TSZ)

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

*manually* deleted hundreds or thousands of texts each. *Id.*, Ex. 6, 15–16, 26. They have provided *no explanation* for violating their public-records obligations and litigation holds in this way.[5]

The texts were deleted with an intent to deprive, so Rule 37(e)(2) sanctions are warranted.

### C. The Court should enter default judgment as to liability against the City.

In deciding whether to impose liability as sanction, courts look to the *Leon* factors: "(1) [] expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hill*, 2022 WL 1464830, at *13 (quoting *Leon*, 464 F.3d at 958). "The first two … factors favor" default, "while the fourth cuts against" it. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). After finding fault, "the key factors are prejudice and availability of lesser sanctions." *Id.*; *Ghorbanian v. Guardian Life Ins. Co.*, 2017 WL 1543140, at *2 (W.D. Wash. 2017) (considering "fault," the "prejudice," and lesser sanctions).

**First**, the City's spoliation significantly prejudices Plaintiffs. The Ninth Circuit "looks to whether the [spoiling party's] actions … threatened to interfere with the rightful decision of the case" or force a party to "rely on incomplete and spotty evidence" at trial. *Leon*, 464 F.3d at 959. This standard is satisfied if the "lost text messages" cannot be replaced and "are likely relevant," *Youngevity Int'l v. Smith*, 2020 WL 7048687, at *4 (S.D. Cal. 2020), or "potentially relevant," *Volcan Grp. v. Omnipoint Commc'ns, Inc.*, 552 F. App'x 644, 646 (9th Cir. 2014).

"Because the relevance of" destroyed ESI "cannot be clearly ascertained because [it] no longer exist[s]," a party "can hardly assert any presumption of irrelevance." *Leon*, 464 F.3d at 959. A spoliator bears "the consequence of [the] uncertainty" as to the ESI's relevance and resulting prejudice. *Kische USA LLC v. Simsek*, 2018 WL 620493, at *5 (W.D. Wash. 2018). The deletion "severely prejudice[s]" Plaintiffs. *Leon*, 464 F.3d at 956.

And the texts clearly were relevant. The officials used their phones to conduct official

---

[5] Their depositions also reveal the officials cavalierly violated their duties. Chief Best conceded she periodically deleted texts, claiming she thought the City could access her texts after she deleted them. Calfo Decl., Ex.26, 212–15. She claimed she "didn't know what the … major concern was." *Id*. 214. Moreover, Best factory reset her phone the same month Plaintiffs sought its production. *Id*. at 224. Beauregard claimed not remembering deleting texts, then claimed what he deleted was not "sensitive" even though it "might have been" with other employees. *Id*. 131–34.

business—that is the supposed reason why they needed to quickly reset and regain access to them. *E.g.*, Calfo Decl., Ex. 12, 97–98. And the City can hardly dispute CHOP was a huge part of that business, or that the officials who wiped their phones were making policy "decision[s]," after "discussion and collaboration," about how best to respond to the "increasingly volatile" and "quite dangerous" CHOP situation. *Id.*, Ex. 11, 99–106 (describing early June "discussion[s] with Chief Best" on police policy); *id.* 162 (describing "extraordinary amount of coordination … across departments"). Text messages between Mayor Durkan, Chief Best, and other officials would be relevant to the City's knowledge and policies in responding to CHOP.

The texts could show, for example, that Plaintiffs' damage was a foreseeable result of the City's actions and the City was deliberately indifferent to those harms, proving a state-created danger in violation of substantive due process and negligence. Indeed, the Mayor admitted in an email (from a date where her texts are deleted) that deadly violence was "**foreseeable and avoidable**." Calfo Decl. Ex. 25. The texts may have included other candid admissions or shown that the explanations the City now gives for its policies are false. Such texts would be undeniably relevant. As in *Moreno*, Plaintiffs "can think of few sources of information that would be more helpful in evaluating [the claims or defenses] than the internal communications between" the City's highest-ranking officials "with respect to [its] policies and practices." 2020 WL 5740265, at *9. The spoliation "threaten[s] to distort the resolution of the case." *Leon*, 464 F.3d at 960.[6]

