THE HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

| | |
|---|---|
| HUNTERS CAPITAL, LLC; HUNTERS PROPERTY HOLDINGS, LLC; GREENUS BUILDING, INC.; SRJ ENTERPRISES d/b/a CAR TENDER; THE RICHMARK COMPANY d/b/a RICHMARK LABEL; ONYX HOMEOWNERS ASSOCIATION; WADE BILLER; MADRONA REAL ESTATE SERVICES LLC; MADRONA REAL ESTATE INVESTORS IV LLC; MADRONA REAL ESTATE INVESTORS VI LLC; 12TH AND PIKE ASSOCIATES LLC; REDSIDE PARTNERS LLC; OLIVE ST APARTMENTS LLC; BERGMAN'S LOCK AND KEY SERVICES LLC; MATTHEW PLOSZAJ; SWAY AND CAKE LLC; and SHUFFLE LLC d/b/a CURE COCKTAIL, | Case No. 2:20-cv-00983-TSZ |
| | DECLARATION ANGELO J. CALFO IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE |
| Plaintiffs, | Noted:  November 15, 2022 |
| v. | |
| CITY OF SEATTLE, | |
| Defendant. | |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

I, Angelo J. Calfo, declare as follows:

1.      I am an attorney with Morgan, Lewis & Bockius LLP and represent Plaintiffs in the above-captioned action.  I am over eighteen years of age and am competent to testify herein.  I make the following statements based on my personal knowledge.

**The City Had a Duty to Preserve Evidence When All of the Text Messages Were Deleted**

2.      The City was placed on notice of Plaintiffs' claims and had a duty to preserve evidence through several means.

3.      On June 9, 2020, the City was sued by Black Lives Matter for its response to protests following the death of George Floyd.  A true and correct copy of the complaint filed by Black Lives Matter on June 9, 2020, is attached hereto as Exhibit 1.

4.      A memorandum to the Mayor's Office dated June 19, 2020, instructed Mayor's Office employees that they must retain text messages on mobile devices.  A true and correct copy of the June 19, 2020, Mayor's Office Memorandum is attached hereto as Exhibit 2.

5.      On June 24, 2020, Patty Eakes sent a letter via hand delivery to the Mayor's Office informing the Mayor of the lawsuit and of the Plaintiffs' intent to seek a temporary restraining order to compel the City to take action with respect to CHOP. (the "June 24, 2020 Letter to Durkan").  A true and correct copy of the June 24, 2020, Letter to Durkan is attached hereto as Exhibit 3.

6.      On June 27, 2020, Plaintiffs' counsel wrote City attorneys Joseph Groshong and Carolyn Boies explaining the City's "obligation to ensure that evidence related to our lawsuit is not discarded or destroyed," including "text messages on the business or personal phones of the Mayor and her staff, the Chief of Police," "and the Fire Chief, … all of whom … have been involved in CHOP issues."  (the "June 27, 2020 ESI Preservation Letter").    A true and correct copy of the June 27, 2020 ESI Preservation Letter is attached hereto as Exhibit 4.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 2

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

7.      On June 30, 2020, Plaintiffs' counsel wrote again to City attorneys Joseph Groshong and Carolyn Boies, requesting that the City ensure that all ESI were preserved, and specifically requesting that the City take all reasonable steps to preserve evidence, including text messages of Mayor Jenny Durkan, Chief Carmen Best and Chief Harold Scoggins, and all of their respective staff members, among others (the "June 30, 2020 ESI Preservation Letter").   A true and correct copy of the June 30, 2020 ESI Preservation Letter is attached hereto as Exhibit 5.

**Seven City Officials Deleted Text Messages After This Lawsuit was Filed**

8.      Plaintiffs retained a forensic ESI expert, Brandon Leatha, to examine data that the City collected from various City officials' electronic devices.   Leatha examined the electronic devices under the stipulated digital examination agreement entered into by and among the parties, and he prepared an expert report based upon his findings related to his investigation of the devices. A true and correct copy of the redacted Brandon Leatha Expert Report dated April 28, 2022 is attached hereto as Exhibit 6 (the "Leatha Report").[1]

9.      In the Leatha Report, Leatha detailed the deletion of text messages by seven City officials using three general methods: factory resets of the phones which deleted all data, manual deletions, and deletions caused by turning on a setting that deletes any text message older than 30 days. *See id.*, p. 5.  He created the following figure timeline to show the various dates and methods by which the seven City officials deleted their text messages:

---

[1] The City had initially designated the entire Leatha Report as "confidential," but then later provided a redacted version that could be treated as "non-confidential."

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 3

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401



Figure 1. Timeline of events resulting in the loss of text messages

*Id.* This chart shows the key deletion dates for each of the City's seven witnesses who deleted nearly all of their messages on their phones. It also shows where witnesses have multiple forms of deletion. For example, it shows that Chris Fisher factory reset his phone on November 3, 2020, but also manually deleted text messages and had turned on his "30-day delete" setting. *See supra*, pp. 17-20.

10.     All seven of these City officials received litigation hold notices from the City. *See* City's 8/31/21 Supplemental Responses to Plaintiffs' Interrogatories ("City's Supp. ROG Responses"), a copy of which is attached hereto as Exhibit 7, Attachment A, p. 1.   The City has stated that the litigation hold notices contained a description of the case, and listed categories of

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 4

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  documents each recipient needed to preserve, including "text messages, emails, memoranda and

2  meeting minutes." *Id.* at ROG No. 34, p. 25.  The hold notices also included a FAQ that again

3  referenced preserving "text messages on employees' mobile devices." *Id.* at 25-26.  Finally, the

4  hold notices directed employees to search devices and locations where potentially relevant

5  documents might exist, including their City-issued cell phones, to determine whether any such

6  responsive documents existed there. *Id.* at 26.

7       11.    All seven of these City officials were heavily involved in planning or implementing

8  the City's response to CHOP.  Aside from the Mayor, Police Chief Best and Fire Chief Scoggins

9  planned the City's emergency response protocol during CHOP.  Chris Fisher was the Seattle Police

10  Department's Chief Strategy Officer and was involved in command staff meetings and advising

11  former Chief Carmen Best.  Idris Beauregard was an officer of Seattle Public Utilities who visited

12  CHOP on a daily basis and coordinated the City's support of CHOP through the placement of

13  barriers, portapotties, and other material aid to the protesters.  Assistant Chief Eric Greening

14  assisted Chief Carmen Best in the Seattle Police Department's response.  Kenneth Neafcy was in

15  charge of the City's Emergency Operations Center that operated before and during part of CHOP.

16  **Mayor Jenny Durkan's Deleted Text Messages**

17       12.    In October 2019, Mayor Durkan received an iPhone 8 Plus to replace a phone of

18  the same model.  *See* Kevin Faulkner Expert Report, p. 3, a true and correct copy of which is

19  attached hereto as Exhibit 8 (the "Faulkner Report").[2]  Kevin Faulkner, the forensic expert from

20  Unit 42 of Palo Alto Networks with over 18 years of experience who the City hired to review

21  Mayor Durkan's and Chief Best's phones, determined that when her iPhone 8 Plus (FirstNet) was

---

[2] The Faulkner report refers mainly to three of Mayor Jenny Durkan's iPhones that were forensically examined during his investigation: (1) an iPhone 8 Plus that was used from April 10, 2018 – October 30, 2019 (described herein as the "iPhone 8 Plus (Verizon)"), (2) an iPhone 8 Plus that was used from October 30, 2019 – July 9, 2020 (the "iPhone 8 Plus (FirstNet)"), and (3) an iPhone 11 that was used from July 9, 2020 – November 19, 2020 (the "iPhone 11 (FirstNet)". Faulkner Report, Ex. 8, pp. 4-5. Following November 19, 2020, the Mayor was given a new phone by the City so that Faulkner could examine the iPhone 11.  *Id.*

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 5

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

set up in October 2019, her text messages were set to be automatically saved to iCloud using Apple's "Message in iCloud" feature.  *Id.* at p. 25.  Faulkner also determined that the Mayor's iPhone 8 Plus (FirstNet) was set up in October 2019 using a backup from iCloud of her prior iPhone 8 Plus (Verizon).  *Id.* at 26.

***The Mayor Factory Reset and Loaded an Outdated Backup onto Her iPhone on July 4, 2020***

13.     Mayor Durkan claims that she dropped her iPhone 8 Plus (FirstNet) in the water at the beach on the afternoon of July 4, 2020.  *Id.* at 27.

14.     On July 4, 2020, at 4:51 PST, Mayor Durkan's iPhone 8 Plus (FirstNet) was backed up from an iCloud backup file.  *Id.*  The backup file was from "early-to-mid February 2020," *id.*, meaning that the backup file did not contain messages from June 2020.  *Id.*  In order to back up the iPhone 8 Plus (FirstNet), it had to have been factory reset.  Leatha Report, Ex. 6, p. 13.  "When an iPhone is factory reset, the device is essentially 'wiped', and the data cannot be recovered from the device directly." *Id.* at 11.   The City's forensic expert Faulkner agreed that "a phone would need to be either factory reset or new out of the box in order to the restore a backup from iCloud." Faulkner Dep., Ex. 9, p. 122:16-20.

15.     Mayor Durkan also admitted to her office staff that she reset her iPhone 8 Plus (FirstNet) when she wrote in an email to her colleagues on July 4, 2020 at 8:52 p.m. that "[m]y phone died **but I was able to reset and backup from cloud**."  A true and correct copy of Mayor Durkan's email dated July 4, 2020, at 8:52 p.m. (SEA_00145702) is attached hereto as Exhibit 10 (emphasis supplied).

