# EXHIBIT 31

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

───────────────────────────────────────────────

HUNTERS CAPITAL, LLC, et al.,     )
                                  )
                Plaintiff,        )
                                  )
        vs.                       ) No. 20-cv-00983
                                  )
CITY OF SEATTLE,                  )
                                  )
                Defendant.        )
───────────────────────────────────────────────


  VIDEOTAPED VIDEOCONFERENCE 30(B)(6) AND INDIVIDUAL

      DEPOSITION UPON ORAL EXAMINATION OF

              CITY OF SEATTLE

            (HAROLD SCOGGINS)

───────────────────────────────────────────────


    ***PORTIONS OF THIS TESTIMONY ARE DESIGNATED

          CONFIDENTIAL AND ARE SEALED

          UNDER A SEPARATE COVER.***




              Seattle, Washington

    (All participants appeared via videoconference.)


DATE TAKEN:   SEPTEMBER 14, 2021

REPORTED BY:  CINDY M. KOCH, RPR, CRR, CCR #2357

fde9268f-5984-4105-96c9-722fce47c32c

Page 99

1      So on that morning I came into the office, I

2  sent a note to our IT folks, and I said, "Hey, I need

3  some assistance.  My phone is locked up."

4      We go through a series of communications.  I

5  say, "Can you load iTunes on my work computer?"

6  Throughout the course of this day I couldn't get that

7  accomplished.  They're sending me, "Go on the website,

8  look at this," or "do that," and so I'm trying to manage

9  my day, and I'm trying to get my phone unlocked, all at

10  the same time.

11      And at the end of that day, after multiple

12  communications and conversations, we hadn't solved the

13  problem, and no one had helped me to solve the problem,

14  so I went to the Apple store, and waited in line at the

15  end of the day because I did not want to go a night

16  without having my phone.

17      And the reason why this becomes very important

18  for me as a person is the last time when I didn't have

19  my phone at night was the night of the Greenwood

20  explosion.  Many of you may remember here in Seattle we

21  had a building that exploded in the middle of the night

22  on Greenwood.  That night I didn't have my phone.  I

23  dropped it that day, and it actually broke that day.  So

24  I gave it to IT, I think it's not a big deal, they'll

25  give me a new phone tomorrow.  2:00 or 3:00 in the

Page 100

1  morning there's a fire engine outside of my house,

2  knocking on my front door saying, "Chief, we had an

3  explosion.  Twelve firefighters are in the hospital."

4        They couldn't call me, even on my personal

5  phone.  I set that to do not disturb at night, so I get

6  no phone calls on my personal phone.  So I thought, one

7  night, not a big deal.  We have an explosion.

8        That's what was playing in my mind.  So when I

9  went to the Apple store and -- and this is during COVID,

10  so, you know, you wait in line, and, you know, he takes

11  your phone inside, they go look at it, and they said the

12  only thing we can do is -- is a hard reset.  I said

13  okay.  So they did the hard reset.  I reconnected up

14  with our dispatch center so I can get our emergencies

15  sent to me.

16       Q.  Okay.  So the iPhone 8 has a -- has a

17  fingerprint function on it, right, where you can put

18  your thumbprint on there and it will open up the phone;

19  is that correct?

20       A.  I believe that is correct.

21       Q.  Okay.  Did you usually use your fingerprint to

22  get into your phone?

23       A.  I think I did.  And that was another thing that

24  was puzzling to me on why all this happened on that

25  morning.

fde9268f-5984-4105-96c9-722fce47c32c

Page 108

1    A.  I think it's probably one of the first emails I

2  sent that morning.

3    Q.  Well, let me ask you this:  So would it have

4  been after you had been locked out of your phone, or

5  before you --

6    A.  Oh, yes.  I'm -- no, no, it was after I was

7  locked out of my phone.

8    Q.  Okay.  And what did you -- what do you know was

9  done to try to get into your phone, either by you or the

10  IT department after you had been locked out?

11    A.  I think all the attempts were by me.  I think

12  they sent me things to try, but I don't think anyone

13  actually showed up.  And that was probably a bit of my

14  frustration, too.  And one of the things that -- when

15  you look in the online information, if you get iTunes on

16  your computer maybe you can do something.  But even

17  throughout the course of this day, I couldn't even get

18  iTunes downloaded on my computer, and for me it was a

19  bit puzzling.  I said, wait a minute.  I'm the fire

20  chief of the City of Seattle, and you mean I can't get

21  the IT department to load me iTunes on my computer to

22  try to fix my phone?  So that probably paid into my

23  mounting frustrations throughout the course of that day.

24    Q.  So did you --

25    A.  And I have iTunes now.

Page 110

1    Q.  Did you have a backup on iTunes, an iPhone

2  backup on iTunes?

3    A.  I don't think so.  I mean, I -- I have an Apple

4  ID, but it may have been already full.  I'm not sure.

5  But it's not something that I -- clearly it's not

6  something that I did.  I never connected my phone up to

7  my computer, and never even paid attention to that,

8  actually.

9    Q.  Okay.  So did you have a -- did you have an

10  iCloud account?  Do you know?

11    A.  I have an Apple ID, and I -- I do believe I

12  have an iCloud account, yes.

13    Q.  Okay.  Do you know if you had automatic updates

14  that were going to the -- to the cloud.  Automatic --

15  I'm sorry, automatic backups that were being saved to

16  the cloud?

17    A.  I don't -- I don't know that part.

18    Q.  Do you know, once your phone had been reset by

19  the Apple department, whether you went and looked to see

20  whether you had any backups either on iTunes or in

21  iCloud?

22    A.  I did not go and look.  When I got the phone

23  reset, my first call was to our dispatch center to made

24  sure -- to make sure I reconnected there.  And anything

25  else, I -- I did later.

fde9268f-5984-4105-96c9-722fce47c32c

Page 111

1    Q.  Okay.  So at some point you did go and look for

2    backups in iTunes on the cloud?

3    A.  No, I didn't go -- no, no, I didn't -- oh, I'm

4    sorry.

5    Q.  Go ahead.

6         MR. FARMER:  Objection.  Misstates prior

7    testimony.

8         Can I ask both of you to pause just a little

9    bit because you -- you're tending to over -- talk over

10   each other.

11        THE WITNESS:  Gotcha.

12        MR. FARMER:  Thanks, Mr. Weaver.

13   BY MR. WEAVER:

14   Q.  Did you at any point after October 8, 2020,

15   look to see whether you had backups for your phone in

16   either iTunes or iCloud?

17   A.  No, I did not.

18   Q.  Do you know whether anyone else did?

19   A.  Yes.

20   Q.  Okay.  Who did?

21   A.  I believe it's our IT department.

22   Q.  Okay.  Do you know who in your IT department?

23   A.  I don't.

24   Q.  Okay.  What sorts of messaging apps or programs

25   did you use on your City-issued phone for messaging in

Hunters Capital, LLC v. City of Seattle          30(b)(6) and Individual Deposition of Harold Scoggins

Page 224

1                        C E R T I F I C A T E

2

3    STATE OF WASHINGTON

4    COUNTY OF PIERCE

5

6          I, Cindy M. Koch, a Certified Court Reporter in

7    and for the State of Washington, do hereby certify that

8    the foregoing transcript of the deposition of Harold

9    Scoggins, having been duly sworn, on September 14, 2021,

10   is true and accurate to the best of my knowledge, skill

11   and ability.

12         IN WITNESS WHEREOF, I have hereunto set my hand

13   and seal this 23rd day of September, 2021.

14

15

16

17   _____

18         CINDY M. KOCH, CCR, RPR, CRR

19   My commission expires:

20   JUNE 9, 2022

21

22

23

24

25

# EXHIBIT 32


**Seattle**
Information Technology

IT Service Hub

Incident Report

**Incident #:** 5181570          **Status:** Closed          **Priority:** 4

| Category: IPAD | Source: Phone |
| --- | --- |

**Customer:** Idris Beauregard
**Phone:**   206-684-3056                              206-684-3056
**Department:**   Seattle Public Utilities
**Building:**   Seattle Municipal Tower                 **Floor/Space:**   61/6140A
**Email:**   Idris.Beauregard@seattle.gov

**Created by:**   GRANTJM                  **Created:** 10/9/2020 9:04:47 PM
**Owner:**   Janet.Grant@seattle.gov
**Owner Team:**   Service_Desk

## Tasks

| ID | Subject | Status | Owner | Team Email | Details |
| --- | --- | --- | --- | --- | --- |
| 511536 | Very urgent please:  Issue opeining iTunes on his IPAD and iphone | Completed | ValdezH | ITD_FDS_DeviceSupport_Utilities@seattle.gov | Please rush.I called and talked to him and he was able to reset it over the weekend. Terry LaFave |

## Incident Description

His cellphone is 206-931-5411> Please very urgent unable to do any work..  He is located in his office in SMT 61st floor Director Office (AutoClosed)

# EXHIBIT 33

Page 1

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

_____

HUNTERS CAPITAL, LLC, et al., )
                              )
            Plaintiffs,       )
                              )
        v.                    ) Case No. 20-cv-00983-TSZ
                              )
CITY OF SEATTLE,              )
                              )
            Defendant.        )
_____

VIDEOTAPED VIDEOCONFERENCE DEPOSITION UPON ORAL
EXAMINATION

OF

IDRIS BEAUREGARD

_____

(All participants appearing via Zoom videoconference.)

Taken at

Seattle, Washington

DATE TAKEN:  July 14, 2022

REPORTED BY:  KATHLEEN HAMILTON, RPR, CRR, CCR 1917

a963f83a-34b3-4bf5-b971-b66661f9845d

Hunters Capital, LLC v. City of Seattle                    Idris Beauregard

Page 124

1       A.   I would have never called IT at that time.

2       Q.   Do you know whether IT called you October 9th at

3   9:04 p.m.?

4       A.   They would have no way of getting in contact

5   with me, no.

6       Q.   Do you recall speaking to somebody named Terry

7   LaFave in the IT department?

8       A.   I don't recall the name of the person I spoke

9   to.

10      Q.   Did -- did somebody call and talk to you about

11  this, and did you tell them that your phone had reset

12  over the weekend?

13      A.   That could have been.  I don't know.  Yeah, that

14  could have been.  I don't -- I don't remember having

15  that conversation.

16      Q.   Okay.  How many times did you talk to IT about

17  your phone?

18      A.   It could have been a couple of times, based on

19  what was happening with the phone.

20      Q.   Okay.  You don't recall whether -- do you

21  remember whether you called them at -- on October 9th at

22  9:04, and they didn't call you back until Monday about

23  your phone?

