HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

        Plaintiffs,

   v.

CITY OF SEATTLE,

        Defendant.

Case No. 20-cv-00983-TSZ

**CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS AGAINST PLAINTIFFS HUNTERS CAPITAL; RICHMARK LABEL; MATTHEW PLOSZAJ; CAR TENDER; BERGMAN'S LOCK & KEY; WADE BILLER; AND ONYX HOMEOWNERS ASSOCIATION**

CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS
AGAINST CERTAIN OF THE PLAINTIFFS
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 5

A. Legal Standard. ..... 5

B. Plaintiffs' Spoliated ESI ..... 6

1. Messages and Email are ESI ..... 6

2. Plaintiffs' Messages Have Been Lost and Cannot be Fully Replaced Through Additional Discovery. ..... 6

3. Plaintiffs Did Not Take Reasonable Steps to Preserve their ESI ..... 7

4. Plaintiffs Were Under a Duty to Preserve their ESI When They Deleted It ..... 8

C. Plaintiffs' Spoliation of ESI Warrants Sanctions ..... 9

1. Rule 37(e)(2) Sanctions are Warranted Against Plaintiffs Who Acted with Intent to Deprive the City of the Use of the ESI ..... 9

2. Rule 37(e)(1) Sanctions are Justified because the City Was Prejudiced ..... 10

D. Appropriate Sanctions ..... 12

IV. CONCLUSION ..... 12

CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS AGAINST CERTAIN OF THE PLAINTIFFS - i
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

# TABLE OF AUTHORITIES

**Cases**

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
No. 14-cv-1926, 2016 WL 6609208 (C.D. Cal. Jul. 12, 2016) .......... 9

*Brewer v. Leprino Foods Co.*,
No. 16-cv-1091, 2019 WL 356657 (E.D. Cal. Jan. 29, 2019) .......... 8, 9

*Colonies Partners, L.P. v. County of San Bernardino,*
No. 18-cv-0420, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) .......... 7

*Cyntegra, Inc. v. Idezz Labs., Inc.,*
No. 06-cv-4170, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) .......... 9

*Gaina v. Northridge Hosp. Med. Ctr.,*
No. 18-cv-177, 2019 WL 1751825 (C.D. Cal. Feb 25, 2019) .......... 6, 12

*HP Tuners, LLC v. Sykes-Bonnett*,
No. 17-cv-05760, 2019 WL 5069088 (W.D. Wash. Sept. 16, 2019) .......... 9

*Laub v. Horbaczewski,*
No. 17-cv-6210, 2020 WL 9066078 (C.D. Cal. Jul. 2, 2020) .......... 6, 7, 9

*Ronnie Van Zant, Inc. v. Pyle,*
270 F. Supp. 3d 656 (S.D.N.Y. 2017) .......... 10

*Skyline Advanced Tech. Svcs. v. Shafer,*
No. 18-cv-06641, 2020 WL 13093877 (N.D. Cal. Jul. 14, 2020) .......... 10

*Youngevity Int'l v. Smith,*
No. 16-cv-704, 2020 WL 7048687 (S.D. Cal. Jul. 28, 2020) .......... 10

**Rules**

Fed R. Civ. P. 37, Advisory Committee Notes to the 2015 Amendment .......... 12

Fed. R. Civ. P. 37(e) .......... 5, 6, 7

Fed. R. Civ. P. 37(e)(1) .......... 6, 10

Fed. R. Civ. P. 37(e)(2) .......... 6, 9

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

## I. INTRODUCTION

Both parties have lost text messages. But the evidence is that owners of at least two Plaintiffs –Hunters Capital and Richmark Label – deliberately, manually deleted their text messages about CHOP when they knew they were obligated not to do so, and have done nothing to retrieve them. Additionally, several Plaintiffs used the messaging app Signal, known primarily for its ability to send "disappearing" messages, throughout 2020 to discuss the CHOP and the protests. No Plaintiff preserved its Signal messages, despite the obligation to do so. And while the City has gone to great lengths to resurrect otherwise missing messages from City employees' phones, Plaintiffs have made no such effort. The City's efforts will be explained more fully in response to Plaintiffs' motion; this motion is about Plaintiffs' successful, and deliberate, actions to foreclose access to key documents that damage, and in some cases obliterate, their claims.

