# EXHIBIT 26

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLACK LIVES MATTER SEATTLE-KING COUNTY, ABIE EKENEZAR, SHARON SAKAMOTO, MURACO KYASHNA-TOCHA, ALEXANDER WOLDEAB, NATHALIE GRAHAM, AND ALEXANDRA CHEN,

    Plaintiffs,

    v.

CITY OF SEATTLE, SEATTLE POLICE DEPARTMENT,

    Defendant.

Case No. 2:20-cv-00887-RAJ

ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

The city and nation are at a crisis level over the death of George Floyd. One would be missing the point to conclude that the protests that are the subject of this motion are only about George Floyd. His death just happens to be the current tragic flashpoint in the generational claims of racism and police brutality in America. The global strength of the Black lives movement and the obvious commitment to change are a clear indication—not just to this Court, but globally—that these protests will not be short-

ORDER – 1

lived, and the protestors have made it clear that their determination will be relentless until change and police reform is made.

What brings the parties to this Court today are peaceful protestors desiring to engage in their rights guaranteed by the Constitution, the freedom of assembly without fear of retaliation or disruption by Seattle police officers' use of tear gas, pepper spray, flash bang devices, or foam-tip bullets.

The First Amendment guarantees that all citizens have the right to hold and express their political beliefs through peaceful protests. Police cannot interfere with orderly, nonviolent protests because they disagree with the content of the speech. At the same time, this Court must balance these interests when violent offenders choose to disrupt constitutionally protected activity.

For the reasons below, Plaintiffs' Motion for Temporary Restraining Order (Dkt. # 6) is **GRANTED in part**.

## II. BACKGROUND

On May 25, 2020, George Floyd died in the custody of four Minneapolis police officers. Since then, nationwide outrage and protest has ensued. Protests in Seattle began on May 29, 2020, just days after his death and continue to this day. Indeed, within moments of this Order a statewide walkout and march is set to begin.

The tale of the protests is cloudy. The parties agree that the protests have been largely peaceful. Dkt. # 6 at 13; Dkt. # 29 at 7-9. But on some occasions, the protestors and the Seattle Police Department ("SPD") have exchanged bottles, rocks, and fireworks for tear gas, pepper spray, and blast balls. Dkt. # 19 ¶ 4; Dkt. # 27 ¶¶ 12-25. On June 5, 2020, the SPD banned the use of tear gas, subject to some exceptions. Dkt. # 27 ¶ 21. Days later, SPD deployed tear gas again. Dkt. # 8 ¶¶ 6, 11-12.

Plaintiffs sued Defendant City of Seattle ("City") in this Court, alleging that the City violated their rights under the First and Fourth Amendments. Dkt. # 1. Plaintiffs allege that during the George Floyd protests, the SPD deployed "less-lethal" weapons

ORDER – 2

including "chemical irritants, batons, kinetic impact projectiles, and weapons intended to stun with light and sound." *Id.* ¶ 15. Chemical irritants include tear gas ("CS gas") and oleoresin capsicum spray ("OC" or "pepper" spray). *Id.* ¶ 16. The use of these weapons, Plaintiffs say, deprived them of their right to protest and to be free from excessive force. *Id.* ¶¶ 140-47.

Hours after they filed their complaint, Plaintiffs moved for a temporary restraining order ("TRO"), seeking to enjoin the City from "deploying chemical weapons or projectiles of any kind for the purpose of crowd control at protests or demonstrations . . . includ[ing] prohibitions on[] (1) any chemical irritant such as CS Gas ('tear gas') or OC Spray ('pepper spray') and (2) any projectile such as flash-bang grenades, 'pepper balls,' 'blast balls,' and rubber bullets." Dkt. # 6-1 at 2; *see also* Dkt. # 6. The City opposed that motion but, in the interest of compromise, proposed revisions to the injunction that it is willing to stipulate to. Dkt. # 29 at 12-14.

The Court has reviewed the evidence supplied by the parties, but, of course, the record is limited at this stage. Based on the Court's review, the video and testimonial evidence show that on some occasions the SPD has in fact used less-lethal weapons disproportionately and without provocation. *See, e.g.*, Dkt. # 9 ¶ 3; Dkt. # 12 ¶¶ 3-4, 6-8; Dkt. # 19 ¶¶ 3-4.

