THE HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

HUNTERS CAPITAL, LLC, et al.,

Plaintiffs,

vs.

CITY OF SEATTLE,

Defendant.

Case No. 2:20-cv-00983-TSZ

PLAINTIFFS' RESPONSE TO CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS AGAINST PLAINTIFFS HUNTERS CAPITAL; RICHMARK LABEL; MATTHEW PLOSZAJ; CAR TENDER; BERGMAN'S LOCK & KEY; WADE BILLER; AND ONYX HOMEOWNERS ASSOCIATION

**Noted: November 15, 2022**

PLAINTIFFS' RESPONSE TO CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS
(Case No. 2:20-cv-00983-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ... 1

II. STATEMENT OF FACTS ... 1

III. ARGUMENT ... 6

- A. Legal Standard ... 6
- B. Several Plaintiffs Took Reasonable Steps to Preserve Their Lost ESI ... 6
- C. The City Has Not Shown that Certain Lost ESI Could Not Be Restored ... 7
- D. The City Has Not Shown Prejudice from the Loss of Plaintiffs' ESI ... 8
- E. The City Has Not Shown that Plaintiffs Intended to Deprive It of ESI ... 10
- F. The Court Should Not Award the Sanctions Requested by the City ... 11

IV. CONCLUSION ... 12

PLAINTIFFS' RESPONSE TO CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS (Case No. 2:20-cv-00983-TSZ) - i

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Best Label Co. v. Custom Label & Decal, LLC*,
2022 WL 1525301 (N.D. Cal. May 13, 2022) .......... 8

*HP Tuners, LLC v. Sykes-Bonnett*,
2019 WL 5069088 (W.D. Wash. Sept. 16, 2019) .......... 6

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) .......... 8, 12

*Neely v. Boeing Co.*,
2019 WL 1777680 (W.D. Wash. April 23, 2019) .......... 7

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
328 F.R.D. 543 (N.D. Cal. 2018) .......... 6

*Reinsdorf v. Skechers U.S.A., Inc.*,
296 F.R.D. 604 (C.D. Cal. 2013) .......... 8

**Other Authorities**

Fed. R. Civ. P. 37, 2015 .......... 8

Fed. R. Civ. P. 37(e), 2015 .......... 10

Fed. R. Civ. P. 37(e) .......... 6

Fed. R. Civ. P. 37(e)(1) .......... 6, 8

Fed. R. Civ. P. 37(e)(2) .......... 6, 11

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## I. INTRODUCTION

Spoliation sanctions are not warranted against any of the Plaintiffs in this case because any loss of electronically stored information ("ESI") was not prejudicial to the City of Seattle's ("City") defenses, and any loss of ESI was not intentional. The City has not presented any evidence that any of the Plaintiffs intended to deprive the City of ESI, or that the missing ESI is of any importance to the City's defenses in this case. Unlike the City's top officials, including former Mayor Jenny Durkan, former Police Chief Carmen Best and Fire Chief Harold Scoggins, who are all missing text messages between each other that could not be recreated or reconstructed, the Plaintiffs are either small business owners or individuals with no duty to maintain public records.

The City has failed to show that some Plaintiffs even lost their ESI. For example, Wade Biller's phone simply stopped working, and the missing text messages may still be retrievable. The Plaintiffs have produced over 8,866 Signal messages, which largely document the carnage and chaos created by the City's deliberate actions. The City complains that each Signal Plaintiff did not make a separate duplicative production. However, the City has not shown that Plaintiffs' production of the Signal Plaintiffs' messages is incomplete.

Certain Plaintiffs have lost access to their *personal* cellphones or lost text messages from their *personal* cellphones. However, the City refused to even collect *any* of its employees' personal cellphones or personal messaging service. The City's motion overreaches in nearly every respect and is an attempt to misdirect attention from the City's own intentional, systematic and highly prejudicial spoliation of the text messages of its highest public servants.

