# EXHIBIT 10

| | |
|---|---|
| From: | Gabe Reilly-Bates <GabeR@calfoeakes.com> |
| Sent: | Tuesday, September 28, 2021 5:14 PM |
| To: | Shane Cramer; Caitlin Pratt |
| Cc: | Kristin Ballinger; Tyler Weaver; Nancy Carriaga |
| Subject: | Hunters Capital v. City of Seattle: Meet and Confer Conference |

Hi Shane and Caitlin,

Thanks for speaking with Tyler and me yesterday. Below are my notes from the meeting concerning our conversation and agreements. Please let me know if you disagree with anything set forth below.

I have highlighted the issues that require follow up from the City. At the top of our priority list are (1) the timeline for the production of the tax data, (2) the search results from Plaintiffs' revised search terms and / or the supplemental document production and (3) the revised DEA agreement.

Thanks,

Gabe

I. **Written Discovery**

  a. **Tax information re: gross sales**

   i. City indicated it could search by address, but it was not sure it will be able to include both sides of the street.

   ii. City indicated it only had the data by taxpayer address.

   iii. City indicated it could provide gross sales and B & O tax data

   iv. City confirmed that it was trying to confirm whether it has the sales tax information in a producible format. City agreed to follow up with the data specialist to determine what limitations there were on the sales tax information.

   v. City agreed to produce the data, and then would make its data specialist available for a discussion about what data is available.

   vi. City did not have a time frame as to when the data would be produced, but agreed to follow up to provide a time frame.

  b. **Digital Examination Agreement**

   i. **Key changes:**

    1. City agreed to provide an updated draft of the DEA with the revisions the parties agreed to.

    2. Footnote 1 – Shanon Anderson and Valarie Anderson –

     a. The City is not certain whether the data will be inaccessible, so they will be removed from footnote 1. If it's determined that their data is inaccessible, the DEA will apply to them.

1

3. Representation that the electronic devices are being stored in a safe location

    a. This sentence will be deleted

4. Ability to request additional ESI from City

    a. The parties agree to a meet and confer process with specific deadlines (for example, a conference within 10 days and production of additional data within 10 days)

5. Physical inspection of Durkan, Best and Scoggins' phone

    a. The City will make these phones available for inspection, but if they are located at Crypsis' facility then the City will make the phones available via Zoom. The parties will arrange for their respective forensic experts to meet to discuss the phones.

6. Modification of data

    a. This section will be edited to reflect that Crypsis will provide the data that it collected from the electronic devices

7. Browser history –

    a. This provision will be deleted from the DEA.

8. Meta Data Regarding Text message settings –

    a. The City will confirm that we have indicated the correct files, and will delete the phrase "and by whom" as it is not clear whether that information will be available.

9. The City will modify the review period for the report (10 or 14 days) and then the production of a privilege log would be based on the normal timeline for producing a privilege log.

c. **Crypsis Reports, Communications and documents**

    i. The City maintains that Crypsis will be a testifying expert in this case, and that therefore, its materials do not need to be produced until the expert report disclosure deadline. Crypsis was retained by the City on November 5, 2020 for the purpose of advising the City with respect to this lawsuit.

        1. The City disputes that exceptional circumstances exist, and claims that that test is inapplicable due to the fact that Crypsis will be a testifying expert.

    ii. Notwithstanding these objections, ==the City will produce a draft of the Crypsis report== (showing what they have done to date) subject to the following conditions: the Plaintiffs agree to not file a motion to compel on this subject prior to the settlement conference, and the report may be confidential or AEO subject to the protective order. The City will also provide Judge Cox with a copy of the report in connection with the mediation.

d. **City Employee's Personal Electronic Devices**

    i. ==The City criticized the Plaintiffs' authority and confirmed we are at issue on this topic.==

    ii. The parties discussed Chief Scoggins Apple Watch and a potential collection from that watch. The City proposed that Chief Scoggins be able to view his watch and see if there were

2

text messages on the watch from prior to October 8, 2020. [subsequent to the call, counsel for Plaintiffs rejected this proposal and asked the City to use its expert witness, Crypsis, to attempt to extract the missing text messages from Chief Scoggins' Apple Watch.]

