THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

HUNTERS CAPITAL, LLC, et al.,

　　　　Plaintiffs,

　　vs.

CITY OF SEATTLE,

　　　　Defendant.

Case No. 2:20-cv-00983-TSZ

DECLARATION OF JOE WANAGEL IN SUPPORT OF PLAINTIFFS' RESPONSE TO CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT

**Hearing Date:  November 15, 2022**

I Joe Wanagel, declare as follows:

1.　　I am an owner of Olive St. Apartments. ("Olive St."). Olive St. owns a building located at 1114 E. Olive St. and 1703 12th Ave., which is on the corner of Olive St. and 12th Ave. I am personally involved in the management of the Olive St. building, and was involved in the management during CHOP.

2.　　The Olive St. building was within the CHOP barricades during several times of June 2020. I and other residents attempted to remove or move the barriers at various times, but the protesters often moved the barriers back.

3.　　Access to the Olive St. building was diminished due to the placement of barricades and the presence of protesters on Olive St. and 12th Ave. Residents of Olive St. were harassed by

DECLARATION OF JOE WANAGEL IN
SUPPORT OF PLAINTIFFS' RESPONSE TO CITY
OF SEATTLE'S MOTION FOR SUMMARY
JUDGMENT
(Case No. 2:20-cv-00983-TSZ) - 1

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

DB2/ 44290188.1

protesters and sometimes required to show identification while walking on the street.

4. The Olive St. building was tagged with graffiti on an almost daily basis during CHOP, and it one particular instance, one of the tenants of the building was specifically targeted due to her opposition to the CHOP protests. The incidence of graffiti was much higher during CHOP than it was before or after CHOP. I tried to clean the graffiti off as soon as possible, but it was difficult due to protesters who would challenge me for attempting to remove the graffiti. On several occasions they would scream at me and threaten me.

5. The Olive St. building had damage to doors due to attempted break-ins during CHOP. There were attempts to break-in the front and back door of the building. The protesters smashed lock boxes, and they tried prying open the doors. I added steel plating to the doors and removed the keys from lock boxes, which impeded access to the building, because then the mailman had to take the key and carry it with him personally.

6. A number of Olive St.'s trash receptacles were removed from the building by CHOP protesters, including a dumpster. Olive St. had to obtain a new dumpster.

7. Trash pick-up was spotty during CHOP as the City missed some of the scheduled trash pick-ups.

8. As a result of the lack of police response to Olive St. and other buildings within CHOP, I hired a private security company to help protect the residents of the building.

9. A shootout occurred during CHOP on Olive St. and 12th Ave. in front of the Olive St. building between the occupants of two vehicles. One of the bullet riddled vehicles was left on the street near the corner of 11th Ave. and Olive St.

10. During CHOP, residents of Olive St. were in fear of their personal safety, and some of them slept in their bathtubs due to the gunfire that occasionally erupted due to CHOP. After this incident, a tenant of the building called me and I spoke to security guards who called 9-1-1 to report the incident.

11. The security guards related that the police were not going to enter CHOP to

DECLARATION OF JOE WANAGEL IN SUPPORT OF PLAINTIFFS' RESPONSE TO CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT
(Case No. 2:20-cv-00983-TSZ) - 2
DB2/ 44290188.1

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

9-1-1 to report the incident.

12. The security guards related that the police were not going to enter CHOP to investigate the shooting.

13. On one occasion, in December 2020, when Olive St.'s dumpster had gone missing again, I went to Cal Anderson Park to attempt to locate the dumpster. When I saw that protesters had created what looked like a "fort" with some of the dumpsters, I approached them to see if I could identify the dumpster that belonged to Olive St. Before I could get close enough, the protesters hurled various objects at me, including eggs and bricks. I was struck with an egg.

14. I called 9-1-1 after this incident occurred and was informed that the police would not enter Cal Anderson Park to question the perpetrators of the assault. Instead, the police asked me to meet them at a location outside of the park. To my knowledge, the police did not confront the protesters who had thrown various objects at me.

15. The CHOP and the protesters terrorized the entire neighborhood as they broke laws with impunity. I am aware that people left the Capitol Hill area specifically due to the City's creation of the CHOP and its failure to control it.

16. During CHOP, I tried calling every City Council member, the Mayor's Office and the Governor, but I received no response, other than a call from the Seattle Public Utilities to tell me that we should hide the trash receptacles because otherwise they might get stolen and / or set on fire.

I declare under the penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this ____ day of October, 2022 at Seattle, Washington.

_____
Joe Wanagel

DECLARATION OF JOE WANAGEL IN
SUPPORT OF PLAINTIFFS' RESPONSE TO CITY
OF SEATTLE'S MOTION FOR SUMMARY
JUDGMENT
(Case No. 2:20-cv-00983-TSZ) - 3

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401