HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

        Plaintiffs,

  v.

CITY OF SEATTLE,

        Defendant.

Case No. 20-cv-00983-TSZ

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................. 1

    A.   The City Went to Great Lengths to Preserve Responsive Documents. ..................... 1

    B.   Individuals Inadvertently Lost Their Text Messages................................................. 2

    C.   The City Learns that Certain City Officials' and Employees' Texts are Lost........... 3

III. ARGUMENT ...................................................................................................................... 4

    A.   Plaintiffs Cannot Demonstrate Spoliation Occurred Under FRCP 37(e). ................. 4

        1.   The City Took Reasonable Steps to Preserve ESI. ........................................ 4

        2.   The City Recovered Thousands of the Individuals' Messages. ..................... 5

    B.   The City's Loss of Text Messages was not Intentional; Rule 37(e)(2) is not Triggered. ................................................................................................................... 6

    C.   Terminating Sanctions Under Rule 37(e)(2) are not Warranted................................ 9

    D.   An Adverse Inference Instruction is Not Appropriate Because There was no Intent. ...................................................................................................................... 12

    E.   The Parties Should Pay their Own Fees and Costs in Litigating Spoliation............ 12

IV. CONCLUSION................................................................................................................. 12

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - i
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# TABLE OF AUTHORITIES

Page

**Cases**

*Alabama Aircraft Indus. v. Boeing,*
    2022 WL 433457 (11th Cir. Feb. 14, 2022) ........................................................................ 11

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ......................................................................................... 10, 11

*Belew-Nyquist v. Quincy Sch. Dist. No. 144*,
    2020 WL 6845934 (E.D. Wash. Nov. 20, 2020) .................................................................. 4

*Best Value Auto Parts Distributors, Inc. v. Quality Collision Parts, Inc.*,
    2021 WL 2201170 (S.D. Mich. May 31, 2021) ................................................................... 8

*Colonies Partners, L.P. v. Cnty of San Bernardino,*
    2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ........................................................... 4, 9, 10

*Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*,
    2019 WL 2236080 (D. Ida. May 21, 2019) ........................................................................ 10

*FTC v. Lights of Am. Inc.,*
    2012 WL 695008 (C.D. Cal. Jan. 20, 2012) ......................................................................... 8

*Facebook, Inc. v. OnlineNIC Inc.,*
    2022 WL 2289067 (W.D. Wa. Mar. 28, 2022) ................................................................... 11

*Fast v. GoDaddy.com LLC*,
    340 F.R.D. 326 (D. Ariz. 2022) ........................................................................................... 9

*First Financial Security, Inc. v. Freedom Equity Group, LLC*
    2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ...................................................................... 12

*Gault v. United States*,
    2022 WL 4292340 (C.D. Cal. Aug. 23, 2022) ..................................................................... 7

*Hannan Ribiyou Kabushikigaisha v. Agu Ramen, LLC*,
    2022 WL 252105 (D. Haw. Jan. 11, 2022) .......................................................................... 6

*Hill v. NaphCare, Inc.,*
    2022 WL 1464830 (E.D. Wa. May 9, 2022) ...................................................................... 11

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474, (S.D.N.Y. 2022) ........................................................................................ 8

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - ii
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Leon v. IDX Systems Corp.*,
 464 F.3d 951 (9th Cir. 2006) .................................................................................................. 11

*Marksman Security Corp. v. P.G. Security, Inc.*,
 2021 WL 5832329 (S.D. Fl. Oct. 12, 2021) ............................................................................. 8

*Martinez v. Equinox Holdings, Inc.*,
 2021 WL 6882152 (C.D. Cal. Oct. 22, 2021).................................................................. 6, 7, 8

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
 2016 WL 2957133 (N.D. Cal. May 23, 2016) ......................................................................... 6

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
 2022 WL 1990225 (N.D. Cal June 6, 2022) ........................................................................ 7, 8

*Moreno v. Correctional Healthcare*,
 2020 WL 5740265 (E.D. Wa. June 1, 2020) .......................................................................... 11

*Odeh-Lara v. Synchrony Bank*,
 2021 WL 8086854 (C.D. Cal. Oct. 12, 2021) ........................................................................ 10

*Oracle Am., Inc. v. Hewlett Packard Ent. Co.*,
 328 F. R. D. 543 (N.D. Cal. 2018) ........................................................................................... 5

*Phan v. Costco Wholesale Corp.*,
 2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ......................................................................... 7

*Porter v. City and County of San Francisco*,
 2018 WL 4215602 (N.D. Cal. Sep. 5, 2018) ............................................................................ 7

