HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

Plaintiffs,

v.

CITY OF SEATTLE,

Defendant.

Case No. 20-cv-00983

DECLARATION OF MARTHA J. DAWSON

I, Martha J. Dawson, declare as follows:

1.      I am a partner at the law firm K&L Gates, LLP.  I am over age 18, competent to be a witness, and making this declaration based on facts within my own personal knowledge.

## SUMMARY

2.      This declaration reviews the extensive and successful efforts undertaken by the City of Seattle ("City") to restore or replace missing text messages.

3.      Since 2004, amendments to the Federal Rules of Civil Procedure ("FRCP") have addressed the challenges posed by electronic discovery.  In 2015 the rules regarding potential sanctions were changed in recognition that electronic discovery "often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), Committee Notes on Rules – 2015 Amendment.

DECLARATION OF MARTHA J. DAWSON- 1
(Case No. 20-cv-00983)

4.      Text messages sent to multiple participants may be located on the phones of those other participants.  In order to locate missing text messages we developed, in conjunction with counsel in this matter, an exhaustive process to identify, collect and process for review the messages from those other participants.  Our goal was to gather substitute data from these participants in order to re-create the messages, regardless of their content.  The end results of those efforts are contained in a database with more than 2.4 million messages.

5.      Plaintiffs' motion is based on the erroneous assumption that the efforts to restore or replace the missing messages have largely failed.

6.      Contrary to Plaintiffs' contentions, over 36,000 text messages have been collected directly from the City employees whose phones are at issue in this motion.  These messages were not deleted and were never missing.  Additionally, over 161,000 text messages have been recreated from other sources.  After deduplication, over 89,700 messages remain.  Only a fraction of those messages are even responsive to the discovery requests in this matter.

7.      Plaintiffs further contend they have demonstrated "prejudice" because they lack information to determine the relevance of missing messages.  That completely ignores the tens of thousands of text messages to or from these City employees that have in fact been located and provide substantial information regarding the types of messages sent and the degree of (or lack of) relevance in text messages typically sent by City custodians.

## PROFESSIONAL BACKGROUND AND EXPERIENCE

8.      I have been practicing law for over 40 years.  My career started with a complex litigation and trial practice, often focused on large document cases.  Over time, my practice focused more and more on e-discovery representations, starting with the introduction of email systems as a means of business communication.  My early e-discovery cases included representing the State of Alaska in the *Exxon Valdez* Oil Spill Litigation beginning in 1990, and representing Microsoft in various antitrust lawsuits starting in 1995, including the Department of Justice 1998 Windows antitrust suit; lawsuits by numerous competitors; and consumer actions filed around the country.  My

DECLARATION OF MARTHA J. DAWSON- 2
(Case No. 20-cv-00983)

practice continued over the years with a focus on complex litigation with unique and often challenging e-discovery issues, including a more recent multi-year antitrust case tried over the course of six months in U.S. District Court for the District of New Jersey, and an international arbitration proceeding with thousands of identified hearing exhibits.

9.      As a founding partner of the firm's e-Discovery Analysis & Technology ("e-DAT") practice group in 1997, I have worked on hundreds of matters involving both complex and new technical challenges in the evolving world of e-discovery.

10.     *The American Lawyer* named me as one of its six "most important e-discovery trailblazers" in the July 2013 issue devoted to the "Top 50 Legal Innovators of the Last 50 Years." The article cited in particular, "Dawson saw it all coming – not just how e-discovery was going to change the practice of law, but how it could also change the business of law.  Before most lawyers were using email, she was tweaking – and sometimes inventing – processes to ensure that her firm was getting both sides of the equation right."

11.     As e-discovery expanded, it became apparent to many practitioners and judges that the FRCP needed to be modernized to address the evolving e-discovery issues in litigation.  I was particularly interested in this area, and from 2004 to 2015, I was actively involved in discussing, drafting and seeking changes at the national level to the FRCP relating to the discoverability of electronically stored information.  Of particular interest to me were the addition of "electronically stored information" to FRCP 34 and the scope of discovery in FRCP 26(b)(1) "… relevant to any party's claim or defense and proportional to the needs of the case …."

12.     Since 2016, I have served as co-chair of the Local Rules Committee for the Western District of Washington Federal Bar Association representing the bar in providing recommendations to the Court on proposed amendments to the local rules.

13.     Changes to the FRCP to address e-discovery issues were made in 2004, 2006 and 2015.  As amended in 2015, FRCP 37(e) provides:

DECLARATION OF MARTHA J. DAWSON- 3
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(e)     Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1)     upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2)     only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A)     presume that the lost information was unfavorable to the party;

(B)     instruct the jury that it may or must presume the information was unfavorable to the party; or

(C)     dismiss the action or enter a default judgment.

