# EXHIBIT - 1

Hon. Thomas S. Zilly

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| HUNTERS CAPITAL, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF SEATTLE,<br><br>Defendant. | Civil Action No. 20-cv-00983-TSZ<br><br>**AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

IDENTITY AND INTEREST OF AMICUS CURIAE ............................................................ 1

ARGUMENT ............................................................................................................................ 1

    I.    THE LEGITIMACY OF GOVERNMENT ACTION IS IRRELEVANT TO A TAKINGS CLAIM ........................................................................................... 3

    II.   THE PHYSICAL INVASION CLAIM ................................................................ 5

    III.  THE RIGHT OF ACCESS CLAIM ..................................................................... 9

*Amicus Curiae Br. in Oppo. to D. MSJ - i*  
*Case No: 20-cv-00983-TSZ*

*Pacific Legal Foundation*  
*255 South King Street, Suite 800*  
*Seattle, Washington 98104*  
*(425) 576-0484*

CONCLUSION ............................................................................................................... 12

CERTIFICATE OF SERVICE ..................................................................................... 13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alves v. United States*, 133 F.3d 1454 (Fed. Cir. 1998) ............................................... 6

*Arkansas Game & Fish Comm'n v. United States*,
    568 U.S. 23 (2012) ............................................................................................ 1, 2, 6

*Arkansas Game & Fish Comm'n v. United States*,
    736 F.3d 1364 (Fed. Cir. 2013) .............................................................................. 6, 7

*Arreola v. County of Monterey*,
    99 Cal. App. 4th 722, 122 Cal. Rptr. 2d 38 (Cal. Ct. App. 2002) ............................. 4

*Buchanan v. Warley*, 245 U.S. 60 (1917) ..................................................................... 5

*Cedar Point Nursery v. Hassid*,
    141 S. Ct. 2063 (2021) .................................................................................... 1, 2, 5–10

*Citoli v. City of Seattle*, 115 Wn. App. 459 (2002) ...................................................... 5

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) ................................................................................................... 1

*County of Anoka v. Esmailzadeh*,
    498 N.W.2d 58 (Minn. Ct. App. 1993) ..................................................................... 4

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) .......................................................... 1, 12

*Donovan v. Pennsylvania Co.*,
    199 U.S. 279 (1905) ................................................................................................. 10

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,
    482 U.S. 304 (1987) ................................................................................................... 8

*Hall v. Meisner*, __ F.3d __, 2022 WL 7366694 (6th Cir. Oct. 13, 2022) ..................... 2

*Kaiser Aetna v. United States*,
    444 U.S. 164 (1979) ................................................................................................... 5

*Keiffer v. King County*, 89 Wn.2d 369 (1977) ............................................... 3, 9, 10, 11

*Kelo v. City of New London, Conn.*,
    545 U.S. 469 (2005) ................................................................................................. 10

*Knick v. Township of Scott*, 139 S. Ct. 2162 (2019) ..................................................... 1

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013) ................................................................................................... 1

*Amicus Curiae Br. in Oppo. to D. MSJ - ii*
*Case No: 20-cv-00983-TSZ*

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ...................................................................6

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005) ............................................................. 1, 3, 5

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) .............................................................................................................. 5–8

*Lund v. Idaho & W.N.R.R.*,
   50 Wash. 574 (1908) ................................................................................................................. 11

*Marvin M. Brandt Revocable Tr. v. United States*,
   572 U.S. 93 (2014) ....................................................................................................................... 1

*Mugler v. Kansas*, 123 U.S. 623 (1887) ..........................................................................................4

*Nollan v. Cal. Coastal Comm'n*,
   483 U.S. 825 (1987) ..................................................................................................................... 1

*Padilla v. Metro. Trans. Auth. of Harris Cnty.*,
   497 S.W.3d 78 (Tex. Ct. App. 2016) ........................................................................................ 11

*Pakdel v. City & Cnty. of San Francisco*,
   141 S. Ct. 2226 (2021) ................................................................................................................. 1

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) ........................................................................ 1, 6

*Pennsylvania Coal Co. v. Mahon*,
   260 U.S. 393 (1922) ..................................................................................................................... 5

*Phillips v. Wash. Legal Found.*,
   524 U.S. 156 (1998) ..................................................................................................................... 2