**Second**, less drastic sanctions would not adequately cure the prejudice. As in *Leon*, an adverse inference or jury instruction creating a presumption for Plaintiffs would not suffice, as it would leave Plaintiffs "helpless to rebut any material that [the City] might use to overcome the presumption." *Leon*, 464 F.3d at 960. And where, as here, the spoliating party has engaged in "continued deceptive misconduct", "lesser sanctions are not warranted." *Moreno*, 2020 WL 5740265, at *10. For example, the City has never disclosed the manual deletions by Durkan,

---

[6] The fact that other ESI has been produced does not lessen this prejudice, as it cannot "substitute for the potentially relevant information within lost text messages." *Youngevity*, 2020 WL 7048687, at *4. Where, as here, multiple officials "have spoliated text messages over the same time periods," like the mayor *and* the police chief *and* the fire chief, "it is not possible to obtain text messages that may have been exchanged between them…because both the sender and receiver have lost all text messages." *Id.* In such circumstances, the prejudice is sky high.

Beauregard, Neafcy or Fisher, and failed to admit the extent of Chief Best's manual deletions. "[N]o sanction short of default judgment [will] appropriately remed[y] the risk of prejudice to Plaintiffs." *Hill*, 2022 WL 1464830, at *16; *Volcan*, 552 F. App'x at 646 (affirming dismissal).

### D. At the Very Least, The Court Should Issue an Adverse Inference Instruction

Barring finding liability, the Court should impose adverse inference sanctions. It should advise the jury about (or allow Plaintiffs to present evidence to the jury regarding) all the intentional spoliation here. *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 355 (D. Ariz. 2022); *Youngevity*, 2020 WL 7048687, at *4–5; *Fry's*, 874 F. Supp. 2d at 1047. The Court should also instruct the jury to presume the lost "information was unfavorable to" the City. Fed. R. Civ. P. 37(e)(2)(B); *Perez v. USPS*, 2014 WL 10726125, at *6 (W.D. Wash. 2014). The presumption instruction should clearly identify the elements of Plaintiffs' claims the jury should presume are satisfied, and the City's defenses that are presumed lacking: including, but not limited to, that the City anticipated the damages done to Plaintiffs, which were foreseeable results of the City's conduct; the City knew about but chose to ignore concerns raised by Plaintiffs; the City knew about CHOP occupants' illegal activities (including property damage and violence) and did nothing for political reasons; and it was the City's policy to appease CHOP occupants despite harm to Plaintiffs. *See Fry's*, 874 F. Supp. 2d at 1047 (instruction "to draw an adverse inference against defendant regarding the validity of its sales-related justification for [the] termination" given deletion of performance data); *First Fin. Sec.*, 2016 WL 5870218, at *4 (instruction of presumption that evidence would show "intent to recruit" as necessary for claim).

### E. The Court Should Award Plaintiffs Their Costs and Attorneys' Fees.

In addition, the Court should award monetary sanctions to compensate Plaintiffs for it costs resulting from the spoliation. Any spoliation justifies compensating the moving party for "attorney's fees," "fees and costs incurred" investigating and moving for sanctions, and other fees like depositions about the lost texts, *Youngevity*, 2020 WL 7048687, at *5, and "expert costs and fees," *Straitshot Commc'ns, Inc. v. Telekenex, Inc.*, 2012 WL 727271, at *3, *6 (W.D. Wash. 2012). While the amount of this sanction may be determined later, the Court should make clear

now that the City owes all reasonable costs resulting from the spoliation. *Fast*, 340 F.R.D. at 355.

## IV.     CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court impose spoliation sanctions.

DATED this 28th day of September, 2022.

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Angelo J. Calfo*
Patricia A. Eakes, WSBA #18888
Angelo J. Calfo, WSBA #27079
Tyler S. Weaver, WSBA #29413
Gabe Reilly-Bates, WSBA #52257
Andrew DeCarlow, WSBA #54471
Henry Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone:  (206) 474-6400
Fax:     (206) 474-6401
Email: patty.eakes@morganlewis.com
           angelo.calfo@morganlewis.com
           tyler.weaver@morganlewis.com
           gabriel.reillybates@morganlewis.com
           andrew.decarlow@morganlewis.com
           henry.phillips@morganlewis.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR SANCTIONS
(No. 20-cv-983 TSZ)

-13-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2022, I caused to be electronically filed the foregoing PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

DATED September 28, 2022

By *s/ Joyce McCosco*
Joyce McCosco

PLAINTIFFS' MOTION FOR SANCTIONS -14-
(No. 20-cv-983 TSZ)

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400