16.     However, at her deposition, the Mayor gave an inconsistent story, stating that she couldn't remember if she reset the iPhone 8 Plus (FirstNet): "I don't recall whether I reset [the phone] or whether it – because if it crashed, it reset, but my recollection is, there's that screen where you can say, you know, do you want to start your phone as a new phone or restore it from

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 6

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

the cloud, and I chose from the cloud, and then restored it from the iCloud backup for the phone." *See* Deposition of Jenny Durkan (the "Durkan Dep."), true and correct excerpts of which are attached hereto as Exhibit 11, p. 256:5-12.

***28 Minutes Later, Mayor Durkan Took Steps to Delete Copies of Text Messages in the iCloud***

17.     Then, *only 28 minutes later*, at 5:19 p.m. PST, a "Messages" "disable & delete" function was selected on the Mayor's iPhone 8 Plus (FirstNet) that caused her phone to stop synchronizing text messages to iCloud and set all messages stored in iCloud to be deleted from iCloud in 30 days, on August 4, 2020.  Faulkner Report, Ex. 8, p. 29; Leatha Report, Ex. 6, pp. 13-14.  Faulkner confirmed that this function, saving Mayor Durkan's text messages to "Messages in iCloud," was turned off for the remaining use of the iPhone 8 Plus (FirstNet). Faulkner Report, Ex. 8, p. 29.  The City's expert Faulkner explained that the "disable and delete" function "would have caused the iPhone 8 Plus (FirstNet) to stop synchronizing messages to iCloud and set all messages stored in iCloud to be deleted in 30 days, on August 4, 2020. . . ." *Id.*  Faulkner was not aware of any way to perform the "disable and delete" function remotely.  Faulkner Dep., Ex. 9, p. 131:5-10.  So it must have been someone present at the Mayor's beach house that performed the "disable and delete" function that day.

18.     At a deposition involving The Seattle Times, Mayor Durkan admitted that no one else could have done the "disable and delete" function on July 4, 2020.   *See* excerpts from the Deposition of Jenny Durkan in the case of *Seattle Times v. City of Seattle*, case no. 20-2-14351-1-SEA, proceeding in the Superior Court of Washington for King County, ("Times Durkan Dep.") a true and correct copy of which is attached as Ex. 12, at p. 93:1-5, 95:10 – 12:

"Q: Did you use the disable and delete function on July 4th?

A: I have no recollection of seeing that prompt or clearing that prompt.

Q: Well, could anyone else have done it on that day when you were at the beach.

1    A: No.

2    *    *    *

3    Q: Okay.   Was anyone else handling the phone that day after it fell in the water?

4    A: No."

5  In addition, Faulkner said that he talked to Mayor Durkan about the disable and delete function,

6  and that her explanation to him was that "she didn't give her phone to anyone else to work on the

7  recovery, or get her phone running on that day." Faulkner Dep., Ex. 9, p. 139:12-24.  Faulkner

8  agreed that, if it was the Mayor who selected the "disable and delete" function on July 4, 2020,

9  that she would have received a message on her iPhone that would have said: "[t]his will disable

10 messages in iCloud **and delete all your messages stored in iCloud**. You have 30 days to undo

11 the action.  Your device will automatically download your messages."  Faulkner Dep., Ex. 9,

12 138:15–139:11 (emphasis added).

13           ***The Mayor Did Not Tell Her IT Staff that Her iPhone was Dropped in Water***

14      19.     Despite her claim that she dropped the iPhone 8 Plus (FirstNet) in water and that

15 the phone was not functioning properly, the Mayor did not inform her IT staff that her phone had

16 been dropped in water.  Regi Alencastro, one of the Mayor's IT staff, did not recall ever talking to

17 the Mayor about her iPhone 8 Plus (FirstNet)being dropped in water, and had no recollection of

18 when he received an explanation that the Mayor's iPhone 8 Plus (FirstNet) was dropped in

19 saltwater. *See* Excerpts of Deposition of Reginald Alencastro, a true and correct copy of which is

20 attached hereto as Exhibit 13 ("Alencastro Dep."), pp. 51:16–20, and 51:24 – 52:4.

21      20.     Emmanuel Arhu, the other member of the Mayor's Office IT staff, was not

22 informed that the Mayor had dropped her phone in saltwater in July 2020, and did not recall ever

23 being informed that the Mayor's iPhone 8 Plus (FirstNet)had been dropped in saltwater.  *See*

24 Excerpts of Deposition of Emmanuel Arhu, a true and correct copy of which is attached hereto as

25

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 8

Exhibit 14 ("Arhu Dep."), pp. 30:19-21, and 32:5-8.   In addition, when Arhu recovered the Mayor's iPhone 8 Plus (FirstNet), he did not see any evidence that the phone had been dropped in water.  *Id.* at p. 30: 22 – 25.

21.     In addition, the Mayor's IT liaison, Andrea Friedhoff, who provided the Mayor's iPhone 8 Plus (FirstNet)to Alencastro and Arhu, also admitted that Mayor Durkan did not tell her that her iPhone had been dropped in saltwater.  Excerpts of Deposition of Andrea Friedhoff, a true and correct copy of which is attached hereto as Exhibit 15 ("Friedhoff Dep."), pp. 59:20 – 60:1.  Friedhoff admitted that the Mayor never told her that her iPhone 8 Plus (FirstNet) had been dropped in water.  *Id.* p. 60:9-11.

22.     The Mayor's own Chief of Staff, Stephanie Formas, could not recall any conversations with the Mayor about the Mayor's phone that were not conducted in the presence of the City Attorney's office.  *See* excerpts of the Deposition of Stephanie Formas, a true and correct copy of which are attached hereto as Ex. 16, p. 248:20 – 249:11.

23.     Finally, the Mayor even failed to tell her own executive assistant, Colleen O'Reilly Bernier, who helped the Mayor coordinate the replacement of her phone, that her iPhone 8 Plus (FirstNet) had been dropped in saltwater.  *See* Deposition of Colleen O'Reilly Bernier, a true and correct copy of excerpts of which are attached hereto as Ex. 17, p. 50:11-14. ("Q: In July of 2020, did the mayor ever tell you that she had dropped her phone on the beach and the saltwater had covered the phone?  A: She did not.").

24.     Surprisingly, in July 2020, the Mayor had failed to mention to any of her closest associates who helped her replace the iPhone 8 Plus (FirstNet) that she had dropped the phone on the beach and that it had been covered with saltwater.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 9

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

***The Mayor Did Not Tell Her IT Staff Her Phone had Been Backed Up & Reset***

25.     Mayor Jenny Durkan also failed to tell her IT staff Regi Alencastro and Emmanuel Arhu that she had reset and backed up her iPhone 8 Plus (FirstNet) on July 4, 2020 (Alencastro Dep., Ex. 13, p. 58:2-10; Arhu Dep., Ex. 14,  31:19-23); and she also did not tell Alencastro, Arhu or Friedhoff that she had conducted the "disable and delete" function that deleted all of her text messages that were stored in her "Messages in iCloud." Alencastro Dep., Ex. 13, p.74:4-7; Arhu Dep., Ex. 14, 48:1-10; Friedhoff Dep., Ex. 15, p. 40:19-22.

***Inconsistent Explanations of Who Made the Decision to Replace the Mayor's iPhone and Why***

26.     Mayor Durkan explained the decision to replace her iPhone 8 Plus (FirstNet), saying "I knew I'd be back in Seattle, and that IT could either see if the phone was suitable or I needed a new one. They made the decision to replace the phone." Durkan Dep., Ex. 11, p. 259:15.

27.     However, Emmanuel Arhu, in the Mayor's IT department, contradicted the Mayor, and testified that it was the ___Mayor's office___ that placed the order for a new phone.  Arhu Dep. Ex. 14, p. 30:1-25 ("The decision [to replace the phone] would be made by the mayor's office to get a new phone, so that – they place the order, and that comes to IT").  Arhu also agreed that he didn't look at whether the iPhone 8 Plus (FirstNet) was functioning properly because the mayor's office had given him an order to replace the phone, stating "I wasn't part of the decision to do that." *Id.* at p. 31:7-13.  No one from the Mayor's office even provided Arhu with any information about what happened to damage the Mayor's iPhone 8 Plus (FirstNet). *Id.*

28.     Regi Alencastro, the other worker in the Mayor's IT department, indicated that he was not involved in the process of replacing the Mayor's iPhone 8 Plus (FirstNet).  Alencastro Dep., Ex. 13, p. 15:7-8 ("I don't think I was involved in that one. I don't recall being involved in that one").  When asked whose decision it was to replace the Mayor's iPhone 8 Plus (FirstNet), Alencastro offered an explanation that was at odds with both the Mayor and his fellow IT worker

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 10

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Emmanuel Arhu, stating that "it would have been, like, basically a collective decision.  So it would have been myself, Emmanuel, Andrea."  *Id.* at 90:18 – 91:4.

29.     However, Andrea Friedhoff, the Mayor's IT liaison, who provided Regi and Emmanuel with the Mayor's phone, further contradicted Alencastro's statement that she was involved in the decision to replace the Mayor's iPhone 8 Plus (FirstNet). (Friedhoff Dep., Ex. 15, p. 69:2–10) (indicating she was **not** involved in placing the ticket to order a new phone for the mayor or the decision to order the new phone) (Q: And you weren't involved in the decision to order the new phone, correct? A: I – no, I don't think so").

30.     Stephanie Formas, the Mayor's Chief of Staff, and Friedhoff's boss, also stated that she did not believe that she was involved in the process of getting the Mayor a replacement phone. *See* Deposition of Stephanie Formas, excerpts of which are attached hereto as Ex. 16, p. 238:10-17.