24      A.   Definitely didn't do that, no.

25      Q.   But I guess you don't know -- you don't know how

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

a963f83a-34b3-4bf5-b971-b66661f9845d

Hunters Capital, LLC v. City of Seattle                    Idris Beauregard

Page 132

1        Do you recall manually deleting any messages

2   during that time period?

3              MR. CRAMER:  Objection.  Form.

4              THE WITNESS:  I don't recall deleting any

5   messages that were sensitive to the litigation hold, no.

6   BY MR. WEAVER:

7        Q.   Okay.  Were there messages that you deleted,

8   whether they were sensitive to the litigation hold or

9   not, between October 9th, 2020, and March 2021?

10       A.   There could have been.

11       Q.   What sort of messages would you have possibly

12   deleted from your phone during that time period?

13              MR. CRAMER:  Objection.  Form.

14              Go ahead.

15              THE WITNESS:  Just casual -- like just

16   general messages that were... simple.  They're just --

17   it's hard to think about them now at the moment, but

18   yeah, just general simple messages that didn't have --

19   pertain to anything that had to do with work or

20   something as sensitive as that I felt I needed to keep.

21   BY MR. WEAVER:

22       Q.   Do you know what the City policy was at that

23   time about whether you should keep all messages or

24   whether you should keep only certain messages that you

25   believe were important?

a963f83a-34b3-4bf5-b971-b66661f9845d

Hunters Capital, LLC v. City of Seattle                    Idris Beauregard

Page 133

1      A.    Not... not on those type of messages, no.
2   Sometimes they have to do with a football game or
3   something.  No, so I didn't know what the City policy
4   was to that.
5      Q.    Okay.  Why would you delete messages about a
6   football game from your phone?
7      A.    It just -- they were just general messages that
8   I felt like weren't needed.
9      Q.    Well, do you think -- do you delete messages,
10  other than personal messages, from your work cellphone?
11     A.    No.  What do you mean "personal messages"?
12     Q.    Okay.  I assume the messages about the football
13  games -- were those personal messages or were those
14  work-related messages?
15     A.    Well, they --
16              MR. CRAMER:  Objection.  Form.
17              Go ahead.
18              THE WITNESS:  Well, they might have came
19  from somebody in the City that I work with, so they
20  weren't necessarily in the topic of work.
21  BY MR. WEAVER:
22     Q.    Okay.  So there might have been communications
23  between you and other City -- City of Seattle employees
24  that you would have deleted from your phone between
25  October and March of 2020; is that right?

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

a963f83a-34b3-4bf5-b971-b66661f9845d

Hunters Capital, LLC v. City of Seattle                    Idris Beauregard

Page 134

1   A.   There might have been, yes.

2   Q.   So do you recall when you first reported to City

3   officials that your text messages had been deleted?

4   A.   I don't recall the day, no.

5   Q.   Do you know whether it was in 2020 or 2021?

6   A.   No, I don't know the date.  I don't know.

7   Q.   Do you recall whether you told anybody at the

8   City that you had deleted your -- that your phone had

9   been reset and that you had lost messages before March

10  of 2021?

11         MR. CRAMER:  And, again, I will instruct you

12  not to disclose any communications that you had with the

13  City Attorney's Office or our office.  But to the extent

14  that you had any of those communications with people

15  outside of the City Attorney's Office or us, you can

16  testify to them.

17         THE WITNESS:  Yeah, no, I don't recall.

18         MR. WEAVER:  Shane, are you instructing him

19  not to answer as far as any disclosure he might have

20  made, even if it was to somebody in the Seattle

21  attorney's office, prior to March 2021?

22         I'm not asking for the content; I'm asking

23  whether he disclosed it.

24         MR. CRAMER:  Well, that is the content.

25         MR. WEAVER:  I don't even know who would --

a963f83a-34b3-4bf5-b971-b66661f9845d

Hunters Capital, LLC v. City of Seattle                    Idris Beauregard

Page 178

C E R T I F I C A T E

1

2

3    STATE OF WASHINGTON

4    COUNTY OF KING

5

6         I, Kathleen Hamilton, a Certified Shorthand

7    Reporter and Notary Public in and for the State of

8    Washington, do hereby certify that the foregoing

9    transcript of the deposition of IDRIS BEAUREGARD, having

10   been duly sworn, on JULY 14, 2022, is true and accurate

11   to the best of my knowledge, skill and ability.

12        IN WITNESS WHEREOF, I have hereunto set my hand

13   and seal this 22ND day of JULY, 2022.

14

15

16

17

18   _____
     KATHLEEN HAMILTON, RPR, CRR, CCR #1917

19

20

21

22

23

24

25

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

a963f83a-34b3-4bf5-b971-b66661f9845d

# EXHIBIT 34

**To:**    Neafcy, Kenneth[Kenneth.Neafcy@seattle.gov]
**Cc:**    DeMers, Susy[Susy.DeMers@seattle.gov]
**From:**  Lutu, Smith
**Sent:**  Wed 10/28/2020 9:00:26 PM
**Subject:**  RE: HELP!
image001.wmz

Susy,
I would set up Ken with a new phone ASAP. Given Chris Steel has exhausted the same resources I would've used—I would say get a new phone.
AppleID troubleshooting will take more time than its worth.
Ken, but I am still open to help out while we wait for your new phone—feel free to call me @ 206-549-1106.
Smith

**From:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:53 PM
**To:** Lutu, Smith <Smith.Lutu@seattle.gov>
**Cc:** DeMers, Susy <Susy.DeMers@seattle.gov>
**Subject:** RE: HELP!

I will be heading into a meeting with Mike Fong and Stephanie Formas starting at 3:30 and will be tied up though at least 6p with that.
I am neck deep in dealing with EOC election response activation and am getting considerable heat from the Mayor's office and others who are unable to reach or text me on my work phone. I really need this phone back up and running tonight and if that cant be done then I need a new phone with a new number tomorrow. I really need some help here… please.



**Kenneth D. Neafcy**
*Operations Coordinator,* **Office of Emergency Management**
City of Seattle
105 5th Avenue South, Suite #300; Seattle, WA 98104
D: 206.233-5091 | M: 206.423-3166 | O: 206.233-5076 | F: 206.684-5998
*Sign up for emergency alerts from AlertSeattle:* **alert.seattle.gov**

**From:** Lutu, Smith <Smith.Lutu@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:46 PM
**To:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>
**Cc:** DeMers, Susy <Susy.DeMers@seattle.gov>
**Subject:** RE: HELP!

Ken,
Unfortunately I am unavailable as I'm working offsite @ our data center. I am heading to lunch @ 2p, then home.
Would you be available after 3p today?
But in the meantime…
Here is a resource you can use: https://support.apple.com/en-us/HT204921
Also this is a great refresher on how to reset your appleid password: https://support.apple.com/en-us/HT201487
Smith Lutu
CommTech Buyer
SEATTLE INFORMATION TECHNOLOGY
O: 206.684.8473 | smith.lutu@Seattle.gov

SEA_00144308

**Best-in-Class Digital Services**
Facebook | Twitter | E-Newsletter

**From:** DeMers, Susy <Susy.DeMers@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:36 PM
**To:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>
**Subject:** RE: HELP!

I've contacted the guy on our team who is the Apple-whisperer. I asked him to assist.

Susy DeMers, MSA Sr.

Seattle IT Asset Management

**SEATTLE INFORMATION TECHNOLOGY**

T: 206.684.3777 | susy.demers@seattle.gov

**Best-in-Class Digital Services**
Facebook | Twitter | E-Newsletter

**From:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:32 PM
**To:** DeMers, Susy <Susy.DeMers@seattle.gov>; Steel, Chris <Chris.Steel@seattle.gov>
**Cc:** Nelson, Laurel <Laurel.Nelson@seattle.gov>
**Subject:** RE: HELP!

TJ has done all he can. Its not going to my city email account it will only send it to my city phone number which I cant access and it wont display it on the front screen.

Now what?



**Kenneth D. Neafcy**

*Operations Coordinator,* **Office of Emergency Management**
*City of Seattle*
105 5th Avenue South, Suite #300; Seattle, WA 98104
D: 206.233-5091 **|** M: 206.423-3166 **|** O: 206.233-5076 **|** F: 206.684-5998
*Sign up for emergency alerts from AlertSeattle:* ***alert.seattle.gov***

**From:** DeMers, Susy <Susy.DeMers@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:31 PM
**To:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>; Steel, Chris <Chris.Steel@seattle.gov>
**Cc:** Nelson, Laurel <Laurel.Nelson@seattle.gov>
**Subject:** RE: HELP!

Don't you have the option for Apple to email you using your Apple ID? I'm sorry – I am not that proficient with iPhones. TJ may be able to assist you.

Susy DeMers, MSA Sr.

Seattle IT Asset Management

**SEATTLE INFORMATION TECHNOLOGY**

T: 206.684.3777 | susy.demers@seattle.gov

**Best-in-Class Digital Services**
Facebook | Twitter | E-Newsletter

**From:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:29 PM
**To:** Steel, Chris <Chris.Steel@seattle.gov>; DeMers, Susy <Susy.DeMers@seattle.gov>
**Cc:** Nelson, Laurel <Laurel.Nelson@seattle.gov>

**Subject:** RE: HELP!

Ok.

My ID is my email address: **kenneth.neafcy@seattle.gov** When I try to reset the password for my work apple account it sends the code to my work phone number which wont display it so I have no way to reset the password.

Now what?



**Kenneth D. Neafcy**

*Operations Coordinator,* **Office of Emergency Management**
City of Seattle
105 5th Avenue South, Suite #300; Seattle, WA 98104
D: 206.233-5091 | M: 206.423-3166 | O: 206.233-5076 | F: 206.684-5998
*Sign up for emergency alerts from AlertSeattle: alert.seattle.gov*

**From:** Steel, Chris <Chris.Steel@seattle.gov>
**Sent:** Wednesday, October 28, 2020 1:15 PM
**To:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>; DeMers, Susy <Susy.DeMers@seattle.gov>
**Cc:** Nelson, Laurel <Laurel.Nelson@seattle.gov>
**Subject:** RE: HELP!

Ken,

The problem we are running into is the OEM phones are not managed and support by SPD. I would assume when they were first setup, during that process you had to create and Apple ID and password for a work related account. When OEM was first issued the phone, was anyone on hand to help set them up or where you given instructions? If the phone was reset, you should be able to go through the prompts to set back up. Again, I think you will need the Apple ID and PW to complete the process.

Chris

**From:** Neafcy, Kenneth <Kenneth.Neafcy@seattle.gov>
**Sent:** Wednesday, October 28, 2020 12:51 PM
**To:** DeMers, Susy <Susy.DeMers@seattle.gov>; Steel, Chris <Chris.Steel@seattle.gov>
**Cc:** Nelson, Laurel <Laurel.Nelson@seattle.gov>
**Subject:** HELP!