Hunters Capital's founder and president, Michael Malone, deleted all of his texts from the summer of 2020, deliberately. He only stopped deleting them nine months after filing this lawsuit on March 26, 2021, for one reason: that day the City advised Plaintiffs that it had discovered certain City employees were missing text messages from June 2020. Jill Cronauer, also a Hunters Capital owner and its operations manager, deliberately failed to preserve selective text messages and emails with Hunters Capital's tenants that (as she knew) are devastating to many of Hunters' damages claims, and which the City only discovered by subpoenaing its tenants.

Richmark Label's owner, Bill Donner, confirmed that he was at the "center" of CHOP and exchanged many texts about it, but deleted them forever. At his deposition, he bristled at the notion that he had any obligation to do otherwise.

Lonnie Thompson (Bergman's Lock & Key), and Wade Biller (individually and on behalf of Onyx Homeowners Association) failed to preserve their messages about CHOP. Thompson lost his phone months after CHOP and lost all of his messages. Biller gave his phone to counsel in May 2021, at which point it apparently stopped working. Plaintiffs have not recovered the messages, and apparently have not tried.

The Plaintiffs who communicated via Signal include Cronauer, Biller, Matthew Ploszaj,

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

Richmark Label's Sales and Marketing Manager Elle Lochelt, Hunters Capital's Residential Leasing Manager Kayla Stevens, and Car Tender Co-Owner John McDermott (the "Signal Plaintiffs"). None preserved or produced their Signal messages.

Many Plaintiffs' spoliation was intentional, and each Plaintiff's spoliation prejudiced the City's ability to defend this action. Plaintiffs' actions were calculated to destroy evidence that literally obliterated their claims. As a result of each Plaintiffs' actions, the City asks that the Court sanction each Plaintiff identified below, as follows:

| Party | ESI Spoliated | Sanction |
|---|---|---|
| Hunters Capital Entities | Text and Signal messages, emails | Adverse inference; exclusion of evidence, fees & costs |
| Richmark Label | Text and Signal messages | |
| Car Tender | Signal messages | |
| Matthew Ploszaj | Signal messages | |
| Biller/Onyx | Text and Signal messages | Fees and costs |
| Bergman's | Text messages | Fees and costs |

## II. STATEMENT OF FACTS

Of twelve Plaintiff groups remaining in the case, seven engaged in serious spoliation, including highly material, calculated destruction of adverse evidence.

**Hunters Capital –** Hunters Capital seeks $2.9 million in damages. Malone is its chairman and CEO and "spearhead[ed]" this lawsuit. Ex 1,[1] Malone Dep. at 150; 258. Plaintiffs' counsel first imaged Malone's phone in May 2021, long after he had deleted critical evidence and nearly a year after filing the case. Eight months later, at 3:48 pm on December 23, 2021, Plaintiffs informed the City that all of Malone's texts before March 26, 2021 were gone. Ex. 2. The March 26 date is important because on that date the City had informed Plaintiffs' counsel that some of its employees' text messages were missing. Cramer Decl.at ¶4. On that very day, for the first time, Malone stopped deleting his messages.

Malone testified – confirmed by text messages produced by other Hunters Capital employees – that the texts he deleted from June to October of 2020 contained highly relevant, and

[1] Exhibits referenced herein are attached to the September 29, 2022 Declaration of Shane P. Cramer filed herewith.

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

damaging, evidence, including text messages to custodians from whom Hunters Capital has not produced text messages. *See, e.g.*, Ex. 1, Malone Dep. at 232-33, 246-47, 251-52, 286-287; Ex 3; Ex. 4. The only third-party Malone texted with for whom messages have been produced was former Mayor Durkan, who retained the texts on her phone, while Malone deleted them. Ex. 5.

Malone was aware of his – and Hunters Capital's – retention obligations from the outset of the case, but made no effort to ensure that Hunters Capital employees preserved any ESI. Ex. 1, Malone Dep. at 281 ("Q. Okay. So you understood going into the lawsuit that you had an obligation to preserve your text messages. A. I already said that."); *Id.* at 281-82 ("Q. Did you work with anybody else to make sure that – that everyone with relevant text messages knew that they were not to delete them?. . . . A. Yeah. I – no."); *Id.* at 290, 302-03.