### III. LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

ORDER – 3

832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

## IV. DISCUSSION

A few words to start: First, as other courts have recently expressed,[1] people have a right to demonstrate and protest government officials, police officers being no exception. Their right to do so, without fear of government retaliation, is guaranteed by the First and Fourth Amendments. Second, to protect person and property, police officers must make split-second decisions, often while in harm's way. Third, the Court hopes that the parties see the kinship in their arguments—not all protestors seek destruction; not all officers seek violence. Finally, like previous courts, this Court recognizes the difficulty in drawing an enforceable line that permits police officers to use appropriate means in response to violence and destruction of property but that also does not chill free speech or abuse those who wish to exercise it.

Here, Plaintiffs request a TRO on their First and Fourth Amendment claims. Dkt. # 6. They seek to enjoin the City of Seattle, including the SPD, from deploying "chemical weapons or projectiles of any kind for the purpose of crowd control at protests or demonstrations." Dkt. # 6-1 at 1. The Court analyzes Plaintiffs' request under the four *Winter* factors and addresses each in turn.[2]

### A. Likelihood of Success on the Merits

Plaintiffs argue that the SPD's use of less-lethal, "crowd control" weapons violates their First Amendment right to protest and their Fourth Amendment right to be free from excessive force.

---

[1] *Abay v. City of Denver*, No. 1:20-cv-01616-RBJ, 2020 WL 3034161, at *2 (D. Colo. June 5, 2020); *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2020 WL 3078329, at *1 (D. Or. June 9, 2020).

[2] The City also argued that Plaintiffs lack standing to bring their claims. The Court has reviewed their brief and has heard oral argument on this issue. Based on that review, it concludes that the standing argument lacks merit.

ORDER – 4

### i. First Amendment Claim

To establish a First Amendment retaliation claim, plaintiffs must show that (1) they were engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). At this stage, Plaintiffs have made a clear showing of all three elements.

First, the right to protest—including activities such as "demonstrations, protest marches, and picketing"—is clearly protected by the First Amendment. *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). Since "time immemorial," city streets and sidewalks have been deemed public fora, and as such any First Amendment restrictions placed on them are "subject to a particularly high degree of scrutiny." *Id.* "Speech that stirs passions, resentment or anger is fully protected by the First Amendment." *Id.* (citing *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)). Indeed, the First Amendment "protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) (explaining that yelling obscenities and threats at a police officer is still protected under the First Amendment). The law is clear that the government may not prohibit angry or inflammatory speech in a public forum, unless it is both "directed to inciting of producing imminent lawless action" and "likely to incite or produce such action." *Collins*, 110 F.3d at 1371.

Plaintiffs show that they were engaged in the constitutional right to protest police brutality. They exercised their right on public fora. The video evidence reveals that many of these protests occurred on Seattle streets, often right outside the police precinct on Capitol Hill. Dkt. # 8 ¶¶ 2, 6, 11-12 (videos of June 8 protest); Dkt. # 19 ¶¶ 3-4 (videos of June 1 and June 2 protests). On this record, their protests have been passionate but peaceful, and they must thus be protected even if they stand in opposition to the police. The video and testimonial evidence reveal as much. *See, e.g.*, Dkt. # 9 ¶ 3; Dkt.

ORDER – 5

1  # 12 ¶¶ 3-4, 6-8; Dkt. # 19 ¶¶ 3-4.

2  Both parties agree that some protesters did launch objects at the police, ranging
3  from rocks, bottles, fireworks, traffic cones, traffic flares, and more. Dkt. # 9 ¶ 3;
4  Dkt. # 12 ¶ 11; Dkt. # 27 ¶¶ 12-25. Moreover, the City represents that SPD confronted
5  "significant arson events, assaults on civilians and officers, as well as wide-spread looting
6  and property destruction," among other criminal activities. Dkt. # 29 at 7. This, no
7  doubt, poses a serious threat to officer life and safety. *Id.* at 19. But, as to these
8  protestors, the Court agrees with Plaintiffs' reading of *Collins*: "the proper response to
9  potential and actual violence is for the government to ensure an adequate police presence,
10 and to arrest those who actually engage in such conduct, rather than to suppress
11 legitimate First Amendment conduct as a prophylactic measure." 110 F.3d at 1372.

12 Reiterating its initial remarks, the Court acknowledges that it is difficult to balance
13 these public safety concerns and constitutional rights. But the Court holds that the
14 balance here tips in favor of Plaintiffs, and other peaceful protesters, who were engaging
15 in and may continue to engage in their constitutional right to protest.

16 Second, SPD's actions would chill a person of ordinary firmness from continuing
17 to protest. "Ordinary firmness" is an objective standard that will not "allow a defendant
18 to escape liability for a First Amendment violation merely because an unusually
19 determined plaintiff persists in his protected activity." *Mendocino Envtl. Ctr. v.*
20 *Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). The mere threat of harm, without
21 further action, can have a chilling effect. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir.
22 2009).