## II. STATEMENT OF FACTS

**Hunters Capital -** The City claims that two Hunters Capital employees intentionally deleted ESI: Jill Cronauer, the COO, and Michael Malone, the CEO. But all of the documents the City claims Jill Cronauer deleted were not, in fact, deleted. Declaration of Gabriel Reilly-Bates (the "Reilly-Bates Decl."), at ¶ 2. On Tuesday, September 27, 2022, two days before the City filed its Motion for Spoliation Sanctions (the "Motion"), the City disclosed, for the first time, that it believed that Ms. Cronauer had deleted one text message chain and three email chains. *Id.*, at ¶

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

3. The City made this disclosure because it had not received them in discovery from Hunters Capital, but had instead received them from third-parties. *Id.*, at ¶ 4. On Thursday, September 29, 2022, before the City filed its Motion for Spoliation Sanctions (Dkt. No. 107), counsel for the Plaintiffs sent an email indicating that three of the four documents the City claimed were "deleted" had not actually been deleted, but in fact had not been produced for various reasons. *Id.,* at ¶ 5, and Ex. 1. Plaintiffs' counsel indicated that it was not an appropriate issue for a motion for spoliation, and that the City had not provided enough notice to resolve the discovery issue. *Id.*, at ¶ 6. Later, counsel for Plaintiffs discovered the fourth and final document that the City claimed was missing. *Id.*, at ¶ 7. In addition, the parties further met and conferred and agreed that this issue was not a spoliation issue, as the documents were not deleted, but it was a discovery issue, and that the parties would continue to meet and confer about the issue. *Id.*, at ¶ 8.

The City claims that Michael Malone deliberately deleted all of his texts from the summer of 2020, but Mr. Malone has consistently denied that he cleaned out his entire text message history or that he deleted any text messages that were relevant to this case. *See* Declaration of Michael Malone ("Malone Decl."), ¶¶ 8-9. The only messages he deleted would have been random messages unrelated to this case, such as marketing, phishing or spam text messages. *Id.*, Reilly-Bates Decl., Ex. 2. (Malone Dep. 290:12-20). Mr. Malone does not know why there were no text messages on his phone prior to March 26, 2021. Malone Decl., at ¶ 7. Reilly-Bates Decl. Ex. 2, (Malone Dep. 294:10-23). He is 78 and not tech savvy, and Mr. Malone was unaware that text messages were missing from his phone from before March 26, 2021, when it was imaged on May 3, 2021, by Plaintiffs' counsel's vendor. Malone Decl., at ¶¶ 1, 3, 4.

Plaintiffs' counsel was unable to forensically examine Mr. Malone's phone, because by the time they had learned there were no text messages on his phone, Mr. Malone's phone had been stolen, on June 1, 2021. *Id.*, at ¶ 5. Mr. Malone lost his phone when he was in Hunters, WA at the end of May 2021. *Id.*; *see also* Reilly-Bates Decl., at ¶ 10, Ex. 3 (email re: farm caretaker finding phone and shipping it via UPS). The phone was found and shipped to Hunters Capital's Seattle office via UPS. Malone Decl., at ¶ 5, *see also* Reilly-Bates Decl., ¶ 11, Ex. 4 (email attaching

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

UPS delivery receipt). The package was left on the street in front of Hunters Capital's Broadway Avenue office by UPS, but it was stolen on June 1, 2021, before the package could be retrieved by a Hunters Capital employee. Malone Decl., at ¶ 5; Reilly-Bates Decl., Ex. 4. Malone was reimbursed by UPS for the lost phone. Reilly-Bates Decl., at ¶ 12, Ex. 5 (UPS check).

The City claims that Mr. Malone deleted his entire text message history on March 26, 2021, because on that same day, the City advised Plaintiffs' counsel that certain City employees were missing text messages. Motion, p. 1:13-15. However, Mr. Malone was not even aware of the City officials' deletion of their text messages until after his phone was imaged by counsel on May 3, 2021, and he certainly did not decide to delete his text messages in response to the revelation that the City's top officials had deleted *their* text messages. Malone Decl., at ¶ 12.

**Richmark Label -** The City claims that Bill Donner intentionally deleted his text messages. Motion, p. 1:18-20. However, Mr. Donner has had a habit as long as he has owned a cell phone of deleting every text message conversation as soon as it is completed, usually within minutes or hours after receiving the message. *See* Declaration of William Donner (the "Donner Decl."), at ¶ 12. All of his text messages during CHOP were deleted during or shortly after CHOP concluded on July 1, 2020, due to Mr. Donner's usual practice. *Id.*, at ¶ 14. Mr. Donner's text messages were not used for business purposes, as the vast majority of his conversations and communications about CHOP were over email or in a face-to-face conversation. *Id.*, at ¶ 15. Mr. Donner's text messages about CHOP were with family or friends who wrote to him about the chaos and violence they were seeing on the news about CHOP. *Id.*, at ¶ 16. If he had any conversations with employees about CHOP, those messages would have been produced from their phones. *Id*.