1. Counsel for the Plaintiffs indicated that Chief Scoggins was subject to a subpoena for records in addition to several RFPs that were addressed to the City.

e. **Document Production**

   i. The City indicated that it was still working on the document production and has run preliminary searches for Plaintiffs revised terms.

   ii. The City indicated that it would provide the numbers related to Plaintiffs' revised search terms (that were provided on August 9) and let Plaintiffs' counsel know whether the search terms resulted in a reasonable set of documents.

f. **Privilege Log**

   1. The City was unwilling to amend the ESI Agreement to provide a privilege log relating to its collection and preservation of ESI in this case.

ii. **Plaintiff's ROGs and RFPs –**

   1. Int 23 -  identify personnel who collected , investigated or reviewed data from the individuals.  Identify the dates that the persons were involved. Dates of searches of Electronic devices & who conducted the searches – foundational information. No Palo Alto employees have been identified.

      a. The City indicated that it thought it had provided sufficient detail.

   2. Int 24. – requested information about the Electronic Devices collected by the City relating to the Individuals

      a. The City confirmed it would supplement this interrogatory response to reflect Chief Scoggins' additional electronic devices.

         i. The City confirmed that Chief Scoggins got his new iPhone 11 on February 17, 2021.  The City confirmed that it has an image of Chief Scoggins' iPhone 8.

   3. Int. 26.  – requests whether or not Individuals also used their personal Electronic Devices for communications regarding CHOP / or CHOP zone

      a. The City will supplement this interrogatory.

   4. Int 28 – Identify locations of Durkan, Scoggins Best and Beauregard's phones and the dates the searches were conducted.

      a. The City confirmed that it was in the process of imaging Chief Best's desktop to look for additional backup files.  When the process is finished, the City will let us know.

   5. Int 36 – All instances of Mayor Jenny Durkan's compliance with the PRA since January 1, 2017 , including the collection, preservation, archiving and review of ESI

      a. The City indicated that there was no pending request relating to the damage to the Mayor's phone and invited the Plaintiff to submit an additional discovery

3

request. The City indicated that the fact that the phone had a cracked screen did not affect its ability to operate, but that the phone was submerged in water on July 4, 2020, which caused the phone to become inoperable. Plaintiffs indicated that they serve an additional discovery request.

    b. The City agreed to supplement its response to this interrogatory to provide additional detail. During the call, the City indicated that it was Mr. Arhu who reset the Mayor's damaged phone.

6. Int 37 – All apps on City officials' City issued and personal phones – want to understand if they had apps with instant message capabilities.

    a. The City agreed to supplement its response to this interrogatory to provide additional detail as to whether any communication or file storage apps ever existed on the Individuals' phones during the relevant time period.

7. RFP 42 - All engagement / retention contracts between the City and Crypsis, and any documents or communication describing the scope of Crypsis's services

    a. The City will produce the engagement agreement along with any materials it is required to produce when it discloses its expert report.

8. RFP 44 – All invoices submitted by any law firm (besides Harrigan Leyh Farmer and Thomsen) that provided legal advice relating to the subject of the City's lost or missing text messages to the City and / or the Mayor's Office from June 2020 through July 2021.

    a. The City invited further discussion on this issue, explaining that it would be burdensome to review K&L Gates' invoices to pick out time entries concerning lost or missing text messages.

9. **Durkan's 30-day Text Message retention setting**

    a. The City explained that it was not accurate to state that the "30-day autodelete" setting had not been changed by Mayor Durkan or someone in the Mayor's office. Instead, the City offered that Mayor Durkan did not recall changing the "30-day autodelete" setting on her phone and she does not have any information as to who might have changed the setting on her phone.

    b. The City did not know whether the phone that Mayor Durkan received was a City reissued phone or a brand new phone.

    c. The City indicated that it was making a targeted collection of documents for production concerning her lost messages.

10. **City-IT Department Reports re: Durkan's phone**

    a. The City indicated that it was not aware of any "reports" that were created by the City IT department. It indicated that to the extent they do exist, they would be produced.

11. **Claims submitted to DFAS**

    a. The City will follow up on this issue of whether there are third-party adjusters' determinations and/or determination letters. The City said it would confer internally and get back to Plaintiffs' counsel.

4

Gabe Reilly-Bates
**CALFO EAKES LLP**
1301 Second Avenue, Suite 2800 | Seattle, WA 98101-3808
T: 206 407 2223 | F: 206 407 2278 | **www.calfoeakes.com**

*NOTICE:  This internet e-mail message contains confidential, privileged information that is intended only for the addressee. If you have received this e-mail message in error, please call us (collect, if necessary) immediately at (206) 407-2200 and ask to speak to the message sender. Thank you. We appreciate your assistance in correcting this matter.*

5