*Sanchez v. Jiles*,
 2012 WL 13005996 (C.D. Cal. Jun. 14, 2012)......................................................................... 5

*Ski Lifts, Inc. v. Schaeffer Mfg. Co.*,
 2020 WL 1492676 (W.D. Wa. Mar. 27, 2020)....................................................................... 11

*Tenpenny v. Prime Now, LLC*,
 2020 WL 2062121 (M.D. Tenn. Apr. 29, 2020) ...................................................................... 9

*WeRide Corp. v. Kun Huang,*
 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ....................................................................... 11

*Youngevity Int'l v. Smith*,
 2020 WL 7048687 (S.D. Cal. Jul. 28, 2020) ..................................................................... 8, 12

*Zubulake v. UBS Warburg LLC*,
 220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................................. 9

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - iii
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**Statutes and Rules**

Fed. R. Civ. P. 37(e) ............................................................................................................. 4, 10, 12

Fed. R. Civ. P. 37(e)(1) ................................................................................................................... 6

Fed. R. Civ. P. 37(e)(2) ......................................................................................................... 1, 6, 7, 9

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - iv
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

## I.     INTRODUCTION

Both parties in this case have lost texts from custodians' devices. The City went to extraordinary lengths to recover copies of the Individuals' lost texts from the phones of more than 150 employees; Plaintiffs made no such effort for their custodians. The City's effort led to recovering many messages of Mayor Durkan, Police Chief Best, Fire Chief Scoggins and four other City employees (collectively the "Individuals). Ultimately, the recovered City messages, the more than 45,000 emails and documents produced, and 21 City-employee depositions taken in the case all provide a comprehensive record of the City's communications during CHOP.

None of the Individuals deleted their texts to deprive Plaintiffs of discovery. Plaintiffs fail to meet the high burden necessary to obtain a default judgment or an adverse inference under FRCP 37(e)(2). Plaintiffs also fail to show any prejudice that was not cured by the City's reconstruction of messages. The Court should deny Plaintiffs' motion for sanctions.

## II.     STATEMENT OF FACTS

**A.     The City Went to Great Lengths to Preserve Responsive Documents.**

Plaintiffs filed this action on June 24, 2020. Thereafter, the City sent litigation hold notices covering CHOP and the Summer 2020 protests to more than 500 employees. Employees' emails were preserved automatically, but the City had no centralized text message archiving system. The City's practice was for employees to preserve messages on their devices. Cramer Dec., Ex. 1.[1]

The City's IT and Records Management Departments did not recommend using iCloud or similar systems to backup mobile devices because doing so would have left City records outside the City's control (¶¶ 10-17). This approach follows best practices published by the Center For Internet Security: institutions should *disable* iCloud on employees' work devices to avoid "data leakage" from iCloud accounts. Ex. 6, at 86-89. In 2020, the City could not disable iCloud on cell phones. Some employees did use it. The City has now engaged a vendor to automatically archive texts sent or received from City-owned devices. The City anticipates all City-issued devices will be enrolled by July 2023. Kipp Dec., ¶¶ 5-6.

---

[1] Unless otherwise noted, all citations to "Ex." or "¶" refer to the Declaration of Shane Cramer filed in support hereof.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 1
(Case No. 20-cv-00983-TSZ)

**B.     Individuals Inadvertently Lost Their Text Messages.**

**Mayor Durkan:** The City is missing texts from Mayor Durkan's iPhone between October 31, 2019 and June 25, 2020. Mayor Durkan began having issues with her iPhone 8 Plus on July 4, 2020, after it fell out of her pocket while she was walking on a saltwater beach in Puget Sound. She did not notice the phone was gone for several minutes. She then retraced her steps and found the phone in a pool of water. The phone's screen was "pixelated" and did not work. She returned to her cabin and put the phone into a bag of rice to dry out. Later, she was able to get the phone to operate, but only after the phone reset. She then restored her phone from an iCloud backup. She recalls her texts syncing to her phone, which forensic analysis confirms. She was not able to get other applications like her calendar to work, so she emailed her staff for help.[2] Seattle IT replaced her phone later that week with an iPhone 11. She continued to have issues with her phone that required IT assistance throughout July. Cramer Dec. ¶¶ 19-44.