14.     K&L Gates represents the City of Seattle in three matters relating to the summer of 2020 protests filed in the Superior Court of Washington, King County:  *Estate of Taylor, et. al. v. City of Seattle*, King Co (No. 20-2-14351 SEA); *Estate of Taylor, et. al. r. v. City of Seattle, et al* (No. 21-2-07115-1 SEA[1]) (together "Taylor Cases"); and a more recently filed case of *Diaz Love v. State of Washington et. al.* (No. 22-2-08993-8 SEA).  Discovery in the Taylor Cases is substantially broader (both substantively and temporally) than the discovery in this matter and encompasses all text messages responsive in this matter.

15.     As counsel for the City, I have collaborated with Harrigan Leyh Farmer & Thomsen LLP ("Harrigan Firm") to develop and implement a methodology to recreate messages, as well as

---

[1] The City was dismissed with prejudice from this matter by stipulation of the parties on July 25, 2022.

DECLARATION OF MARTHA J. DAWSON- 4
(Case No. 20-cv-00983)

advise our client regarding the development of this methodology.  Coordinating our combined efforts on behalf of the City was a critical component of our work on our related matters.  Our goal was to locate as many of the missing messages as possible without regard to their content.  To do this, we sought and collected data from those identified as likely participants to the messages being sought.

16.     Discovery in the Taylor and Diaz cases is on-going.

17.     In this declaration, I address the steps taken by the City to locate missing text messages to be "restored or replaced" as recognized in FRCP 37(e).

18.     In providing the description of the methodology used the City does not waive its attorney-client or work product privileged.

19.     Appendix A contains a description of the terms used in this declaration.

**TEXT MESSAGE COLLECTION AND PROCESSING PROCESS**

20.     In the Taylor Cases, I am the partner in charge of the City's response to numerous discovery requests by the Taylor Plaintiffs.  This includes the City's collection and production of text messages from the Individuals.  In that role, I have coordinated with counsel for the City in related matters, including this matter, on the collection, review and production of text messages.

21.     The Taylor Cases have involved massive discovery responses.  As is typical in most complex cases, the City's document discovery responses were phased.  The first phase involved collecting records from SPD relating to relevant dates.  The City engaged in extensive negotiations with counsel for the Taylor Plaintiffs on custodians and search terms for the collection and review of email, conducting 95 discovery conferences on a wide variety of topics.  The City's collections, review and productions have included materials well beyond the scope of traditional email, including body-worn video and in-car video.  While parallel tracks of collection, review and production occurred, given the unique challenges of collecting cell phones for text messages, that process began later in the discovery cycle.

22.     The process for text message collection and review in these matters includes the following steps:

DECLARATION OF MARTHA J. DAWSON- 5
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(a)     We began with the City custodians identified for either this matter or the Taylor Cases.  Custodians' phones were collected and imaged by a third-party vendor, primarily Epiq.  This was a major effort to communicate with each custodian and coordinate the collection either in person or via WebEx (which was an option only for some iPhones).

(b)     The collection tool used to image the phones was created by Cellebrite.

(c)     The Cellebrite tool creates a forensic image of the phone that is a bit-by-bit, sector-by-sector direct copy of a cell phone's storage and memory space.  This allows for any evidence stored on a cell phone to be preserved for further forensic analysis.

(d)     While the forensic image created by Cellebrite is preserved, in order to view the content of the forensic image, it must be exported using the forensic software into a viewable format for our review.  We received an export of the image in Unified Digital Format Registry.  This format allows us to import the content directly into a SQL[2] database created for this matter and the Taylor Cases under my direction and supervision.

23.     My understanding is that text messages, which can include the SMS, MMS and iMessage formats, are located in the messaging database in the image.  This messaging database includes the message text as well as related metadata, such as the date and time sent, as well as the sender and recipient(s).  My team imported this data into our Master City Text Database and assigned a unique message identifier ("edatMsgID") to allow us to track each message.  This message identifier is different from the RowID referenced in the expert reports.  RowIDs are assigned by a device to a specific message, and different phones may have identical RowIDs that, while unique to that phone, are not when combined with the messages contained on other phones.  The edatMsgID is unique for each entry in the Master City Text Database.

24.     The message identifiers prefixed by "Chat" reflect the message data obtained from a Cellebrite phone image.  The "IM" data is used to identify instant messages.

---

[2] Structured Query Language (SQL) is a programming language that is commonly used in the field of data analysis; it is "the most common language for extracting and organizing data that is stored in a relational database." https://www.springboard.com/blog/data-analytics/what-is-sql/.

DECLARATION OF MARTHA J. DAWSON- 6
(Case No. 20-cv-00983)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

25.     Once all text data is loaded into the Master City Text Database, an Excel spreadsheet containing all text messages from the custodian's phone image or images is exported with all of the metadata necessary for our team of review attorneys to identify the text as "Responsive", "Privileged", or "Non-Responsive".  Once reviewed, the decision is uploaded back into the Master City Text Database.

26.     Similarly, the Harrigan Firm reviewed the text messages for their case custodians in 2021 prior to producing their case custodian spreadsheets.