*Portsmouth Harbor Land & Hotel Co. v. United States*,
   260 U.S. 327 (1922) ..................................................................................................................... 8

*Pumpelly v. Green Bay Co.*,
   80 U.S. (13 Wall.) 166 (1877) .................................................................................................. 3, 8

*Rose v. State*, 19 Cal.2d 713, 123 P.2d 505 (1942) ...................................................................... 11

*State v. Calkins*, 50 Wn.2d 716 (1957) ......................................................................................... 10

*Suitum v. Tahoe Reg'l Plan. Agency*,
   520 U.S. 725 (1997) ..................................................................................................................... 1

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   535 U.S. 302 (2002) .................................................................................................................. 6, 7

*United States v. Caltex (Philippines), Inc.*,
   344 U.S. 149 (1952) ..................................................................................................................... 5

*United States v. Causby*, 328 U.S. 256 (1946) ...............................................................................8

*United States v. General Motors Corp.*,
   323 U.S. 373 (1945) .................................................................................................................. 2, 8

*Webb's Fabulous Pharms., Inc. v. Beckwith*,
    449 U.S. 155 (1980) ..................................................................................................10

**Constitutional Provisions**

U.S. Const. amend. V ........................................................................................................2

U.S. Const. amend. XIV ...................................................................................................2

**Other Authorities**

Cunnyngham, Wilkie, *The Limited-Access Highway from a Lawyer's Viewpoint*,
    13 Mo. L. Rev. 19 (1948) ...........................................................................................9

Duhaime, William E., *Limiting Access to Highways*, 33 Or. L. Rev. 16 (1953) .............9

Moody, Jr., Dan, *Condemnation of Land for Highway or Expressway*, 33 Tex. L.
    Rev. 357 (1955) ..........................................................................................................9

Note, *Freeways and the Rights of Abutting Owners*, 3 Stan. L. Rev. 298 (1951) ...........9

**IDENTITY AND INTEREST OF AMICUS CURIAE**

Pacific Legal Foundation (PLF) submits this brief amicus curiae in support of Plaintiffs, Hunters Capital, LLC, et al., and against Defendant's motion for summary judgment. The brief addresses only Plaintiffs' claim that the Fifth Amendment obligates the City of Seattle to pay just compensation to numerous Capitol Hill homeowners and businesses who were temporarily deprived of essential property rights as a result of the City's decision to help establish and maintain the "Capitol Hill Occupied Protest" (CHOP) area.

PLF is uniquely positioned to comment on these issues, having participated as lead counsel in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), which is central to the parties' arguments on summary judgment—and having participated as lead counsel in several other landmark United States Supreme Court cases in defense of the right of individuals to make use and enjoy their property and the corollary right to obtain just compensation when that right is infringed. *See, e.g., Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226 (2021); *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013); *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725 (1997); and *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987). PLF has also participated as *amicus curiae* in numerous property rights cases before the United States Supreme Court, including *Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93 (2014); *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012); *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999); and *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

In filing this brief, amicus focuses on the test and defense applicable to Plaintiffs' takings claims and urges this Court to deny the City's motion for summary judgment on Plaintiffs' takings claim.

**ARGUMENT**

The Takings Clause of the Fifth Amendment, applicable to the states via the Fourteenth Amendment, guarantees that the government will not take private property for a public purpose

*Amicus Curiae Br. in Oppo. to D. MSJ - 1*
*Case No:20-cv-00983-TSZ*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

without payment of just compensation. U.S. Const. amends. V, XIV; *see also Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) ("The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom" [and] "is 'necessary to preserve freedom' and 'empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them.'") (quoting *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017)).

This constitutional guarantee protects those fundamental property rights—including the rights of possession, use, exclusion, and alienation—that preexisted nationhood, and further protects those rights created by state property law. *See United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945) (the term "property" refers to the collection of protected rights inhering in an individual's relationship to his or her land or chattels); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (The "Constitution protects rather than creates property interests," which means that "the existence of a property interest," for purposes of whether one was taken, "is determined by reference to existing rules or understandings that stem from an independent source such as state law.") (quotation marks omitted); *see also Hall v. Meisner*, __ F.3d __, 2022 WL 7366694, at *3 (6th Cir. Oct. 13, 2022) (the existence of a property right is not limited to state law, but also includes those rights established by custom and common law well before statehood).