31.     In addition, the City's expert, Kevin Faulkner, explained that he was able to turn on the Mayor's iPhone 8 Plus (FirstNet) (Faulkner Dep., Ex. 9, p. 70: 11-24) and he understood that Mayor Jenny Durkan continued to use her iPhone 8 Plus (FirstNet) between July 4, when she had reset the phone, and July 9, when her phone was replaced. *Id.* at p. 70:14-18.   In addition, Mayor Jenny Durkan admitted that, after IT inspected her iPhone 8 Plus (FirstNet) on July 6, 2020, that they gave her back her phone until it was replaced on July 9, 2020.  *See* Durkan Seattle Times Dep., Ex. 12, p. 96:3–24.   So, the Mayor's iPhone 8 Plus (FirstNet) was *actually working* after the Mayor allegedly dropped it in saltwater and reset it, and the replacement was not necessarily related to the saltwater intrusion.  The only reason Faulkner heard from the City for replacing the Mayor's iPhone 8 Plus (FirstNet) was due to "a concern that the mayor could cut her finger on the phone."  Faulkner Dep., Ex. 9, p. 72:8-18.  No City witness to date has said that the Mayor's iPhone 8 Plus (FirstNet) was replaced because it was not functioning due to water damage.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 11

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*The City Failed to Follow Its Own Backup Protocol When Setting Up the Mayor's New Phone*

32.     On July 7, 2020, Regi Alencastro wrote to Colleen O'Reilly Bernier, Andrea Friedhoff and Emmanuel Arhu saying that the Mayor's new iPhone 11 had arrived, and that they would backup/restore the Mayor's data.  *See* Email dated 7/7/20 from Regi Alencastro, a true and correct copy of which is attached hereto as Ex. 18 (SEA_00145708).   Even the City's expert noted that,

> "Unit 42 understands that the City IT team's customary practice when migrating a user in the Mayor's office from one phone to another using the "Quick Start" feature was to create an iCloud backup of the source phone prior to performing the migration. We also understand that after the data was transferred from the iPhone 8 Plus (FirstNet) to the iPhone 11 (FirstNet), the City IT team reset the iPhone 8 Plus (FirstNet) to factory defaults, as was its customary practice, which would have removed all prior configuration settings and data from the device, about one month after the Mayor switched to the iPhone 11 (FirstNet)."

Faulkner Report, Ex. 8, p. 11. Faulkner Dep., Ex. 9, p. 36:17 – 23 ("I do recall hearing from them that that was their standard practice [to create a backup before transferring data to a new phone]."). Emmanuel Arhu, another one of the Mayor's IT staff, admitted that one of the steps in replacing a phone was to make a "backup . . . to have something to fall back on." Arhu Dep., Ex. 14, p. 26:12 – 27:8.  Indeed, when the Mayor's iPhone 8 Plus (Verizon) was replaced with the Mayor's iPhone 8 Plus (FirstNet) phone on October 30, 2019, a backup file was created.  Faulkner Report, Ex. 8, p. 26.  In addition, in November 2020, Aru and Alencastro attempted to create a backup of the Mayor's iPhone 11 before the data was transferred to another phone so the iPhone 11 could be taken for forensic testing.  Faulkner Dep., Ex. 9, p. 36:1-11.

Yet, in July 2020, when Arhu replaced the Mayor's iPhone 8 Plus with the iPhone 11, he admitted that in this instance he failed to make a backup of the Mayor's old phone before he transferred data over to the new phone. Ex. 14, at p. 63:5-16.  (Q: So – but before you – you – you used the phone-to-phone contact, did you make a backup of the cracked screen iPhone 8 Plus to

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 12

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

make sure that there would be a copy of the mayor's data after you transferred it to the new phone? A: No, not that I recall."). Had Arhu made a backup of the Mayor's iPhone 8 Plus, the Mayor's text messages that existed on the iPhone 8 Plus (FirstNet) may have been recoverable, along with other forensic artifacts.

***The Deletion of the Mayor's Text Messages Using the 30-day Delete Function***

33. After the Mayor selected the "disable and delete" function on July 4, 2020, all of her text messages would likely have been deleted from iCloud thirty days later, on or about August 4, 2020 (Leatha Report, Ex. 6, at p. 14), but the text messages were downloaded onto the Mayor's phone. However, they would not remain there for long, because someone turned the "30-day delete" setting "on" on the Mayor's new iPhone 11 sometime between July 4 and 26, so the iPhone started deleting text messages that were older than 30 days old. Faulkner Report, Ex. 8, pp. 33-34; Leatha Report, Ex. 6, pp. 3, 14. An iPhone has three possible text message retention settings: it can keep messages for 30 days, one year, or forever. Leatha Report, Ex. 6, p. 8. By default, an Apple iPhone retains messages indefinitely. *Id.* at 7. When a user changes the setting from "Forever" to "30 Days" or "one year" a warning message notifies the user that older messages will be permanently deleted. *Id.*

34. Faulkner concluded that sometime between July 22 and July 26, 2020, someone changed the setting on the Mayor's iPhone from "30-day delete" back to "forever," so that text messages would be retained indefinitely. Faulkner Report, Ex. 8, pp. 3, fn. 2, and 33-34. Leatha agreed and noted that the oldest remaining text message found on the Mayor's iPhone was dated June 25, 2020, at 10:38 a.m. PST. Leatha Report, Ex. 6, p. 14 (which implies that the "30-day delete" setting was turned off at least 30 days later.)

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 13

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

35.     The Mayor had received a "litigation hold" notice for this case on July 22, 2020, which was shortly before the "30-day delete" setting was switched back to the "forever" retention setting. *See* Supp. ROG Responses, Ex. 7, Attachment A.

36.     Leatha looked at the ROWID field found in message and chat tables to conclude that 5,746 messages were deleted from the Mayor's iPhone 11 as a result of turning the "30-day delete" setting "on." Leatha Report, Ex. 6, p. 14.

37.     The Mayor, and all of the Mayor's staff that had access to the Mayor's iPhone 11, denied having turned the "30-day delete" setting "on" or "off" again between July 9, and July 26, 2020.   Durkan Dep., Ex. 11, pp. 261:25–262:2; Friedhoff Dep., Ex. 15, pp. 63:16-64:17; Alencastro Dep. Ex. 13, pp. 77:9-19, 125:13–19; Arhu Dep., Ex. 14, pp. 55:10–18, 55:24–56:19, 58:2-5, 71:3-9; Formas Dep., Ex. 16, p. 239: 5-8; O'Reilly Bernier Dep., Ex. 17, p. 69:4-25. However, someone at the City had to have turned the "30-day delete" setting "on" and "off," and whoever turned the setting "off" around July 26, 2020, likely understood that text messages had been deleted as a result of the setting having been enabled. Yet the City took no action to retrieve the deleted messages until a much later date.

38.     Because Kevin Faulkner could not recover text messages that were solely from Chief Carmen Best to Mayor Jenny Durkan from between June 1 and June 25, 2020, he admitted that "there would be none between those two individuals," and that he expects "there would not be any between them. . . ."  Faulkner Dep., Ex. 9, p. 109:3-12, 110:16-111:1.  Faulkner admitted he had no reason to disagree that he had not been able to recover any text messages that were solely between Mayor Durkan and Chief Harold Scoggins from June 1 to June 25, 2020. Id. at p. 115:7 – 116:15.  Faulkner admitted that he was unable to recover any text messages that were solely sent from Chris Fisher's iPhone from June 1 to June 25, 2020. *Id.* at 117:2-8.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 14

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**The Cover Up of the Cover-up**

***The Mayor Also <u>Manually</u> Deleted 191 Text Messages after July 4, 2020***

39.     Leatha determined that 191 messages were manually deleted from the Mayor's *iPhone 11* from July 4, 2020 to November 19, 2020.  Leatha Report, Ex. 6, pp. 14-15.  He concluded this by looking at ROWID gaps in the message table that was recovered from the Mayor's iPhone 11.  *Id.*  Messages received on an iPhone are added to the sms.db text message database sequentially, and when a message is deleted, it creates a numbering gap in the database.  *Id.*  Furthermore, Leatha determined that, of the 191 messages that were deleted, 64 messages were deleted between August 21, 2020 and October 15, 2020, and another 4 messages were manually deleted between October 4 and November 19, 2020.  *Id.* at 15.  This implies that the other 119 messages were manually deleted from the Mayor's iPhone 11 from July 4, 2020 through August 20, 2020. (191 messages – 68 messages – 4 messages = 119 messages).  The Mayor was aware of this lawsuit at the time she manually deleted all of these messages (due to the June 24, 2020 letter, Ex. 3 hereto) and she had received a litigation hold notice on July 22, 2020, after which she continued to manually delete text messages from her phone.

40.     The City failed to disclose these deletions in response to discovery that targeted deleted material on City Officials' phones, and the Faulkner Report did not disclose that the Mayor had deleted text messages from her phone.  Plaintiffs, in their second set of interrogatories, asked the City "whether the City has determined that any data has been deleted from Mayor Jenny Durkan, former Police Chief Carmen Best, Fire Chief Harold Scoggins and Idris Beauregard's Electronic Devices **since June 25, 2020**, and the factual bases for those conclusions."  *See* City's Supp. ROG Responses, Ex. 7, No. 31, p. 18.  The City responded with respect to Mayor Durkan that "It is the City's understanding that the Mayor did not intentionally delete any messages from her phone and did not direct anyone to intentionally delete any messages from her phone. The City

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 15

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

anticipates supplementing this response after its litigation consultant completes its analysis." *Id.*, at Suppl. Resp. to ROG 31, p. 22.  But the City never further supplemented its interrogatory responses, and it did not disclose that the Mayor had continued to manually delete messages from July 4, 2020 – November 19, 2020 in the Faulkner Report, even though its forensic expert had the same data that Plaintiffs' forensic expert had.   Indeed, Plaintiffs' forensic expert had received the data from the City's forensic expert.