I really need someone to assist me with getting my work phone back on line. Currently the phone is completely wiped and has ZERO functionality.

What do we need to do to get my work phone functioning again? Feel free to call me to discuss next steps.



**Kenneth D. Neafcy**

*Operations Coordinator,* **Office of Emergency Management**
City of Seattle
105 5th Avenue South, Suite #300; Seattle, WA 98104
D: 206.233-5091 | M: 206.423-3166 | O: 206.233-5076 | F: 206.684-5998
*Sign up for emergency alerts from AlertSeattle: alert.seattle.gov*

# EXHIBIT 35

**Redacted - Attorney Client / Work Product**

---------- Forwarded message ---------
From: **Kevin Faulkner** <kevin.faulkner@crypsisgroup.com>
Date: Fri, Nov 6, 2020 at 4:17 PM
Subject: Call Notes - Orrick - Seattle
To: Kevin Faulkner <kevin.faulkner@crypsisgroup.com>


Aravind Swaminathan
Michelle Chen - mayors office

Jessica Nadelman - City

City IT:
Emmanuel Arhu
Braden Heil
Regi Alencastro
Ivan Balbuena

Steve Boyce
Kevin

This call confidential call - privileged

Emails should be labeled as Privileged and confidential

Goals:
recover messages
make sure everything is done that can be done


Where phones are:
3 phones total

1 in Michelle'd desk drawer - phone that got replaced in July - cracked
1 Mayor has her current phone with her iphone 11
1 replaced in 11/2019 - at that time old phone was left with Mayor's assistant - it is currently still with EA

first phone was replaced due to carrier change
the next iphone 8 cracked - possibly wiped

then she moved to iphone 11

iCloud account never changed

Michelle uses iExplorer
Mayor does not use software to backup
Only EA (Colleean or Michelle) to take phone

Michelle would sync up phone

Mayor uses a Surface tablet
Does she have home computer that she plug phone into

Timing of missing texts
November phone, cracked phone, and iPhone 11
may want to recover all
2 phones most concerned with are the cracked phone and the 11


Mayor's iPhone 8 - november phone 12/14/2017 - 8/28/2019 preserved
she took office in 2017
Phone replaced in November - Aug to Nov - dont have anything
iExplorer - iphone 11 account - current phone 6/26/2020 - 8/21/2020


Braden worked with cracked one and the 11

Magnet acquire to logical acquire
IEF
got 5

Carrier was able to produce log of texts
SMS only of course

Send steps to Jessica and Aravind

Setup Braden on Sharefile

Replace her phone, keep the current one

Improve practice going forward

They have a forensic lab in the city tower - key access

Faulkner_000002

**Kevin Faulkner**
The Crypsis Group
Vice President
o:  +1 512.265.8557
m: +1 512.265.5733
kevin.faulkner@crypsisgroup.com | www.crypsisgroup.com

**Faulkner_000003**

# Redacted - Attorney Client / Work Product

---------- Forwarded message ---------
From: **Kevin Faulkner** <kevin.faulkner@crypsisgroup.com>
Date: Fri, Mar 19, 2021 at 12:55 PM
Subject: Call Notes - Seattle
To: Kevin Faulkner <kevin.faulkner@crypsisgroup.com>


Call with Michelle Chen

Get text messages from iphone 11

used iExplorer in the past - give option for PDF form
example - text messages in this date range, custodian, date range

She needs that PDF format for production and the ability to date and custodian filter, plus
keyword search.

Going to try to get our forensic image into iExplorere and deliver to her, plus provide the
cellebrite spreadsheet.


**Kevin Faulkner  |  Vice President**
Crypsis, a Palo Alto Networks Company  |  1460 Broadway  |  New York, NY 10036  |  USA
**Office:** +1.646.792.5353  |  **Mobile:** +1.512.265.5733  |  www.paloaltonetworks.com



The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.

# Redacted - Attorney Client / Work Product

---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Thu, Jun 24, 2021 at 6:05 PM
Subject: Seattle Call Notes
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


Melanie Phillips
Jessica Nadelman
Daviana Kadiyan
Jim Loter
Regi
Emmanuel Arhu
Susy DeMers


Policies

?Written policies on how to set up phones?
-no written policies - just a doc with steps on setup
-Regi - yes, doc with steps

repo of creds - Susy says it depends on the department
Emmanuel said yes - they setup apple ID and keep it on Sharepoint site
setup passcodes but dont keep them in sharepoint

do they have transfer phone to phone doc?
Emanuel: yes

do they visually check settings?
Susy - no
Emmanuel? - yes on phone to phone transfer they compare number of contacts, and look at
some text messages, number of pictures
practice - not documented
Regi - default setting is correct - dont check settings
mail app - disable icloud mail
enable contacts and text message sync
settings are procedure, not documented

Records of setting up new phones or transferring?
no screenshots or documents

Any contemporaneous documentation or notes on the 3 mayor phones?
maybe some emails between emanuel and Regi just saying things are done; etc
Susy - just emails that the phones were ordered or ready for pickup

Phones at issue - how were they procured
Mayor's transition team for the first one - had one in stock. Susy gave Mayor and Dept Mayor
phones. Then she changed phone number. Then had connectivity issues at home. Someone
asked for Firstnet phone and Susy provided. Then moved number from Verizon to Firstnet.
All procured through Susy.
New iphone SE - procured through Susy
IT does not remember switching out

Who setup each phone
Current phone - setup by both Regi and Emmanuel
11 - Emmanuel
8 Firstnet - Regi
8 Verizon - Regi

Process / Practice for the mayor's phones - did they have to deviate from normal process?
No deviation

No documentation on Mayor's transfers

Mayor thought the July 4th phone was delivered to her house - is that right?
Regi never delivered anything to her house
Susy says they put a signal booster out at her home
IT did not deliver a phone to the Mayor's house
Maybe protection detail or assistant delivered the phone to the mayor's house
Mayors phones, usually IT gives them to Colleen

Sources of backup?
IT backup any data? Backup on iCloud, and Regi understands Mayor's office backed up to
iExplorer.
Usually do phone to phone transfer but also do icloud backup
They expect backups continue to iCloud but they dont check it

? on iExplorer
Regi helped set it up, but does not use it or know capabilities

What backup does Firstnet keep?
Susy - no idea

Web says activation on Firstnet can change settings, do they have knowledge on this?
No - its setup like any other phone - nothing special

Status of Smarsh and intune? - not relevant to the mayors phones

Faulkner_000006

Jessica asked: oldest iPhone 8 Plus verizon - where did it go?
Regi said he did the swap - Colleen said the mayor wanted to hold on to it and Regi never heard about

Regi and Emmanuel checked their own desks - its not there
Susy says she has a box of returned phones and she doesn't know who many of them belong to

Susy said they moved floors and then purged phones, got rid of locked or old phones, over 250 phones 3 years ago

**Kevin Faulkner  |  Unit 42, Vice President**
Palo Alto Networks  |  1460 Broadway  |  New York, NY 10036  |  USA
**Office:** +1.646.792.5353  |  **Mobile:** +1.512.265.5733  |  [www.paloaltonetworks.com](http://www.paloaltonetworks.com)



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*

**Redacted - Attorney Client / Work Product**

---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Tue, Jul 27, 2021 at 5:21 PM
Subject: Seattle Call Notes - Braden Heil
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


Braden Heil
Jessica Nadlelman
Daviana Kadiayan
Preston Miller
Melanie Phillips
Kevin Faulkner

Braden:
Information sec eng/analyst/DF person, etc
he setup security sw ant tools, review alerts
DF, does policy violation investigations, also user login/logoff reports

Don't recall who reached out
B went to city hall and met someone at the doors to pick up phone from a women he hadn't met before
when he picked it up - afternoon between 12 and 3pm
started working on it that afternoon
phone was at setup screen
he tried to plug in to trust but it would not work
so he hit next a few times and was able to acquire
a few hours from leaving his appt and getting back to appt
phone was at hola screen initially
he did analysis first and then returned the phone
to return phone, he went back to city hall and gave it to the same person

communicated through emails with the person he was coordinating with - but they only retain 3 months so he does not have emails now

He is looking through text messages to see if there are any relevant to this topic - no text messages found

Person handing phone did not describe phone, but maybe a meeting beforehand

Faulkner_000008

He can't be sure he was described the situation of what happened to the phone

Process of every day or every week someone would backup the phone

Short curly greyish hair - caucasion female gave him the phone

THere may have been a meeting; he had several about phones, but not certain if there was one about the mayor's phone.


Questions I sent him in advance:

1. When were you first contacted about imaging the "cracked screen" phone?
2. Who was it that contacted you about this phone?
3. How did they contact you?
4. Can you recall the specific time when they contacted you, or recall if it was early, late, or in the middle of the day?
5. How did you get the phone?
6. Who gave the phone to you or from where did you pick up the phone?
7. When did you physically get the phone? If you can't recall the rough time, was it early, late, or in the middle of the day?
8. What state was the phone in when you initially got it?
9. Did you attempt to acquire the phone as-is without setting it up? When was that?
10. When did you set up the phone so it could be acquired?
11. When did you acquire the phone?
12. What did you do with the phone when the acquisition was complete? Who did you return the phone to and when?


**Kevin Faulkner  |  Unit 42, Vice President**
Palo Alto Networks  |  1460 Broadway  |  New York, NY 10036  |  USA
**Office:** +1.646.792.5353 | **Mobile:** +1.512.265.5733 | [www.paloaltonetworks.com](http://www.paloaltonetworks.com)



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*

**Redacted - Attorney Client / Work Product**

---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Wed, Jul 28, 2021 at 6:46 PM
Subject: Call Notes - Seattle IT discussion
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


Daviana Kadiyan
Preston Miller
Jessica Nadelman
Aravind S
Anna Stuart


Regi Alencastro
Emmanuel Arhu


My IT Questions:

July 4th - Mayor says worked with IT to restore phone from iCloud backup
Emmanuel does not recall
Regi does not recall - but he provided a protective case
It should have been these 2 guys - no one else
Regi speculated working with Colleen on this


July 9, wipe after 4 weeks - then what?
E: he says they have a few old phones and a box that they keep them in.
E: he says Michell chen requested for it.
R: sounds right, people realized msg were missing and Michelle was in custody of that phone
R: conversation likely started with text messages. M. got a hold of R. and said text messages
were missing.
R: work phone imaged about 2 weeks ago - so should have the texts with Michelle.