Cronauer is co-owner of Hunters Capital and the main contact for Hunters Capital's commercial tenants. *Id.* 27, 50-51. In February 2022, Cronauer testified that she "ha[d] not done anything deliberately to delete" text messages on the phone that she had been using in June 2020. Ex. 6, (Cronauer Dep. at 149). But Cronauer failed to produce (or preserve) highly relevant text messages with at least one tenant (Havana Hospitality Group, Inc.), which produced the messages to the City pursuant to a subpoena – a thread spanning March 21, 2020 through at least September 2020, long after this case was filed. The thread involves discussions between Cronauer and the owner of Havana regarding Covid-19 rent relief, access issues during CHOP, Havana's lease, and other key topics in this litigation. Ex. 7. It is unlikely she only texted with one tenant.

There also is evidence that Cronauer failed to produce (or even preserve) tenant emails that are devastating to Hunters Capital's damages claim. For example, Hunters Capital seeks hundreds of thousands of dollars because the Riveter left its space in a Hunters Capital's building. But in fact the Riveter had decided to do so in May 2020, well in advance of CHOP, as revealed in emails that Cronauer and Hunters Capital did not produce, but that the Riveter did. Ex. 8. Hunters Capital also failed to produce other critical emails between Cronauer and tenants, including a thread showing another tenant was planning to leave before CHOP, and several that contain admissions that Hunters Capital knew the real estate market had softened due to Covid-19, despite

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

its claims in the lawsuit to the contrary. Ex 9; Ex. 10. This selective destruction indicates other, similarly damaging emails, existed but have not been recovered.

**Richmark Label** – Plaintiff Richmark Label claims $90,000 in lost profits and other damages to its East Precinct business. Plaintiffs' counsel did not image Richmark Owner, Bill Donner's, phone and produced none of his texts. Ex. 11 at 2; Ex. 12 at 10. Donner testified that he deleted all of his CHOP-related texts:

> Q. Did you text with anyone about CHOP after June 11th, 2020, so in the latter part of June when the protest was ongoing?
> A. Oh, absolutely. I would have friends, family text me how's it going up there. I mean, again, we were -- we were a very big item in Seattle, and I'm at the center of it, as you know where the building is.
> Q. And you deleted those texts after -- at some point?
> A. Just like I do normally with all texts, or virtually all texts.

Ex. 13, Donner Dep. at 199. Donner understood his preservation obligation but did not preserve his texts or try to recover them from others. *Id.* at 195-96, 199-200.

**Biller/Onyx** – Biller is suing the City individually and on behalf of the Onyx Homeowners Association. Ex. 14, (Biller Dep. at 9, 11). He preserved no data from the phone he used during June 2020. He is also the *only* Onyx board member (out of five) or homeowner to whom Plaintiffs' counsel sent a litigation hold notice or from whom they collected documents. Ex. 12 at Ex. A. In December 2020, six months after CHOP had ended Biller purchased an iPhone. He then "turned [his old Android phone] off and stowed it in my drawer." Ex. 14, (Biller Dep. at 68-69). In May 2021, Biller testified that he turned it on before turning it over to Plaintiffs' counsel, at which point he received some sort of error message. *Id.* at 212. Plaintiffs' counsel separately confirmed that they had made no effort to access the phone beyond trying to turn it on. Ex. 11.

**Bergman's Lock & Key** – Thompson, Bergman's' owner (Ex. 15, Thompson Dep. at 10), testified that he texted about CHOP, but "do[es] not have texts from back then" because he dropped his phone in Lake Washington in October 2020, and then lost another while hiking in January 2021. *Id.,* (Thompson Dep. at 104-106). Plaintiffs' counsel confirmed that neither of Mr. Thompson's phones was imaged between June and October 2020, and that they "have not been

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

able to recover, or attempt to recover, data from those phones." Ex. 12 at 10.

**Signal Plaintiffs –** In about June 2020, several Plaintiffs and their representatives began using the Signal messaging application as a "private" forum for their discussions about protest activity around Cal Anderson Park. Ex. 14, (Biller Dep. at 63-65). Signal is known for its end-to-end encryption and a feature called "disappearing messages"—which are automatically erased from every participant's phone after a period set by the sender. Ex. 16. Every Signal Plaintiff sent and received messages on Signal, but none of them produced any Signal messages from their phones. According to Biller, some members of the Signal group used the deleted message feature specifically so that their messages could not be used in this litigation. Ex. 14, (Biller Dep. at 74).