23 SPD's use of less-lethal, crowd control weapons have surely chilled speech. To
24 start, exposure to tear gas and pepper spray is "excruciating." Dkt. # 10 ¶¶20-31
25 ("Imagine the hottest chile pepper you ever ate, then imagine an even hotter one that you
26 would never eat, and then imagine touching that pepper and inadvertently sticking your
27 finger in your eye. That is what a small dose of pepper spray is like."). The same is true

28 ORDER – 6

for the projectiles that SPD fires into crowds, which can cause intense pain and bruising. *Id.* ¶¶ 38-47. Dkt. # 25 ¶¶ 6-7, Exs. A & B. Though "less lethal," these devices have been sufficiently lethal to deter some protestors from protesting again. *See, e.g.*, Dkt. # 9 ¶¶ 12-13 ("I do feel anxious though, especially about protesting because of police presence at the protests."); Dkt. # 17 ¶ 11 ("[E]very day I participate in demonstrations where the Seattle Police Department are present, my anxiety undoubtedly increases. I begin to worry and prepare for the same suffocating feeling I experienced because of their use of extreme force and violence against peaceful protestors."). The Court holds that SPD's use of these weapons would chill a person of "ordinary firmness" from protesting.

Finally, Plaintiffs have shown that the protests were a substantial or motivating factor in SPD's conduct. Plaintiffs contend that SPD indiscriminately threw an excessive amount of chemical agents at peaceful protests over police brutality. Dkt. # 6 at 25. They argue that this reveals that a "substantial or motivating purpose" of the force was Plaintiffs' exercise of their First Amendment rights. *Id.* The Court agrees. The use of indiscriminate weapons against all protesters—not just the violent ones—supports the inference that SPD's actions were substantially motivated by Plaintiffs' protected First Amendment activity. The City objects, however, arguing that the protestor's message has been constant while the SPD's use of less-lethal weapons has decreased over time. Dkt. # 29 at 16. Thus, they suggest, SPD's actions were not motivated by Plaintiffs' protest. *Id.* But it is not clear to the Court that, under the third prong of the retaliation analysis, Plaintiffs must show that they were retaliated against *every* time they exercised their First Amendment rights. The law clearly requires only that the SPD's actions be substantially motivated by Plaintiffs' conduct.

In sum, Plaintiffs have made a clear showing of a likelihood of success on the merits on their First Amendment claim.

ORDER – 7

### ii. Fourth Amendment Claim

"A Fourth Amendment claim of excessive force is analyzed under the framework outlined by the Supreme Court in *Graham v. Connor*." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053-54 (9th Cir. 2007) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc)). Under the objective reasonableness standard, a court must balance the "nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake to determine whether the force used was objectively reasonable under the circumstances." *Id.* (quoting *Smith*, 394 F.3d at 701) (internal quotation marks omitted). "Reasonableness" of a given use of force must be measured from the perspective of a reasonable officer on the scene and must appreciate the "split-second judgments" that officers must often make. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Ninth Circuit has held that it is unreasonable to use pepper spray, projectile bean bags, and pepper ball projectiles against individuals "who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others." *Nelson v. City of Davis*, 685 F.3d 867, 884-857 (9th Cir. 2012)

Both testimonial and video evidence establish that SPD likely violated Plaintiffs' Fourth Amendment rights. Plaintiffs testify that they were peacefully protesting (or reporting on the protests) when they fell victim to the weapons at issue. Dkt. # 9 ¶¶ 3-4 (tear gassed); Dkt. # 12 ¶ 5 (tear gassed); Dkt. # 14 ¶ 4 (pepper sprayed); Dkt. # 17 ¶¶ 3-4 (tear gassed). And the video evidence supports these accounts. A video of a June 1, 2020 protest in Capitol Hill suggests that SPD exerted excessive force without provocation—the protesters were largely peaceful, SPD changed its posture by replacing frontline officers on bicycles with officers donning gas masks, and then SPD deployed a battery of pepper spray, flash-bang grenades, and tear gas. Dkt. # 19 ¶ 3; *see also id.* ¶ 4 (June 2, 2020 Capitol Hill protest). At most, this evidence shows that Plaintiffs, and many protesters alike, were engaging in minor property crime and offered only passive resistance at the time they were attacked.

ORDER – 8

The Court is satisfied that, on this record, Plaintiffs have shown a likelihood of success on their Fourth Amendment claim.

### B. Likelihood of Suffering Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Further, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod*, 437 U.S. at 373).