**Bergman's Lock & Key -** The City cannot show that Lonnie Thompson, of Bergman's Lock and Key, intentionally deleted any of his text messages. His personal cellphone fell in Lake Washington in October 2020, while he was boating, and it was not recovered. Declaration of Lonnie Thompson (the "Thompson Decl.), at ¶ 3. He was not able to recover any of the text messages that were on that phone because he did not have the phone, and he had no form of back-ups or cloud-based storage. *Id.*, at ¶ 4. Mr. Thompson asked his employees to gather any text

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

messages from their devices that they may have sent him, but they had none. *Id.*, at ¶ 6.

**Wade Biller -** The City also has not shown that Wade Biller lost any of his text messages. Mr. Biller's phone that he used during CHOP was replaced in December 2020. Declaration of Wade Biller (the "Biller Decl."), at ¶ 15. Mr. Biller turned his phone that he used in CHOP over to Plaintiffs' counsel for imaging in May 2021, but at that time, when he tried to turn his phone on, he was unable to, due to a technical issue. *Id.*, at ¶ 16. Mr. Biller's phone was examined by Plaintiffs' counsel's vendor but they explained that any attempt to retrieve the text messages and data from the phone would cost thousands of dollars and could potentially render the phone permanently unusable, without any guarantee of success. *Id.*, at ¶ 17. Mr. Biller did not delete any messages from his old phone that he used during CHOP. Biller Decl., at ¶ 19.

In July of 2021, over a year ago, counsel for Plaintiffs wrote to counsel for the City explaining the circumstances of Mr. Biller, Mr. Donner's and Mr. Thompson's phones. Dkt. No. 108-11 (7/21/21 Weaver Letter). The City never asked to inspect Mr. Biller's phone despite now moving for sanctions. Reilly-Bates Decl., at ¶ 13.

**Onyx Homeowners Association -** Mr. Biller was the President of Onyx Homeowners Association (the "Onyx HOA") in June of 2020 and was the board member who was primarily responsible for the Onyx HOA's response to CHOP. Biller Decl., at ¶ 3. Onyx HOA did not communicate using text messages. *Id.*, at ¶ 18. All communication was by email, phone, Zoom or in person. *Id.* Onyx HOA has produced numerous emails and board minutes in this case. *Id.*

**The Signal Messages -** Several Plaintiffs, or Plaintiffs' employees, participated in neighborhood group chats using an application called Signal, including Jill Cronauer (Hunters Capital), Kayla Stevens (same), John McDermott (Car Tender), Matthew Ploszaj, Wade Biller (Onyx HOA) and Elle Lochelt (an administrative employee at Richmark) (the "Signal Plaintiffs"). Plaintiffs have produced over 8,866 Signal messages that Plaintiffs' counsel collected from a third-party participant who was involved these neighborhood chats, even those these were almost exclusively personal messages sent on personal devices. Reilly-Bates Decl., at ¶ 14. The City's position with regard to personal messages on Signal is hypocritical, because such messages were

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

personal messages, but the City refused to even collect ***any*** forms of personal communication for *any* of its City employees. *See* Reilly-Bates Decl., at ¶15, and Exs. 6 and 7.

The Signal message group was part of a larger group of residents of Capitol Hill, and the purpose of the group was to provide a forum for neighborhood residents to discuss what was happening in the neighborhood with CHOP. Biller Decl., at ¶ 20; Cronauer Decl., at ¶ 5. None of the Signal Plaintiffs created the Signal messaging group, but instead only joined it after its creation. *See Id.* at ¶ 5; Biller Decl., at ¶ 21; Ploszaj Decl., at ¶ 4; Stevens Decl. at ¶ 2; Lochelt Decl., at ¶2. The Signal Plaintiffs did not choose to use Signal because of its encrypted messages features, but they were concerned that CHOP participants might intercept their communications and retaliate against them. Biller Decl., at ¶ 23. Some of the Signal Plaintiffs joined the group months after CHOP had concluded. Ploszaj Decl., at ¶ 4 (started using around September 30, 2020, but stopped in November 2020); while others used the app only for a short period of time and sent a very limited number of text messages. Cronauer Decl., at ¶ 6; Stevens Decl., at ¶ 3.