After holding Mayor Durkan's old iPhone 8 for four weeks, IT reset the phone in early August so it could be disposed of, per their normal practice. The Mayor's Office learned that her texts were missing in late August 2020, while backing-up her new iPhone 11. They informed the City Attorney's Office when they were unable to locate the missing texts. The City then hired Kevin Faulkner (Palo Alto Networks), a forensic expert, to see if the texts could be located or recovered. Faulkner determined that the messages could not be recovered from any of the Mayor's data sources and that there were no artifacts showing conclusively how the texts were lost, but that certain artifacts were consistent with a text message retention setting change. *Id.*, ¶¶ 44-54, 58-62.

Mayor Durkan has testified repeatedly, across multiple lawsuits, that she never altered the retention settings on her phone. Many people had access to her phone throughout July 2020. Both sides' experts also agree that a change to her retention settings could have been made remotely, by

---

[2] Durkan testified that she could not recall all the actions she took when restoring her phone, but the image of her phone indicates that the "disable and delete" messages in iCloud function was selected on July 4. The effect of this setting is to download all messages from the iCloud to the user's phone, stop the user's text messages from syncing to iCloud going forward, and delete the duplicate copies of the messages in iCloud 30 days later. That did not occur here, because the Seattle IT technician who replaced her phone on July 9 testified that he re-enabled the "Messages in iCloud" setting, as was his standard process. ¶ 40. Both parties' forensic experts agree that this would have cancelled out any selection of "Disable and Delete" that Mayor Durkan inadvertently made on July 4, 2020.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 2
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

using another device linked to the same AppleID, like Mayor Durkan's old iPhone 8.  *Id.* ¶¶ 51-63.

**Police Chief Best:**  Best's last day as a City employee was September 2, 2020.  Texts from her phone before that date were lost because she believed that her text messages were backed up centrally in the same manner as her emails.  To keep her inbox clean, she periodically deleted her text messages and to save storage space, she used a 30-day retention setting.  Best's practices were in no way prompted by this litigation.  *Id.*, ¶¶ 65-73.[3]

**Fire Chief Scoggins and the Other Individuals:**  Chief Scoggins, Assistant Police Chief Eric Greening, Ken Neafcy, Idris Beauregard, and Chris Fisher all lost text messages after being locked out of their phones in Fall 2020.  Each of them sought IT help, to no avail.

Scoggins' concern over not having a working phone to monitor fire dispatches led him to the Apple Store, where an employee reset it after being unable to bypass the lock screen.  When Neafcy sought assistance after being prompted to reset his passcode and being locked out, IT remotely reset his phone.  IT told Beauregard that they would explore potential options and recommended that he call Apple.  Beauregard did so, but they could not help.  He recalls seeing his phone reset but does not recall taking any action to do it himself.  *Id.*, ¶¶ 74-96.

IT informed Fisher that he would need to reset his phone after he was locked out in March 2020, pre-CHOP.  When he was again locked out on November 2,[4] he followed that earlier direction.  Like Best, Fisher historically set his phone to delete messages after 30 days.  The parties subsequently learned that Fisher did most of his work-related texting from his personal phone.  Fisher has produced over a thousand messages from his personal phone, going back to well before June 2020.  *Id.*, ¶¶ 97-110.  Any loss of text messages from his work phone is largely offset by his contemporaneous texts from his personal phone, which was his primary device.

**C.    The City Learns that Certain City Officials' and Employees' Texts are Lost.**

The City began collecting and reviewing emails and related materials for production in Fall

---

[3] Plaintiffs assert that Best replaced her personal phone in spring 2021, around the time they served a subpoena.  Best had left City employment nine months earlier and was represented by her own counsel.  Any insinuation that the City had control over her personal phone or any involvement in her decision to get a new phone is false. *Id.*, ¶¶ 126-31.
[4] Fisher originally believed that he reset his phone on "approximately December 3, 2020."  Cramer Dec., ¶ 101 & Ex. 1.  Based on the experts' analyses, the reset occurred approximately one month earlier, on November 2, 2020.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 3
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

2020. Because of the City's Covid-19 remote work needs, getting employees' texts from their City-issued phones was unusually difficult. While some phones, like Chief Best's, had been securely stored or were in the City's possession; others needed to be obtained from City employees directly. The City began imaging phones in February and March 2021. It was then that Counsel learned that the Individuals (other than Durkan) were missing their texts from Summer 2020. Shortly thereafter, on March 26, 2021, Counsel made Plaintiffs aware of the issue.[5] *Id.*, ¶¶ 5-7.[6]

### III. ARGUMENT

**A.  Plaintiffs Cannot Demonstrate Spoliation Occurred Under FRCP 37(e).**

Plaintiffs must first establish spoliation has occurred before the Court can reach the question of appropriate sanctions. Plaintiffs have not made this threshold showing, where (a) they have not established that the City lost ESI because it failed to take reasonable steps to preserve it and (b) additional discovery cannot restore or replace it. *Belew-Nyquist v. Quincy Sch. Dist. No. 144*, 2020 WL 6845934, at *11 (E.D. Wa. Nov. 20, 2020).