## OVERVIEW OF GAP PROTOCOL

27.     During the course of these cases, it was discovered that certain custodians had lost volumes of text messages for various reasons.  Specifically, seven custodians have been identified as Individuals with unique Gap Periods:

| Name | Department | Title | Gap Period |
|------|-----------|-------|-----------|
| Beauregard, Idris | Seattle Public Utilities | Director, Clean City Division | Ends 10/09/2020 |
| Best, Carmen | SPD | Former Chief | Ends 09/02/2020 |
| Durkan, Jenny | Mayor's Office | Former Mayor | 08/29/2019 - 06/25/2020 10/30/2019 - 06/25/2020[3] |
| Fisher, Christopher | SPD | Chief Strategy Officer | Ends 12/03/2020 |
| Greening, Eric | SPD | Assistant Chief | Ends 10/27/2020 |
| Neafcy, Kenneth | Office of Emergency Management | Operations Coordinator | 03/20/2020 - 10/28/2020 |
| Scoggins, Harold | SFD | Chief | Ends 10/08/2020 |

28.     Like email, text messages often include numerous participants.  Each participant's device contains a copy of the message.  Thus, while there is no centralized server containing the messages, as may be possible with email, it is possible to find the data for a given Individual by collecting data from all those with whom the Individual communicated via text message. Recognizing this, we developed a "Gap Protocol" to restore or replace the missing messages, based on FRCP 37(e).

---

[3] An October 2019 backup was discovered during the expert review resulting in a narrowed Gap Period.

DECLARATION OF MARTHA J. DAWSON- 7
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

29.     The Gap Protocol involves numerous steps:

(a)     Identify the Individuals and Gap Periods, as noted above.

(b)     Identify other participants of text messages with the Individuals.

(i)     Several different methods were used to help to identify other participants involved in text conversations with an Individual during the Gap Periods.

(ii)    First, we searched the Master Text Message Database to identify the top participants in conversations with the Individuals.

(iii)   We also reviewed phone contact lists, and examined metadata associated with the Individuals' text history and other artifacts of text messages.

(iv)    Counsel in this matter also surveyed other city employees to determine whether they may have texted during the Gap Periods with an Individual.

(v)     Using this process we identified other participants who we called Recovery Custodians.  Their phones were collected and their content uploaded to the Master Text Message Database.

(vi)    This process added 99 Recovery Custodians – individuals who were not case custodians in this case.

(c)     Compile Comprehensive spreadsheets containing recreated messages.

(i)     We then searched the entire Master Text Message Database for both the name and phone numbers associated with each of the Individuals.  These results were placed in a single spreadsheet with information including the source of the messages and other relevant metadata.

(ii)    These spreadsheets were reviewed for responsiveness.  The results of this review were then uploaded back into the Master Text Database, so that the review marks were consistently applied across the universe of collected messages.

30.     We have additionally investigated Short Code Messages.  This led to the collection of *AlertSeattle,* Versonnel alerts and CAD Notifications used by various City departments to do mass

DECLARATION OF MARTHA J. DAWSON- 8
(Case No. 20-cv-00983)

communications to key City employees (including some of the Individuals) relating to the status of events in Seattle.  Based on records found on the Individuals' phones, Harold Scoggins received CAD messages on his City phone; Carmen Best received *AlertSeattle* messages on her City phone; and Christopher Fisher received alerts on both his personal and City phones.  SPD also confirmed that Eric Greening received alerts on his City phone and Carmen Best received Versonnel alerts on her City phone.  *See also*, Declaration of Kate Hutton.

31.    As noted, the Master Text Database includes duplicate entries.  For example, Jenny Durkan sent the following message to a group including Adrian Diaz and Harold Scoggins.  Each recipient had a duplicate copy of the text message on their phone; and there were two backups from Chief Scoggins containing the same message:

| Timestamp | Participants | Body | Custodian |
|---|---|---|---|
| 11/1/2020 7:29:47 | Diaz, Adrian  Durkan, Jenny  Scoggins, Harold | Thanks. Will call you later also to touch base | Durkan, Jenny |
| 11/1/2020 7:29:52 | Diaz, Adrian  Durkan, Jenny  Scoggins, Harold | Thanks. Will call you later also to touch base | Scoggins, Harold: |
| 11/1/2020 7:29:52 | Diaz, Adrian  Durkan, Jenny  Scoggins, Harold | Thanks. Will call you later also to touch base | Scoggins, Harold |
| 11/1/2020 7:29:53 | Diaz, Adrian  Durkan, Jenny  Scoggins, Harold | Thanks. Will call you later also to touch base | Diaz, Adrian |

(a)    We applied software tools designed to identify duplicates.  In the above example, the messages from Chief Scoggins have the same date and time to the second and the same message body.  The tool identifies these as duplicates.  Because the "seconds" are controlled by the phone provider and actual phone, identical messages can be received seconds apart by different custodians.  Our tool reviewed the date, time to within five seconds, and body of the text message to identify duplicates.  Only one of the messages is counted as the "surviving" message; the others are treated as duplicates.

DECLARATION OF MARTHA J. DAWSON- 9
(Case No. 20-cv-00983)

(b)     For Chat, IM and SMS Messages, we used this deduplication technique to identify duplicates based on date, time (within five seconds) and body content.  Using this methodology, we determined that all SMS entries are duplicate of the Chat messages so we do not include them in the Comprehensive Reports.