Over the years, the Supreme Court has developed several distinct tests designed to address the countless ways in which property rights are taken. *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) (recognizing "the nearly infinite variety of ways in which government actions or regulations can affect property interests"). The Plaintiffs in this case assert two bases for their takings claims. First, they allege that the City temporarily deprived them of the right to exclude others from their properties. It accomplished this "by affirmatively creating, assisting, endorsing, and encouraging the physical invasion of Plaintiffs' private properties by CHOP participants." Dkt. # 47 at ¶ 205. This claim, as discussed below, is subject to categorical treatment under the Supreme Court's physical invasion test. *Cedar Point*, 141 S.

Amicus Curiae Br. in Oppo. to D. MSJ - 2
Case No:20-cv-00983-TSZ

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Ct. at 2072–76 (finding a per se taking were government authorized third parties to temporarily enter private property).

Second, the Plaintiffs allege that the City temporarily deprived them of the right to access their properties by "provid[ing CHOP] participants with concrete barriers to use to block the streets," depriving them of "the ability to use public rights of way, including streets and sidewalks, to access their homes, businesses, and properties." Dkt. # 47 at ¶ 205; *see also id*. at ¶¶ 77, 80. This claim, too, involves a physical interference with property rights, but is subject to a two-part, fact-based inquiry aimed at determining (1) the nature of the government action, and (2) whether the impairment of access is substantial. *Keiffer v. King County*, 89 Wn.2d 369, 372–73 (1977). In addition, as the City acknowledged in opposition to class certification that both takings tests require a threshold determination that the property owner was, in fact, deprived of the right to exclude or access and, if so, whether that deprivation is attributable to the City. Dkt. # 74 at 23. Because those facts are contested, summary judgment is inappropriate. *See* Plaintiff's Oppo. to City of Seattle's Mtn. for Summary Judgment (Dkt. # 124 at 23–27). For that reason alone, the motion should be denied.

# I

## THE LEGITIMACY OF GOVERNMENT ACTION IS IRRELEVANT TO A TAKINGS CLAIM

The City spends a great deal of time trying to legitimize its decisions to help establish and maintain the CHOP. Dkt. # 111 at 1–7. That discussion, however, has no bearing on Plaintiffs' takings claims. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 532 (2005) (the legitimacy of government action is not part of the takings inquiry). Indeed, the first U.S. Supreme Court opinion to address inverse condemnation focused on the irrelevance of governmental purpose to the takings analysis. *See Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 177–78 (1877). In *Pumpelly,* the government's construction of a dam caused a lake to flood, which almost completely destroyed the plaintiff's property. *Id*. at 177. The government argued that it could not be held liable for a taking because the damage was collateral to a legitimate government project

Amicus Curiae Br. in Oppo. to D. MSJ - 3
Case No:20-cv-00983-TSZ

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

serving the public need, and there was no intent to appropriate the plaintiff's property. *Id*. at 167–68. The Supreme Court rejected this argument, holding that collateral and unintended damage to private property resulting from an otherwise legitimate government project can result in a taking:

> Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for invasion of private rights under the pretext of the public good, which had no warrant in the laws or practices of our ancestors.

*Id.* at 177–78.

Indeed, "[t]he fundamental justification for inverse condemnation liability is that the government, acting in furtherance of public objectives, is taking a calculated risk that private property may be damaged." *Arreola v. County of Monterey*, 99 Cal. App. 4th 722, 744, 122 Cal. Rptr. 2d 38, 55 (Cal. Ct. App. 2002) (citation omitted). The rationale is that if an entity has "made the deliberate calculated decision to proceed with a course of conduct, in spite of known risk, just compensation will be owed." *Id.* at 742 (citing Arvo Van Alstyne, *Inverse Condemnation: Unintended Physical Damage*, 20 Hastings L.J. 431, 489–90 (1969)). There is no basis, therefore, for a rule that would exempt certain government actions based on the purpose underlying the government's actions.

Merely labeling a government action an exercise of police power, moreover, cannot determine whether compensation is owed "[b]ecause it provides no principled way to distinguish between that which is compensable and that which is not." *County of Anoka v. Esmailzadeh*, 498 N.W.2d 58, 61 (Minn. Ct. App. 1993). Indeed, such a suggestion would write the Takings Clause out of the Constitution because the government can *only* ever operate pursuant to its legitimate police powers. *Mugler v. Kansas*, 123 U.S. 623, 661 (1887) ("It belongs to [the legislature] to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety. It does not at all follow that every statute enacted ostensibly for the promotion

*Amicus Curiae Br. in Oppo. to D. MSJ - 4*
*Case No:20-cv-00983-TSZ*

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

of these ends is to be accepted as a legitimate exertion of the police powers of the state. There are, of necessity, limits beyond which legislation cannot rightfully go.").