41.    Moreover, Faulkner admitted that, at the time he prepared his report in February 2022, that he recalled "seeing some gaps in row IDs that are consistent with manual deletion" but he admitted that he did not describe any manual deletion (e.g. the manual deletion of 191 text messages detailed by Leatha) in his report dated February 11, 2022.  Faulkner Dep., Ex. 9, p. 175:16-21.  When asked why he did not include evidence of manual deletion in his report, Faulkner responded "It wasn't something I was asked to look into and opine on.  I was looking for other sources of data that could have and recover text messages, or trying to figure out what happened to them." *Id.* at 176:1-5.  So even though the City had promised to supplement its answer about whether Mayor Durkan had deleted text messages after June 25, 2020, the City failed to do so, even though its expert was aware of manual deletions on the Mayor's iPhone 11 that occurred after June 25, 2020.

42.    Mayor Durkan, when asked whether she ever deleted "any message on a device issued" by the City of Seattle, explained that it was her "practice to keep all of my text messages on my phone, even those that were, 'Call me,' or you know, just very brief non-substantive text messages" but she also indicated that she would delete text messages 'that would be like phishy things. . . .' " *See* Durkan Seattle Times Dep., Ex. 12, p. 72:15–73:11.  In another case where Mayor Durkan was deposed, she stated under oath that "it was my intent as mayor to always maintain all of our electronic data and that is what I tried to do." *See* Deposition of Mayor Jenny

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 16

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

Durkan in the case of *Estate of Taylor, et al. v. City of Seattle and King County*, case no. 20-2-14351-1 SEA, true and correct excerpts of which are attached hereto as Exhibit 19, p. 194:9-22. In that case, Ms. Durkan *denied* having periodically personally deleting text messages. *Id.* at p. 201:4-8.

43.     The City has not yet disputed Leatha's conclusion that 191 messages were deleted from the Mayor's phone, either through its forensic expert's rebuttal report, or otherwise.  Nor has the City offered any explanation for why it failed to disclose the Mayor's manual deletion of 191 text messages in Mr. Faulkner's initial report or earlier in response to Plaintiffs' discovery requests.  In addition, this evidence of manual deletion did not require an expert's analysis from the City, as the former Mayor Durkan must have been *aware* of those facts, but the City instead chose to conceal them, hoping that Plaintiffs would not uncover them. While the City may claim "no harm no foul" because they have managed to recreate a portion of the 191 messages, the fact remains that they were all deleted at a time when the Mayor was aware of this lawsuit, and many of them were deleted after the Mayor received 2 litigation holds, so none of them should have been deleted, including the allegedly "phishy" text messages.

### Emmanuel Arhu Factory Reset the Mayor's Old iPhone 8 Plus in September 2020

44.     Leatha determined that, on September 17, 2020, "Durkan's iPhone 8 Plus (FirstNet) was factory reset a second time."  Leatha Report, Ex. 6, p. 13.  The prior time that it had been reset was on July 4, 2020, when Mayor Durkan reset and backed up her iPhone 8 Plus (FirstNet).  *Id.* By looking at the files on the Mayor's iPhone 8 Plus (FirstNet), Leatha was able to determine that the factory reset process was completed on September 17, 2020 at 6:56 p.m. PST.  *Id.*  Leatha did not find evidence of additional factory resets having occurred in August 2020.

45.     Emmanuel Arhu testified that there was no City-wide policy that required an old phone to be wiped before it was recycled.  Arhu Dep., Ex. 14, p.74:17-25.   He explained that it

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1    was the Mayor's Office IT department's normal practice to hold on to a phone for "about four

2    weeks" before wiping the phones. *Id.* at 71:11-23.  However, Alencastro did not know whether

3    there was a policy to factory reset a phone that was handed in.  Alencastro Dep., Ex. 13, p. 106:2-

4    9.  Alencastro also testified that Arhu did not inform him before or after resetting the Mayor's

5    iPhone 8 Plus (FirstNet), and he admitted that the did not really talk about it. *Id.* at 104:25-105:17.

6    Arhu also testified that if the user requests to keep the phone, that the Mayor's IT Department

7    allows them to keep the phone.  Ex. 14. at 73:24–75:9.  He acknowledged that O'Reilly-Bernier

8    had requested to keep the Mayor's last iPhone 8 Plus (Verizon) that had been replaced in October

9    2019, and that they let her keep the iPhone 8 Plus (Verizon)  for that replacement. *Id.* at 74:4–16.

10   Arhu testified that he did tell O'Reilly-Bernier that he was going to do a factory reset on the

11   mayor's iPhone 8 Plus (FirstNet). *Id.* at p. 73:6-11.   However, in this instance, the Mayor's

12   executive assistant did not request to keep her iPhone 8 Plus (FirstNet), even though the Mayor

13   later received 2 litigation hold notices on July 22, and July 23, 2020, for this case and for the *Black*

14   *Lives Matter v. City of Seattle* case.  *See infra*.  Assuming that Arhu followed the purported policy

15   of waiting 4 weeks to factory reset the Mayor's iPhone 8 Plus (FirstNet), given that her phone was

16   replaced on July 9, Durkan and / or O'Reilly-Bernier would have had until August 6, 2020, to tell

17   Arhu or Alencastro to preserve the Mayor's iPhone 8 Plus (FirstNet).  That was <u>two weeks</u> after

18   the last litigation hold notice the Mayor received.

19          46.     Arhu conceded that if he had known about the lawsuit or a litigation hold, he would

20   not have gone ahead with the factory reset. *Id.* at 76:20-24.  He also noted that "the mayor's office

21   would hold on to the device or whoever, our law – in our law department will probably ask for it."

22   *Id.* at 76:8-18.  However, Arhu and Alencastro were not given a litigation hold notice until March

23   29, 2021, long after the text messages were deleted.  *See* Supp. ROG Responses, Ex. 7, Attachment

24   A, p. 1.  Arhu admitted he did not make a backup of the Mayor's iPhone 8 Plus (FirstNet) before

25

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 18

he performed the factory reset.  Arhu Dep., Ex. 14, at p. 75:9-17.  Alencastro also did not remember making a backup of the Mayor's iPhone 8 Plus (FirstNet) before it was replaced with the iPhone 11, and did not know whether Emmanuel had done so, even though he agreed that it was his normal policy "to make a backup before replacing a phone. . . ."  Alencastro Dep., Ex. 13, pp. 93:19 – 94:3.

47.     Leatha's conclusion that the Mayor's iPhone 8 Plus (FirstNet) was reset on September 17, 2020, contradicts the City's explanation that the Mayor's iPhone 8 Plus (FirstNet) was reset "by the Mayor's Office IT in or around early August." *See* Supp. ROG Responses, Ex. 7, ROG 36, p. 29.  Faulkner did not provide any specific dates that the Mayor's iPhone 8 Plus (FirstNet) was factory reset, stating that "Unit 42 understands that after the phone was decommissioned, a member of the City's IT department factory reset the iPhone 8 Plus (FirstNet) in August 2020, as was the IT department's customary practice." *See* Faulkner Report, Ex. 8, p. 31.  Faulkner confirmed that the Mayor's iPhone 8 Plus (FirstNet) had been reset, but neither his report, or his rebuttal report, provide the exact date it occurred.  *Id.*

48.     In addition, the timing of the factory reset of the Mayor's iPhone 8 Plus (FirstNet) on September 17, 2020, at 6:56 p.m. PST, is suspect because it happened the day before the delivery of the Mayor's iPhone 8 Plus (FirstNet) to a City forensic examiner, Braden Heil, on September 18, 2020. The Mayor's Office IT department, including Regi Alencastro and Emmanuel Arhu, had learned around August 21, 2020, that the Mayor's iPhone 11 was missing text messages. Arhu Dep., Ex. 14, at pp. 77:4–78:13.  Around that time, they performed some tests on the phone to "try to recover anything that was lost." *Id.*  So, by September 17, 2020, they were aware of the importance of locating text messages on the Mayor's iPhones and should not have factory reset any of them, even if it was to attempt to load a backup from the Mayor's iCloud account.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 19

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

49.     The City noted in its interrogatory responses that on September 18, 2020, "one of the City's forensic analysts, Braden Heil, also took an image of the iPhone 8 Plus [(FirstNet)] to see if he could locate any of the missing texts. He could not." *See* Supp. ROG Resp., Ex. 7, ROG 36, p. 29.   So, the Mayor's iPhone 8 Plus (FirstNet) was factory reset one day before the Mayor's own forensic analyst created a forensic image of the phone.

50.     A text message between Regi Alencastro and Emmanuel Arhu on September 17, 2020 indicates that there was a meeting scheduled with the Mayor's attorney, Michelle Chen and Kimberly Ferreiro, for 4:30 p.m. PST.  *See* Excerpts of Regi Alencastro's Text Messages, a true and correct copy of which is attached hereto as Ex.  20, timestamp 9/17/2020 11:37 AM (UTC-7) ("FYI, there is a meeting request from Kim [Ferierro], with Michelle [Chen] on it for 4:30 p.m."). That was less than 2 and a half hours before the Mayor's iPhone 8 Plus (FirstNet) was factory reset on September 17, 2020, at 6:56 p.m. PST, and a day before Braden Heil was to forensically examine the phone. *See infra*. The court should infer, that, based on the timing of this factory reset, that the City was attempting to hide evidence of the deletion of evidence from the Mayor's phone.

***The City Delayed Recovering Copies of Deleted Text Messages from Other City Officials***

51.     The City knew that Mayor Durkan lost her text messages on her iPhone 11 on August 21, 2020, when "Michelle Chen, former counsel to the Mayor, discovered . . . that text messages from before June 25, 2020, were missing from the iPhone 11 the Mayor was using at that time." *See* Suppl. ROG Resp., Ex. 7, Supp. ROG Resp. No. 23, p. 6.  On September 25, 2020, Ginger Armbruster, Jim Loter, Michelle Chen and Kim Ferreiro wrote a privileged memorandum to the City Attorney's Office, presumably concerning Mayor Durkan's missing text messages.  *See* Redacted Memo dated September 25, 2020, (SEA_00144622 – SEA_00144624), a true and correct copy of which is attached hereto as Ex. 21.   The City admitted that it became aware that text messages were not available on former Mayor Durkan's phone in October 2020.  *See* City's Supp.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 20

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

ROG Resp. , Ex. 7, No. 27, p. 11.  As early as August or September 2020, the City could have taken actions to safeguard other top officials' text messages, but it did not do so.