WHen noticed messages were missing - they wanted to check with mobile carrier
E: maybe a day or two between M request the phone vs give to Braden

September 17, 18
tried to restore but found not backups

**Faulkner_000010**

gave phone to someone and then to Braden

R; has 9/17 as iCloud restore date
He thinks that attempt was before giving phone to Michele
thinks it was an old phone - surplus or test phone
R: does not think he did the iCloud restore - must have been E.
E: does not remember timing of the icloud restore attempt
E: possible it was the cracked screen phone to restore, but he didnt see backup available
E: dont recall wiping the phone, but remembers trying the process on some phone
R: he wasn't present for that - but he thinks the phone should have been already in a
factory reset state
R: does not think the mayors old phone would have been used as a test device
R/E: do not have a specific recollection of that phone being wiped on 9/17 - do not have
recollection of using the phone for anything else
E: remembers wiping cracked screen phone - but does not remember the whole process or
exact dates
E: recalls some test of phone to phone transfer - using 2 test phones to validate process
R: would not have given phone back and forth to M.
R: no CoC form filled out
E: says Braden was aware the phone was wiped, that they would have communicated this to
him
R: Bradne not given dates, just that it had been wiped
R: info to Braden may have happened in phone conversation, but can check Regi to Braden
sms messages

**Kevin Faulkner | Unit 42, Vice President**
Palo Alto Networks | 1460 Broadway | New York, NY 10036 | USA
**Office:** +1.646.792.5353 | **Mobile:** +1.512.265.5733 | [www.paloaltonetworks.com](http://www.paloaltonetworks.com)



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*



---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Fri, Jul 30, 2021 at 4:30 PM
Subject: Seattle Call Notes
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


Mayor Durkan mentioned during the July 4th weekend:

Armed people at her house
thousands of people showed up
death on freeway

separate instance of cracking iphone vs drop in a beach puddle

Phone was not working and she put it in rice



**Kevin Faulkner  |  Unit 42, Vice President**
Palo Alto Networks  |  1460 Broadway  |  New York, NY 10036  |  USA
**Office:** +1.646.792.5353  |  **Mobile:** +1.512.265.5733  |  **www.paloaltonetworks.com**



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*

# Redacted - Attorney Client / Work Product

---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Thu, Oct 28, 2021 at 2:04 PM
Subject: Call Notes - Chris Fisher
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


christopher.fisher@seattle.gov
Counsel from Harrigan - Kristin

June 8 - July 10 - Hunters Capital Timeframe

What phones used in timeframe?
Still using iPhone today - iPhone XR
used XR - Dec 2020 when switched to Firstnet
Before that, another iphone that he believe was imaged
From SOD: iPhone 7 (A1660)
He started with city in April 2016 - started with an iphone then a Samsung Galaxy 7, then switched back to iPhone.
iphone then Galaxy 7,m then the 2020 phone, and switched to XR

What AppleIDs/iCloud accounts used in timeframe?
chrisfish@gmail.com
spd7997cf@gmail.com
XR does not have an apple ID signed in
They do have MDM where everything just shows
He does not remember having an apple ID on the prior iphone either
chrisfish@gmail.com - personal
spd7997cf@gmail.com - he believes IT created this one

Did not look at iCloud with COunsel

Plugged into Computers?
City one - yes, but only to charge.
No iTunes - they do not allow itunes install
It also got plugged into iTunes - same restriction - cant install Ituens
He had a diff laptop on the older 2020 phone, but same no-itunes
no other computers connected


iCloud Backups/Synced Data?

Apple Privacy Data?
he could not do - does not have icloud on current phone

**Kevin Faulkner  |  Unit 42, Vice President**
Palo Alto Networks  |  1460 Broadway  |  New York, NY 10036  |  USA
**Office:** +1.646.792.5353  |  **Mobile:** +1.512.265.5733  | www.paloaltonetworks.com



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*

# Redacted - Attorney Client / Work Product

---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Thu, Oct 28, 2021 at 3:05 PM
Subject: Call Notes - Idris Beauregard
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


idris.beauregard@seattle.gov
Harrigan Counsel - Kristin


What phones used in timeframe?
today - same phone - iphone 8 - used for the last 3-4 year
iPhone 8 (A1863)


What AppleIDs/iCloud accounts used in timeframe?
idris.beauregard@seattle.gov
only had this iCloud account
Password: Redacted
Redacted

iCloud Backups/Synced Data?
downloaded including secure data. Error that "Health" did not download.



Plugged into Computers?
plugged into work computer - but no iTunes



Apple Privacy Data?
Requested

**Kevin Faulkner  |  Unit 42, Vice President**

Palo Alto Networks  |  1460 Broadway  |  New York, NY 10036  |  USA

**Office:** +1.646.792.5353  |  **Mobile:** +1.512.265.5733  |  [www.paloaltonetworks.com](http://www.paloaltonetworks.com)



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*

# Redacted - Attorney Client / Work Product

---------- Forwarded message ---------
From: **Kevin Faulkner** <kfaulkner@paloaltonetworks.com>
Date: Thu, Oct 28, 2021 at 4:33 PM
Subject: Call Notes - Ken Neafcy
To: Kevin T. Faulkner <kfaulkner@paloaltonetworks.com>


kenneth.neafcy@seattle.gov
Harrigan - Kristin



What phones used in timeframe?
iPhone XS (A1920) - started using - replacement when 6S could not be accessed - last Winter
- probably December
iPhone 6s (A1688) - used last summer until the fall - had this phone not too long - had
transitioned from an Android phone, maybe 1 year



What AppleIDs/iCloud accounts used in timeframe?
kenneth.neafcy@seattle.gov used on 6S and today
does not remember password
Trying to reset
Looks like it worked resetting - had trouble last time
after changing password, icloud asks for passcode from the 6S

It shows the XS, 6S and a PC on his account


iCloud Backups/Synced Data?


Plugged into Computers?
no computers


Apple Privacy Data?
Requested

IT policy says change 6 digit access code every 90 days or so
it said time to change
he put in new one
it changed
and it says incorrect code
he thinks it go to the point to delete his files

work passcode:

Redacted

**Kevin Faulkner  |  Unit 42, Vice President**
Palo Alto Networks  |  1460 Broadway  |  New York, NY 10036  |  USA
**Office:** +1.646.792.5353  |  **Mobile:** +1.512.265.5733  |  www.paloaltonetworks.com



*The content of this message is the proprietary and confidential property of Palo Alto Networks, and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited.*

# EXHIBIT 36

**To:**       Kennedy, Brian-BWV[Brian.Kennedy@seattle.gov]
**From:**    Villa, Celina
**Sent:**     Mon 10/26/2020 4:01:33 PM
**Subject:** RE: HELP

OF course on 4 right?  Also, do I need his password for his email log on?

**From:** Kennedy, Brian-BWV <Brian.Kennedy@seattle.gov>
**Sent:** Monday, October 26, 2020 9:01 AM
**To:** Villa, Celina <Celina.Villa@seattle.gov>
**Subject:** RE: HELP

Could you come down with the phone?  Thank you.

**From:** Villa, Celina <Celina.Villa@seattle.gov>
**Sent:** Monday, October 26, 2020 8:59 AM
**To:** Kennedy, Brian-BWV <Brian.Kennedy@seattle.gov>
**Subject:** RE: HELP

What do you need from me, do you want me to come to your area?

**From:** Kennedy, Brian-BWV <Brian.Kennedy@seattle.gov>
**Sent:** Monday, October 26, 2020 8:58 AM
**To:** Villa, Celina <Celina.Villa@seattle.gov>
**Subject:** RE: HELP

I am here at HQ.

**From:** Villa, Celina <Celina.Villa@seattle.gov>
**Sent:** Monday, October 26, 2020 8:41 AM
**To:** Kennedy, Brian-BWV <Brian.Kennedy@seattle.gov>
**Subject:** HELP
**Importance:** High

Hi Brian,

We spoke last week and you were going to help me fix my boss's locked cell phone?  Are you around?



Celina Villa
Executive Assistant for Assistant Chief Eric Greening
Special Operations Bureau
Seattle Police Department
O: 206-684-7037 | celina.villa@seattle.gov
 SPD Blotter  | Twitter  | Facebook  |

# EXHIBIT 37

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

_____

HUNTERS CAPITAL, LLC, et al.,    )
                                 )
              Plaintiff,         )
                                 )
         vs.                     ) No. 20-cv-00983
                                 )
CITY OF SEATTLE,                 )
                                 )
              Defendant.         )
_____

VIDEOTAPED VIDEOCONFERENCE DEPOSITION

UPON ORAL EXAMINATION OF

BRIAN KENNEDY

_____

Seattle, Washington

(All participants appeared via videoconference.)

DATE TAKEN:   MARCH 9, 2022

REPORTED BY:  CINDY M. KOCH, RPR, CRR, CCR #2357

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 115

1        Q.  -- what were you asking Celina to do there?

2        A.  To bring the phone to me.

3        Q.  Okay.  And what did you do with the phone after

4    that?

5        A.  I -- I can't say I recall specifically, but it

6    sounds as though, if he was locked out, we were going to

7    take steps to unlock it or -- or reset it.

8        Q.  So did you take the phone with you, or did

9    you -- did you reset the phone there?

10       A.  It -- again, looking at this email, it looks

11   like she brought the phone to me.

12       Q.  Okay.  And the question was, what did you do

13   with the phone after she brought the phone to you?

14       A.  And I can only -- I don't recall specifically.

15       Q.  So you don't recall anything that you did with

16   the phone after she gave you the phone; is that your

17   testimony here today?

18       A.  That's correct.  Yes.

19       Q.  Did you speak directly to Assistant Chief

20   Greening about his phone?

21       A.  I know I have.  I don't know if I did in this

22   instance.

23       Q.  Did you speak to him specifically about whether

24   you were going to perform a factory reset on his phone?

25               MR. CRAMER:  Objection.  Asked and answered.

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 116

1      A.  So I don't recall that specifically.
2   BY MR. REILLY-BATES:
3      Q.  What do you recall with respect to your
4   conversations with Chief Greening that you had on the
5   phone?
6              MR. CRAMER:  Sorry.  Can you -- there was
7   noise over here this time.  Can you please state your
8   question again?
9   BY MR. REILLY-BATES:
10     Q.  Sure.  What do you recall with respect to your
11  conversations that you've had with Chief Greening about
12  his phones?
13     A.  I don't really recall specifics.  You know,
14  phone problem -- solve phone problem, that sort of -- I
15  don't hold on to a lot of detail typically on each and
16  every action on a phone and person.
17     Q.  So in this particular instance, how did you
18  learn that Assistant Chief Greening had been locked out
19  of his phone?
20     A.  Celina got ahold of me.
21     Q.  Okay.  And what did she tell you about had
22  happened -- what had happened to his phone?
23     A.  I can only go by what the email says.  I don't
24  recall the specifics otherwise.
25     Q.  So when -- when you -- when you got the phone,

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 117

1   what did you do with the phone to troubleshoot the

2   phone?