Plaintiffs did produce Signal data from the phone of a non-party participant in the Signal groups named Stephanie Moore (Ex. 11), but the data from her phone would not contain all of Plaintiffs' messaging data. She joined after the Signal group was formed and after CHOP started, so no earlier messages were produced, and her data includes only those messages sent to or from her. It omits any messages between others that did not include her – including messages involving some Plaintiffs. For example, LaRisa DeYoung, from former plaintiff NW Liquor, testified that she likely exchanged direct messages with Biller on Signal, but that she no longer has her Signal data. Ex. 17, DeYoung Dep. at 60-61, 30-32.

Plaintiffs' excuses for not producing data from Plaintiffs' phones are that Cronauer "turned off" Signal at some point after the lawsuit was filed, deleting her data. Ex. 12 at 6. McDermott deleted the app from his phone in late 2020. Ex. 18, (McDermott Dep. at 215–216). Biller's messages were lost when the phone he used in June 2020 malfunctioned in May 2021. Ex. 12 at 7; Ex. 11; Ex. 14 (Biller Dep. at 69). The other Signal Plaintiffs all maintain that they or their employees never used Signal and have not produced any such data, despite the fact that their messages appear in Moore's Signal spreadsheet. Ex. 19.

## III. ARGUMENT

### A. Legal Standard.

FRCP 37(e) governs the spoliation of ESI, and requires that four criteria be met: (1) the

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

information qualifies as ESI; (2) "the ESI is 'lost' and 'cannot be restored or replaced through additional discovery'"; (3) the responding party failed to take "reasonable steps to preserve the ESI'' and (4) the responding party was "under a duty to preserve ESI." *Gaina v. Northridge Hosp. Med. Ctr.*, No. 18-cv-177, 2019 WL 1751825, *2 (C.D. Cal. Feb 25, 2019). On finding spoliation, where prejudice can be established, the Court may impose sanctions "no greater than necessary to cure the prejudice." Rule 37(e)(1). If the spoliating "party acted with intent to deprive another party of the information's use," the court may impose harsher sanctions. Rule 37(e)(2).

The City has met all of these criteria. An award of sanctions is appropriate here.

**B. Plaintiffs Spoliated ESI.**

**1. Messages and Email are ESI.**

Plaintiffs failed to preserve text messages, Signal messages, and emails, all of which are ESI. *See id*. at *3 (applying Rule 37(e) to lost text messages). The first criteria is easily met.

**2. Plaintiffs' Messages Have Been Lost and Cannot be Fully Replaced Through Additional Discovery.**

This spoliation prong requires showing that the ESI was lost, or, at least, "that categories of irreplaceable, relevant documents were *likely* lost," and "cannot be restored or replaced through additional discovery." *Laub v. Horbaczewski*, No. 17-cv-6210, 2020 WL 9066078, *2 (C.D. Cal. Jul. 2, 2020). This criterion is met.

Malone texted regularly about CHOP and Cal Anderson Park in 2020, but all his text messages from that period were deleted. While he produced no messages, two Hunters employees produced more than 150 relevant messages beginning in late May 2020. Mayor Durkan properly preserved and produced the messages she exchanged with Malone. All of these texts are concrete evidence that Malone texted about CHOP. In fact, on multiple occasions he copied-and-pasted snippets of his CHOP-related conversations with third parties into messages to Hunters Capital employees. Ex. 1, at 232-33, 246-47, 251-52. Plaintiffs have neither identified all the other people Malone texted, nor obtained these messages. His messages are lost and cannot be fully replaced.

Hunters Capital produced some texts and emails from Cronauer, but omitted many

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

damaging ones, including emails showing that it was Covid, not CHOP, that caused tenants to leave. The City has some of them because the tenants produced them. Others likely exist that could not be recovered due to Hunters' deliberate destruction.

Donner admits he deleted his text messages, including the many he sent and received about CHOP. He also took no steps to obtain the responsive texts from others. Ex. 13, (Donner Dep. at 199-200). Plaintiffs' counsel has confirmed that the messages cannot be recovered. Ex. 12 at 10.

Thompson lost his phones and has no back-ups. Biller's phone was not backed up; Plaintiffs represent that it is inaccessible. Both individuals acknowledged that they had sent relevant, CHOP-related texts while they had use of their phones. Ex. 15; Ex. 14. Plaintiffs have identified no other sources of the same evidence and Plaintiffs' counsel advises that the text messages are not recoverable. *Id.* Courts consistently find that similar evidence satisfies Rule 37(e)'s second requirement. *E.g.*, *Laub*, 2020 WL 9066078, at *4; *Colonies Partners, L.P. v. County of San Bernardino*, No. 18-cv-0420, 2020 WL 1496444, **5-6 (C.D. Cal. Feb. 27, 2020).