Plaintiffs have established a threat of immediate, irreparable harm in the absence of a TRO. They have shown a likelihood of success on their First and Fourth Amendment claims, demonstrating that irreparable injury has already occurred. The use of less-lethal, crowd control weapons has already stifled some speech even if momentarily. And the protests are live. In fact, a statewide walkout is set to commence moments after this Order is entered. Dkt. # 6 at 20. Without a TRO, Plaintiffs may face the same constitutional deprivation that they experienced in days past.

### C. Balance of Hardships and Public Interest

When the government is a party, the last two prongs of the injunction analysis merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As to the balance of hardships, "serious First Amendment questions compel[]" a finding that the "balance of hardships tips sharply in [the plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (second alteration in original) (internal quotation marks omitted) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002)). And as to public interest, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotation marks omitted).

The City concedes that Plaintiffs' "constitutional rights weigh heavily on the

ORDER – 9

Plaintiffs' side of the scale" and notes that SPD's policies aim to facilitate and support free speech, not stifle it. Dkt. # 29 at 19. But, it says, Plaintiffs fail to address other interests here, such as the life and safety of the public and officers or the need to protect public and private property. *Id.* It is true, Plaintiffs do not offer the Court any other interests to weigh. And this Court appreciates that officers sometimes, especially in the circumstances we find ourselves in, carry on a thankless job. That said, the last two prongs still favor an injunction.

The balance of hardships favors an injunction. As discussed, there are serious First Amendment questions here, tipping the balance in Plaintiffs' favor. What is more, the City has already conceded that "safety was shattered for many by the images, [of] sound and gas more fitting of a war zone." Dkt. # 6 at 32. In fact, at one point, the Seattle Mayor and Chief of Police both announced a temporary ban on tear gas. Dkt. # 1 ¶ 62. These actions strongly suggest that the City has overstepped, causing protesters undue hardship.

The public interest favors an injunction. First, Plaintiffs make a strong showing of past and future constitutional violations, which under the case law is always in the public interest to prevent. Second, these protests occur during a pandemic, the spread of which may be exacerbated by chemical irritants such as tear gas and pepper spray. Dkt. # 6 at 29 n.7; Dkt. # 10 ¶¶ 20, 28, 48-55. Third, the weapons are indiscriminate, used on entire crowds of peaceful protestors without targeting any single agitator or criminal. Dkt. # 6 at 24. Because they are indiscriminate, they may even spill into bystanders' homes or offices as they have done before. *See, e.g.*, Dkt. # 8 ¶¶ 7-8; Dkt. # 13 ¶¶ 3-7. Hence, the public interest would be advanced by an injunction.

Plaintiffs have met their burden on the final two prongs of the injunction analysis.

## V. ORDER

For the reasons stated above, the Court **GRANTS in part** Plaintiff's Motion for Temporary Restraining Order (Dkt. # 6) and temporarily **ENJOINS** the City of Seattle as

ORDER – 10

follows:

(1) The City of Seattle, including the Seattle Police Department and any other officers, departments, agencies, or organizations under the Seattle Police Department's control (collectively, "the City"), is hereby enjoined from employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations. This injunction includes: (1) any chemical irritant such as and including CS Gas ("tear gas") and OC spray ("pepper spray") and (2) any projectile such as and including flash-bang grenades, "pepper balls," "blast balls," rubber bullets, and foam-tip projectiles. This Order does not preclude individual officers from taking necessary, reasonable, proportional, and targeted action to protect against a specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property. Further, tear gas may be used only if (a) efforts to subdue a threat by using alternative crowd measures, including pepper spray, as permitted by this paragraph, have been exhausted and ineffective and (b) SPD's Chief of Police has determined that use of tear gas is the only reasonable alternative available. The Chief of Police may only authorize limited and targeted use of tear gas and must direct it to those causing violent or potentially life-threatening activity. To the extent that chemical irritants or projectiles are used in accordance with this paragraph, they shall not be deployed indiscriminately into a crowd and to the extent reasonably possible, they should be targeted at the specific imminent threat of physical harm to themselves or identifiable others or to respond to specific acts of violence or destruction of property.

(2) In the event that Plaintiffs seek relief for an alleged violation of this Order, the City must respond to the motion for relief within 24 hours.

(3) Because this is a non-commercial case, the balance of hardships favors

ORDER – 11

Plaintiffs, and there is no realistic likelihood of harm to the City of Seattle from enjoining its conduct, the Court waives the security bond requirement.

(4) This Order will expire fourteen days after entry unless extended by the Court for good cause. Fed. R. Civ. P. 65(b)(2).

DATED this 12th day of June, 2020.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12