Ms. Cronauer, Ms. Stevens, Mr. McDermott, Mr. Ploszaj and Ms. Lochelt do not recall sending any direct messages using the Signal App, only to group chats that Plaintiffs collected and produced.[1] Cronauer Decl., at ¶ 9; Stevens Decl., at ¶ 6; McDermott Decl., at ¶ 8; Ploszaj Decl., at ¶ 8; Lochelt Decl., at ¶ 6. They also do not recall using the "disappearing messages" feature of Signal, which might have deleted messages from the chat. Cronauer Decl., at ¶ 10; Biller Decl., at ¶ 21; Stevens Decl., at ¶ 7; McDermott Decl., at ¶ 9; Ploszaj Decl., at ¶ 9; Lochelt Decl., at ¶ 7.

The Signal Plaintiffs' collection was thorough. Mr. McDermott, Ms. Cronauer, Ms. Lochelt reviewed their Signal messages that were collected and did not recall sending additional messages. McDermott Decl., at ¶ 10; Cronauer Decl., at ¶ 11; Lochelt Decl., at ¶ 6; Ploszaj Decl., at ¶ 10; Stevens Decl., at ¶ 6.

///

[1] The City's Dkt. 108-19 is only a small sample of the 8,868 Signal messages produced by Plaintiffs. *See* Reilly-Bates Decl., ¶ 17. Direct messages in the Plaintiff's Signal message production were denoted by the column "GroupName" and specifically called out as a direct message, for example "DM with Diana Adams" or "DM with MacKenzie Iconic Global." *Id.*, at ¶ 18, and Exhibit 8.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

## III. ARGUMENT

### A. Legal Standard

Rule 37(e) governs spoliation of electronically stored information ("ESI"), and essentially functions as a decision tree. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 328 F.R.D. 543, 549 (N.D. Cal. 2018). The first step in an analysis of spoliation of ESI is whether "[1] information that should have been preserved in the anticipation or conduct of litigation [2] is lost because a party failed to take reasonable steps to preserve it, and [3] and it cannot be restored or replaced through additional discovery." *Id.*; Fed. R. Civ. P. 37(e). If any of these questions is answered "no," then a motion for spoliation sanctions must be denied. *HP Tuners, LLC v. Sykes-Bonnett*, 2019 WL 5069088, at *1 (W.D. Wash. Sept. 16, 2019), report and recommendation adopted as modified, 2019 WL 5064762 (W.D. Wash. Oct. 9, 2019). "If the court answers all of the questions "yes", then the Court proceeds to determine whether the moving party has been prejudiced and whether the party subject to potential sanctions had an intent to deprive." *Id.*

If the court finds that another party was prejudiced from the loss of the information, but there was no intent to deprive the other party of the information's use, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Only upon finding the that the party acted with the intent to deprive another party of the information's use, a court may (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

### B. Several Plaintiffs Took Reasonable Steps to Preserve Their Lost ESI

As stated above, the ESI that the City claims Ms. Cronauer deleted or failed to preserve was actually preserved and not lost. *See infra*, 1-2. So her ESI is not a spoliation issue.

Wade Biller, and by extension Onyx HOA, took reasonable steps to preserve his text messages. Mr. Biller stored his text messages and Signal messages on his personal phone, but his cell phone was rendered inoperable through no fault of his own. Mr. Biller preserved his text messages on his phone, and when he got a new phone, he placed his old phone in a drawer. Biller

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

Decl., at ¶ 15. Mr. Biller took reasonable steps to preserve his phone but it became inoperable.

Lonnie Thompson took reasonable steps to preserve his text messages, by storing them on his phone, similar to City's employees. However, unlike the City's myriad factory reset phones, Mr. Thompson's phone was lost by accident while boating on Lake Washington. Thompson Decl., at ¶ 3. He was not able to recover any missing text messages from that phone. *Id.* at ¶ 4.

**C. The City Has Not Shown that Certain Lost ESI Could Not Be Restored**

The City has not shown that Mr. Biller's text messages cannot be restored. *Neely v. Boeing Co.*, 2019 WL 1777680 (W.D. Wash. April 23, 2019) (court found information was not lost – movant did not show that allegedly spoliated data could not be restored). The City has known about his phone and its difficulties since July 2021 but has never requested to see it.