**1.  The City Took Reasonable Steps to Preserve ESI.**

"A litigation hold … is often the most appropriate mechanism to ensure potentially relevant documents and information are not lost deliberately or unintentionally." *Colonies Partners, L.P. v. Cnty of San Bernardino*, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020). "Due to the ever-increasing volume of [ESI] and the multitude of devices that generate such information, perfection in preserving all relevant [ESI] is often impossible …. This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." Rule 37(e), 2015 advisory committee note.

The City began issuing Summer 2020 protest litigation holds in July 2020, shortly after Plaintiffs filed their complaint, eventually issuing holds to more than 500 employees. The City's litigation hold was comprehensive; it identified categories of potentially relevant documents, directed employees to search for and report on locations where discoverable information might

---

[5] Contrary to Plaintiffs' claim, Defense Counsel's March 26 disclosure was based on its discovery of the text issue, not any whistleblower complaint, which did not become public until later, and involves different, unique PRA issues.
[6] Citing a newspaper article, Plaintiffs argue that attributing Durkan's lost texts to an "unknown technology issue" in May 2021 is evidence somehow demonstrates an attempt to obfuscate. It was not. Forensic analysis of Mayor Durkan's phone issues remained ongoing.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 4
(Case No. 20-cv-00983-TSZ)

exist, and instructed recipients on their obligation to preserve relevant documents, including texts. Ex. 1 at 25-26. For the hold recipients, the City implemented a central hold on its email system but did not have any similar capability for texts. The City relied on employees to preserve text messages according to the hold instructions. Plaintiffs argue that the City should have used iCloud but doing so was against IT and City Records Management Department security recommendations and was counter to Internet Security best practices. *Id.*, Ex. 6. Under these circumstances, the City's efforts to preserve ESI were reasonable.[7]

### 2. The City Recovered Thousands of the Individuals' Messages.

ESI is not irreplaceable if it is "largely duplicative of evidence already in the record." *Sanchez v. Jiles*, 2012 WL 13005996, at *14 (C.D. Cal. Jun. 14, 2012) ("[A]vailability of other sources or types of evidence, in addition to the despoiled evidence, may be considered … in determining if a sanction is warranted."). To meet their burden, Plaintiffs "must at least show that categories of irreplaceable relevant documents were likely lost." *Oracle Am., Inc. v. Hewlett Packard Ent. Co.*, 328 F.R.D. 543, 553 (N.D. Cal. 2018).

The City produced thousands of contemporaneous emails and other documents from City employees (including the Individuals), that detail every decision that was made by the City in dealing with the CHOP. The City also has produced tens of thousands of texts from other employees' devices, including texts from those employees who worked most closely with the Individuals: *e.g.*, Deputy Mayors, the Mayor's Chief of Staff; then-SPD Deputy Chief Adrian Diaz; multiple SPD assistant chiefs; the Deputy Fire Chief; and many others.

The City has also recreated many messages missing from the Individuals' own devices by obtaining them from other sources. The City searched the phones of 154 City employees for texts with the Individuals and obtained copies of automated texts from City databases. The City reconstructed and organized all messages to or from the Individuals using those that were found.[8]

---

[7] Plaintiffs suggest that the City could send locked phones to a vendor to try to jailbreak, but any such effort would be extremely costly, time-consuming, unreliable, and in many cases unlikely to be effective. ¶ 17.
[8] The City also produced phone records to Plaintiffs, showing third parties with whom Mayor Durkan had texted. Plaintiffs did not subpoena any of those individuals to obtain those messages.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 5
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Dawson Dec., ¶ 29.  The City's work continues as there are a number of pending lawsuits arising from the Summer 2020 protests.  To date, the City has reconstructed approximately the following number of texts: (a) Durkan (2,868); (b) Best (9,348); (c) Scoggins (15,414); (d) Beauregard (3,141); (e) Greening (3,673); (f) Neafcy (1,614); and (g) Fisher (36,115).  *Id.*, ¶ 42.