(c)     Additionally, there are thousands of messages with no content in the "body" field of the message.  Given the lack of substantive content for these messages, we matched participants with exact time to the exact seconds to identify duplicates.

(d)     This conservative approach to identifying duplicates does miss some messages that are in fact duplicative.  For example, a message "Ha!" was collected from two different participants with time stamps over five seconds apart; both were received on January 10, 2018, but one was received at 7:54:25 a.m. while the other was received at 7:54:31 a.m. Pacific time.  But expanding the time range beyond five seconds also resulted in identifying messages as duplicates that were not in fact duplicate.  Because of this, we maintained the five second methodology for deduplication.

(e)     The Comprehensive Reports include a "Duplicates" column.  The duplicate messages are marked Y and the surviving message is marked N in this column.

32.     In his rebuttal report, expert Kevin Faulkner addresses "item_type" of "1" ("Type 1") entries in the SMS database on iPhones.  Faulkner Rebuttal, p. 7.  These Type 1 messages are "are internal database entries created when group chats occur." Faulkner Report, p. 41.  Put simply, these Type 1 entries are not real messages, but given that they receive a RowID, they must be considered.

### GAP PROTOCOL RESULTS

33.     The following summarizes our efforts to locate relevant Chat and IMs for each of the Individuals.  This chart reflects all messages not limited to the relevant time period in this case, and includes the responsive decisions made in the Taylor case that had much broader document requests than in this case.  For example, any protest in Seattle going back 10 years, including the summer of 2020 protests on Capitol Hill, as well as in other areas of the city is responsive in the Taylor cases.

DECLARATION OF MARTHA J. DAWSON- 10
(Case No. 20-cv-00983)

| Name | From Individual | Restored/ Replaced | Total | After Duplicates Removed | Type 1 | Responsive/ Privileged |
|---|---|---|---|---|---|---|
| Beauregard, Idris | 3,380 | 7,327 | 10,707 | 6,511 | 56 | 2,253 |
| Best, Carmen | 1,639 | 23,002 | 24,641 | 10,465 | 711 | 3,860 |
| Durkan, Jenny | 18,112 | 10,770 | 28,882 | 10,384 | 379 | 985 |
| Fisher, Christopher | 243 | 68,090 | 68,333 | 36,237 | 639 | 2,026 |
| Greening, Eric | 123 | 7,525 | 7,648 | 3,795 | 0 | 724 |
| Neafcy, Kenneth | 2,441 | 2,520 | 4,961 | 3,373 | 60 | 882 |
| Scoggins, Harold | 10,370 | 42,706 | 53,076 | 19,049 | 17 | 8,534 |
| Total | 36,308 | 161,940 | 198,248 | 89,814 | 1,862 | 19,264 |

34.     Additionally, the following received CAD or Alerts.   We did not attempt to deduplicate any CAD or Alert messages.

| Name | CAD | Alert Seattle | Versonnel Alerts | Total |
|---|---|---|---|---|
| Best, Carmen | 0 | 920 | 515 | 1,435 |
| Fisher, Christopher | 0 | 2,730 | 0 | 2,730 |
| Greening, Eric | 0 | 2,320 | 0 | 2,320 |
| Scoggins, Harold | 8,996 | 0 | 0 | 8,996 |

35.     Jenny Durkan:

(a)     Jenny Durkan ("Durkan") was mayor of the City of Seattle from November 28, 2017 to December 31, 2021.

(b)     A total of 10,332 deduplicated Chat and IM messages were located from November 17, 2017 to November 19, 2020.  Of those, a total of 7,760 came directly from her devices and 2,572 were obtained from other devices.  Durkan was missing messages from October 29, 2019 at 7:05 p.m. to June 25, 2020 at 10:38 a.m. Pacific.

(c)     In order to demonstrate the largely transitory nature of her text messaging, we provided plaintiffs with all non-privileged[4] messages for Durkan.   For other Individuals, only responsive messages are included in their reports.

(d)     There are 379 Type 1 entries on or before November 19, 2020.

---

[4] We also excluded messages containing only passwords and a highly sensitive personal message sent to Durkan.

DECLARATION OF MARTHA J. DAWSON- 11
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(e)     In summary, the Gap Protocol results for Durkan are shown in the following chart.

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| Total Records: November 17, 2017-Nov. 19, 2020 | 28,412 | 10,384 | 379 | 880 | 105 |
| Gap Period October 29, 2019-June 25, 2020 | 2,200 | 1,403 | 0 | 112 | 14 |
| Relevant Hunter's Capital Period June 8, 2020-June 25, 2020 | 374 | 233 | 0 | 82 | 0 |

(f)     Expert Leatha identified an additional 191 messages that were manually deleted from June 25, 2020 to November 16, 2020.  Leatha Report Ex. C.  A total of 146 of those messages have been recreated and are contained in the Comprehensive Report.  All but seven of the remaining messages were dated after July 1, 2020.