Thus, the U.S. Supreme Court has long refused to give determinative significance to such a broad and self-confirming label when it famously held that an exercise of police power may effect a taking when "it goes too far." *See Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922) ("[A] strong public desire to improve the public condition is not enough to warrant achieving that desire by a shorter cut than the constitutional way of paying for the change."). Thus, there are only few narrow exceptions based on the police power. *See* Dkt. # 23 at 21 (discussing the emergency exception, which is not claimed here); *see also United States v. Caltex (Philippines), Inc.*, 344 U.S. 149, 154 (1952) (requiring a showing of "imminent peril" to invoke the emergency exception); *Citoli v. City of Seattle*, 115 Wn. App. 459, 489 (2002) (requiring proof that "the necessities of war or civil disturbance require the destruction or injury of private property"); *but see Buchanan v. Warley*, 245 U.S. 60, 80–81 (1917) (Although the government acts within its police powers when "promot[ing] the public peace" and "preventing race conflicts," it cannot achieve those ends "by depriving citizens of their constitutional rights and privileges."). The City has not, and cannot, provide evidence sufficient to invoke the emergency exception because its actions continued long after the initial civil unrest subsided.

## II

## THE PHYSICAL INVASION CLAIM

The right to exclude is "one of the most treasured" rights of property ownership, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982), and is "universally held to be a fundamental element of the property right" and "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–180 (1979); *Lingle*, 544 U.S. at 539 (A physical invasion will always effect a taking because it eviscerates "perhaps the most fundamental of all property interests."); *see also Cedar Point*, 141 S. Ct. at 2073 (citing Thomas W. Merrill, *Property and the Right to Exclude*, 77 Neb. L. Rev. 730 (1998) (calling the right to exclude the "*sine qua non*" of

*Amicus Curiae Br. in Oppo. to D. MSJ - 5*
Case No:20-cv-00983-TSZ

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

property)). As a result, the Supreme Court has long held that the government "has a categorical duty to compensate" an owner when it "physically takes possession of an interest in property for some public purpose"—*i.e.*, when its actions result in a physical invasion of private property. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002); *see also Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (physical invasions constitute the "clearest sort of taking").

Of critical importance to this case, the Supreme Court has held government liable for a physical taking when its actions produce a third-party invasion of property.[1] *Cedar Point*, 141 S. Ct. at 2072–76 (government effected a taking where it enacted a statute authorizing third party invasions of private property); *Loretto*, 458 U.S. at 435 (government obligated to pay compensation where statute authorized third party to install a cable box on apartment buildings without the owner's consent). Certainly, the government cannot be held liable for the purely independent actions of private parties. *Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998). But when government knows or should know that its actions would result in third-party damage to, or trespass against, private property it may be held liable for a taking. *Arkansas Game & Fish Comm'n v. United States*, 736 F.3d 1364, 1372 (Fed. Cir. 2013) ("In order for a taking to occur, it is not necessary that the government intend to invade the property owner's rights, as long as the invasion that occurred was 'the foreseeable or predictable result' of the government's actions.") (citing *Moden v. United States*, 404 F.3d 1335, 1343 (Fed. Cir. 2005) and *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1357 (Fed. Cir. 2003)). *See also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) ("The requisite causal connection can be established not only by some

---

[1] Seattle's motion for summary judgment argues that, as a matter of law, the government cannot be held liable for a taking where its actions result in—*but do not require*—a third party invasion of private property. Dkt. # 111 at 26–27. This claim is misleading because it presents a general presumption as establishing a categorical defense to takings liability and omits case law establishing the circumstances when government will be held liable for acts of private third parties. This body of omitted case law supports the Supreme Court's chastisement that, with few exceptions, the Court has refused to adopt invariable rules when evaluating takings claims. *Arkansas Game & Fish*, 568 U.S. at 31.