52.     Instead, the City waited over *6 months* to *even discover* that it was missing text messages for seven of the City's other top officials that were involved with CHOP.   Here are the dates that the City discovered text messages were missing:

- Idris Beauregard (March 2021)
- Carmen Best (March 2021)
- Chris Fisher (March 2021)
- Eric Greening (March 2021)
- Kenneth Neafcy (March 2021)
- Chief Harold Scoggins (Late February 2021)

City's Supp. ROG Responses, Ex. 7, Supp. ROG Resp. No. 27, p. 11.

53.     That critical six-month delay allowed for all of those officials' text messages from the CHOP time period to be deleted and wiped.  Former Chief Carmen Best's iPhone was turned in on September 2, 2020, with no text messages. City's Supp. ROG Responses, Ex. 7, Supp. ROG Resp. No. 31, pp. 19-20.  Chief Harold Scoggins' iPhone was factory reset at an Apple store on October 8, 2020.  *Id.*, Supp. ROG Resp. No. 31, p. 19. Beauregard's iPhone was factory reset on October 9, 2020 at an Apple Store.  *Id.*, Supp. ROG Resp. No. 31, p. 21. Assistant Chief Greening's Samsung phone was reset on October 26, 2020. *Id.*, Supp. ROG Resp. No. 31, p. 20.  Kenneth Neafcy's phone was reset the same day.  *Id.*  Chris Fisher's work iPhone was factory reset on November 3, 2020 and on December 3, 2020.  *Id.*, Supp. ROG Resp. No. 31, p. 21.  These officials, including the Fire Chief and Police Chief, undoubtedly contained text messages with the Mayor that were lost forever as a result of the City's delay in action.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 21

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

54.     Similarly, while the City has retained Kevin Faulkner as a forensic expert in November 2020, to analyze former Mayor Durkan's and former Chief Carmen Best's iPhones, Faulkner did not inspect or analyze Beauregard, Scoggins, Greening, Neafcy or Fisher's phones nor their backup sources of data.  Had he done so, the City may have been able to recover additional data that was lost. This is particularly curious, because the City had hired an outside forensic entity "to conduct a forensic search of the Mayor's phones to determine if any remnants of the missing text messages could be recovered and why the messages had not been retained." *See* May 6, 2021 Letter from Wayne Barnett, with attached Investigative Report of Ramsey Ramerman, for case no. 21-WBI-0304-1, a true and correct copy of which is attached hereto as Exhibit 22.

***Concealment and Misrepresentation of the Missing Text Message Issue for PRA Requests***

55.     The issue of the missing text messages only came to light after Stacy Irwin, a public records officer in Mayor Durkan's office, filed a whistleblower complaint in March 2021, asserting that the Mayor's counsel, Michelle Chen, had pressured her into providing incomplete and misleading information to Public Document Requests.  *See* Excerpts of Whistleblower Complaint of Stacy Irwin, a true and correct copy of which is attached hereto as Ex. 23.  In her whistleblower complaint, Stacy wrote: "In August of 2020, we found out that the Mayor had 'lost' 9 months of text messages . . . I was directed to not let our requesters know that text records they were seeking were actually messages that were recreated from other members of the office . . . . Instead of telling our requesters the truth, Michelle either had us re-create text messages from other staff members [sic] phones to make it look like it was the Mayor's texts, or even worse, for requests that did not specifically call out the mayor, she just had us close the requests and tell our requesters that there were no responsive records."  Ms. Irwin also noted that "Law is working on a lawsuit right now from Hunter [sic] Capital where they will be advised in discovery soon that messages are gone and are being recreated." *Id.*

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 22

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

56.     City Attorney Pete Holmes said that the initial explanation from Mayor Durkan's office – that the loss of text messages was due to an "unknown technology issue" – was misleading. Kamb, Lewis, Beekman, Daniel, and Brunner, Jim, MAYOR'S OFFICE KNEW FOR MONTHS DURKAN'S PHONE SETTING CAUSED TEXTS TO VANISH, EMAILS SHOW, *Seattle Times*, Aug. 20, 2021, https://www.seattletimes.com/seattle-news/mayors-office-knew-for-months-durkans-phone-setting-caused-texts-to-vanish-emails-show/, a copy of which is attached hereto as Ex. 24.  The Seattle Times reported that Pete Holmes had "warned Durkan's office that publicly attributing the loss to an undetermined tech issue was 'untrue'" adding that **"[S]omeone changed the mayor's settings from retain to delete – <u>that is a deliberate act</u>**." *Id.* (emphasis added).  There is no reason for the Court not to accept the City's attorney's admission of intent to spoliate.

### *The Missing Text Messages Are Probative and Relevant*

57.     The missing text messages from June 8, 2020–June 25, 2020 were probative as they were between the City's top decision makers that were in charge of crafting a strategy of dealing with CHOP: the Mayor, the Police Chief, the Fire Chief, the Chief Strategy Officer for the Police Department (Fisher), the head of the Emergency Operations Center (Neafcy), and several other key subordinates.  Indeed, in an email dated June 20, 2020, the Mayor admitted that, after a murder occurred that morning in CHOP, that deadly violence was "foreseeable and avoidable" in a communication that was directed to former Chief Best and Chief Scoggins.  *See* 6/20/20 Email from Durkan to Best and Scoggins re: what happened this am was foreseeable and avoidable (SEA_00125617), a true and correct copy of which is attached hereto as Ex. 25.  In this same email, Durkan also chided Best and Scoggins: "But as we discussed at the outset of the Cap Hill issues, and as you told the public: [sic] there can be no part of the city where SFD and SPD do not respond." *Id.*

### **<u>Former Police Chief Carmen Best's Deleted Text Messages</u>**

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

58.     Former Police Chief Carmen Best received two litigation hold notices from the City in July 2020, on July 8, 2020 and July 27, 2020. *Id.*, Attachment A, pp. 1 and 3.  The City's litigation hold notices instructed Chief Best to preserve and search for text messages relating to this case. *See* infra, pp. 4-5.

59.     Yet, despite having received those two litigation hold notices, former Chief Best turned her phone in on September 2, 2020, with no text messages on it that were from before September 2, 2020.  *Id.*, City's Supp. ROG Responses No. 31, pp. 19–20.  The City's forensic expert, Kevin Faulkner, admitted that "the artifacts on Chief Best's phone are consistent with all of the user messages from before September 2, 2020, having been deleted either from manual deletion or the 30-day setting."  Faulkner Dep., Ex. 9, p. 119:10-18.  He also admitted that it was impossible to tell how many messages had been manually deleted and how many had been deleted by the 30-day setting.  *Id.* at 119:20–120:13.  In his report, he had noted "the artifacts reviewed on the Best iPhone XS Max are consistent with periodic deletion over time rather than a bulk deletion."  Faulkner Report, Ex. 8, pp. 37-43.  He noted that the finding of "very low number of entries in the 'chat' table. . . is consistent with Chief Best's testimony in her deposition that she deleted text messages periodically."  *Id.* at p. 43.   Chief Best had admitted during her deposition that she had periodically deleted messages from her phone.  *See* Deposition of Chief Carmen Best ("Chief Best Dep."), excerpts of which are attached hereto as Ex. 26, p. 212:17-19. In addition, in another case, Chief Best even contradicted Mr. Faulkner's conclusion, admitting that she would delete messages, including messages from former Mayor Durkan, in bulk:

"Q.     Why did you delete them [the text messages]?

A.     Just periodically ***when there's a buildup of messages, you know, I would just delete them***. They were transitory and no reason to keep them on the phone.  No particular cadence to that, ***<u>just as I do now with my personal phone</u>***.

Q.     So if the mayor sent you a transitory message, you would delete that?

A.      To my – you know, just periodically ***I deleted messages in bulk***.   <u>***I don't – I didn't look through specific – any specific message***</u>."

Deposition of Chief Best, vol. 2, from the *Estate of Taylor, et al. v. City of Seattle, et al.*, case no. 21-2-07115, proceeding in the Superior Court of Washington for King County ("Chief Best Estate of Taylor Dep."), true and correct copies of excerpts of which are attached hereto as Ex. 27, p. 371:24 – 372:8 (emphasis added).  However, Chief Best denied that she deleted *all* of her text messages before she turned her phone in.  Chief Best Dep., Ex. 26, p. 218:16-20.

60.      Chief Best's assertion that she didn't delete all of her text messages is flatly contradicted by Brandon Leatha's findings, whereby he determined that 27,138 messages had been manually deleted from Chief Best's iPhone before she turned it in.  *See* Leatha Report, Ex. 6, p. 16.  As noted above, Faulkner also reached a conclusion that all text messages with user content had been deleted from prior to September 2.  He determined that number by examining the messages table of the sms.db text message database, which had a maximum ROWID of 27,202. *Id.*  He determined that 27,138 messages were deleted by subtracting 15 messages that were present, and 49 chat entries from the 27,202 rows in the text messages table. *Id.*  The City, and former Chief Best, have offered no explanation whatsoever to explain why <u>all</u> of Chief Best's text messages had been deleted prior to her handing in her phone.