3              MR. CRAMER:   Objection.   Asked and answered.

4        A.   I -- I can't tell you specifically.

5   BY MR. REILLY-BATES:

6        Q.   Okay.   Now, did you advise Assistant Chief

7   Greening of the consequences of performing a factory

8   reset on his phone before you actually performed it?

9              MR. CRAMER:   Objection.   Assumes facts.

10       A.   I -- I don't recall specifically.

11  BY MR. REILLY-BATES:

12       Q.   Is that something you would have done --

13             MR. CRAMER:   Objection --

14  BY MR. REILLY-BATES:

15       Q.   -- typically?

16             MR. CRAMER:   -- calls for speculation.

17       A.   I can only talk to what my typical practices

18  are.   I can't speak to what I would have done in a

19  particular instance.

20  BY MR. REILLY-BATES:

21       Q.   So you can't recall -- so would it have been

22  typical for you, before performing a factory reset, to

23  advise the user that there potentially could be a -- a

24  data loss with respect to that phone?

25       A.   That's my normal practice.

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 119

1    BY MR. REILLY-BATES:

2        Q.  Okay.  So -- and Assistant Chief Greening did

3    not inform you that he had a litigation hold that might

4    cover his phone, I take it?

5                    MR. CRAMER:  Object to form.

6        A.  I don't recall.  Sorry.

7    BY MR. REILLY-BATES:

8        Q.  What steps did you take to factory reset his

9    phone?

10                   MR. CRAMER:  Objection.  Asked and answered

11   multiple times now.

12       A.  I don't recall specifics.

13   BY MR. REILLY-BATES:

14       Q.  Do you recall whether you performed the factory

15   reset or whether you gave him advice as to whether --

16   how -- of how to factory reset the phone?

17       A.  I don't recall specifics.  I can only talk to

18   what I would typically do.

19       Q.  Do you recall whether you took the phone back

20   to -- to your office, or whether you performed a factory

21   reset there when Celina gave you the phone on -- on

22   October 26th?

23       A.  I -- I don't recall.  I can only go by what the

24   email says.  I think she would have brought the phone to

25   me.  In that chain, it looks like she was going to bring

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 122

1    yeah.

2         Q.  Okay.  So are you -- are you confident that it

3    was you who performed a factory reset on Assistant Chief

4    Greening's phone, and not someone else?

5              MR. CRAMER:  Objection.  Form.  Asked and

6    answered.

7         A.  I don't recall specifics.

8    BY MR. REILLY-BATES:

9         Q.  Okay.  And nobody warned you that there might

10   be a litigation hold -- this is besides Assistant Chief

11   Greening -- that there might be a litigation hold or a

12   public document request that sought documents that were

13   on Assistant Chief Greening's phone prior to you

14   performing a factory reset on his phone; correct?

15        A.  I don't recall specifics on that.

16        Q.  Do you know whether Braden Heil -- first of

17   all, do you know who Braden Heil is?

18        A.  I don't.

19        Q.  Okay.  So after -- after you performed the

20   factory reset on Assistant Chief Greening's phone, have

21   you had any other conversations or written any documents

22   or emails, communications, about his phone?

23        A.  The -- when Celina asked me to look for emails,

24   that was about his phone.

25        Q.  Okay.  Other -- other than -- other than your

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 123

1    communications with Celina, have you had any other

2    communications about his phone?

3         A.  I don't recall them.  It's not -- it's

4    possible, but I don't recall them.

5         Q.  Does -- does Seattle Police Department have any

6    forensic technicians that can -- can do data extractions

7    from cellphones that you're aware of?

8         A.  Does -- does who?

9         Q.  Does the Seattle Police Department have any

10   forensic technicians that are able to extract data from

11   cellphones?

12            MR. CRAMER:  If you know from your personal

13   knowledge.

14         A.  I don't know.  I'm not sure.

15   BY MR. REILLY-BATES:

16         Q.  So you don't know whether or not the Seattle

17   Police Department has that capability?

18         A.  Right.

19         Q.  Okay.  Did anyone look for -- or did you

20   assist -- did you assist in the setup of Assistant Chief

21   Greening's phone after it had been factory reset?

22         A.  I don't recall specifics.  If -- if -- if that

23   was the outcome of this -- when Celina brought me the

24   phone, then typically, if it got reset, I would have set

25   it up.

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 125

1    BY MR. REILLY-BATES:

2         Q.  Do you want to give your answer again?

3         A.  I don't remember specifics.

4         Q.  So -- and there -- there are no documents that

5    could refresh your recollection as to whether -- whether

6    you took any actions to confirm that Assistant Chief

7    Greening's phone could be backed up with information

8    prior to October 26, 2020, before you took that action

9    to factory reset the phone; correct?

10             MR. CRAMER:  Objection.  Form.

11        A.  Again, I don't recall specifics, so I'm not

12   sure what...

13   BY MR. REILLY-BATES:

14        Q.  Okay.  Have you -- have you ever learned any

15   facts about whether Assistant Chief Greening did have a

16   backup that he could have obtained old text messages

17   from following your factory reset of his phone?

18        A.  I don't recall anything about that in

19   particular.

20        Q.  And you don't recall whether you -- you even

21   had any conversations with Assistant Chief Greening

22   about the phone -- about his phone on October 26, 2020?

23        A.  No.

24        Q.  Okay.  And you don't recall any conversations

25   that you have had with him about his phone subsequent to

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

Hunters Capital, LLC v. City of Seattle                    Brian Kennedy

Page 144

1                    C E R T I F I C A T E

2

3    STATE OF WASHINGTON

4    COUNTY OF PIERCE

5

6         I, Cindy M. Koch, a Certified Court Reporter in

7    and for the State of Washington, do hereby certify that

8    the foregoing transcript of the deposition of Brian

9    Kennedy, having been duly sworn, on March 9, 2022, is

10   true and accurate to the best of my knowledge, skill and

11   ability.

12        IN WITNESS WHEREOF, I have hereunto set my hand

13   and seal this 15th day of March, 2022.

14

15

16   _____

17        CINDY M. KOCH, CCR, RPR, CRR #2357

18

19   My commission expires:

20   JUNE 9, 2022

21

22

23

24

25

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

4f5d519c-98fd-43ff-b0f9-ba4798148aa4

# EXHIBIT 38

Page 1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____

HUNTERS CAPITAL, LLC,          )
et al.,                        )
                               )
                Plaintiffs,    )
                               )  No. 20-cv-00983-TSZ
          vs.                  )
                               )
CITY OF SEATTLE,               )
                               )
                Defendant.     )
                               )

_____


* VIDEOCONFERENCE *

VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION

OF

CHRISTOPHER FISHER

_____




(All parties participating via Zoom)




DATE TAKEN:   SEPTEMBER 23, 2022
REPORTED BY:  SHERRILYN SMITH, CCR# 2097

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 196

1      Q    Okay.  Well, after this incident did -- did
2  you get an iCloud account so that you could back up
3  the text messages and -- and other documents on your
4  phone?
5      A    No, I didn't know that we set up our own
6  iClouds.  Nobody -- to the best of my recollection, no
7  one ever told me.  We just -- I thought that was
8  something the City did.
9      Q    Well, after this -- this incident, did you
10 talk to anybody about getting your phone set up to
11 have backups so that you wouldn't have a potential
12 data loss in the future?
13     A    No, I did not.
14     Q    Did you take any other actions to prevent
15 this, getting locked out from occurring again?
16          MR. BEAVER:  Object to the form.
17     A    I think I remember trying to not pick such
18 random passwords that I wouldn't remember them, but I
19 don't think that worked 100 percent.
20 BY MR. REILLY-BATES:
21     Q    Where did you keep your passwords?
22     A    In my head.
23     Q    Did you ever write them down?
24     A    I don't think I ever did.  Our department
25 phones, you know, could contain FBI-related data that

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 198

1    they had access to the phone on the back end?

2        A   Because you couldn't -- from my recollection,

3    you couldn't just download whatever you wanted,

4    thing -- apps and updates would get pushed to your

5    phone.

6        Q   Okay.

7        A   So my understanding of how that worked was

8    someone must have access to my phone.

9        Q   Okay.  And did anybody ever tell you that they

10   could make changes to your phone remotely?

11       A   I don't remember having conversations about

12   that.

13       Q   And as a result of this incident and getting

14   locked out in March of 2020, was your -- was your

15   phone factory reset?

16       A   I believe so.  I don't specifically remember

17   when reset -- the reset or resets happened, but I

18   think if you told me -- you're -- I'm thinking this is

19   the incident where they said you're just going to have

20   to break it.

21       Q   Did -- did you -- did you -- did you factory

22   reset it yourself?

23       A   Yes.  I believe the instructions were -- you

24   know, if this is when this happened, I'm -- you know,

25   it was type in numbers until it resets.

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 204

1      Q    Have you ever been the -- the habit of
2  periodically deleting text messages?
3                MR. BEAVER:   Object to the form.
4  BY MR. REILLY-BATES:
5      Q    From -- from your work phone or from your
6  personal phone?
7      A    The, I guess what are called trans- -- you
8  know, those alert messages, those, you know, spam
9  messages, the, hey, are you coming to this meeting.
10     Q    So -- so you did have a habit of periodically
11  deleting what you perceived as being transitory text
12  messages, correct?
13               MR. BEAVER:   Object to the form.
14     A    Yes.   It was my understanding that that was
15  fine to do.
16  BY MR. REILLY-BATES:
17     Q    Okay.   Did you modify that habit at all after
18  you received the litigation hold notices in July of
19  2020?
20     A    I mean, I would still -- things that clearly
21  had nothing to do with this case, I would still delete
22  all the -- you know, the random auto-generated things,
23  and spam messages, and, you know, we are interested in
24  giving you a car warranty.
25     Q    Okay.   So even after you received litigation

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 209

1    conversations with anyone else about using -- having

2    messages on my personal phone.

3         Q    Okay.  And are you following your attorney's

4    instruction not to answer my questions with respect to

5    counsel for the City?

6         A    Yes.

7         Q    So going back to Exhibit 18, which is the

8    exhibit we were looking at before -- before the break,

9    are there any other statements there that -- that you

10   disagree with or believe are inaccurate today?

11        A    The only thing that I would, I guess, quibble

12   with is that I don't think it was IT who told me to

13   reset it.  I think they said they couldn't get into

14   it.  I believe it was in -- I -- I think in this

15   statement, my guess here is that this is combining the

16   March event we looked at.  I -- I probably got them

17   confused when --

18        Q    Okay.

19        A    -- explaining, but I think this is referencing

20   that conversation with the officers in the intel unit.