Plaintiffs' counsel has provided Signal data from third-party Moore's phone (Ex. 19) but that data a) does not cover the first days of CHOP and b) contains no messages sent by Plaintiffs to anyone but Moore. It is clear that at least Biller used Signal to send messages that have not been recovered. Ex. 14, (Biller Dep. at 60); Ex. 17, (DeYoung Dep. at 60-61). And Biller testified that some members of the group set their Signal account to permanently delete their messages from every participant's phone once they understood that any such messages might be discoverable in this lawsuit. Ex. 14, (Biller Dep. at 74:7-15).

The actions of each of these Plaintiffs were a deliberate, calculated and meticulously executed effort to erase unfavorable evidence. The City has satisfied this second criteria.

**3. Plaintiffs Did Not Take Reasonable Steps to Preserve their ESI.**

Discovery shows that several Plaintiffs failed to take any steps – let alone "reasonable" steps – to preserve their messages and in many instances took steps to assure their destruction. Malone deleted every message from his phone covering the time period of June 2020 through March 26, 2021. He started saving messages only when alerted to his peril: when the City

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

voluntarily disclosed to Plaintiffs that same day (March 26, 2021) that some City custodians had lost their text messages. Even then, Plaintiffs waited another eight months to disclose Malone's deletions in a Christmas news dump late in the afternoon on Thursday, December 23, 2021. Ex. 2. Cronauer's deletions are consistent only with one intent: to delete compellingly unfavorable evidence. She appears to have retained most texts and emails, while deleting or failing to produce those that completely undercut Hunters Capital's case. Plaintiffs' counsel also took no steps to image any Hunters Capital phones until almost a year after filing the case. Ex. 12 at Ex. B.

Donner likewise made no effort to preserve his texts. While he got lots of texts about CHOP in June 2020, because "we were a very big item in Seattle, and I'm in the center of it," he manually deleted every single one of them, "just like [he did] normally with all texts…." *Id*. at 197-199.

Biller used his Android phone from June until December 2020, and during that time Plaintiffs did not collect or image it. After Biller got a new phone in December 2020, it took another five months (until after the City had disclosed its employees' text issues) for his counsel to obtain his old one, in May 2021. *See Brewer v. Leprino Foods Co.*, No. 16-cv-1091, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019). At that point, Plaintiffs say his phone no longer worked.

Neither Thompson nor his counsel imaged his phone from June to October 2020, when he dropped his phone in the lake, despite the existence of the litigation hold. *Id.*; *see* Ex. 15 at 105.

None of the Signal Plaintiffs preserved their Signal messages on their phones either, despite taking part in an ongoing thread about CHOP and Cal Anderson from June 2020 on. Plaintiffs' retention failures caused Plaintiffs' counsel to obtain partial replacement data from a third party.

As the circumstances above show, Plaintiffs have gone far beyond merely failing to take reasonable steps to preserve documents; they have, in nearly every case, deliberately erased them.

**4. Plaintiffs Were Under a Duty to Preserve their ESI When They Deleted It.**

Plaintiffs and their key employee representatives had a duty to preserve their messages and emails during the period when they failed to do so. *Laub*, 2020 WL 9066078 at *2. "The duty to preserve arises not only during litigation, but also extends to the period before litigation when a

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

party should reasonably know that evidence may be relevant to anticipated litigation." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. 14-cv-1926, 2016 WL 6609208, *10 (C.D. Cal. Jul. 12, 2016). Courts have recognized that "[p]laintiffs are 'in control of when the litigation is to be commenced' and must necessarily anticipate litigation before the complaint is filed." *Cyntegra, Inc. v. Idezz Labs., Inc.*, No. 06-cv-4170, 2007 WL 5193736, *3 (C.D. Cal. Sept. 21, 2007).