The City has also not shown that the Signal Plaintiffs' messages in Signal have not been recovered. The City admits that Plaintiffs "provided Signal data from third-party Moore's phone (Ex. 19.)." But the City complains that the Signal data: (a) does not cover the "first days of CHOP" and (b) contains no messages sent by Plaintiffs to anyone but Moore. However, the City has offered no evidence that the Signal Plaintiffs were using Signal to communicate at the beginning of CHOP, and several Signal Plaintiffs did not start using Signal until the end of CHOP or even after CHOP had long concluded. *See infra*, 5. In addition, many of the Signal Plaintiffs did not recall sending any private direct messages using Signal, but sending only general messages to chat groups, which have been fully produced. *See infra*, 5.[2] Moreover, some of the Signal Plaintiffs used the app for only a short time (Cronauer Decl., at ¶ 6; Stevens Decl., at ¶ 3), while others confirmed that they could not recall sending any messages other than the messages collected. *See infra*, at 6. Finally, all of the Signal Plaintiffs have confirmed that they did not use the

---

[2] The City misrepresents that Mr. Biller "likely" exchanged direct messages with another Signal user. The City represented that "LaRisa DeYoung, from former plaintiff NW Liquor, testified that she *likely* exchanged direct messages with Mr. Biller on Signal. Motion, at 5:14-16. However, when Ms. DeYoung was asked whether she sent direct messages to other people other than Ms. Moore, she replied "No". Dkt. No. 108-17, 60:7-9. When counsel for the City asked her specifically if she had direct messages with Mr. Biller, she replied "I don't think so." *Id.*, 60:20-23. Counsel for the City asked again "so your testimony is that you didn't ever direct message with Mr. Biller during – the – during the summer or fall of" and Ms. DeYoung again replied "Not that I remember." *Id.*, 60:25-61:7. Counsel for the City goaded Ms. DeYoung once more: "But it's possible that you did? A: I mean, yeah, sure." *Id.* at 61:8-9." Thus, the City is attempting to spin rank speculation into "likely exchanged direct messages."

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

"disappearing messages" feature of Signal. *See infra*, 5-6. That feature could have possibly been activated by one of the many other Capitol Hill community members in the Signal group.

**D. The City Has Not Shown Prejudice from the Loss of Plaintiffs' ESI**

The impact of the lost ESI on the overall evidence in this case would likely be marginal, at best. The comments to Fed. R. Civ. P. Rule 37's 2015 amendments state that an "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37, 2015 Advisory Committee Notes to Subdivision (e)(1). The City has not shown prejudice as a result because its loss has not "impaired [the City's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (defining prejudice in the spoliation context); *see also Reinsdorf v. Skechers U.S.A., Inc.,* 296 F.R.D. 604, 627 (C.D. Cal. 2013) (noting that the party seeking spoliation sanctions "must ... show that the evidence would have been helpful in proving its claims or defenses") (citation omitted); Spoliation of ESI that does not prejudice the opposing party is not sanctionable. Fed. R. Civ. P. 37(e)(1); *see Reinsdorf*, 296 F.R.D., at 627 (noting that requiring a showing of both relevance and prejudice " 'is an important check on spoliation allegations and sanctions motions' ") (citation omitted); *see also Best Label Co. v. Custom Label & Decal*, *LLC*, 2022 WL 1525301, at *5 (N.D. Cal. May 13, 2022) (finding no prejudice after movant failed to provide declarations or supporting information of subject matter of missing files).

The City has not suffered any prejudice from the loss of Plaintiffs' text messages, as any such messages likely supported Plaintiffs' claims, rather than the City's defenses. Most of the City's evidence of "prejudice" comes from messages Plaintiffs' produced. *See* Motion, p. 3:2-3. Moreover, two other custodians from Hunters Capital, Jill Cronauer and Michael Oaksmith, produced over 150 text messages that included messages to or from Mr. Malone, including his communications about CHOP and the continued occupation of Capitol Hill by protesters. Motion, 6:19-20. In addition, we received a handful of text messages between former Mayor Durkan's personal phone and Mr. Malone in response to subpoena that Plaintiffs issued directly to Ms. Durkan, consisting mainly of Mr. Malone's requests for meetings to discuss the cleanup of the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

neighborhood and Cal Anderson Park. Reilly-Bates Decl., at ¶ 19. The City, in contrast, had the highest officials completely wipe their phones, obliterating any communications between them.