These recoveries include a) thousands of messages from June 2020 and later, and b) most of those that Plaintiffs claim were manually deleted by Mayor Durkan.  The recovered messages are instructive.  They were gathered from multiple sources with the aim of locating as many missing messages as possible, and none of them add anything material to discovery already produced by the parties.  Even so, the City will provide copies of all extant texts if doing so would be useful to the Court's analysis of the spoliation claims.  The City believes a review of all such texts will show that there is no reason to believe that any unrecovered messages would contain communications that contradict those that were recovered or anything else produced in discovery.

Plaintiffs have not shown that spoliation occurred; the Court should deny their motion.

**B.    The City's Loss of Text Messages was not Intentional; Rule 37(e)(2) is not Triggered.**

Only if the Court determines spoliation occurred does it assess whether sanctions are appropriate under Rule 37(e)(1) or (2).  Plaintiffs seek a default judgment under Rule 37(e)(2).  A court may impose sanctions contemplated by Rule 37(e)(2), including default or an adverse inference, *only* where a party destroys ESI with the intent to deprive the opposing party of it.  And even then, the court has discretion over the imposition of appropriate sanctions: "The remedy should fit the wrong, and the severe measures authorized by [Rule 37(e)(2)] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss."  *Hannan Ribiyou Kabushikigaisha v. Agu Ramen, LLC*, 2022 WL 252105, at *5 (D. Haw. Jan. 11, 2022); *see also Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016).

To prove intent, the movant must demonstrate that "the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations." *Martinez v. Equinox Holdings, Inc.*, 2021 WL 6882152, at *3 (C.D. Cal. Oct. 22, 2021).  "While 'there need

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 6
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

not be a 'smoking gun' to prove intent…there must be evidence of 'a serious and specific sort of culpability' regarding the loss of the relevant ESI." *Gault v. United States*, 2022 WL 4292340, at *7 (C.D. Cal. Aug. 23, 2022).

Neither negligence nor even gross negligence is sufficient to trigger Rule 37(e)(2)'s sanctions. *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225 (N.D. Cal June 6, 2022). A movant does not meet its burden simply by showing that it was "possible" that the other party had intentionally failed to preserve evidence, even where some evidence "le[nt] some support to that theory"; Rule 37(e)(2) sanctions are not appropriate unless deletion with the intent to deprive the other party of evidence was "the most likely explanation" for the spoliation. *Id.* at *6. Even a "plausibly" negligent explanation precludes the imposition of Rule 37(e)(2) sanctions. *Id.*[9]

Plaintiffs have not established that any of the Individuals intentionally deleted their texts to prevent Plaintiffs from getting them in discovery. The losses originated instead from ongoing issues Durkan had with her phone, Best's misunderstanding of the City's retention capabilities, and unintended consequences of the City's security protocols for mobile phones.

Mayor Durkan's explanation is credible and consistent with expert analysis: her phone issues originated when her phone fell into saltwater on July 4, 2020. There is no indication she dropped it on purpose to lose her messages. She was able to get it working again and made sure her messages were synced from iCloud (they were).[10] Thereafter, however, she continued to have problems with the phone's settings, as corroborated by her contemporaneous communications with her staff. IT replaced Mayor Durkan's phone on July 9. Nonetheless, her phone issues continued. On July 21, she sought help from IT because contact information for the FBI SAC for Seattle was missing from her phone. On July 24, she again gave her phone to her staff and IT when she discovered another contact's information was missing from her phone. ¶¶ 24-43, Ex. 9.

Neither forensic expert found direct evidence explaining why her pre-June 25 texts were no

---

[9] *Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, *4 (N.D. Cal. Aug. 24, 2020) (Rule 37(e)(2) not triggered where loss of ESI caused by "sloppiness, but not necessarily intent"); *Porter v. City and County of San Francisco*, 2018 WL 4215602, *4 (N.D. Cal. Sep. 5, 2018) (no intent where City should have done more, but where there was no evidence the City decided to erase "central" piece of evidence when "under pressure to produce it").
[10] While iCloud was not recommended as a backup solution, some individuals and departments nonetheless utilized it.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 7
(Case No. 20-cv-00983-TSZ)

longer on her phone. But certain artifacts were consistent with temporary selection of a 30-day retention setting. ¶¶ 59-60. While this may have caused her lost messages, Durkan has testified credibly and repeatedly that she never changed the setting and was unaware of anyone else having done so. There is no contrary evidence.[11] ¶ 63; Ex. 11.