36.     Idris Beauregard:

(a)     In 2020, Idris Beauregard ("Beauregard") was the director of the Clean City Division of Seattle Public Utilities.   In January 2021, Mr. Beauregard was promoted to Deputy Director of Seattle Public Utilities.

(b)     A total of 6,511 deduplicated messages dating from February 5, 2019 to March 9, 2021 were located for Beauregard.   Of those, a total of 3,370 came directly from Beauregard's own devices and 3,141 from other devices. Beauregard was missing messages from before October 9, 2020 at 2:44 p.m. Pacific Time.

(c)     A total of 56 Type 1 entries were identified for Beauregard.

(d)     In summary, the Gap Protocol results for Beauregard breaks down as follows:

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| Total Records February 5, 2019-March 9, 2021 | 10,707 | 6,511 | 56 | 2,253 | 0 |
| Gap Period February 5, 2019-October 9, 2020 | 7,327 | 3,141 |  | 1,858 | 0 |
| Relevant Hunter's Capital Period | 7,127 | 2,972 |  | 1,847 | 0 |

DECLARATION OF MARTHA J. DAWSON- 12
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| June 8, 2020-October 9, 2020 |  |  |  |  |  |

(e)     Expert Leatha reported that between October 9, 2020 and March 9, 2021, a total of 388 messages were manually deleted.  A total of 16 were located.

37.   Carmen Best:

(a)     Carmen Best ("Best") is the former chief of SPD, serving in that position from August 13, 2018 to September 2, 2020.

(b)     A total of 10,465 Chat and IM deduplicated messages were located for Best from January 10, 2017 to September 2, 2020 at 12:27 p.m. Pacific.  Of those, 1,409 came either from her September 2nd phone or from backups predating June 2020, representing messages from Best's own devices and 9,056 from other devices.

(c)     Additionally, Best received 2,444 messages from the *AlertSeattle* (126 relating to protests) and 1,116 from the Versonnel system.

(d)     A total of 711 Type 1 entries were identified for Best.

(e)     In summary, the Gap Protocol results for Best breaks down as follows:

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| Total Records January 10, 2017-September 2, 2020 | 24,641 | 10,465 | 49 | 3,773 | 87 |
| Gap Period Records October 2, 2019-September 2, 2020 | 23,002 | 9,056 | 49 | 2,373 | 87 |
| Relevant Hunter's Capital Period June 8, 2020-September 2, 2020 | 9,227 | 2,760 | 49 | 1,324 | 54 |

38.   Christopher Fisher:

(a)     Cristopher Fisher ("Fisher") joined SPD in April 2016; in December 2021 he was loaned to the Department of Justice.  During the relevant time period, he served in the civilian position of chief strategy officer.

DECLARATION OF MARTHA J. DAWSON- 13
(Case No. 20-cv-00983)

1       (b)     Fisher City phone was missing messages before December 3, 2020.  His City

2 phone contained 243 messages.

3       (c)     Two additional images were recently created: one of his personal cell and one

4 of his iCloud account.  Those images contain 148,811 Chat and IM messages; after deduplication,

5 79,914 messages.  These messages date back to August 28, 2008, years before his employment at

6 the City and end September 9, 2022.

7       (i)     Looking at his messages from these images between April 2016 and

8 December 2021 (his dates of employment with the City), there are 106,302 messages; after

9 deduplication 56,447.  Of those, 112 messages (after deduplication) were sent to or from his City

10 issued phone number (but were located on his personal phone).  The remaining were sent to or from

11 his personal phone.

12       (ii)     While many of these messages are work related, many are also clearly

13 personal.  In order to locate the work related messages, we first identified his communications with

14 any of the Individuals or Recovery Custodians.  We then identified other City employees who

15 participated in those communications.  For example, on September 8, 2016, Fisher exchanged texts

16 with Best, Lesley Cordner, Kathleen O'Toole and Brian Maxey.  Cordner (currently SPD Assistant

17 Chief, a Taylor custodian); O'Toole (SPD Former Chief) and Maxey (currently SPD Chief Operating

18 Officer).  O'Toole and Maxey are not individuals whose phones we collected.  We separately

19 searched Fisher's data for other communications he had with each of them for review as City

20 messages: O'Toole (937 messages); Maxey (1,348 messages).  We then reviewed these additional

21 messages for responsiveness.  During our review, we also identified and removed any individuals

22 who were not actually City employees.

23       (iii)     It is apparent from the participants and content of the messages that

24 his personal phone was used throughout for communications with City employees.  For example, he

25 has text messages on his personal phone with Best and former Chief O'Toole going back to July

2016.

DECLARATION OF MARTHA J. DAWSON- 14
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(d)     For the gap period, a total of 12,054 messages, 5,437 after deduplication, were recreated from others phones.  The vast majority of those messages, 4,565, were sent to or from his personal phone.

(e)     A total of 639 Type 1 entries were identified for Fisher.

(f)     Fisher had a total of 2,730 Alerts, 414 of which are potentially relating to protests.