*Amicus Curiae Br. in Oppo. to D. MSJ* - 6  
Case No:20-cv-00983-TSZ

Pacific Legal Foundation  
255 South King Street, Suite 800  
Seattle, Washington 98104  
(425) 576-0484

kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the [government] actor knows or reasonably should know would cause others to inflict the constitutional injury."). And when making this determination, the Court need not focus solely on whether a physical invasion was foreseeable at the beginning of the deprivation period. Evidence that the government became (or reasonably should have become) aware of the invasion during the deprivation period may also establish a taking. *Arkansas Game & Fish Comm'n*, 736 F.3d at 1373.

Finally, it is important to note that *Cedar Point* settled a point of confusion in takings law by confirming that temporary physical invasions are subject to the same per se takings test as a permanent occupation. 141 S. Ct. at 2074–77. As this Court observed in its order denying the City's motion to dismiss (Dkt. # 23 at 21–22), prior to *Cedar Point*, some state and federal courts had suggested that a temporary taking may be subject to a "more complex balancing test"—a test that had been offered in dicta in footnote to *Loretto*, 458 U.S. at 435 n.12. Other courts, however, reasoned that any "distinction [between temporary and permanent takings] loses force . . . where the government compels a property owner to suffer a 'physical invasion' or 'occupation' of his or her property." Dkt. # 23 at 21–22, & n.6 (citing *Guimont v. Clarke*, 121 Wn.2d 586, 597–98, & n.3 (1993); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 n.17 (1992); *id*. at 1033 (Kennedy, J., concurring)). *Cedar Point* confirmed the latter position, holding that the right to exclude "cannot be balanced away," 141 S. Ct. at 2077, and further concluding that any suggestion to the contrary is "insupportable as a matter of precedent and common sense."[2] 141 S. Ct. at 2074.

The right to exclude is coextensive of all other rights in property—when the government physically invades one's land, it destroys all of the essential rights thereto and therefore

---

[2] There is one important exception to this general rule—though it is irrelevant here and is, in any case, narrowly applicable. In *Tahoe-Sierra*, the Supreme Court held that the imposition of a temporary *development* moratorium is not subject to a *facial*, *per se* categorical-taking analysis. 535 U.S. at 337 ("In rejecting petitioners' *per se* rule, we do not hold that the temporary nature of a land-use restriction precludes finding that it effects a taking; we simply recognize that it should not be given exclusive significance one way or the other."). *See Cedar Point*, 141 S. Ct. 2074.

*Amicus Curiae Br. in Oppo. to D. MSJ* - 7
Case No:20-cv-00983-TSZ

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484


categorically constitutes a taking. *Loretto*, 458 U.S. at 426, 435 (When property is physically occupied, "the government does not simply take a single 'strand' from the 'bundle' of property rights: it chops through the 'bundle,' taking a slice of every strand."). Based on this understanding, the Supreme Court has recognized that the government has a duty to compensate a landowner to the extent that it invades private property. *See Pumpelly*, 80 U.S. (13 Wall.) at 177–78. This rule applies whether the government invades the entire property or just a portion thereof, *General Motors*, 323 U.S. at 378, and whether the invasion is temporary or permanent in duration. *Cedar Point*, 141 S. Ct. at 2074 ("[W]e have held that a physical appropriation is a taking whether it is permanent or temporary."); *see also First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 318 (1987) ("'[T]emporary' takings . . . are not different in kind from permanent takings, for which the Constitution clearly requires compensation."); *id.* at 331–32 (Stevens, J., dissenting) (The proposition "that there is no distinction between temporary and permanent takings" is well-recognized in the context of physical takings; "the state certainly may not occupy an individual's home for a month and then escape compensation by leaving and declaring the occupation 'temporary.'").

The rationale for this categorical rule is plain: once the government invades or occupies private property, the owner's rights in his land are more limited than they were before the intrusion. *General Motors*, 323 U.S. at 378. Even when the property is restored to the owner, it is still irreparably harmed by the temporary occupation and the owner must be compensated. *Id*. Thus, the Supreme Court has always recognized that a physical taking can occur when the downstream effects of government action occurring offsite result in an invasion of property. *See, e.g., United States v. Causby*, 328 U.S. 256, 262 (1946) ("The fact that the planes never touched the surface would be as irrelevant as the absence in this day of the feudal livery of seisin on the transfer of real estate."); *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327, 330 (1922) (government assertion of a right to fire coastal defense guns across private property would constitute a taking); *Pumpelly*, 80 U.S. (13 Wall.) at 177–78 (government must compensate owners for flooding resulting from its operation of a dam).