***Former Chief Best's Phone Was Also Set to Delete Text Messages Older than 30 Days***

61.      The City's own expert determined that Chief Best's phone also had a "30-day delete" setting enabled, indicating that "any text messages older than 30 days stored locally on this iPhone would be automatically deleted by the iPhone on a nightly, rolling basis." Faulkner Report, Ex. 8, p. 38.  *See also* Leatha Report, Ex. 6, p. 15.  However, both Faulkner and Leatha determined that the 30-day delete" setting was not the cause of the deletion of Chief Best's text messages. Faulkner Report, Ex. 8, pp. 42-43; Leatha Report, Ex. 6, p. 16.  Either way, it is evidence of some

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 25

**Morgan, Lewis & Bockius LLP**
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Tel +1.206.274.6400   Fax +1.206.274.6401

covert coordination or parallel action between former Mayor Durkan and former Chief Best to delete evidence relevant to this case.

**Chief Best's _Personal_ iPhone Was _Also_ Factory Reset in May 2021**

62.     After Plaintiff's counsel discovered that Chief Best and various other City officials had no text messages on their City phones in early May 2021, Plaintiffs issued a subpoena to Carmen Best, seeking documents relating to CHOP, and text messages, among other things.   A true and correct copy of the Subpoena to Chief Carmen Best is attached hereto as Exhibit 28.   Prior to issuing the subpoena, counsel for Plaintiffs had spent several weeks trying to get the City to accept service of a subpoena to Carmen Best, then Anne Bremner, and finally Denise Ashbaugh. At her deposition, Chief Best explained that she had a technical problem with her personal phone that resulted in her iPhone being factory reset and no text messages are available before May 2021. *See* Chief Best Dep., Ex. 26, p. 224:6-9.   Best explained the technical problem that lead to her instructing that her phone be factory reset: "at some point my phone just stopped working.  I went into panic mode because, you know, all my calendar and all that stuff is on my phone, and so I took it to the – Bellevue Square to the iPhone store there and they did some sort of a reset for me and got my phone back working." *Id.* at 224:20–225:6.  When asked whether she was locked out of her iPhone due to a passcode issue, Best stated that the phone "just stopped working." *Id.* at 225:21.  Best conceded that the iPhone was likely reset at the Apple Store in May 2021. *Id.* at 224:20–225:6.  Best's lawyer confirmed that there was no backup of Chief Best's personal phone. *See* Email from Denise Ashbaugh to Gabriel Reilly-Bates dated 10/18/21 ("Ashbaugh Email"), a copy of which is attached hereto as Ex. 29.  And at a recent deposition, Chief Best admitted that it is her practice to periodically delete messages from her personal phone. *See* Chief Best Estate of Taylor Dep., Ex. 27, p. 369:25–370:6 (Q. Why did you delete [the text messages]? A. Just

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

periodically when there's a buildup of messages, you know, I would just delete them. . . . No particular cadence to that, just as I do now with my personal phone.")

63.     Chief Best suggested that she might have an Apple store receipt showing the specific date she visited the Apple Store to have her iPhone reset. *See* Chief Best Dep. , Ex. 26, p. 225:7-13.   However, Chief Best's counsel later indicated she was unable to locate any receipt information. *See* Ashbaugh Email, Ex. 29.  By this time, almost a year after the lawsuit was filed, after she had received multiple litigation hold notices, and after it was discovered that she had no text messages on her work phone, Chief Best was aware of her duty to preserve evidence and the potential consequences for deleting evidence, but she authorized the factory reset regardless.

64.     Recent text message productions from Chris Fisher's personal phone demonstrate that Chief Carmen Best did in fact use her home phone to discuss work issues.  On August 19, 2022, three and a half months after Brandon Leatha had stated in his report that Chris Fisher used his personal cell phone to discuss business issues, the City produced four Excel spreadsheets containing numerous text messages between Chris Fisher and Chief Carmen Best, among others. One such spreadsheet, further identified as Fisher_000002, contained 7 work related messages with a phone number identified as "Carmen Home."  *See* Fisher Text Messages produced by the City on August 18, 2022, FISHER_000002, a true and correct excerpt of which is attached hereto as Ex. 30.  Other text messages in Chris Fisher's document production were identified as "Carmen Work," leading us to infer that the "Carmen Home" number that is listed corresponds with her personal iPhone that was wiped in May 2021 through a factory reset.

65.     The City's forensic expert, Kevin Faulkner, never examined Chief Carmen Best's personal cellphone to look for text messages stored there, and he was not even informed that her personal cellphone was factory reset after she visited an Apple store in May of 2021.  Faulkner Dep., Ex. 9, p. 161:23 – 162:5.  This is despite the fact that the stated goals of Faulkner's February

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 27

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

11, 2022 Report were to "1. Attempt to recover or otherwise locate the missing text messages of Mayor Durkan and Chief Best, and 2. Determine what happened to cause the text messages of Mayor Durkan and Chief Best to be missing." Faulkner Report, Ex. 8, p. 3.

**Fire Chief Harold Scoggins**

66.      Harold Scoggins received a litigation hold notice on 7/22/2020 in this case.  *See* City's Supp. ROG Resp., Ex. 7, Attachment A.  The City's litigation hold notices instructed Chief Scoggins to preserve and search for text messages relating to this case.  *See infra*, pp. 4 - 5. However, Chief Scoggins testified at his deposition that he did not receive a litigation hold until after October 8, 2021, when his iPhone was factory reset.

67.      Harold Scoggins has no text messages pre-dating October 8, 2021, because he authorized an Apple store employee to factory reset his phone on that day.  City's Supp. ROG Responses, No. 31, p. 19.  Harold Scoggins could not access his iPhone on October 8, 2021, claiming that he forgot his passcode.  *Id.*  He claims that he informed the City's IT department, and they advised him to recover his iPhone from iCloud.  *Id.*  IT staff advised Scoggins to load iTunes on his computer and made other suggestions.  *See* Deposition Transcript of Harold Scoggins ("Scoggins Dep."), excerpts of which are attached hereto as Ex. 31, Dep., p. 99:4-10. Scoggins said he tried to download iTunes but he could not.  *Id.* at 108:11-20.   Chief Scoggins took his iPhone to the Apple Store, and they reset the iPhone.  City's Supp. ROG Responses, No. 31, p. 19.  Chief Scoggins testified that he directly authorized the "factory reset" of his phone at the Apple Store: ". . . they said the only thing I could do – is a hard reset.  I said okay.  So they did the hard reset."  *See* Scoggins Dep., Ex. 31, p. 100:11-13.

68.      Chief Scoggins factory reset his phone on October 8, 2020, which was only two days after the Mayor's Office of the City informed the City Attorney's office about the Mayor's missing text message issue on October 6, 2020. *See* May 6, 2021 Barnett Letter, Ex. 22, p. 3.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 28

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400    FAX +1.206.274.6401

69.     Brandon Leatha confirmed that the phone was factory reset on October 8, 2020, causing the deletion of all text messages on Scoggins' iPhone, and that the first entries showing usage of the reset phone occurred at 4:15 p.m. PST on October 8, 2020. *See* Leatha Report, Ex. 6, p. 24.  The first text messages were sent or received at 5:22 PST on October 8, 2020. *Id.*

70.     The City did not take an image of Scoggins' phone until March 9, 2021.  City's Supp. ROG Responses, No. 23, p. 5.  Scoggins likely did not inform anyone of the loss of data.

***The City's Failure to Recover Scoggins' Text Messages from His iCloud Backup Files***

71.     Chief Scoggins said that he had an iCloud account.  Scoggins Dep., Ex. 31, p. 110:9-12.   In addition, Brandon Leatha determined that Scoggins' iPhone 8 Plus (that he used during CHOP) was configured to backup to his iCloud account, and the City produced a backup dated February 13, 2021 for the iPhone 8 Plus, and as of that date, the iCloud backup feature of Scoggin's iPhone was enabled.  Leatha Report, Ex. 6, p. 25.  However, immediately following the factory reset of Chief Scoggins' phone, the City did nothing to try to recover Chief Scoggins' text messages.  Scoggins Dep., Ex. 31, p. 110:18-25.  Chief Scoggins admitted that after his iPhone was reset on October 8, 2020, he did not look for backups in either iTunes or iCloud. *Id.* at 111:14-17.

72.     Moreover, Brandon Leatha determined that the City's forensic vendor did not collect data from Chief Scoggins' iCloud account until July 15, 2021. *See* Leatha Report, Ex. 6, p. 25.  As of October 8, 2020, Scoggins had received a litigation hold notice, and the City was already aware that the Mayor was missing her text messages.  Brandon Leatha opined that "had the City collected data from Chief Scoggins' iCloud account shortly after his iPhone 8 Plus was factory reset on October 8, 2020, the messages lost due to the factory reset may have been recovered." *Id.*

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**Idris Beauregard's Deleted Text Messages**

73.     Idris Beauregard has no text messages from before October 9, 2020.  City's Supp. ROG Responses, Ex. 7, No. 23, p. 5.  Leatha concluded that Beauregard's iPhone 8 was factory reset on October 9, 2020, with the reset process having been completed on October 9, 2020, at 1:50 p.m. PST.  *See* Leatha Report, Ex. 6, p. 26.  Similar to Scoggins' story, the City claimed that Beauregard could not access his phone, and that Beauregard attempted to contact Apple to get help for his phone but that that did not resolve the issue.  City's Supp. ROG Responses, Ex. 7, No. 31, p. 21.  The City actually claimed that "the phone reset itself" and that after that, "[n]one of his text messages pre-dating the phone's automatic reset were available. . . ."  *Id.*

74.     However, an IT ticket contradicts the City's explanation for the reset and attributes the reset to Beauregard's intentional actions.   *See* IT Ticket dated 10/9/20 (SEA_00144296), a copy of which is attached hereto as Ex. 32.  In the ticket, a member of the City's IT department wrote about Beauregard's phone: "Very urgent please: Issue opening [sic] iTunes on is IPAD and iphone . . . I called and talked to him and **he was able to reset it over the weekend**."  (emphasis added).  October 9, 2020, was a Friday, so whoever wrote the note above must have added it to the ticket after Sunday, October 11, 2020.  Beauregard could not recall whether he had a conversation with someone about his phone, but he could have spoken to IT "a couple of times, based on what was happening with the phone."  Deposition of Idris Beauregard ("Beauregard Dep."), excerpts of which are attached hereto as Ex. 33, p. 124:16-19.