21        Q    I see.  So could -- could you explain what

22   happened from start to finish when you couldn't access

23   your phone on December 3rd, 2020?

24        A    I don't recall the second incident, like in

25   detail of understanding.  My assumption is having

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 210

1    learned in March that there was no way they can get
2    in, if I got locked out again, I would have just done
3    the same thing.
4        Q    Okay.  So -- so then is it correct to assume
5    that on the second incident after March, that you did
6    not contact the IT department for help in gaining
7    access to your phone?
8                    MR. BEAVER:  Object to --
9        A    I don't recall.
10                   THE WITNESS:  Sorry.
11                   MR. BEAVER:  Go ahead.
12                   THE WITNESS:  Okay.
13       A    I don't recall reaching out again.
14   BY MR. REILLY-BATES:
15       Q    Okay.  Did you -- do you recall seeking any
16   help from anyone in the City with respect to that
17   second incident where you factory reset your phone?
18       A    No, I don't recall thinking anything had
19   changed.
20       Q    And did anybody ever tell you that there were
21   methods of -- of breaking into a locked cell phone?
22                   MR. BEAVER:  Object to the form.
23       A    I don't recall ever having a conversation, but
24   I'm not aware there is a way.
25   BY MR. REILLY-BATES:

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 215

1      Q    And why -- why did you believe you couldn't
2  talk about it?
3      A    My general understanding, that you're probably
4  not supposed to talk about court proceedings.  I don't
5  know.  That may have been a wrong conclusion, but I
6  just figured it was safer to not talk about specific
7  details.
8      Q    Have you spoken with anybody else about loss
9  of evidence in this case, such as Mayor Jenny Durkan
10 or Assistant Chief Eric Greening or Ken Neafcy
11 (phonetic)?
12     A    I don't believe I've ever talked to any of
13 them about this.
14     Q    So going back to Exhibit 18.  It's your
15 testimony today that this statement that Fisher then
16 reached out to IT to see if there was an alternative
17 way to access the phone, it is our understanding that
18 IT informed him that there was no way to access the
19 phone without resetting it to factory resettings,
20 that -- those statements apply to -- to the reset that
21 occurred in March of 2020, and not the reset that
22 occurred later in 2020, correct?
23              MR. BEAVER:  Object to the form.
24     A    Yes.  Reading this, I -- I -- my recollection
25 is this is -- the two incidents are getting mixed,

BUELL REALTIME REPORTING, LLC
206.287.9066  l  800.846.6989

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 216

1    that I -- I'm -- had -- initially must have
2    misremembered, sorry, when I reached out to IT and
3    intel.
4        Q   Okay.  Since 2020, has -- have you had to have
5    your -- your work phone factory reset for any reason?
6        A   I don't remember that happening.  I don't
7    think so.
8        Q   And how about your personal phones, have you
9    ever reset your personal phone since 2020?
10       A   I got an -- I upgraded so I had to, you know,
11   transfer.  I don't know if that counts the same as a
12   reset.  I don't know what that does.
13       Q   Okay.
14       A   I don't think -- I've never gotten permanently
15   locked out of my personal phone.
16       Q   When did you -- when did you get the upgrade
17   that just mentioned?
18       A   I think -- I think it was towards the
19   beginning of this year.  My prior model stopped
20   charging and I was eligible for an upgrade.
21       Q   Okay.  And did you observe any loss of older
22   text messages when you upgraded your phone this year?
23       A   I don't remember, you know, checking.  I think
24   it just -- I let it do its thing.
25       Q   And do -- do you have -- did you have iCloud

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                Christopher Fisher

Page 218

1      Q    Okay.  And if you could scroll down to Page 4.

2      A    Okay.

3      Q    And on Page 4 there is -- there are four

4  bullet points that specifically pertain to -- to

5  Mr. Leatha's analysis of your phone.  Could you take a

6  moment to read those?

7                    (Pause in the proceedings.)

8      A    Okay.

9      Q    Okay.  Were you aware that plaintiff's expert

10 had concluded these -- these four points with respect

11 to your phone, as a result of the analysis that he

12 performed, the forensic analysis that he performed on

13 your phone?

14     A    As far as I remember, this is the first time

15 I've seen the four points --

16     Q    Okay.

17     A    -- but...

18     Q    So the first point is, Chris Fisher's phone

19 "was configured to automatically delete text messages

20 older than 30-days."

21          Do you have any reason to doubt that

22 conclusion?

23                    MR. BEAVER:  I'm going to object to the

24 form of the question.

25     A    I don't -- I'm not sure which phone he's

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 219

1   talking about, but as we stated earlier, I -- I did at
2   some point have my phone set to that, so if it's the
3   same phone.
4   BY MR. REILLY-BATES:
5       Q   Okay.  So -- so you have no reason to doubt
6   the conclusion that the phone was set to delete
7   messages older than 30 days when it -- it was turned
8   in to the City, correct?
9                MR. BEAVER:  Object to the form.
10      A   If it's the same -- if we're talking about the
11  same phone, correct.
12  BY MR. REILLY-BATES:
13      Q   And the second conclusion is that "15,843 text
14  messages were deleted from Chris Fisher's iPhone," and
15  that "only 16 messages remained on the device."
16           You don't have any reason to doubt that that
17  conclusion is accurate, do you?
18                MR. BEAVER:  Object to the form.
19      A   I don't -- I don't know if I know enough to
20  doubt or not doubt.
21  BY MR. REILLY-BATES:
22      Q   Well, when you turned -- when you turned your
23  phone in to the City, when it was taken for imaging,
24  had 15,843 text messages been deleted from that
25  iPhone?

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                 Christopher Fisher

Page 232

1       Q    And you didn't seek any help on how to avoid

2    having to factory reset the phone at that time, did

3    you?

4                MR. BEAVER:   Object to the form.

5       A    Yeah, I don't recall having any conversations

6    other than, you know, better remember your password.

7    BY MR. REILLY-BATES:

8       Q    Now, going down two paragraphs on Page 18,

9    there's a section titled "Evidence of File Deletion,"

10   and it says, "The February 22, 2021, collection of

11   Fisher's iPhone 7 only included 16 text messages, all

12   of which were received between December 3rd, 2020, and

13   December 8, 2020."

14               Do you have any reason to doubt that that

15   statement is not correct?

16               MR. BEAVER:   Object to the form.   No

17   foundation.

18      A    I don't think I -- I know enough to understand

19   if that's correct or not.

20   BY MR. REILLY-BATES:

21      Q    Did you -- did you understand that there were

22   only 16 text messages on -- on your phone at the time

23   you turned it in?

24               MR. BEAVER:   Object to the form.   It's

25   also been asked and answered.

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 233

1      A    I -- I don't remember what was on there when I
2  turned it in.
3  BY MR. REILLY-BATES:
4      Q    Okay.  So then you don't -- fair to say that
5  you don't have any explanation for why there would
6  only be 16 text messages on -- on your phone when it
7  was turned in, right?
8               MR. BEAVER:  Object to the form.
9  BY MR. REILLY-BATES:
10     Q    You can answer.
11     A    I -- sorry, repeat.  I -- I don't think I
12  understood what you just asked.
13  BY MR. REILLY-BATES:
14     Q    Sure.
15          So it's fair to say that you also don't have
16  any explanation for why there were only 16 text
17  messages on your phone when it was collected on
18  February 22nd, 2021?
19               MR. BEAVER:  Object to the form.
20     A    No.  I don't think I know enough between the
21  factory resets and how it works on the back end why
22  there were only 16, no.
23  BY MR. REILLY-BATES:
24     Q    Okay.  And you haven't done any investigation
25  or had asked any -- anybody to explain to you why --

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 242

1      A    Yeah.  If he sees information that shows it,
2  and there's a way to know that, but I don't recall
3  ever setting something like that up.
4  BY MR. REILLY-BATES:
5      Q    Okay.  So you -- you -- you're not aware of
6  facts to suggest that Mr. Faulkner or Mr. Leatha's
7  Statement regarding you performing restoration of
8  messages in November of 2020 was inaccurate?
9            MR. BEAVER:  Object to the form.  I
10  think this has been asked now several times.
11      A    Yeah.  I don't have any recollection of any
12  backup or restoration.
13  BY MR. REILLY-BATES:
14      Q    Okay.
15            MR. REILLY-BATES:  I'm going to drop
16  another document into the chat.  We'll mark this as
17  Exhibit 22.
18                (Exhibit No. 22 marked.)
19  BY MR. REILLY-BATES:
20      Q    Please take a moment to review Exhibit 22.
21  This is a document, an email chain from Kevin
22  Faulkner -- to Kevin Faulkner with notes from a
23  conversation with Chris Fisher, and it's Bates labeled
24  Faulkner_000013.  These notes were produced during the
25  Faulkner -- the deposition of Kevin Faulkner.

0b913d04-6668-436a-ab78-25f9cc2a6e41

Hunters Capital, LLC v. City of Seattle                    Christopher Fisher

Page 273

1                    C E R T I F I C A T E

2

3    STATE OF WASHINGTON

4    COUNTY OF KING

5

6               I, Sherrilyn Smith, a Certified

7    Shorthand Reporter in and for the State of Washington,

8    do hereby certify that the foregoing transcript is

9    true and accurate to the best of my knowledge, skill

10   and ability.

11

12

13

14

15

16

17   SHERRILYN SMITH, CCR# 2097

18

19

20

21

22

23

24

25

BUELL REALTIME REPORTING, LLC
206.287.9066  |  800.846.6989

0b913d04-6668-436a-ab78-25f9cc2a6e41

# EXHIBIT 39

| | |
|---|---|
| **From:** | Reilly-Bates, Gabe |
| **Sent:** | Monday, August 1, 2022 11:24 AM |
| **To:** | Shane Cramer; Bryn Pallesen; Erica Iverson; Kellie McDonald |
| **Cc:** | Weaver, Tyler S.; Carriaga, Nancy; Colmenero, Lixi; Florine Fujita |
| **Subject:** | RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses |

Hi Shane,

I'm writing to you concerning your proposed production of Chris Fisher's text messages from his personal phone that he used for work purposes.  Based on your email below, you are apparently refusing to provide our forensic expert with an image of Chris Fisher's phone, and it appears that you are allowing him to self-collect text messages.  This is unacceptable to us, given Brandon Leatha's conclusions that Mr. Fisher Factory reset his phone on 11/2/2021, with no apparent explanation, manually deleted 15,843 text messages from his work phone, and configured his work phone to delete messages after 30 days.  Moreover, in our meet-and-confer sessions over a year ago, you or Caitlin assured me that the City had asked witnesses (such as Fisher) to produce records from their personal devices.  Obviously, Mr. Fisher did not search for messages then, as we received nothing directly from his personal phone that he clearly used for City business.