Plaintiffs began planning for this lawsuit no later than June 11, 2020, and filed it on June 24, 2020. Ex. 20; Dkt. No. 1. Malone and Donner deleted text messages from June 2020 forward, knowing they were obligated to retain records. Thompson lost his first phone in October 2020, and Biller's phone malfunctioned in May 2021. Cronauer deleted text threads with tenants containing relevant, responsive messages in June 2020. *See* Exs. 7, 24 & 25. Her selective preservation and deletion with respect to tenant emails show that she did so to conceal their very adverse impact: proving beyond doubt that tenants were planning to move out before CHOP began. Exs. 8, 9. The Signal data that was produced shows that the Signal Plaintiffs were all sending and receiving messages after the lawsuit was filed. *See* Ex. 16. The City has satisfied this prong as well.

### C. Plaintiffs' Spoliation of ESI Warrants Sanctions.

#### 1. Rule 37(e)(2) Sanctions are Warranted Against Plaintiffs Who Acted with Intent to Deprive the City of the Use of the ESI.

A party's destruction of evidence is intentional when the party had notice that the evidence was potentially relevant to litigation before it was destroyed. *HP Tuners, LLC v. Sykes-Bonnett*, No. 17-cv-05760, 2019 WL 5069088, *4 (W.D. Wash. Sept. 16, 2019). Courts also consider a party's "fail[ure] to take any measures to preserve" ESI "despite [a] duty to do so." *Brewer*, 2019 Wl 356657 at *10.

Malone and Donner manually and intentionally deleted text messages from their phones after the lawsuit was contemplated and after it was filed, without first preserving their data. Cronauer's selective preservation and deletion – *i.e.*, her failure to preserve and produce damaging emails with tenants – shows an intent to deprive the City of the use of documents damaging to Hunters' case. *Ronnie Van Zant, Inc. v. Pyle,* 270 F. Supp. 3d 656, 670-71 (S.D.N.Y. 2017).

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

The Signal group chat was specifically formed to discuss the CHOP, the summer protests, and this lawsuit – all highly relevant topics. They chose to use Signal (a platform best known for its disappearing messages feature) as opposed to the native Apple messages app or some other third-party messaging app, because Signal is "private." Ex. 14, Biller Dep. at 73; Ex. 17, DeYoung Dep. at 13. The available messages that do exist from third party Moore's phone do not contain a single message where any Signal Plaintiff reminds the members of the group chat that all messages sent and received on the app would to be preserved for the litigation. On the contrary, Biller and DeYoung both testified that some participants did set their messages to disappear, and Biller confirmed for many of them did so specifically to prevent messages from being used in this litigation. Ex. 14, Biller Dep. at 74; Ex. 17, DeYoung Dep. at 24-25.

Biller's and Thompson's loss of texts is akin to the circumstances under which City employees lost text messages. The results were probably not intentional, accepting their testimony. Like City officials who were locked out of their phones, Biller's phone apparently stopped working, rendering his messages inaccessible.[2] Thompson's text messages were lost when he dropped his phone in water and could not retrieve it.

**2. Rule 37(e)(1) Sanctions are Justified because the City Was Prejudiced.**

"A party is prejudiced if the spoliating party's actions 'impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case.'" *Youngevity Int'l v. Smith*, No. 16-cv-704, 2020 WL 7048687, *3 (S.D. Cal. Jul. 28, 2020) (citation omitted). Spoliation threatens to interfere with the rightful decision in the case where it may force the non-spoliating party to have to rely on "incomplete and spotty" evidence at trial. *Skyline Advanced Tech. Svcs. v. Shafer*, No. 18-cv-06641, 2020 WL 13093877, *10 (N.D. Cal. Jul. 14, 2020).

Here, Plaintiffs' claims hinge in large part on CHOP's alleged impact on their businesses and properties. Messages about what these businesses and their tenants were experiencing in the spring and summer of 2020, due to CHOP, Covid-19 and other inherent business problems, bear

[2] While Plaintiffs' counsel has argued that the City should have tried to jailbreak any locked phones, Plaintiffs' counsel acknowledges that it did not try to do the same with Mr. Biller's phone.

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

directly on Plaintiffs' claims and the City's defenses.

The individuals' contemporaneous, unvarnished messages to other businesses in the neighborhood, tenants, and friends and family, are highly relevant to what Plaintiffs and their tenants actually were experiencing in June 2020. Donner has produced a handful of emails in which he described how he did not think the City and SPD would be able to clear the CHOP area without significant and violent clashes with protestors. Exs. 21-23. Admissions like that are highly relevant because they demonstrate the reasonableness of the City's conduct – trying to de-escalate the CHOP sufficiently so it could be cleared *without* the violent clashes that Donner and others expected – which the City successfully accomplished. The City has every expectation that Donner's many text messages from the "center" of CHOP with his friends and family would have contained additional compelling admissions and evidence.