Donner never used text messages for any business purposes and only texted with family and friends who were asking him about news stories they were seeing about CHOP (Donner Decl., at ¶ 16) which likely would have supported plaintiffs' claims. The City points to *emails* that Donner *did* produce as evidence that his text messages would have contained prejudicial information. Motion at p. 11:4-9, Dkt. Nos. 108-21 – 108-23. But those emails are with business associates and hardly demonstrate prejudice; they describe the damage Richmark suffered, the intimidation at the checkpoint barricades, and the barriers blocking the roads. *See id.* As he generally texted with only family and friends, these emails with *business associates* are inapposite and not demonstrative of prejudice.

The City has agreed that Ms. Cronauer's missing text message chain and missing emails cited in its Motion is not a spoliation issue but a discovery issue. The Motion also claims that "Cronauer's other missing texts and emails almost certainly would include highly relevant evidence. . . ." But Plaintiffs produced 998 other text messages and hundreds of emails to or from Ms. Cronauer. Reilly-Bates Decl., at ¶ 20. The City speculates that other text messages are missing from Ms. Cronauer's production, and they have offered no evidence to support its assertion.

A lack of text messages from Mr. Biller and Onyx HOA did not cause the City prejudice with respect to Onyx HOA, because Onyx HOA did not use text messages to communicate at the board level. Biller Decl., at ¶ 18. The City's Motion provides no evidentiary basis for how Mr. Biller's missing text messages may have prejudiced the City. The Plaintiffs produced emails, board minutes and Signal messages from Mr. Biller and Onyx HOA. Reilly-Bates Decl., at ¶ 21.

Any loss of Signal messages was not prejudicial to the City. The Plaintiffs produced over 8,866 Signal messages from this neighborhood chat (Reilly-Bates Decl., at ¶ 14), and they provide a comprehensive account of the terror and frustration felt by ordinary citizens of Capitol Hill. *See* Dkt. No. 108-19. Notably, the City did not rely upon the 8,866 Signal messages that were produced for its Motion for Summary Judgment. That's because the Signal messages supported Plaintiffs'

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

claims and not the City's defenses. Some Plaintiffs only joined Signal for a very short time (Ms. Cronauer and Ms. Stevens), while others joined Signal months after CHOP had concluded (Mr. Ploszaj). The City has simply presented no evidence that any allegedly lost Signal messages caused it any prejudice, to the contrary, the Signal messages provide support for Plaintiffs' claims.

**E. The City Has Not Shown that Plaintiffs Intended to Deprive It of ESI**

The City has not shown that any of the Plaintiffs acted with an intent to deprive it of ESI. At best, the City can only show that Plaintiffs were negligent in their preservation of ESI. *See* Fed. R. Civ. P. 37(e) 2015 Advisory Cmt. ("Negligent or even grossly negligent behavior does not logically support that behavior"). The City has conceded that Mr. Thompson and Mr. Biller's (and by extension, Onyx HOA) loss of text messages was not intentional. Motion, at p. 10:11-15.

The City has not shown that Mr. Malone intended to deprive the City of his ESI. Michael Malone has testified that he does not know what happened to his text messages before March 26, 2021, (Malone Decl., at ¶ 6) and that he did not clean out his entire text message history. *Id.*, at ¶¶ 7-8. While the City tries to make hay with the coincidence that it informed Plaintiffs' counsel of problems with City employees' phones on March 26, 2021, Mr. Malone was not made aware of those issues until after his phone was imaged and it became public knowledge. *Id.*, at ¶ 11.

Mr. Malone and the text messages were on his personal phone. *Id.*, at ¶ 1. Unfortunately, his personal phone was lost, and then stolen, before it could be forensically examined. *Id.*, at ¶¶ 4-5. While Mr. Malone may have deleted some random text messages on his phone, he "never intentionally deleted text messages that would be relevant to this case or regarding CHOP or that would have been relevant to the Hunters Capital business." *Id.*

Bill Donner also did not intend to deprive the City of ESI. He was merely following his normal habit of clearing his text messages within minutes or hours of completing those text message conversations. Donner Decl., at ¶¶ 12-14. Donner deleted all of his text messages about CHOP prior to understanding that he was supposed to retain them for purposes of the lawsuit. *See* Reilly-Bates Decl., Exhibit 9, Donner Dep., 197:6-198:9 ("Q: Did you know when you were deleting them that you were supposed to retain them for purposes of the lawsuit? A: Oh, no, this

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

was all done well prior to this.").

As previously discussed, Ms. Cronauer's ESI was not lost, and therefore, she did not actually deprive the City of any emails or text messages.