Best mistakenly believed that her texts were being archived like her emails. Based on this belief, she periodically deleted texts and used the 30-day retention setting to manage her phone. In hindsight these factors did lead to lost texts, but there is no evidence that Best engaged in a purposeful effort to avoid producing messages to Plaintiffs in this action. ¶¶ 68-72, Ex. 22. *See Meta Platforms*, 2022 WL 1990225, at *6 (failure to stop autodelete not intentional).[12]

Plaintiffs have not shown that Scoggins, Neafcy, Greening, Beauregard, or Fisher intentionally deleted text messages to avoid producing them. As evidenced by contemporaneous documents, these individuals' phones were reset after they could not recall their passcodes. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 519-26 (S.D.N.Y. 2022) (failure to preserve passwords for several custodians not sufficient to show intent); *Best Value Auto Parts Distributors, Inc. v. Quality Collision Parts, Inc.*, 2021 WL 2201170, at *3 (S.D. Mich. May 31, 2021) (same). As explained in Section II.A above, each of these employees sought assistance before their phones were reset, and many of them did not reset their phone themselves – IT did.[13] There is no evidence that these five employees—most of whom do not work together or text each other, and two of whom were not even deposed—conspired to delete their text messages or otherwise intentionally destroyed them. All of them were just trying to regain access to their

---

[11] Plaintiffs cite to a statement allegedly made by the former City Attorney during a 2021 campaign interview with the Seattle Times that changing the retention setting was a "deliberate act." Holmes' opaque statement, even if accurately reported, was made before the experts issued their opinions, without first-hand knowledge, and should be disregarded.
[12] *See also Marksman Security Corp. v. P.G. Security, Inc.*, 2021 WL 5832329, at *2 (S.D. Fl. Oct. 12, 2021) (no "intent to deprive" where defendant's iPhone auto-deleted texts after 30 days); *Youngevity Int'l v. Smith*, 2020 WL 7048687, at *1, *4 (S.D. Cal. Jul. 28, 2020) (no intent where defendant mistakenly believed texts were being backed up); *accord FTC v. Lights of Am. Inc.*, 2012 WL 695008, at *5 (C.D. Cal. Jan. 20, 2012) ("[T]o the extent that the auto-delete policy caused the inadvertent loss of any relevant email correspondence, that is not a sanctionable offense.").
[13] Fisher reset his phone on November 2, based on advice he had received that March for a different lock-out. *See Martinez*, 2021 WL 6882152, at *4 n.2 (factory reset was not "suspicious" where pre-litigation resets occurred for same reasons). Fisher used the 30-day auto-delete function to manage his texts before CHOP because he thought it was ok to do so, not to deprive Plaintiffs of evidence. Ex. 29.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 8
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

phones so they could use them to do their jobs while the City was mainly working remotely due to Covid-19. Cramer Dec., ¶¶ 77-80 (Scoggins); 83-85 (Beauregard); 88-90 (Greening); 92-95 (Neafcy); 99-102 (Fisher).

Plaintiffs also point to evidence of manual deletions by Durkan and Best to establish intent. But a litigant is "under no duty to keep or retain every document in its possession", just those that are relevant. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003); *Tenpenny v. Prime Now, LLC*, 2020 WL 2062121, at *7 (M.D. Tenn. Apr. 29, 2020) ("A party is not required to 'preserve every shred of paper, every e-mail or electronic document.'"). The parties have no duty to keep irrelevant text messages just as they have no duty to keep every scrap of loose paper once litigation commences.[14] Plaintiffs admit that they also continued to delete ESI that they did not think needed to be preserved. Cramer Dec., ¶¶ 115-18. Plaintiffs have not established intent.

C.  **Terminating Sanctions Under Rule 37(e)(2) are not Warranted.**

Even if intent is shown, a terminating sanction like default judgment "should be reserved for the most egregious cases of misconduct." *Colonies Partners,* 2020 WL 1496444, at *12.[15] Before a court can order default, it must find a nexus between the Defendants' misconduct and the merits of the case at a level where misconduct interferes with the rightful decision of the case. *Id*. "Terminating sanctions may be warranted where a party is no longer able to present its case, spoliation occurs in direct violation of a court order, where a party has obviously engaged in deceptive practices during litigation, or where a court anticipates continued deceptive misconduct." *Id*. None of these circumstances exist here.

Further, before imposing the "ultimate" sanction of a default judgment, the Court must weigh (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the movant; (4) the strong public policy favoring disposition of cases on their merit; and (5) the availability of less drastic sanctions. *Id*. The first two factors normally favor default, while the fourth factor weighs against it. Thus, in most

---

[14] City employees also have no duty under the City's statutory records retention schedules to retain all texts. Ex. 34.
[15] *See also Fast v. GoDaddy.com*, 340 F.R.D. 326, 353 (D. Ariz. 2022) ("dismissal [is] the ultimate sanction for spoliation" and "should be used only when the resulting prejudice is 'extraordinary.'").