(g)     In summary, the Gap Protocol results for Fisher breaks down as follows.  These numbers reflect messages relating to the City.

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| April 1, 2016-December 31, 2021 | 68,333 | 36,358 | 639 | 2,008 | 18 |
| Gap Period Records April 1, 2016-December 3, 2020 | 29,653 | 14,622 | 633 | 1,562 | 18 |
| Relevant Hunter's Capital Period June 8, 2020-December 3, 2020 | 5,408 | 2,624 | 70 | 229 | 10 |

39.     Eric Greening:

(a)     Eric Greening ("Greening") is an assistant chief of SPD.

(b)     A total of 3,795 deduplicated messages were located for Greening from October 25, 2017 to November 26, 2020.  Of those, a total of 122 came directly from Greening's own devices and 3,673 from other devices.  Greening was missing messages prior to October 27, 2020 at 8:38 a.m. Pacific Time.

(c)     Greening used an Android Samsung Galaxy S8.  As only iPhones have Type 1 messages, no Type 1 messages were collected for Greening.

(d)     Greening received 2,320 *AlertSeattle* messages; of those 313 potentially relate to protest activities.

(e)     In summary, the Gap Protocol results for Greening breaks down as follows:

DECLARATION OF MARTHA J. DAWSON- 15
(Case No. 20-cv-00983)

|  | Chat/IM | After Duplicates Removed | Responsive | Privileged |
|---|---|---|---|---|
| October 25, 2017- November 26, 2020 | 7,648 | 3,795 | 716 | 8 |
| Gap Period October 25, 2017-October 27, 2020 | 7,525 | 3,673 | 594 | 8 |
| Relevant Hunter's Capital Period June 8, 2020-October 27, 2020 | 1,812 | 705 | 193 | 3 |

40.     Kenneth Neafcy:

(a)     Kenneth Neafcy ("Neafcy") is the operations coordinator for Seattle's Office of Emergency Management.

(b)     A total of 3,773 deduplicated messages were located for Neafcy from June 15, 2017 to March 1, 2021.  Of those, 2,411 came directly from Neafcy's own devices and 1,362 from other devices.  Neafcy was missing messages from March 19, 2020 at 5:28 p.m. to October 28, 2020 at 2:37 p.m. Pacific Time.  Leatha Rpt, p. 21.

(c)     A total of 60 Type 1 entries were identified for Neafcy.

(d)     In summary, the Gap Protocol results for Neafcy breaks down as follows:

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| June 15, 2017- March 1, 2021 | 4,961 | 3,773 | 60 | 882 | 0 |
| Gap Period: March 19, 2020-October 28, 2020 | 2,517 | 1,359 | 0 | 632 | 0 |
| Relevant Hunter's Capital Period June 8, 2020-October 28, 2020 | 2,147 | 1,100 | 0 | 601 | 0 |

(e)     Leatha reports that 42 text messages were manually deleted between October 27, 2020 and March 1, 2021.  A total of 12 messages (three after deduplication) have been recreated.

41.     Harold Scoggins:

(a)     Harold Scoggins ("Scoggins") has served as chief of the Seattle Fire Department since 2015.

DECLARATION OF MARTHA J. DAWSON- 16
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(b)     A total of 19,049 deduplicated messages were located for Scoggins.  Of those, a total of 3,635 came directly from Scoggins' own devices and 15,414 from other devices covering the time period of December 13, 2016 to March 9, 2021.  Messages on his phone prior to October 8, 2020 at 5:22 p.m. Pacific Time were missing.

(c)     For the Gap Period a total of 17 Type 1 entries were identified for Scoggins.

(d)     As chief, Scoggins receives CAD Notifications sent to his mobile phone as text messages.  Declaration of Dan Whipple.  The following is an example of an SFD CAD Notification:

| Sent Time | Message Text |
|---|---|
| 6/11/2020 2:35:26 | Notification Only: 06/11/20 02:34:53Alarm Level 1  SOV7 - Scenes Of Violence 7     1207 Nw 92nd St |

(e)     A total of 8,996 CAD Notifications were sent to Scoggins via text during the period of December 13, 2016 to October 8, 2020.  Of those, 240 potentially relate to protests.

(f)     In summary, the Gap Protocol results for Scoggins' Chat and IM records are as follows.

|  | Chat/IM | After Duplicates Removed | Type 1 | Responsive | Privileged |
|---|---|---|---|---|---|
| Total Records<br>December 13, 2016-March 9, 2021 | 53,013 | 19,049 | 17 | 8,533 | 1 |
| Gap Period<br>December 13, 2016-October 8, 2020 | 42,643 | 15,414 | 0 | 6,147 | 1 |
| Relevant Hunter's Capital Period<br>June 8, 2020-October 8, 2020 | 19,854 | 5,662 | 0 | 3,144 | 0 |

42.     To date, the City has collected text messages from 154 City employees. The City has reconstructed approximately the following number of texts: (a) Durkan (2,868); (b) Best (9,348); (c) Scoggins (15,414); (d) Beauregard (3,141); (e) Greening (3,673); (f) Neafcy (1,614); and (g) Fisher (36,115).