*Amicus Curiae Br. in Oppo. to D. MSJ - 8*
*Case No:20-cv-00983-TSZ*

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

The Supreme Court's physical takings jurisprudence holds that the existence of a taking turns, ultimately, on the function of the state action, not on its form. "The government must pay for what it takes . . . by *whatever* means"—full stop. *Cedar Point*, 141 S. Ct. at 2071, 2072 (emphasis added). The City cannot escape liability simply because it did not *direct* CHOP participants to injure Plaintiffs. To suggest otherwise would contradict the Supreme Court's recognition that the Takings Clause protects private property from direct as well as indirect state action. Because the City has failed to acknowledge—let alone address—whether it knew or should have known that the natural consequence of its decision to help establish and maintain the CHOP, its motion for summary judgment should be denied.

## III

## THE RIGHT OF ACCESS CLAIM

An owner's right of access to his or her property has been universally recognized as a private property right that cannot be taken or materially interfered with absent the payment of just compensation.[3] *Keiffer*, 89 Wn.2d at 372 ("The right of an abutting property owner to a public right-of-way is a property right which if taken or damaged for a public use requires compensation . . ."). Like the right to exclude, understanding the nature of this right is essential to properly apply the proper takings test. And as with the right to exclude, interference with the right of access does not have to be permanent or total in order to effect a taking. Instead, the "duration of an appropriation—just like the size of an appropriation—bears only on the amount

---

[3] The right of access is a well-recognized property interest traceable to the horse and cart days of England and colonial America when neighboring landowners cleared passageways through woods and fields so that they could haul produce to nearby villages. Wilkie Cunnyngham, *The Limited-Access Highway from a Lawyer's Viewpoint*, 13 Mo. L. Rev. 19 (1948). At that time, it was common custom that, having contributed to the construction and maintenance of the road (whether through labor or money), the abutting landowner should have a right of access to his road at any place he desired. *Id.*; *see also* William E. Duhaime, *Limiting Access to Highways*, 33 Or. L. Rev. 16, 19–20 (1953). Over time, the custom developed into a property right, ensuring that abutting landowners are provided a perpetual and transferable right of ingress and egress to the street—after all, the primary purpose of a road is to give citizens access to homes and farms and businesses. *See* Dan Moody, Jr., *Condemnation of Land for Highway or Expressway*, 33 Tex. L. Rev. 357, 365–66 (1955); Note, *Freeways and the Rights of Abutting Owners*, 3 Stan. L. Rev. 298, 299–300 (1951).

*Amicus Curiae Br. in Oppo. to D. MSJ - 9*
*Case No:20-cv-00983-TSZ*

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

of compensation owed." *Cedar Point*, 141 S. Ct. at 2074) (internal citations omitted). The Supreme Court characterized the right of access as an "incorporeal hereditament"—*i.e.*, an easement-like interest in the public road that inheres in an abutting property by operation of law. *Donovan v. Pennsylvania Co.*, 199 U.S. 279, 301 (1905); *see also State v. Calkins*, 50 Wn.2d 716, 719–20 (1957) (likening the "right of access" to an "easement"). As such, an "owner's right of access to and from the street . . . is as much his property as his right to the soil within his boundary lines." *Donovan*, 199 U.S. at 302; *see also id.* at 303 (the right of access "is as inviolable as any other right of property.") (quoting Lewis on Eminent Domain 2d ed. § 91f). Thus, when an owner "is deprived of such right of access . . ., other than by the exercise of legitimate public regulation, he is deprived of his property." *Id*. at 302.

    Due to the easement-like nature of this right, Washington's Supreme Court has developed a two-part test for determining when a government impairment of access requires compensation. First, the Court must determine whether the government action is legitimate and second whether the resulting impairment is substantial. *Keiffer*, 89 Wn.2d at 372–73. The question of legitimacy in this context, however, is narrowly limited to actions "regulat[ing] the volume or flow of traffic on a public way." *Keiffer*, 89 Wn.2d at 372–73 ("[A]ctions taken pursuant to the police power for the purpose of regulating the flow of traffic on the public way itself are generally not compensable."). Critically, "[t]he city has no power or authority to grant the exclusive use of its streets to any private person or for any private purposes; but must hold and control the possession exclusively for public use, for purposes of travel and the like." *Donovan*, 199 U.S. at 302 (citing *Pennsylvania Co. v. Chicago*, 181 Ill. 289, 296, 54 N.E. 825 (1899) (holding that cities hold title to roads in trust to the people)); *see also Kelo v. City of New London, Conn.*, 545 U.S. 469, 477 (2005) ("the sovereign may not take the property of A for the sole purpose of transferring it to another private party B"); *Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 164 (1980) ("a State, by *ipse dixit*, may not transform private property into public property without compensation"). Seattle does not address this first step in the access takings inquiry.