75.     October 9, 2020, was only three days after the Mayor's Office of the City informed the City Attorney's office about the Mayor's missing text message issue on October 6, 2020. *See* May 6, 2021 Barnett Letter, Ex. 22, p. 3.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 30

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

*Beauregard Manually Deleted 388 Text Messages from October 9, 2020 to March 9, 2021*

2

3

4

76.     Beauregard received a litigation hold notice on October 20, 2020. City's Supp. ROG Responses, Ex. 7, Attachment A, p.1. The City's litigation hold notices instructed Beauregard to preserve and search for text messages relating to this case. *See infra*, pp. 4 - 5.

5

6

7

8

9

10

77.     Despite receiving a notice from the City to preserve all records, including text messages, Beauregard continued to manually delete messages, deleting 388 text messages. *See* Leatha Report, Ex. 6, p. 27. Prior to the Leatha report being produced on April 28, 2022, the City had not disclosed that Beauregard had manually deleted any messages, either in response to discovery requests, or in its expert reports. In fact, the Faulkner Report contained no analysis of Beauregard's text messages or factory reset at all.

11

12

13

14

15

16

17

18

78.     At his deposition, Beauregard admitted that there "could have been" messages deleted between 10/9/20 and March 2021, and he admitted that some of the messages might have been between him and other City of Seattle employees. Beauregard Dep., Ex. 33, pp. 132:7-10 and 133:22–34:1. Beauregard claimed that he only deleted "just general simple messages that didn't have – pertain to anything that had to do with work or something as sensitive as that I felt I needed to keep." *Id.* at p. 132:15-20. But when he was asked whether the City policy was for document retention, he conceded that he ". . . did not know what the policy was. . . ." *Id.* at 132:22–133:4.

19

**Kenneth Neafcy's Deleted Text Messages**

20

21

22

23

24

79.     Kenneth Neafcy, who was in charge of the City's Emergency Operations Center that was active during part of CHOP, received a litigation hold on September 29, 2020. City's Supp. ROG Responses, Ex. 7, Attachment A, p.1. The City's litigation hold notices instructed Neafcy to preserve and search for text messages relating to this case. *See infra*, pp. 4-5. The City claims that Neafcy's iPhone was factory reset on October 26, 2020, after he could not remember

25

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 31

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

his passcode.  *Id.* at ROG No. 31, p. 20.  The City claims that it tried to recover the phone from iCloud, but it sent the passcode to the phone that was locked so he could not view it, and so he moved his SIM card to an old phone.  *Id.*   The City later examined Neafcy's phone and found that there were no text messages on it.  *Id.* at p. 21.  While the City has not admitted that Neafcy factory reset his phone, similar to Scoggins and Beauregard, Neafcy wrote an email to SPD's IT staff on October 28, 2020 suggesting that he had already factory reset his phone on his own: "HELP! I really need someone to assist me with getting my work phone back on line [sic].  **Currently the phone is completely wiped and has ZERO functionality**.  What do we need to do to get my work phone functioning again?"  *See* 10/28/20 Email from K. Neafcy to Susie DeMers and Chris Steel (SEA_00144308, at SEA_00144310), a copy of which is attached hereto as Ex. 34. (emphasis added). This email shows that Neafcy, at a time after he had received a litigation hold, either wiped his phone or had it wiped, which resulted in all messages being removed from it.   On October 28, 2021, Kevin Faulkner asked Neafcy questions about his phone and took notes of the conversation. See Email Notes of Kevin Faulkner, a true and correct copy of which is attached hereto as Exhibit 35. One of the notes in a section that is discussing how the phone came to be factory reset reads "he put in new one . . . it changed . . . and it says incorrect code . . . he thinks it go[t] [sic] to the point to delete his files."  *Id.* p. 2.  Leatha determined that Neafcy's phone was factory reset on October 27, 2020 at 3:26 p.m. PST, resulting in the loss of all text messages from 3/19/20 to 10/29/20 from Neafcy's phone.   Leatha Report, Ex. 6, p. 21.

***The City Failed to Look for Neafcy's Text Messages in Backups in Neafcy's iCloud Account***

80.     Neafcy indicated that he had an iCloud account at around the time that his phone was factory reset, as the City explained that Neafcy "tried to recover the phone from iCloud, but it sent the passcode to the phone that was locked so he could not view it." City's Supp. ROG Responses,  Ex. 7, at ROG No. 31, p. 21.  However, Leatha was able to recover evidence that

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 32

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Neafcy was able to reset his password on March 1, 2021 and that an iPhone XR was used to sign into Neafcy's iCloud account on March 6, 2021.  Leatha Report, Ex. 6, pp. 21–22.  The evidence that Leatha recovered were two emails that automatically generated by Apple and sent to Neafcy's email address.  *Id.*  It appears that whatever problem Neafcy had accessing his iCloud account was resolved in March 2021.

81.     If Neafcy had backed up his iPhone to his iCloud account before it was factory reset on October 27, 2020, that backup would have been kept for 180 days and would have still been available when data was collected from Neafcy's iPhone on March 1, 2021.  *Id.* at 22.  180 days from October 27, 2020, is April 25, 2021.  The City has not specified whether it attempted to recover Neafcy's text messages from an iCloud backup, but it reported that it became aware that Neafcy was missing text messages in "March 2021."  City's Supp. ROG Responses,  Ex. 7, ROG No. 27, p. 11.  The City had most of April 2021 to check Neafcy's iCloud account for any backups, but failed to do so.

### *Neafcy Manually Deleted 42 Messages from his Work Phone After He Got the Litigation Hold*

82.     Brandon Leatha determined that Neafcy had deleted 42 text messages from October 27, 2021 through March 1, 2021, by looking at the messages table in the text message database for the two collections of Neafcy's iPhone.  Leatha Report, Ex. 6, p. 21.  We can only assume that these deleted text messages were about a coordinated effort to delete evidence from City devices.

### Assistant Chief Eric Greening

83.     Assistant Chief Greening received two litigation holds in July 2020: on July 8, 2020 for the *Black Lives Matter v. City of Seattle* case, and on July 27, 2020 for this case.  City's Supp. ROG Responses,  Ex. 7, Attachment A, p.1. The City's litigation hold notices instructed Assistant Chief Greening to preserve and search for text messages relating to this case.  *See infra*, pp. 4 - 5. Similar to Beauregard, Scoggins and Neafcy, Assistant Chief Greening claimed that he was locked

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 33

**Morgan, Lewis & Bockius LLP**
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Tel +1.206.274.6400    Fax +1.206.274.6401

1    out of his phone due to a passcode problem. *Id.*, ROG No. 31, p. 20.  The City claims that on

2    October 26, (the same day as Neafcy's factory reset), Assistant Chief Greening attempted to gain

3    access to his phone but "none of the passcodes worked." *Id.* The City claims Greening gave his

4    phone to his assistant, Celina Villa to take Assistant Chief Greening's phone to IT to gain access.

5    *Id.*  The City claimed that Assistant Chief Greening received his phone back "later that day or the

6    next day," but "his text messages from before that date were no longer available."  *Id.*

7         84.    Brandon Leatha determined that Assistant Chief Greening's phone was reset on

8    October 26, 2020, prior to 9:14 a.m. PST.  Leatha Report, Ex. 6, p. 27.  On October 26, 2020,

9    Assistant Chief Greening's assistant, Celina Villa, emailed SPD IT staff, Brian Kennedy, and

10   wrote "We spoke last week and you were going to help me fix my boss's locked cell phone? Are

11   you around?"  *See* Emails between Brian Kennedy and Celina Villa (SEA_00141561), a copy of

12   which is attached hereto as Ex. 36.  This implies that the problem with Assistant Chief Greening's

13   cell phone was known longer than the City had disclosed.  Mr. Kennedy responded at 8:58 a.m.

14   PST on October 26, 2020 that he was "here at HQ," to which Celina replied "what do you need

15   from me, do you want me to come to your area?" *Id.*  Mr. Kennedy responded at 9:01 a.m. PST on

16   October 26, 2020 that "Could you come down with the phone? Thank you."  As stated above, the

17   phone was factory reset 13 minutes later at 9:14 a.m. PST on October 26, 2020.

18        85.    Brian Kennedy testified that when he looked at Assistant Chief Greening's phone,

19   he could recall specifically what they did, but "if he was locked out, we were going to take steps

20   to unlock it or – or reset it."  *See* Deposition of Brian Kennedy, excerpts of which are attached

21   hereto as Ex. 37,  p. 115:3-7.  Mr. Kennedy could not recall any of the steps he took to troubleshoot

22   Assistant Chief Greening's phone before it was reset on October 26, 2020.  *Id.* at 116:25 – 117:4,

23   119:8-12.  He also could not recall any conversations he had with Assistant Chief Greening about

24   the phone.  *Id.* at p. 116:10-16.  Mr. Kennedy said that it was his normal practice to advise a user

25

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 34

**Morgan, Lewis & Bockius LLP**
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, Washington 98101
Tel +1.206.274.6400   Fax +1.206.274.6401

1    of a potential data loss before he performed a factory reset on a phone.  *Id.* at 117:18-25.  Mr.