If you will not agree to allow us to image Mr. Fisher's phone voluntarily, then we will have to issue a subpoena to him personally. Since you have stated that you are representing Mr. Fisher, please confirm that you will accept service of the subpoena.  We will seek an image of his phone in the subpoena duces tecum.   If Mr. Fisher does not comply with our subpoena, then we will seek to compel the City and Mr. Fisher to produce the image of his phone.  Given the evidence of deletion on Mr. Fisher's City issued work phone, we are entitled to search for evidence of deleted data on his personal phone.  Of course, we would be open to exploring avenues of voluntary compliance with our reasonable requests.

Also, please provide us with dates that Mr. Fisher is available for his deposition in August and September.  If the City and Mr. Fisher are going to delay the production of text messages from Mr. Fisher's personal phone, we may have to ask for a second day of deposition, but there is no reason for us not to proceed now with scheduling a date.

Kind Regards,

Gabe

**Gabe Reilly-Bates**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6429 | Main: +1.206.274.6400 | Fax: +1.206.274.6401 | Mobile: +1.312.714.0330
gabriel.reillybates@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



**Gabe Reilly-Bates**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101

Direct: +1.206.274.6429 | Main: +1.206.274.6400 | Fax: +1.206.274.6401 | Mobile: +1.312.714.0330
gabriel.reillybates@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



**From:** Shane Cramer <shanec@harriganleyh.com>
**Sent:** Friday, July 22, 2022 11:52 AM
**To:** Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>; Florine Fujita <florinef@harriganleyh.com>
**Subject:** Re: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

[EXTERNAL EMAIL]
Hi  Gabe,

Are you available for a call today or early next week to discuss deposition timing for the parties' various experts, now that we have dates set?  Both parties have experts located on the east coast and Lanfear is located in the UK.  We'd like to figure out start times for each witness that make sense across the various time zones.  We'd also like to discuss where things stand on getting documents we're owed from Hunters Capital and the third parties you represent.

We are not going to release July 28 at this point for Ms. Augustine, but please send us her available dates in September, and we will consider them.

As for Mr. Fisher, he is in the process of collecting his relevant, work-related texts on his personal device, following the guidance provided to public entities and their employees in *Nissan*.  Once we've received them, we will review them for privilege/responsiveness and production.  My understanding is that the delay is related to the software being used to enable him to collect and provide them for review, but that hopefully is in the process of being resolved.  I will check in again next week.  As for his deposition timing, it likely will need to be toward the end of August or the first part of September.

Thanks,
Shane

**From:** Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>
**Sent:** Friday, July 22, 2022 10:20:10 AM
**To:** Shane Cramer <shanec@harriganleyh.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>; Florine Fujita <florinef@harriganleyh.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

Hi Shane,

We reached out to Andrea Augustine and she will be out of town on Friday of next week, July 29.  She is not available earlier in August due to her honeymoon.  We can check with her to find dates in September 2022, if you would like.

Also, we need an update on the production of Chris Fisher's text messages and when his other phone's image will be provided to our forensic expert.  Please provide us with your best estimate of when both items will be produced.  Also, please provide the dates that he will be available for his deposition.  As you know, August's schedule is filling up.  Please provide dates for Mr. Fisher in either the first week of August (but only if you can produce his text messages and phone image by the end of next week), or in September.

Thanks,

Gabe

**Gabe Reilly-Bates**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6429 | Main: +1.206.274.6400 | Fax: +1.206.274.6401 | Mobile: +1.312.714.0330
gabriel.reillybates@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



---

**From:** Reilly-Bates, Gabe
**Sent:** Thursday, July 21, 2022 4:22 PM
**To:** 'Shane Cramer' <shanec@harriganleyh.com>; Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>; Florine Fujita <florinef@harriganleyh.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

Hi Shane,

We can confirm the following dates for depositions:

Lanfear – August 9
Shane – August 11
Piza – August 16
Faulkner – August 17
Leatha – August 19
McKee – August 24
Van Zandt – August 26
Partin – August 30
Freeman – August 31 (4 hour limit and we agree to limit Akers to 4 hours)
Akers – September 9 (4 hour limit)
Stoughton – please provide later dates when he is available.  The dates you proposed do not work for us.

We will reach out to Malone and get back to you with alternative dates in September.

Regarding Andrea Augustine, it is our understanding that she is going on a honeymoon vacation, which is the cause of her unavailability.  We will check with her and see if we can provide you with any additional dates.

Regards,

Gabe

**Gabe Reilly-Bates**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6429 | Main: +1.206.274.6400 | Fax: +1.206.274.6401 | Mobile: +1.312.714.0330
gabriel.reillybates@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



---

**From:** Shane Cramer <shanec@harriganleyh.com>
**Sent:** Wednesday, July 20, 2022 3:35 PM
**To:** Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>; Florine Fujita <florinef@harriganleyh.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

[EXTERNAL EMAIL]
Hi Tyler and Gabe,

Thanks for sending dates.  We will plan to note deps for your experts on the following dates.  We plan to conduct all of them via Zoom:

Shane – August 11
Piza – August 16
Freeman – We will agree to a four-hour deposition on August 31 if you agree that Professor Akers' deposition also will be limited to four hours and can occur the first week of September, which are the dates where he has the best availability.  Please confirm your agreement to this arrangement.
Leatha – August 19
Van Zandt – we will get back to you

We can offer our experts on the following dates:
Stoughton – August 1 or 2
Lanfear – August 9
Faulkner – August 17-19
McKee – August 24
Akers – September 7-9 (see above)
Partin – August 22, 29, or 30

For Ms. Augustine, it's not reasonable to wait until August 30 or 31 to take this deposition.  As you can see from the above, the parties will be at capacity handling expert witness depositions for the last half of August.  Weeks ago, we asked for dates in July for Ms. Augustine and Mr. Malone, and you provided a single date for her and zero dates for him.  We issued the notice of deposition for July 28 for Ms. Augustine based on your representation that that was the only date in all of July that she was available.  We plan to go forward with the full-day deposition on that date as scheduled, unless you provide us with a different date next week or between August 1-4 when she can be

available.  Alternatively, we'd be willing to conduct her deposition over two days, starting on July 28 and carrying it over to July 29 (if necessary) so that we can complete our examination.

We cannot do Mr. Malone's deposition on August 23 or 24.  Please provide a different set of dates for him, even if it means carrying over into the first part of September.

Thanks,
Shane

---

**From:** Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>
**Sent:** Wednesday, July 20, 2022 2:44 PM
**To:** Shane Cramer <shanec@harriganleyh.com>; Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

Hi Shane,

        Brandon Leatha is available on August 18/19 and Arik Van Zandt is available on August 26 for their depositions.  Andrea Augustine is also available on August 30/31, in addition to being available on July 28 (but only until 2:00 p.m. on that day).  Please let us know soon which days you would like to confirm so that they can hold the dates.  Their schedules are filling up quickly.

Thanks,

Gabe


**Gabe Reilly-Bates**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6429 | Main: +1.206.274.6400 | Fax: +1.206.274.6401 | Mobile: +1.312.714.0330
gabriel.reillybates@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



---

**From:** Shane Cramer <shanec@harriganleyh.com>
**Sent:** Tuesday, July 19, 2022 3:49 PM
**To:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

[EXTERNAL EMAIL]
Thanks, Tyler.  We'll get back to you on these and with some dates for most of our experts tomorrow.

Shane

**From:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>
**Sent:** Tuesday, July 19, 2022 10:34 AM
**To:** Shane Cramer <shanec@harriganleyh.com>; Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

Shane, here's dates for some of our experts. For these three experts, we are offering dates for remote depositions. I expect the others will be remote also, but let us know if you prefer in-person dates for our experts who are local.

Freeman. Dr. Freeman's schedule is extremely packed. He is currently holding open, until this coming Friday, an opening from 9:00 am to 1:00 pm on August 31. This is his first availability. It is my understanding that he does not have a longer time available until October. However, I would guess that of our experts, the City likely needs the least amount of time with him. Let us know by Thursday if you want us to confirm that date.

Piza. Professor Piza is available on August 9 and 16.

Shane. Professor Shane is available on August 4 and 11.

**Tyler S. Weaver**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6375 | Main: +1.206.274.6400 | Fax: +1.206.274.6401
tyler.weaver@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



**From:** Weaver, Tyler S.
**Sent:** Friday, July 15, 2022 3:37 PM
**To:** 'Shane Cramer' <shanec@harriganleyh.com>; Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

I don't know that we've made that decision yet. Some of them will be shorter than others, but please look for dates anticipating a full day and we can go from there.

**Tyler S. Weaver**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6375 | Main: +1.206.274.6400 | Fax: +1.206.274.6401
tyler.weaver@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com



**From:** Shane Cramer <shanec@harriganleyh.com>
**Sent:** Friday, July 15, 2022 3:34 PM
**To:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

[EXTERNAL EMAIL]
Yes, please check for full days.  At this point, I expect that we will use more than a half-day with each of them.  Do you anticipate needing just a half-day for any of our folks?

Thanks,
Shane

---

**From:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>
**Sent:** Friday, July 15, 2022 3:31 PM
**To:** Shane Cramer <shanec@harriganleyh.com>; Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

We will check on their availability. Do you anticipate wanting or needing full days for all of them?

**Tyler S. Weaver**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6375 | Main: +1.206.274.6400 | Fax: +1.206.274.6401
tyler.weaver@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com

---

**From:** Shane Cramer <shanec@harriganleyh.com>
**Sent:** Friday, July 15, 2022 3:28 PM
**To:** Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** RE: Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

[EXTERNAL EMAIL]
We are checking on their availability and will get back to you, hopefully next week.  Can you please provide all available deposition dates for your experts (Van Zandt, Piza, Freeman, Leatha, and Shane) in August (including the first two weeks of August).  Given the number of depositions that the parties are hoping to schedule in August and potential conflicts and vacations that could arise on both sides, having as many dates as possible to choose from would be beneficial.

Thanks,
Shane

**From:** Reilly-Bates, Gabe <gabriel.reillybates@morganlewis.com>
**Sent:** Wednesday, July 13, 2022 3:30 PM
**To:** Shane Cramer <shanec@harriganleyh.com>; Bryn Pallesen <brynp@harriganleyh.com>; Erica Iverson <ericai@harriganleyh.com>; Kellie McDonald <KellieM@harriganleyh.com>
**Cc:** Weaver, Tyler S. <tyler.weaver@morganlewis.com>; Carriaga, Nancy <nancy.carriaga@morganlewis.com>; Colmenero, Lixi <lixi.colmenero@morganlewis.com>
**Subject:** Hunters Capital, et al. v. City of Seattle: Dates for Depositions for City's Witnesses

Hi Shane and Bryn,

At your earliest convenience, can you please provide us with dates when Bates McKee and William Partin are available the week of August 15, and when Seth Stoughton, Kevin Faulkner, Charles Lanfear, Timothy Akers, and Chris Fisher are available to sit for their depositions during the weeks of August 15, August 22 and August 29?