Other texts Hunters Capital produced contain key admissions like the fact that the absence of police, "burning cars, breaking retailers windows, robbing stores" were all occurring by May 30, before CHOP; that during CHOP "during the days [the "Zone" had] never been cleaner and I'd take my kids there... no prob;" that as of June 14 it was "a lively peaceful block party up there;" and that the City was in the CHOP daily meeting with people. Ex. 4 at Rows 170, 246 and 298. They also show that many of the damages Hunters seeks to pin on the City arose before CHOP even formed, including the May 31 looting of Gamestop that Hunters Capital claims was the direct cause of GameStop not renewing its lease, *see* Ex. 4 at Row 164 (showing broken windows occurred before CHOP); Ex. 3 at Row 161. The tenant emails and texts that Cronauer deleted also are favorable to the City, because they show that Hunters' Capitol's tenants, and the Capitol Hill real estate market in general, were impacted far more by Covid-19 than by CHOP . Malone's and Cronauer's other missing texts and emails almost certainly would include additional, highly relevant evidence of these issues.

The Signal Plaintiffs' deliberate and successful efforts to erase their Signal data also prejudiced the City. Messages that have been produced show that Biller, for example, was a prolific messenger on Signal. He sent dozens of messages to Moore alone. Third-party DeYoung

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

was also a frequent messenger in these groups. She testified that she and Biller likely exchanged Signal messages about CHOP that would not be captured in the Signal messages that were produced. Ex. 17, (DeYoung Dep. at 60-61, 30-32). Biller's failure to preserve and produce these messages harmed the City's case: those messages could have included communications regarding the services being provided by the City, the location of blockages in the street, access issues (or lack thereof) in front of Onyx, and myriad other issues.

**D. Appropriate Sanctions.**

The City has established that Plaintiffs have spoliated ESI, and that it is entitled to sanctions against each Plaintiff identified herein.

Hunters Capital, Richmark Label, and the Signal Plaintiffs each acted with the deliberate intent to deprive the City of the use of their messages. As such, the City requests that the Court instruct the jury that it must, or at least may, presume that the spoliated messages contain evidence unfavorable to these Plaintiffs. Additionally, because emails and texts produced by Hunters Capital tenants but *not* preserved and produced by Hunters Capital demonstrate that Hunters Capital improperly deleted critically relevant evidence going to the heart of their claims for lost or abated rent, the City requests that the Court preclude Hunters Capital from presenting evidence that any tenants or rent that Hunters Capital lost from June 2020 through the present was caused by CHOP or the City. *See* Rule 37, Advisory Committee Notes to 2015 Amendment.

The City has also been prejudiced by Plaintiffs' spoliation, and requests that the Court enter sanctions sufficient to cure that prejudice. Specifically, the City asks that the Court preclude Plaintiffs from relying on any communications the individuals identified herein did preserve and produce, as allowing the use of selectively retained documents would not cure the City's prejudice.

Finally, the City asks that the Court award reasonable attorneys' fees and costs to compensate the City for the prejudice caused by Plaintiffs' spoliation and the City's efforts to obtain relevant information from other sources. *See Gaina*, 2019 WL 1751825, at *5.

## IV. CONCLUSION

The City respectfully requests the Court grant the City's motion.

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

DATED this 29th day of September, 2022.

ANN DAVISON
Seattle City Attorney

By: *s/ Joseph Groshong*
Joseph Groshong, WSBA# 41593
Assistant City Attorney
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Tel: (206) 684-8200
Fax: (206) 684-8284
Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP

By: *s/ Arthur W. Harrigan, Jr.*
By: *s/ Tyler L. Farmer*
By: *s/ Shane P. Cramer*
By: *s/ Erica Iverson*
Arthur W. Harrigan, Jr., WSBA #1751
Tyler L. Farmer, WSBA #39912
Shane P. Cramer, WSBA #35099
Erica Iverson, WSBA #59627
999 Third Avenue, Suite 4400
Seattle, WA 98104
Tel: (206) 623-1700
arthurh@harriganleyh.com
tylerf@harriganleyh.com
shanec@harriganleyh.com
ericai@harriganleyh.com

*Attorneys for City of Seattle*

CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS AGAINST CERTAIN PLAINTIFFS - 13
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717