None of the Signal Plaintiffs acted with intent to deprive the City of their Signal messages. Plaintiffs have made a substantial production of over 8,866 Signal messages. Reilly-Bates Decl., ¶ 14. Ms. Cronauer and Ms. Stevens stopped using the app because of the high volume of incoming messages, and they used the app for less than two weeks, on their personal phones, barely sending any messages at all. Cronauer Decl., at ¶ 6; Stevens Decl., at ¶ 3. Mr. Biller lost access to his Signal messages when his phone malfunctioned, so he also did not intentionally deprive the City of his ESI either. Biller Decl., at ¶ 16. Ms. Cronauer, Ms. Stevens, Ms. Lochelt, Mr. Ploszaj and Mr. McDermott reviewed the collection of their Signal productions and confirmed that they do not recall any other messages. *See infra*, 6. And Ms. Lochelt was not designated as a custodian for Richmark (Reilly-Bates Decl., at ¶ 22) because she was not part of Richmark's management group that makes other major business decisions at Richmark. Lochelt Decl., at ¶ 1.

**F. The Court Should Not Award the Sanctions Requested by the City**

The City requests several sanctions against the Plaintiffs: (1) an adverse instruction to the jury "that it must, or at least may, presume that the spoliated messages contain evidence unfavorable to these Plaintiffs, (2) a bar that would prevent Hunters Capital from presenting evidence that any damages were caused by the City, and (3) barring Plaintiffs from relying on any communications they had. Motion, 12. The 2015 Advisory comments to Rule 37(e)(2) state:

> Courts should exercise caution, however, in using the measures specified in (e)(2). Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

Here, any information that was lost was not of importance to the City's defenses, and any prejudice could be cured by simply allowing the City to present evidence that ESI was lost by certain Plaintiffs. An adverse instruction, or any form of wholesale evidentiary bar does not fit the wrong

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

where Plaintiffs have produced reems of evidence that is similar to the ESI that was lost, and the City has not shown that any Plaintiffs have attempted to conceal any smoking guns. On the whole, the missing ESI was most likely irrelevant or more descriptive of the unprecedented nature of the damages caused by CHOP, and Plaintiffs' own emotional reaction to it.

Finally, the City's request that Hunters Capital not be permitted to offer any evidence of the City's causation of CHOP does not fit the wrong and would be tantamount to a dismissal for Hunters Capital. The Court should not dismiss any of Plaintiffs' claims because the case should be tried on its merits and there are less drastic sanctions available. Before considering the "harsh sanction" of dismissal, the district court should take into account the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). The first factor does not favor or disfavor a dispositive sanction, because the case has been pending for over two years and trial is set for June 2023. The second factor does not favor or disfavor entry of a dispositive sanction. The third factor strongly disfavors entry of a dispositive sanction as the risk of prejudice to the City is low. In this case, Plaintiffs have produced myriad documents, emails, text messages and Signal message that contain Plaintiffs' communications about CHOP, and the lost ESI does not support the City's defenses. The fourth factor of favoring a decision on the merits strongly disfavors entry of a dismissal where Plaintiff's claims are otherwise meritorious. The fifth factor, the availability of less drastic sanctions, also strongly disfavors entry of dismissal, where the City has not shown that any of the lost ESI would have had a dispositive effect, or even been of importance. Other less drastic sanctions would include those discussed above.

## IV. CONCLUSION

Therefore, Plaintiffs respectfully request that the Court deny the City's Motion for Spoliation Sanctions.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

DATED this 28th day of October, 2022.

**MORGAN LEWIS & BOCKIUS LLP**

By */s/ Gabriel Reilly-Bates*
Patricia A. Eakes, WSBA #18888
Angelo J. Calfo, WSBA #27079
Tyler S. Weaver, WSBA #29413
Gabriel Reilly-Bates, WSBA #52257
Andrew DeCarlow, WSBA #54471
Henry Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: (206) 274-6400
Fax: (206) 274-6401
Email: patty.eakes@morganlewis.com
angelo.calfo@morganlewis.com
tyler.weaver@morganlewis.com
gabriel.reillybates@morganlewis.com
andrew.decarlow@morganlewis.com
henry.phillips@morganlewis.com

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO CITY OF SEATTLE'S MOTION FOR SPOLIATION SANCTIONS
(Case No. 2:20-cv-00983-TSZ) - 13

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401