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 9
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  instances the third (prejudice) and the fifth (less drastic actions) factors are decisive. *Id.* [16]

2        The third factor measures whether Plaintiffs have been prejudiced by any spoliation. A key issue is whether lost ESI is critical to the movant's claims or defenses. *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, 2019 WL 2236080, at *16 (D. Ida. May 21, 2019) (terminating sanctions not warranted absent destruction of "key evidence").[17] The less important or more replaceable the lost evidence, the less prejudice the movant suffers from its loss. Prejudice exists where a party is "forced to rely on incomplete and spotty evidence" as a result of an opposing party's failure to produce key evidence. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 353 (9th Cir. 1995). Even on finding prejudice, the Court may issue a sanction that is "no greater than necessary to cure the prejudice." *See* Fed. R. Civ. P. 37(e).

      The City produced thousands of emails and texts containing City officials' (including the Individuals') communications regarding CHOP. Plaintiffs have deposed 21 City employees. Durkan, Best, and Scoggins had numerous press conferences and interviews conducted about CHOP. These sources of evidence provide a comprehensive view into everything the Individuals were thinking and doing during CHOP. Plaintiffs have not articulated, based on deposition testimony or otherwise, what type of unique evidence was likely to be in the Individuals' unrecovered texts—i.e., not duplicative of, and contradictory to, the immense amount of information already produced. Plaintiffs have also failed to show what the Individuals, and particularly Durkan, Best, and Scoggins, texted about in one-on-one messages regarding CHOP. They did not question any of the three about this issue at their depositions. Cramer Dec., Ex. 9 (Durkan); Ex. 22 (Best); Ex. 24 (Scoggins).[18] They did not even depose Neafcy or Greening, who also did not text one-on-one about CHOP. Neafcy Dec. ¶¶ 6-7; Greening Dec. ¶¶ 4-5.

---

[16] If the first two factors weigh in favor of Plaintiffs here, they do so only slightly. The City has not violated any court orders and has worked cooperatively with Plaintiffs' counsel throughout. The fourth factor (public interest in resolution on the merits) strongly counsels against default where Plaintiffs' counsel has informed the City that other potential plaintiffs are awaiting a resolution on the merits before deciding whether to file suit.

[17] *See also Odeh-Lara v. Synchrony Bank*, 2021 WL 8086854, at *3 (C.D. Cal. Oct. 12, 2021) (prejudice finding requires spoliation to "impair[]" the nonspoliator's "ability to go to trial").

[18] Plaintiffs did not mark Best's text reconstruction as an exhibit to her deposition. Durkan was asked only about texts describing the City's discussions with Plaintiff Hunters Capital about a potential lease to Black Lives Matter—a transaction that never occurred and is immaterial to any of Plaintiffs' claims in the lawsuit. Cramer Dec. ¶ 123.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 10
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

It is extremely unlikely that any missing text would alter the posture of this case even slightly, much less materially. Chief Mahaffey made the decision to vacate the East Precinct, and his texts have been produced. Emails and text messages from the City employees who were directly involved with CHOP extensively detail the City's traffic revisions, placement of port-a-potties and handwashing stations, provision of garbage service, and SPD's decision to modify its response protocols. Department heads, one deputy mayor, and other City employees in charge of those decisions have already been deposed about all these issues. Cramer Dec., ¶¶ 122-23. Even Mayor Durkan's June 20 email to Chief Best and Chief Scoggins weighs against the relief Plaintiffs seek. The email was produced early on in discovery. It corroborates that Mayor Durkan used email, not texts, to convey substantive, important information. She copied two deputy mayors, Mike Fong and Casey Sixkiller (both of whose texts have been produced), as was also her habit when communicating by text.

Plaintiffs fail to demonstrate prejudice warranting a terminating sanction.[19] Indeed, Plaintiffs fail to explain how, given the available record, any missing texts will force them to rely on an incomplete record at trial, and do not meet their *prima facie* burden to establish prejudice. *E.g.*, *Anheuser-Busch, Inc.*, 69 F.3d at 354. (sanctions require showing of how missing evidence matters given the claims and defenses).[20]

Under the fifth factor, the court must (1) consider less drastic sanctions and explain why such alternate sanctions would be inappropriate; (2) implement alternative sanctions; and (3) warn the party of the possibility of terminating sanctions before ordering such sanctions. *Id.* at 352.