DECLARATION OF MARTHA J. DAWSON- 17
(Case No. 20-cv-00983)

43.     From June 8, 2020 to July 1, 2020, a total of 20,042 messages were located from two Individuals and 63 Recovery Custodians, after deduplication 7,356.  Of those, 4,540 messages are responsive.

44.     There is no evidence supporting the notion that Best, Durkan, and Scoggins texted alone as a group at any time.  This is based on both the history of their communication as well as the data from their imaged phones.  The chart below shows that the vast majority of the time additional participants (Group Texts) were involved in the text message conversation.  This chart covers the time period of December 13, 2017 to October 13, 2019 and June 25, 2020 to January 18, 2021.

| Names | Group Texts | | Individually | |
|---|---|---|---|---|
| | All | After Duplicates Removed | All | After Duplicates Removed |
| Durkan-Best | 5,636 | 1,500 | 1,799 | 597 |
| Durkan-Scoggins | 946 | 300 | 293 | 82 |
| Best-Scoggins | 10,867 | 2,631 | 69 | 44 |
| Durkan-Best-Scoggins | 407 | 123 | 0 | 0 |
| | 17,856 | 4,554 | 2,020 | 676 |

45.     To be clear, the fact that there were zero messages with only the three of them includes data from dozens of the months during which the three were in their roles with the City.

46.     Further, my understanding is that while Mayor Durkan's device experienced some data loss, it retained most of the relevant metadata from her Gap Period.  This includes a "Chat Table," which lists all of the chats she had in her phone.  Each chat was provided a unique identifying number.  Each chat could be with either one other individual or with a group. While Durkan, Scoggins, and Best were participants in multiple group chats, Mayor Durkan's phone did not have a Chat ID for a text message thread in which only the three of them participated.  Put simply: there is no evidence that the three ever communicated by text as a group without at least one other participant being present in the group chat.

## MITIGATION ACTIONS BY THE CITY

47.     The City has taken its discovery obligations very seriously and, as described in this declaration, has undertaken very extensive efforts pursuant to FRCP 37(3) to restore or replace the

DECLARATION OF MARTHA J. DAWSON- 18
(Case No. 20-cv-00983)

missing text messages through the additional and complex measures discussed herein.  Our goal was to follow the text message participants wherever that took us.  While largely completed for others, we plan to continue our efforts to reconstruct the Best messages as part of the on-going discovery in the Taylor and Diaz cases.  The recent messages from Fisher will allow us to identify additional other participants, and we will continue to pursue other possible text message participants.

48.     Epic imaged the phones of the Recovery Custodians and tracked that process.  The fees charged by Epic for imaging these phones was $95,927.31.

49.     I have reviewed the time entries by K&L Gates to capture time directly related to the Gap Protocol, and not our work performed on the collection, review and production of case custodians.  I did not count any time not clearly related to the Gap Protocol.  As of October 24, 2022, a total of $745,722.26 in fees have been devoted to the Gap Protocol process.  Additionally, over 400 hours were spent by our developer that were not charged to the client.

50.     Fees and costs incurred to date by the City in executing the Gap Protocol (not including expert fees that are addressed elsewhere) are:

| Billed Amounts | |
| --- | --- |
| Epiq Imaging | $95,927.31 |
| K&L Gates | $745,722.26 |
| Total | $841,649.57 |

I swear under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 28th day of October, 2022, at Seattle, Washington.

Martha J. Dawson
WSBA #11795

DECLARATION OF MARTHA J. DAWSON- 19
(Case No. 20-cv-00983)

**APPENDIX A**

**DEFINITIONS**

| | |
|---|---|
| Individuals | The City employees at issue in this motion:  Idris Beauregard, Carmen Best, Jenny Durkan, Christopher Fisher, Eric Greening, Kenneth Neafcy, and Harold Scoggins. |
| *AlertSeattle* | The City of Seattle's official emergency alert system, *AlertSeattle* is used to mobilize emergency responders, alert necessary command staff and personnel based on the need of a specific incident and send emergency information to the public.  Police Manual 14.020-POL Effective Date 10/5/2016. See, *alert.seattle.gov*.  Alerts can be sent by text, email or phone call.  An example of a public text alert is:  "AlertSeattle: A 7.5 earthquake occurred at 10:55 a.m. on the Seattle fault line. Drop, cover and hold on during aftershocks."  All text messages from AlertSeattle are sent from five or six-digit phone numbers called "short codes." |
| | City short codes include:  226787, 67283, 78015, 77295, and 22911. |
| CAD Notifications | Certain City departments utilize Computer Aided Dispatch ("CAD") systems. CAD Notifications are messages sent using this system. |
| | The Seattle Police Department ("SPD") uses a CAD system to assist in the coordination and documentation of SPD's responses to requests for police services. There are two main functions of the CAD system: to initiate and log the appropriate police response, and to document the assignment and response of the correct police resources. CAD is the real-time record-keeping system for officers' responses to calls for service, thereby documenting SPD's actions related to each of those requests in an organized and reportable method. |
| | The Seattle Fire Department ("SFD") uses its CAD system to manage dispatches for over 100,000 individual responses each year.  SFD CAD messages are sent from the phone number +1(218) 350-0463 or +1(218) 350-0464. |
| | Data entered into SPD's CAD[5] system is retained indefinitely; SFD CAD[6] data is retained for the life of the system. |
| Cellebrite | Cellebrite is an Israeli digital intelligence company that offers industry-standard tools to collect data.  Cellebrite's tools are used by federal, state and local law enforcement as well as enterprise companies and service providers to collect, review, analyze and manage digital data.  Cellebrite offers both its own proprietary hardware that can be used to collect data as |