*Amicus Curiae Br. in Oppo. to D. MSJ - 10*
*Case No:20-cv-00983-TSZ*

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

Nor does the City adequately address the second step, which asks whether the interference with access is substantial. *Keiffer*, 89 Wn.2d at 374 (questions relating to the "substantial impairment" prong are questions of fact); *see also Lund v. Idaho & W.N.R.R.*, 50 Wash. 574, 578 (1908) (this inquiry asks whether the government action "materially interfere[d] with ingress and egress to and from [the owners'] premises."). While the substantial impairment inquiry in an ordinary access case will often turn on the question whether the government's traffic management decisions left an owner with alternative means of ingress/egress when determining the substantiality of the impairment (Dkt. # 111 at 24–26), this case is far from the ordinary. Here, by contrast, the City literally transferred the right to physically occupy roads to private persons for the benefit of the CHOP. This decision, in turn, allowed protesters to place barricades on and physically block the very roads on which local homeowners and businesses hold an easement interest.

The substantial impairment inquiry in this case will require the factfinder to consider a very different array of facts when determining whether the City's decision to allow protesters to establish the CHOP and barricade roads substantially impaired the Plaintiffs' customary or reasonable travel expectations, *Rose v. State*, 19 Cal.2d 713, 728, 123 P.2d 505 (1942). Texas law on the issue is also instructive: "[P]laintiff must show that there has been: (1) a total but temporary restriction of access; (2) a partial but permanent restriction of access; or (3) a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed. If the plaintiff does so, the property owner is entitled to be compensated for the lost profits arising from the denial of access." *Padilla v. Metro. Trans. Auth. of Harris Cnty.*, 497 S.W.3d 78, 84 (Tex. Ct. App. 2016) (citing *State v. Whataburger, Inc.*, 60 S.W.3d 256, 261 (Tex. Ct. App. 2001) (petition denied)). The City's failure to address Washington's two-step access takings test and to engage in the unique facts of the case should prove fatal to its motion for summary judgment.

Holding the City to this factual test will not open the floodgates to access takings litigation in the future. The interferences that Plaintiffs experienced in this case are

*Amicus Curiae Br. in Oppo. to D. MSJ - 11*
*Case No:20-cv-00983-TSZ*

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484

extraordinary, but can be adjudicated under Washington's two-part access taking inquiry; thus, adjudicating this case on the merits will not threaten to alter established takings law.

## CONCLUSION

"One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). When the government opts to pursue a course of action that puts individual property rights at risk of being taken, it does so subject to its Constitutional duty to pay just compensation. The Plaintiffs have presented evidence that the City did exactly that by choosing to help establish and maintain the CHOP, resulting in readily foreseeable and substantial interference with the property rights of area businesses and homeowners. For the reasons stated above, and those presented in Plaintiffs' opposition brief, amicus urges this Court to deny Defendant's motion for summary judgment.

DATED:  November __, 2022.

Respectfully submitted,

s/  BRIAN T. HODGES
Brian T. Hodges, WSBA # 31976

s/  SAM SPIEGELMAN
Sam Spiegelman, WSBA # 58212
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
BHodges@pacificlegal.org
SSpiegelman@pacificlegal.org

*Attorneys for Amicus Curiae*
*Pacific Legal Foundation*

*Amicus Curiae Br. in Oppo. to D. MSJ - 12*
*Case No:20-cv-00983-TSZ*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

## CERTIFICATE OF SERVICE

I hereby certify that on November __, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ BRIAN T. HODGES
Brian T. Hodges, WSBA # 31976

*Attorney for Amicus Curiae*
*Pacific Legal Foundation*

Amicus Curiae Br. in Oppo. to D. MSJ - 13
Case No:20-cv-00983-TSZ

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484