2    Kennedy could not recall that Assistant Chief Greening, or anyone else, informed him that he had

3    a litigation hold at the time that Mr. Kennedy performed the factory reset on Assistant Chief

4    Greening's phone.  *Id.* at 119:2-6, 122:9-15.  Mr. Kennedy could also not recall whether he was in

5    charge of setting up Assistant Chief Greening's phone after it was reset.  *Id.* at 124:19-25.  He

6    could not recall whether he looked for a backup on Chief Greening's phone.  *Id.* at 125:14-19.

7            **Christopher Fisher**

8            86.     Chris Fisher was the "Chief Strategy Officer" of the Seattle Police Department

9    during CHOP, and he worked closely with former Police Chief Carmen Best.  Chris Fisher

10   received a litigation hold on July 27, 2020 for this case.  City's Supp. ROG Responses,  Ex. 7,

11   Attachment A, p.1.  He also received a second litigation hold notice in the *Black Lives Matter v.*

12   *City of Seattle* case on the same date.  *Id.*  The City's litigation hold notices instructed Chris Fisher

13   to preserve and search for text messages relating to this case.  *See infra*, pp. 4 - 5.

14           ***Chris Fisher's Phone Was Set to Automatically Delete Messages Older than 30 Days***

15           87.     Brandon Leatha discovered that, when a backup was created of Fisher's phone on

16   February 22, 2021, it was configured to delete text messages after 30 days.  Leatha report, Ex. 6,

17   p. 17.  Both Durkan and Best had these same settings applied to their phones.  *See infra.*

18           88.     Mr. Fisher admitted that at some point he had set one of his phones set to delete

19   text messages older than 30 days.  Deposition of Chris Fisher, true and correct excerpts of which

20   are attached hereto as Ex. 38, p. 218: 25-219:3 (the "Fisher Dep.").  Mr. Fisher admitted that he

21   had no reason to doubt that his phone was set to delete messages older than 30 days when he turned

22   it in to the City.  *Id.* at 219:5-11. (A: "If it's the same – if we're talking about the same phone,

23   correct.").

24

25

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 35

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1

***Chris Fisher Factory Reset His Phone in the Fall of 2020***

2

89.     Despite having received a litigation hold in July 2020, there is evidence that Fisher

3

took multiple steps to delete messages from his phone.  Brandon Leatha was able to determine that

4

Chris Fisher's iPhone was factory reset on November 2, 2021 and restored from an iCloud backup.

5

Leatha Report, Ex. 6, p. 18.  The City has also claimed that Fisher factory reset his phone on

6

December 3, 2020, after Fisher could allegedly not access his phone. City's Supp. ROG Responses,

7

Ex. 7, ROG No. 31, pp. 21 – 22.  The City claimed that Fisher reached out to IT for assistance,

8

and that they told him that "there was no way to access the phone without resetting it to its factory

9

settings.  Ultimately, Fisher followed this guidance." *Id.* at p. 22.

10

90.     However, at his deposition, Fisher clarified that the City's interrogatory response

11

was not accurate, and that he did not reach out to the City's IT department in the fall of 2020. *See*

12

Fisher Dep., Ex. 38, p. 215:14 – 216:3; 232:1-6.  Fisher explained that he had been locked out of

13

his phone in March of 2020, before CHOP, and during that occasion, he reached out to the IT

14

department and they advised him to factory reset his work iPhone.  *Id.* at p. 198:13–25.  Following

15

that incident with forgetting his passcode, Fisher did not remember taking any action other than

16

"trying to not pick such random passwords." *Id.* at p. 196:17-19.  Fisher testified at his deposition

17

that he did not recall whether he contacted the IT department in the fall of 2020 when he reset his

18

phone.  *Id.* at p. 210:4-9.  ("Q.:  Okay.  So – so then is it correct to assume that on the second

19

incident after March, that you did not contact the IT department for help in gaining access to your

20

phone? A: I don't recall.") He noted that "I don't recall the second incident [that occurred on

21

November 3, 2020], like in detail of understanding.  My assumption is having learned in March

22

that there was no way they can get in, if I got locked out again, I would have just done the same

23

thing." Id at 209:24-210:3.

24

25

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

91.     Fisher testified that he did not have any recollection of any backup or restoration of his work phone that occurred in November 2020.  *Id.* at 242:5-12.

### *Chris Fisher Also Deleted All But 16 of the Text Messages from His Phone*

92.      In addition, Leatha determined that all but 16 of Fisher's 15,843 text messages had been deleted from Fisher's phone before it was turned in in December 2020.  Leatha Report, Ex. 6, p. 18.  Leatha noted that there were only 16 messages remaining on Fisher's phone, and they were dated from December 3, 2020 to December 8, 2020.  *Id.*  The City failed to disclose that Fisher had deleted thousands of messages from his iPhone.  Fisher had no explanation for why there were only 16 text messages on the phone he handed in.   Fisher Dep., Ex. 38, p. 233:4-22. ("I don't think I know enough between the factory resets and how it works on the back end why there were only 16.").

93.     Leatha also determined that Fisher used an undisclosed device for work communications.  Leatha Report, Ex. 6, p. 18-19. Leatha determined that "Fisher likely used an iPhone XS between September 22, 2018 and October 23, 2020, and switched to an iPhone 12 Pro after that.  *Id.* at 18-19.  Leatha further determined from the Durkan and Best text message productions that Fisher was using a different phone number (than his City issued phone) to text with the Mayor and Chief Best.  *Id.*

94.     After the Leatha Report was issued on April 28, 2020, detailing all of Fisher's spoliation, counsel for Plaintiffs requested that the City produce text messages from Fisher's previously undisclosed device, and provide an image of Fisher's previously undisclosed phone so that Plaintiffs' forensic expert could conduct a forensic analysis on it.  *See* Email chain dated 8/1/22 between Gabriel Reilly-Bates and Shane Cramer, a copy of which is attached hereto as Ex. 39. Counsel for the City responded stated that "As for Mr. Fisher, he is in the process of collecting his relevant, work-related texts on his personal device, following the guidance provided to public

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 37

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

entities and their employees in *Nissan*." *Id.*  Counsel for the City explained that the delay in the self-collection was being caused by a software problem. *Id.*  Counsel for Plaintiffs responded:

> I'm writing to you concerning your proposed production of Chris Fisher's text messages from his personal phone that he used for work purposes.  Based on your email below, you are apparently refusing to provide our forensic expert with an image of Chris Fisher's phone, and it appears that you are allowing him to self-collect text messages.  This is unacceptable to us, given Brandon Leatha's conclusions that Mr. Fisher Factory reset his phone on 11/2/2021, with no apparent explanation, manually deleted 15,843 text messages from his work phone, and configured his work phone to delete messages after 30 days.  Moreover, in our meet-and-confer sessions over a year ago, you or Caitlin assured me that the City had asked witnesses (such as Fisher) to produce records from their personal devices.  Obviously, Mr. Fisher did not search for messages then, as we received nothing directly from his personal phone that he clearly used for City business.
>
> If you will not agree to allow us to image Mr. Fisher's phone voluntarily, then we will have to issue a subpoena to him personally. Since you have stated that you are representing Mr. Fisher, please confirm that you will accept service of the subpoena.  We will seek an image of his phone in the subpoena duces tecum.   If Mr. Fisher does not comply with our subpoena, then we will seek to compel the City and Mr. Fisher to produce the image of his phone.  Given the evidence of deletion on Mr. Fisher's City issued work phone, we are entitled to search for evidence of deleted data on his personal phone.  Of course, we would be open to exploring avenues of voluntary compliance with our reasonable requests.

*Id.*

95.    The City refused to voluntarily provide Plaintiffs' forensic expert with access to Fisher's undisclosed phone, so counsel for the Plaintiffs issued a subpoena to Chris Fisher personally, for which the City accepted service.  A true and correct copy of Plaintiffs' Subpoena to Chris Fisher and Rider dated August 4, 2022, is attached hereto as Exhibit 40.

96.    Fisher admitted that he, too, had a habit of periodically deleting text messages from his phone that he perceived to be transitory text messages.   Fisher Dep. Ex. 38, 204:10-15.  He admitted that he continued to delete text messages from his phone following receiving the litigation

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 38

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

hold notices in the summer of 2020, although he claimed that the messages he deleted had "nothing to do with this." *Id.* at 204:17 – 205:8.

### The City Failed to Preserve Fisher's December 2, 2020 Backup

97.    Fisher's iPhone 7 was backed up on February 22, 2021.  At that time, Leatha determined that the last successful backup of Fisher's device was on December 2, 2020. *Id.*  That backup, and the one from the prior week, would have still been available on February 22, 2021, when the phone was backed up. *Id.*  That is because backups are generally saved in the iCloud for 180 days. *Id.*  The City became aware his phone was missing text messages in March 2021. *Id.*, p. 11.  180 days from December 3, 2021, is June 1, 2022.  Almost a year after this lawsuit was filed, the City failed to take steps to retrieve Fisher's backups, which could have contained additional evidence of Fisher's spoliation.

### Fisher's Microsoft Teams Messages Were Not Recoverable by Leatha

98.    Chris Fisher had Microsoft Teams installed on his City issued iPhone.  However, Leatha could "not locate recoverable messages or other forms of communication sent or received by the Microsoft Teams application." *See* Leatha Report, Ex. 6, p. 18.

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 39

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

***Plaintiffs' Counsel Have Met and Conferred Regarding This Motion***

99.     Plaintiffs' counsel have met and conferred many times with the City's counsel numerous times about the subject of this motion. Most recently, Plaintiffs met and conferred with the City about this motion and its filing on September 28, 2022. The parties did not come to any agreement that made this motion unnecessary.

I declare under the penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 28th day of September, 2022 at Seattle, Washington.


                                        *s/ Angelo J. Calfo*
                                   Angelo J. Calfo

DECL. ANGELO J. CALFO IN SUPPORT OF
PLAINTIFFS' MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE
(Case No. 2:20-cv-00983-TSZ) - 40

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401