Do you have any updates on when Mr. Fisher's text messages will be produced? If you can produce those text messages by Friday, July 22, 2022, then we would like to schedule Mr. Fisher's deposition for the week of August 1.

Thanks,

Gabe


**Gabe Reilly-Bates**
**Morgan, Lewis & Bockius LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101
Direct: +1.206.274.6429 | Main: +1.206.274.6400 | Fax: +1.206.274.6401 | Mobile: +1.312.714.0330
gabriel.reillybates@morganlewis.com | www.morganlewis.com
Assistant: Lixi Colmenero | +1.206.274.0137 | lixi.colmenero@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

# EXHIBIT 40

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| HUNTERS CAPITAL, LLC, et al., | ) |
| Plaintiffs, | ) Case No.: 20-cv-00983-TSZ |
| | ) |
| v. | ) |
| | ) |
| CITY OF SEATTLE, | ) |
| | ) |
| Defendant. | ) |

## SUBPOENA TO PRODUCE DOCUMENTS

To:      Chris Fisher, c/o Tyler L. Farmer of Harrigan Leyh Farmer & Thomsen, LLP, 999 Third
Avenue, Suite 4400, Seattle, WA 98104, tylerf@harriganleyh.com

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  **See Attached Rider**

| Place: Morgan Lewis Bockius LLP 1301 Second Avenue, Suite 2800 Seattle, WA 98101 | Date and Time: August 25, 2022, at 5:30 p.m. |
|---|---|

✓ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Morgan Lewis Bockius LLP 1301 Second Avenue, Suite 2800 Seattle, WA 98101 | Date and Time: August 30, 2022, at 9:00 a.m. (Subject to rescheduling a reasonable date proposed by the City, which the City has not yet provided to counsel for Plaintiffs, despite several requests) |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>August 4, 2022</u>

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing (*name of party*) <u>Plaintiffs</u>
<u>Hunters Capital, LLC, et al.</u>, who issues or requests this subpoena is: <u>Gabe Reilly-Bates, Morgan Lewis</u>
<u>Bockius LLP, 1301 2ⁿᵈ Ave., Ste. 2800, Seattle, WA 98101, gabriel.reillybates@morganlewis.com, 206-274-6400</u>

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

☐ I received this subpoena for *(name of individual and title, if any)* _____
on (date)_____.

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____on *(date)*_____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____0.00_____.

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DOCUMENT SUBPOENA RIDER TO CHRIS FISHER

### DEFINITIONS

1. "Plaintiffs," refers to the plaintiffs in this action, i.e. Hunters Capital, LLC, Hunters Property Holdings, LLC, Greenus Building, Inc., SRJ Enterprises, d/b/a Car Tender, Onyx Homeowners Association, Wade Biller, Madrona Real Estate Services LLC, Madrona Real Estate Investors IV LLC, Madrona Real Estate Investors VI LLC, 12th And Pike Associates LLC, Redside Partners LLC, Olive St. Apartments LLC, Richmark Company, d/b/a Richmark Label, Bergman's Lock And Key Services LLC, Matthew Ploszaj, Sway And Cake LLC, and Shuffle LLC d/b/a Cure Cocktail.

2. "City" shall refer to the defendant in this action, the City of Seattle, including all its agencies, subdivision, departments, contractors and/or agents.

3. "Communication" includes any oral or written statement, any in-person or telephonic communication between two or more persons, and any analysis, summary, note, comment, document, or other description of a communication or conversation, regardless of its form, including email, text message, voicemail, or other electronic form of communication.

4. "Concerning" means constituting, containing, discussing, embodying, reflecting, identifying, stating, supporting, contradicting, alluding to, referring to, relating to, or confirming that which is pertinent to a matter.

5. "Document(s)" is used in the broadest sense and includes, but is not limited to, the following items, whether printed or recorded or reproduced by any other mechanical or electronic process or writing, or produced by hand, namely: email, hard-drive, electronic and hard-copy versions of agreements, communications, including intracompany communications, correspondence, telegrams, memoranda, records, books, summaries of records of personal conversations or interviews, diaries, forecasts, statistical statements, accountants' work papers, graphs, charts, accounts, analytical records, minutes or records of meetings or conferences, reports and/or summaries of negotiations, brochures, pamphlets, circulars, trade letters, press releases, contracts, notes, projections, drafts of any documents, working papers, securities ledgers, checks (front and back), check stubs or receipts, any other documents or writings of whatever description including but not limited to any information contained in or accessible from any computer although not yet printed out within your possession, custody or control or the possession, custody or control of any agent, employee (including without limitation, attorneys, accountants and investment bankers and advisers), or other person acting or purporting to act on your behalf.

6. "Each" shall be construed to include the word "every," and the word "every" shall be constructed to include the word "each."

7. "Electronic Devices" means personal computing devices such as a computer, tablet, phone, iPhone, Apple Watch, smart watch, online database, or iCloud, whether they were City-issued or personally owned.

8. The "Individuals" shall be construed as the following individual persons: Jenny Durkan, Carmen Best, Harold Scoggins, Shannon Anderson, Valerie Anderson, Idris Beauregard, Christopher Fisher, Eric Greening, Kenneth Neafcy, or Deanna Nolette, and any other individual for whom the City is missing text messages or other electronically stored data.

9. "Lawsuit" is defined as the case titled *Hunter's Capital, et al. v. City of Seattle*, case no. 20-cv-00983 TSZ, proceeding in the United State District Court for the Western District of Washington.

10. "Or" and "and" shall be inclusive and shall be used conjunctively and disjunctively as is necessary to bring within the scope of these requests any information that might otherwise be outside their scope.

11. "Person" means any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other entity.

12. "CHOP" refers to the areas occupied by protestors in the Capitol Hill neighborhood of City of Seattle, Washington beginning in early June 2020, which have been variously described as the "CHAZ," standing for the "Capitol Hill Autonomous Zone," or "CHOP" for "Capitol Hill Organized Protest" or "Capitol Hill Occupying Protest."

13. The "CHOP zone" refers to the area of the Capitol Hill neighborhood in the City of Seattle in and around the areas occupied by CHOP participants, which is the area bound by the following streets: Denny Way, Union Street, Thirteenth Avenue, and East Broadway, as well as the areas within three blocks of the area bounded by those streets.

14. "CHOP participant" refers to any person who participated in and advocated for the existence of CHOP and/or the occupation of the CHOP zone, any person who camped out in or otherwise resided overnight (excluding the area's permanent residents) in the CHOP zone, and/or any person who was present in the CHOP zone for purposes of protesting or expressing solidarity with protestors.

15. "SPD" refers the Seattle Police Department, a division of Defendant.

16. "SFD" refers the Seattle Fire Department, a division of Defendant.

17. "SDOT" refers the Seattle Department of Transportation, a division of Defendant.

18. "SPU" refers to Seattle Public Utilities, a division of Defendant.

## **INSTRUCTIONS**

1. This subpoena calls for the production of all responsive documents and communications in your actual or constructive possession, custody, or control.  Such documents and communications include information in your personal possession, in your personal email accounts, or on your personal smart phones or other personal devices.

2. Each requested document shall be produced in its entirety, along with any attachments, drafts, and non-identical copies, including without limitation copies that differ by virtue of handwritten or other notes or markings.

3. All documents maintained or stored electronically should be produced in any of the following formats: as native files, single page or multi-page TIFFs (with a companion OCR or extracted text file).  Text messages should be produced in *.csv and *.pdf format. Plaintiff's document vendor could assist in performing an extraction of Ms. Best's text messages if Ms. Best requires assistance.  Unless otherwise agreed, files that are not easily converted to image format, such as spreadsheets, database, and drawing files, should be produced in native format.  When a text-searchable image file is produced, the integrity of the underlying electronically stored information (including, but not limited to, the original formatting, the metadata, and, where applicable, the revision history) should be preserved.

4. To the extent any request is objected to in whole or in part, state with specificity all grounds for objection, state which documents will be withheld and which documents will be produced notwithstanding such objection, and produce all documents and things responsive to those parts of the request as to which no objection is made.

5. With regard to objections to the production of documents based on attorney-client privilege and work-product protection, you are requested to prepare an index listing each and every document withheld, stating the document date, preparer, intended recipient(s), subject matter(s), persons who have received the document or have knowledge regarding the contents thereof, and the basis for withholding the document.

6. Unless otherwise noted, each request seeks documents concerning the time period from January 1, 2019 to the present.

## **DOCUMENTS AND THINGS TO BE PRODUCED**

1. All telephones used by Fisher from June 1, 2020 to the present for work or business purposes.  A forensic image is to be taken of these phones by Plaintiffs' forensic expert. Alternatively, Plaintiffs will accept forensic images of Fisher's phones collected by Defendant's forensic expert, Kevin Faulkner, or any other forensic service provider, as long as they are provided to counsel by August 30, 2022.

2.  All iCloud backup files that contain text messages dating from June 8, 2020 to December 31, 2020, and/or any synchronized data that contains text messages from any of Mr. Fisher's phones from June 8, 2020 to December 2020.

3.  All text messages, emails (including from personal email addresses), instant messages, and social media messages between you and any of the Individuals from June 8, 2020 to the present.

4.  All communications concerning CHOP or the CHOP zone between Mr. Fisher and any member of SPD, SFD, SDOT, SPU, or any City of Seattle employee, representative, or agent, including, but not limited to, all text messages between or among former Chief Best, former Mayor Jenny Durkan, Chief Harold Scoggins, and/or Idris Beauregard.

5.  All documents concerning CHOP or the CHOP zone, including any analysis of police data created by Mr. Fisher and or memoranda.

6.  All communications and documents concerning preservation or collection of evidence, including, but not limited to, text messages, relating to the Lawsuit.  This request includes, is not limited to, any litigation hold notices issued by the City of Seattle.

7.  All communications and documents reflecting any archiving, saving or backup of Mr. Fisher's Electronic Devices while he was employed by SPD.

8.  All communications and documents concerning this Lawsuit, including without limitation, all communications regarding the preservation and/or deletion of electronic data (including, without limitation, text messages) relating to this Lawsuit.

9.  All documents and communications concerning any injury, harm, property damage done to or complaint by any individual, resident or business within the CHOP Zone.

10. Invoices for any cellphone service utilized from June – December of 2020, whether for business or personal purposes.