---

[19] Cases granting terminating sanctions involve far more egregious circumstances than the ones here. In *Leon v. IDX Systems*, plaintiff wrote a program to over-write thousands of deleted files that would have been "at the heart" of the defendant's case. 464 F.3d 951, 960 (9th Cir. 2022). In *Moreno v. Correctional Healthcare*, defendant caused 56 email accounts to be purged, to hide "bad emails." 2020 WL 5740265 (E.D. Wa. June 1, 2020). In two other cases, the central pieces of evidence were spoliated. *Hill v. Naphcare, Inc.*, 2022 WL 1464830 (E.D. Wa. May 9, 2022); *Ski Lifts, Inc. v. Schaeffer Mfg. Co.*, 2020 WL 1492676 (W.D. Wa. Mar. 27, 2020). In others, the "staggering" spoliation included spoliating *millions* of *responsive* records and intentional deletions of multiple email accounts. *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020); *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *3 (W.D. Wa. Mar. 28, 2022). And other cases Plaintiffs cite involving plainly intentional behavior—*e.g.*, dragging responsive files to a computer's recycle bin and then permanently emptying it—did not necessitate terminating sanctions. *Ala. Aircraft Indus. v. Boeing*, 2022 WL 433457, at *5 (11th Cir. Feb. 14, 2022).

[20] Plaintiffs admit that they have access to evidence they deem favorable from other sources, belying their argument that they are unable to rebut the City's defenses. Dkt. 104, at 11.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 11 (Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Plaintiffs ignore these factors, which weigh sharply in the City's favor. The City has not previously been sanctioned. Nor has the Court had to warn the City about the possibility of entering terminating sanctions. On the contrary, the City has gone to great lengths to try to provide a comprehensive communication record, including replacing or reconstructing texts from other sources. The City has also begun implementing a City-wide text message archiving solution, which should prevent similar losses in the future. Terminating sanctions are not appropriate here.

D.  **An Adverse Inference Instruction is Not Appropriate Because There was no Intent.**

Plaintiffs seek in the alternative a mandatory adverse inference that would direct the jury to presume several elements of Plaintiffs' claims have been met. Because Plaintiffs cannot establish an intent to deprive them of material evidence, an adverse inference is not available. Rule 37(e). Even if Plaintiffs had established intent, their request is not necessary or warranted.[21] Granting their request would, in effect, prevent the City from presenting evidence in support of its central defenses, on issues that have not been shown to be affected by any spoliation. The parties have deposed multiple witnesses and exchanged substantial documentary evidence on each of the issues, allowing them to be decided fairly on the merits.

If the Court determines that an adverse inference is warranted, then the appropriate sanction would be a permissive instruction that permits the jury to weigh all the evidence as well as the parties' respective ESI losses and decide whether to draw any inferences therefrom. *Youngevity*, 2020 WL 7048687, at *5. The contours of any such instruction should be decided closer to trial.

E.  **The Parties Should Pay their Own Fees and Costs in Litigating Spoliation.**

The Court should direct the parties to bear their own fees and costs related to the parties' spoliation claims. To order otherwise would prejudice the City, which went to much greater lengths and incurred far greater costs to mitigate any effect of its lost texts than Plaintiffs did.

### IV.  CONCLUSION

For all of the above reasons, the City requests that the Court deny Plaintiffs' motion.

---

[21] In *First Financial Security, Inc. v. Freedom Equity Group, LLC*, which Plaintiffs cite, and where the defendant's employees had conspired to delete ESI, the court ruled that a *permissive* instruction sufficed. 2016 WL 5870218, *7 (N.D. Cal. Oct. 7, 2016).

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 12
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

DATED this 28th day of October, 2022.

ANN DAVISON
Seattle City Attorney

By: *s/ Joseph Groshong*
    Joseph Groshong, WSBA# 41593
    Assistant City Attorney
    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
    Seattle, WA 98104
    Tel: (206) 684-8200
    Fax: (206) 684-8284
    Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP

By: *s/ Arthur W. Harrigan, Jr.*
By: *s/ Tyler L. Farmer*
By: *s/ Shane P. Cramer*
By: *s/ Erica Iverson*
    Arthur W. Harrigan, Jr., WSBA #1751
    Tyler L. Farmer, WSBA #39912
    Shane P. Cramer, WSBA #35099
    Erica Iverson, Pro Hac Vice
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Tel: (206) 623-1700
    arthurh@harriganleyh.com
    tylerf@harriganleyh.com
    shanec@harriganleyh.com
    ericai@harriganleyh.com

*Attorneys for City of Seattle*

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE - 13
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717