---

[5] 2019 Surveillance Impact Report Computer-Aided Dispatch (CAD) Seattle Police Department, April 24, 2019.

[6] 2019 Surveillance Impact Report Computer-Aided Dispatch (CAD) Seattle Fire Department, April 15, 2019.

DECLARATION OF MARTHA J. DAWSON- 20
(Case No. 20-cv-00983)

| | |
|---|---|
| | well as its own proprietary reports that include data processed from data collections. |
| Comprehensive Report | The City has restored or replaced missing data for each of the Individuals by collecting text messages from other participants with whom the Individuals communicated.  After compiling all messages for a given Individual for a Gap Period, we generate a Comprehensive Report comprising these replaced text messages as well as the messages available from the respective Individual. |
| | Text message reports have been produced on a rolling basis.  To aid the parties, we are now providing Comprehensive Reports that include all responsive text messages from the prior rolling reports so the parties have them all in one location. This includes messages from the Individual's own devices and backups, as well as re-created messages. |
| Duplicate | The Master City Text Database contains millions of text messages.  Among them are identical texts collected from different custodians who were parties to the same message.  Additionally, there were multiple backups of phones with overlapping data, creating duplicates. |
| Epiq Global | Epiq Global ("Epiq") is a vendor that the City utilized to assist in collecting data from City employees' devices.  Epiq provides services internationally to law firms, corporations, financial institutions and government agencies in various capacities, including e-discovery. |
| Expert Reports | The following are the expert reports in this matter relating to text messages:<br><br>• February 11, 2022 Expert Report of Kevin Faulkner ("Faulkner Report"), Exhibit 8 to the Declaration of Angelo J. Calfo.<br><br>• April 28, 2022 Expert Report of Brandon Leatha ("Leatha Report"), Exhibit 6 to the Declaration of Angelo J. Calfo.<br><br>• June 3, 2022 Faulkner Rebuttal Report ("Faulkner Rebuttal"), Exhibit 7 to the Declaration of Shane Cramer. |
| Gap Period | The Gap Period is the timeframe in which a given Individual has incomplete data. |
| Gap Protocol | The process developed by counsel to recreate the missing text messages, described below. |
| iMessage | iMessages are texts, photos or videos that can be sent between Apple devices, such as iPhones, iPads and Mac computers.  iMessages can be sent over cellular data networks but do not require them, as they can be sent through the internet.  Apple devices can still send and receive SMS messages; Apple denotes iMessages using blue message bubbles, while SMS messages are shown as green text bubbles. |

DECLARATION OF MARTHA J. DAWSON- 21
(Case No. 20-cv-00983)

| | |
|---|---|
| Instant Messages | Instant messages ("IM") are a form of text-based communications where messages are sent via the internet and appear on the recipient's screen as soon as the message is transmitted. |
| Master City Text Database | The database created by our firm to hold all of the text messages and other phone data collected in this and the Taylor Cases. |
| MMS | "Multimedia Messaging Service" ("MMS") messages allow users to send multimedia content using the same technology as SMS messages.  This can include pictures, videos, emoji's, and internet links. Like SMS, these messages are sent over a cellular network. |
| Recovery Custodians | In addition to the scores of custodians in this case and the Taylor Cases from whom the City has collected texts, the City has also collected text data from 99 additional City employees whom it had reason to believe participated in a text message with an Individual.  Thus, while these employees were not traditional custodians for purposes of discovery in the underlying substantive lawsuits, they were custodians for the purpose of the Gap Protocol. |
| Relevant Hunters Capital Period | For each of the Individuals, the relevant period for this case begins on June 8, 2020, when the CHOP/CHAZ was formed. |
| SMS | Short Message Service ("SMS") messages include only words and are sent over a cellular network. SMS is a universal technology supported by virtually all cellular networks and mobile devices. |
| Source | The Source column of the Comprehensive Reports identifies the original source of each row in the report.  The possible sources that appear in this column are as follows: *AlertSeattle* CAD Notification Cellebrite Chat Tab Cellebrite IM Tab Versonnel |
| Versonnel | SPD utilizes Versonnel, a product from Versaterm Public Safety, to send automated alerts to SPD personnel. |

DECLARATION OF MARTHA J. DAWSON- 22
(Case No. 20-cv-00983)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717