HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

                Plaintiffs,

    v.

CITY OF SEATTLE,

                Defendant.

Case No. 20-cv-00983-TSZ

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOTED ON MOTION CALENDAR: NOVEMBER 15, 2022

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# TABLE OF CONTENTS

I.       BACKGROUND ............................................................................................................. 1

II.      ARGUMENT ................................................................................................................. 3

     A.      Plaintiffs' Negligence Claim Fails as a Matter of Law................................. 3

         1.      Plaintiffs fail to prove an exception to the public duty doctrine.................. 3

            a. Plaintiffs are not within the class of persons the cited ordinances are designed to protect. ..................................................................................3

            b. Neither statute imposes a mandatory duty on the City to take corrective action................................................................................................5

            c. Plaintiffs cannot show the City had actual knowledge of a statutory violation that would give rise to a negligence claim. ...........................7

         2.      The City had discretionary immunity for its CHOP-related policy decisions. ...................................................................................................... 8

     B.      Plaintiffs' Nuisance Claim Fails as a Matter of Law. .................................. 9

     C.      Plaintiffs' Substantive Due Process Claim Fails. ...................................... 10

         1.      The City did not expose Plaintiffs to danger they otherwise would not have faced................................................................................................... 10

         2.      It was not foreseeable that the City's efforts to de-escalate tensions during CHOP and the City's eventual ending of CHOP would harm any Plaintiff. 11

         3.      The City was not deliberately indifferent to Plaintiffs................................ 12

     D.      Plaintiffs' Takings Claim Fails. ................................................................. 13

         1.      The City did not unconstitutionally interfere with any Plaintiff's right of access. ......................................................................................................... 13

         2.      The City did not effectuate a *per se* taking of any Plaintiff's property. ...... 14

     E.      Plaintiffs' Procedural Due Process Claim Fails........................................... 15

     F.      Plaintiffs' Causation Deficiencies Require Dismissal of Their Claims on Summary Judgment. .................................................................................. 16

III.     CONCLUSION............................................................................................................ 16

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# TABLE OF AUTHORITIES

**Page**

*Atherton Condo. Apt.-Owners Assoc. Bd. of Dirs. v. Blume Dev. Co.*,
   115 Wn.2d 506 (1990) ................................................................................................ 3, 9

*Avellaneda v. State*,
   167 Wn. App. 474 (2012) ............................................................................................ 9

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
   239 U.S. 441 (1915) .................................................................................................... 15

*Calm Ventures LLC v. Newsom*,
   548 F. Supp. 3d 966 (C.D. Cal. 2021) ....................................................................... 15

*Campbell v. City of Bellevue*
   85 Wn.2d 1 (1975) ...................................................................................................... 7

*Cedar Point Nursery v. Hassid*,
   141 S. Ct. 2063 (2021) ............................................................................................... 14

*Collins v. City of Harker Heights*,
   503 U.S. 115 (1992) .................................................................................................... 13

*Donohoe v. State*,
   135 Wn. App. 824 (Aug. 29, 2006) ............................................................................ 6, 7

*Ehrhart v. King Cnty.*,
   195 Wn.2d 388 (2020) ................................................................................................ 3, 5

*Emsley v. Army National Guard*
   106 Wn.2d 474 (1986) ................................................................................................ 8

*Estate of Linnik v. State ex rel. Dept. of Corrections*,
   2013 WL 1342316, 174 Wn. App. 1027 (Apr. 1, 2013) ............................................. 5

*Fishburn v. Pierce Cty. Planning & Land Servs. Dep't*,
   161 Wn. App. 452 (2011) ............................................................................................ 3

*Flint v. Cty. of Kuai*,
   521 F. Supp. 3d 978 (D. Haw. 2021) ......................................................................... 15

*Haberman v. WPPSS*,
   109 Wn.2d 107 (1987) ................................................................................................ 8

*Hall v. City of Portland*,
   2022 WL 3646994 (D. Ore. Aug. 22, 2022) .............................................................. 12

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - ii
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Halverston v. Skagit Cnty.*,
  42 F.3d 1257 (9th Cir. 1994) ........................................................................ 15

*Harris v. Cty. of Riverside*,
  904 F.2d 497 (9th Cir. 1990) ........................................................................ 16

*Hernandez v. City of San Jose*,
  897 F.3d 1125 (9th Cir. 2018) ...................................................................... 12

*Hodel v. Vir. Surface Mining & Reclamation Assoc.*,
  452 U.S. 264 (1981)) .................................................................................... 16

*Huffman v. Cty. of Los Angeles*,
  147 F.3d 1054 (9th Cir. 1998) ...................................................................... 11

*Index Newspapers LLC v. U.S. Marshals Svc.*,
  977 F.3d 817 (9th Cir. 2020) .......................................................................... 3

*Jamison v. Storm*,
  426 F. Supp. 2d 1144 (W.D. Wa. 2006) .......................................................... 4

*Keiffer v. King Cnty.*,
  89 Wn.2d 369 (1972) .................................................................................... 13

*Kelly v. City of Port Townsend*,
  2011 WL 1868182 (W.D. Wa. May 16, 2011) .............................................. 14

*Livingston v. City of Everett*,
  50 Wn. App. 655 (1988) ................................................................................. 7

*Martinez v. City of Clovis*,
  943 F.3d 1260 (9th Cir. 2019) ................................................................ 10, 12

*Moore v. Wayman*,
  85 Wn. App. 710 (1997) ................................................................................. 7

*Mustoe v. Ma*,
  193 Wn. App. 161 (2016) ............................................................................... 9

*Osborn v. Mason Cnty.*
  157 Wn.2d 18 (2006) ................................................................................. 3, 7

*Pande Cameron & Co. of Seattle, Inc. v. Cent.Puget Sound Regional Transit Auth.*,
  610 F. Supp. 2d 1288 (W.D. Wash. 2009) .................................................... 14

*Patel v. Kent Sch. Dist.*,
  648 F.3d 965 (9th Cir. 2011) ........................................................................ 12

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - iii
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Patel v. Parnes,*
   253 F.R.D. 531 (C.D. Cal. 2008)............................................................................... 1

*Railroad 1900, LLC v. City of Sacramento,*
   2022 WL 1693359 (E.D. Cal. May 26, 2022) ....................................................... 11

*Sinaloa Lake Owners Assoc. v. City of Simi Valley,*
   882 F.2d 1398 (9th Cir. 1989) ............................................................................... 16

*Smith v. City of Kelso,*
   112 Wn. App. 277, 48 P.3d 372 (2002)................................................................. 6

*Smith v. Clark Pub. Utils.,*
   2013 WL 5947760, 177 Wn. App. 1026 (Nov. 5, 2013) ...................................... 6

*Smith v. Preston Gates Ellis, LLP,*
   135 Wn. App 859 (2006) ...................................................................................... 16

*Taggart v. State,*
   118 Wn.2d 195 (1992)............................................................................................ 8

*Tamas v. Dept. of Soc. & Health Servs.,*
   630 F.3d 833 (9th Cir. 2010) ............................................................................... 12

*U.S. Oil Trad., LLC v. State Office of Fin. Mgmt.,*
   159 Wn. App. 357 n.4 (2011) ........................................................................... 3, 4

*Van Ort v. Estate of Stanewich,*
   92 F.3d 831 (9th Cir. 1996) ................................................................................. 11

*Washburn v. City of Fed. Way,*
   178 Wn.2d 732 (2013).......................................................................................... 16

*Williams Place, LLC v. State ex rel. Dept. of Transp.,*
   348 P.3d 797 (Wash. Ct. App. 2015).............................................................. 13, 14

*Wood v. Ostrander,*
   879 F.2d 583 (9th Cir. 1989) ............................................................................... 12

*Woods View II, LLC v. Kitsap Cty.,*
   188 Wn. App. 1 27 (2005) ..................................................................................... 5

*Yeager v. Bowlin,*
   693 F.3d 1076 (9th Cir. 2012) ............................................................................. 14

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - iv
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**Rules and Statutes**

Fed. R. Evid. 201(b) ............................................................................................................ 1

Fed. R. Evid. 201(d) ............................................................................................................ 1

RCW 7.48.160 ...................................................................................................................10

RCW 35.22.280(7) ............................................................................................................ 10

**Other Authorities**

2015 International Fire Code (adopted by Ordinance 125392) .......................................... 3

Seattle Fire Code § 101.3 ............................................................................................... 4, 7

Seattle Fire Code § 104.11.2 ............................................................................................. 4

Seattle Fire Code § 111.1 .................................................................................................. 6

Seattle Fire Code § 503.1 .............................................................................................. 3, 4

Seattle Fire Code § 503.2.1 (Exception 2) ....................................................................... 6

Seattle Fire Code § 503.4 .................................................................................................. 4

Seattle Municipal Code 15.02.025 ................................................................................... 7

Seattle Municipal Code 15.52 ...................................................................................... 3, 4

Seattle Municipal Code 15.52.005 ................................................................................... 4

Seattle Municipal Code 15.52.030(A) ............................................................................. 6

Seattle Municipal Code 15.52.060(B) .............................................................................. 6

Seattle Municipal Code 15.52.060(C) .............................................................................. 6

Seattle Municipal Code 15.52.070(A) .............................................................................. 5

Seattle Municipal Code 15.52.070(B) .............................................................................. 5

Seattle Municipal Code 15.52.070(C) .............................................................................. 5

Seattle Municipal Code 15.52.070(D) ............................................................................. 5

Seattle Municipal Code 15.90.004(A) ............................................................................. 6

Seattle Municipal Code 15.90.004(C) ............................................................................. 5

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - v
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Seattle Municipal Code 15.90.004(E) ................................................................... 6

Seattle Right-of-Way Improvements Manual §1.4 ........................................................ 6

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

## I.      BACKGROUND

2      Plaintiffs urge the Court to view CHOP in a vacuum, ignoring not only the unprecedented

3   pandemic that began in the weeks before CHOP, but also the unique protest environment that

4   emerged in May 2020.  Despite these challenges, CHOP began and ended in three-and-a-half

5   weeks and any resulting damage was substantially mitigated by the City's efforts.  Plaintiffs do not

6   meet their burden of supporting their hyperbolic narrative.  Plaintiffs do not identify any City

7   obligation to prohibit protesters from occupying public spaces in Capitol Hill, nor do they show

8   that the City could have safely cleared the CHOP before July 1.  Their claims should be dismissed.

9      Plaintiffs' claims must be viewed in the appropriate context, including the City's dealing

10   with the extraordinary CHOP events in a remarkably short time.  Washington suffered some of the

11   first Covid-19 casualties in the nation.[1]  Beginning months before CHOP and continuing long after,

12   the people and businesses of Seattle faced the effects—often ruinous—of Covid, which threatened

13   the very "collapse of [the City's] healthcare system."  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 30-

14   31; 85 (shutdowns were "so, so hard on every business . . . in our city")).  The response to Covid-

15   19, including quarantine and isolation, unfolded throughout March, April, and May, with officials

16   "consulting" on public health issues "every day."  *Id.* 30-31; 47; 52-53.  The City had largely shut

17   down well before CHOP arose.  Workers—including City officials—stayed home when possible,

18   in many cases as mandated by the Governor.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 85); Cramer

19   Rep. Dec., Exs. 52-53.  The full psychological toll of the sudden upheaval and early lockdowns *en*

20   *masse* remains unknown.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 33-34).

21      Against this backdrop, George Floyd was murdered on May 26, 2020.  The country

22   erupted.  Released from—or in some cases defying—lockdowns after weeks of being bottled

23   inside, many people took to the streets to exercise their First Amendment right to protest.  Cramer

24

---

25   [1] Cramer Rep. Dec., Ex. 54 (CDC Press Release dated February 2020:
https://www.cdc.gov/media/releases/2020/s0229-COVID-19-first-death.html).  This Court can take judicial notice of
Covid-related background facts, which "are not subject to reasonable dispute."  *Patel v. Parnes*, 253 F.R.D. 531, 544-
45 (C.D. Cal. 2008); *see also* FRE 201(b), (d).

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 1
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Dec. Exs. 1-2.  These police-targeted protests quickly turned destructive and violent.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 57 ("[P]rotests themselves were against the police and the police themselves' presence escalated behavior.").  By May 28, 2020, Minneapolis's Third Precinct was set on fire and officers were forced to flee.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 104); Cramer Dec., Ex. 6 (Mahaffey Dep. 74).  In Seattle and Portland, nightly clashes between protesters and police occurred during the weeks leading up to the CHOP.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 77, 186).  As City officials worked through unprecedented conditions, on June 12, 2020, the City's responsive options were constrained by court order.  Cramer Dec., Ex. 26.  City officials worked hard, conferring many times a day, seeking to deescalate and then—when the means were assembled and ready—end the turmoil.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 162, 184-194); Cramer Dec., Ex. 6 (Mahaffey Dep. 94); Cramer Dec., Ex. 8 (Formas Dep. 131-132).

The City's approach throughout CHOP was to work to balance the interests of legitimate protesters, residents, and businesses.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 57:1-22).  Tactics were fluid as were the conditions the City faced.  City officials made policy and judgment calls, including pulling back from the East Precinct, providing for the safety and health needs of the community, and steadily working toward the goal of clearing CHOP while minimizing the risk of a large, destructive, and violent reaction.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 104-105); Cramer Dec., Ex. 6 (Mahaffey Dep. 73-75); Cramer Rep. Dec., Ex. 55 (Scoggins Dep. 133).

The City achieved that goal.  CHOP—which emerged only late on June 8—was cleared on July 1.  Cramer Dec., Ex. 6 (Mahaffey Dep. 189-195).  In contrast, Minneapolis was on fire[2] and Portland was rewarded for standing its ground with continued violence and destruction long after the Seattle protests dissipated.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 104; 185-187 ("[I]f you set a deadline . . . experience would tell us, you're going to invite more people to come because that is typically what happens.  It's what happened in Portland night after night after night during the

---

[2] The City, too, received from the FBI a credible threat of arson targeting the East Precinct.  Cramer Dec., Ex. 6 (Mahaffey Dep. 74); Cramer Dec., Ex. 9 (Best Dep. 62-63).

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 2
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  same period of time.")); *Index Newspapers LLC v. U.S. Marshals Svc.*, 977 F.3d 817, 822 (9th Cir.

2  2020) (DHS and USMS "deployed federal law enforcement agents to Portland").

3        Plaintiffs claim that by de-escalating tensions, quelling violent clashes, and avoiding

4  explosive confrontations while working to maintain order to the maximum extent feasible, the City

5  violated Plaintiffs' rights.  The applicable legal standards do not support these claims.

6                              **II.      ARGUMENT**

7  **A.     Plaintiffs' Negligence Claim Fails as a Matter of Law.**

8        **1.      Plaintiffs fail to prove an exception to the public duty doctrine.**

9        To advance their negligence claims, Plaintiffs must show that an exception to the public

10  duty doctrine exists.  *Ehrhart v. King Cty.*, 195 Wn.2d 388, 402 (2020); *Atherton Condo. Apt.-*

11  *Owners Assoc. Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 531 (1990) ("The plaintiff has the

12  burden of establishing each element of the exception.").  They have not done so.  Plaintiffs have

13  abandoned all but the failure-to-enforce exception, which requires the City to have actual

14  knowledge of a failure to act in the face of a statute requiring "specific [corrective] action."

15  *Fishburn v. Pierce Cty. Planning & Land Servs. Dept.*, 161 Wn. App. 452, 469 (2011).  Plaintiffs

16  have identified no such statute.  They rely on Seattle Fire Code § 503.1 and Seattle Municipal

17  Code § 15.52, *see* Opp. at 12, but have missed the mark.[3]

18        **a.      Plaintiffs are not within the class of persons the cited ordinances are
                    designed to protect.**

19

20        Neither ordinance is designed to protect any class to which Plaintiffs belong, nor to prevent

21  the damages Plaintiffs' claim.  The exception applies only if the ordinance targets Plaintiffs;

22  otherwise, it merely imposes a duty "to a nebulous public" rather than to Plaintiffs in particular.

23  *Osborn v. Mason Cty.*, 157 Wn.2d 18, 27 (2006); *U.S. Oil Trad., LLC v. State Office of Fin.*

24  *Mgmt.*, 159 Wn. App. 357, 362 n.4 (2011).  The cited Fire Code provisions are designed to protect:

25  _____

[3] The Fire Code provisions Plaintiffs cite are taken from the 2018 International Fire Code, as amended by the City and adopted by Ordinance 126283, attached as Cramer Reply Dec., Ex. 56.  The Fire Code in effect during CHOP was the 2015 International Fire Code, as amended by the City and adopted by Ordinance 125392, attached as Cramer Reply Dec., Ex. 57.  Unless otherwise indicated, the City's citations to the "Fire Code" in this reply are to the 2015 version.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 3
(Case No. 20-cv-00983-TSZ)

1    (1) the general public; (2) people whose property already is ablaze; and (3) the *firefighters* charged

2    with responding to emergencies.  They are not designed to prevent protest movements like CHOP

3    from forming or to curtail harm to third parties arising out of such protests.  *See Jamison v. Storm*,

4    426 F. Supp. 2d 1144, 1159 (W.D. Wa. 2006) (statute protects intoxicated minors, so individual

5    injured by intoxicated minor was not within class of protected persons).

6         Plaintiffs quote selectively from the "Intent" section of the Fire Code, arguing these

7    provisions were designed "to protect buildings affected by obstructed access" as well as their

8    occupants.  Opp. at 12.  But the "Intent" language Plaintiffs *omit* states that the Fire Code exists

9    "to provide a reasonable level of safety to fire fighters and emergency responders during

10   emergency operations."  SFC § 101.3.  The section provides that buildings should be protected

11   "from the hazards of fire," not from protesters.  The specific subdivisions on which Plaintiffs rely

12   conform to this intent.  Sections 503.1 and 503.4 relate to the provision, maintenance, and

13   obstruction of fire access roads—i.e., they ensure that firefighters will not be dangerously impeded

14   in their efforts to respond to existing fires.  Section 104.11.2 prohibits the obstruction of fire

15   department operations "in connection with extinguishment or control of any fire," reaffirming that

16   the protected class is responders carrying out their responsibilities.  Plaintiffs are not firefighters,

17   so are not within the class of persons the Fire Code was designed to protect.  Nor does any Plaintiff

18   seek damages caused by a negligent failure to respond to a fire[4]—whether because of impeded fire

19   truck access or interference with active firefights.  This reality is also fatal to the causation element

20   of Plaintiffs' negligence claim, regardless of the location of the alleged violations.  Opp. at 13.

21        Plaintiffs also rely on Section 15.52 of the Seattle Municipal Code, which governs

22   permitting requirements for "planned" special events. SMC § 15.52.005 ("'Special event' means  .

23   . . [a]n event *planned* to be held in a park, other City-owned property, or public place . . . .")

24

25

---

[4] Even the portion of Car Tender's damages related to a break-in during which an intruder set a lighter to a collection of papers on the service counter is tied only to the City's overarching actions during CHOP rather than a separate tort claim.  Opp. at 26; Cramer Reply Dec., Ex. 58 (Van Zandt Rep. ¶¶ 88-89).

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 4
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

(emphasis added).[5]  The CHOP was not a planned event.  Cramer Dec., Ex. 6 (Mahaffey Dep. 90, 92-93).  Nor are Plaintiffs "protected" by the permitting requirements.  It is *the City* that receives permit application fees, *see* SMC § 15.52.070(A), and *the City* that collects fees for certain approved events, *e.g.*, SMC § 15.52.070(B) (administrative fee collected for all but pure free speech events); § 15.52.070(C) (SPD fee for athletic and commercial events); § 15.52.070(D) (citywide events fee).  The City has discretion whether to grant or deny a permit application.  Even if the City failed to enforce the municipal code's permit provision as Plaintiffs claim, the failure-to-enforce exception does not apply "where the defendant government entity fails to take corrective action against *itself*."  *Woods View II, LLC v. Kitsap Cty.*, 188 Wn. App. 1, 27 (2005) (refusing to accept plaintiff's "unusual theory" that County "failed to enforce . . . its *own* mandate to issue a timely permit") (all emphases in original).  To the extent the permitting requirements are intended to regulate conduct in public areas that abut private businesses, Plaintiffs have not demonstrated how that statutory purpose targets Plaintiffs specifically rather than the "nebulous public."  SMC § 15.90.004(C) ("The Street and Sidewalk Use Code shall be enforced for the benefit of the health, safety and welfare of the general public, *and not for the benefit of any particular person or class of persons*.") (emphasis added).[6]

> **b.    Neither statute imposes a mandatory duty on the City to take corrective action.**

Second, Plaintiffs argue that both the Fire Code and the permit provision of the Municipal Code establish a "statutory duty" requiring the City to take specific enforcement action.  Plaintiffs are wrong.  None of the cited provisions expresses "a ***mandatory duty*** to take a ***specific action to correct a known statutory violation***."  *Estate of Linnik v. State ex rel. Dept. of Corrections*, 2013 WL 1342316, at *10, 174 Wn. App. 1027 (Apr. 1, 2013) (unpublished) (emphases in original).

---

[5] Plaintiffs conveniently omit the word "planned" from their quote of the applicable regulation.  *See* Opp. at 12.
[6] Plaintiffs apparently contend that statutory language specifically disclaiming protection of a specific "class of persons" is not relevant to the failure-to-enforce exception, which Plaintiffs admit is applicable only if a plaintiff "is within the class the statute intended to protect."  *Ehrhart*, 195 Wn.2d at 403 (2020); Opp. at 10.  This argument is nonsensical.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 5
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    In fact, the permitting provisions give the Special Events Committee wide latitude to deny

2    permit applications, *see* SMC § 15.52.060(B), to revoke permits, *see* SMC § 15.52.060(C), and to

3    determine whether an event even "requires a special event permit," *see* SMC § 15.52.030(A).  The

4    statute imposes no specific duty on the City to act where a permit is not sought and obtained.

5    Rather, the Municipal Code gives the DOT general authority to enforce the Street and Sidewalk

6    Use Code (which contains the special event permit provisions), without "impos[ing] any duty upon

7    the City" to do so.  *See* SMC § 15.90.004(A) & (E).  This language defeats the second prong of the

8    exception.  *Donohoe v. State*, 135 Wn. App. 824, 848-49 (Aug. 29, 2006) (no "mandatory duty to

9    take a specific action" where "government agent has broad discretion about whether and how to

10   act"); *Accord Smith v. Clark Pub. Utils.*, 2013 WL 5947760, at *8, 177 Wn. App. 1026 (Nov. 5,

11   2013) (unpublished) ("[Statute] does not describe a specific duty that the County must perform, but

12   instead states what will happen if the [permit] *applicant* fails to perform.") (emphasis in original).

13   The Fire Code provisions similarly do not require any specific corrective action.  Detailed

14   requirements for public fire apparatus access roads are governed by the Seattle Right-of-Way

15   Improvements Manual, which Plaintiffs do not even cite.  *See* SFC § 503.2.1 (Exception 2).  The

16   manual merely reaffirms the scope of SFD's review of building construction plans.  Cramer Rep.

17   Dec., Ex. 59 (Improvements Manual § 1.4).  The only Fire Code provisions remotely addressing

18   corrective action relate to unsafe "premises, [] building structure[s], or [] building systems," not to

19   obstructions in fire apparatus access roads or ongoing fire investigations.  *See* SFC § 111.1.[7]  The

20   statutory provisions Plaintiffs cite do not "obligate[] a government agency to take specific action to

21   correct a violation of the law."  *Smith v. City of Kelso*, 112 Wn. App. 277, 284 (2002); *Donohoe*,

22   135 Wn. App. at 849.[8]  Nor do Plaintiffs' claimed damages result from a Fire Code violation.

23

24   [7] Even this provision does not contain clear language mandating corrective action but requires only that the fire code official act "as shall be deemed necessary in accordance with this section."  SFC § 111.1.  The section authorizes, but does not require, the fire code official to "refer the building" to a different agency for inspection.

25   [8] Even if required by statute, the undisputed facts show the City did take corrective action to address fire safety issues arising out of CHOP—not least by ensuring emergency vehicle access throughout the area.  It is not clear what corrective action the City should have taken to address Plaintiffs' complaints regarding any special event permit

(footnote continued on next page)

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 6
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1

2

###### c.      Plaintiffs cannot show the City had actual knowledge of a statutory violation that would give rise to a negligence claim.

3

Third, Plaintiffs have put forth no evidence that the City had actual knowledge of a

4

statutory violation that could give rise to liability.  Even if Chief Scoggins' *sua sponte*

5

interpretation of the Fire Code's apparatus access requirements were correct,[9] he discussed with

6

the protesters the steps that would need to be taken to "fix" the issue.  *Moore v. Wayman*, 85 Wn.

7

App. 710, 723 (1997).  Protesters and City officials moved barriers and developed plans to address

8

any obstructions. Cramer Rep. Dec., Ex. 51 (Durkan Dep. 39); Ex. 55 (Scoggins Dep. 196).

9

Plaintiffs nonetheless claim they were "within the ambit of risk" allegedly created by the

10

City's conduct because they are "located in or next to a neighborhood with obstructed . . . streets

11

that the City admits facilitated CHOP."  Opp. at 11.  Plaintiffs misconstrue the "ambit of risk" test,

12

which applies only where the City's conduct was in fact negligent.  In any case, Plaintiffs do not

13

fall within the "ambit of the danger involved" for the reasons discussed in Section II.A.1.a—

14

namely, the "danger involved" in obstructing a fire access road is not the potential creation of

15

CHOP, but the danger arising if a City emergency response vehicle cannot gain access to a fire.[10]

16

To adopt Plaintiffs' reading would be to impose a legal duty on the city "to prevent every

17

foreseeable injury"—a duty the City "does not have."  *Osborn v. Mason Cty.*, 157 Wn.2d 18, 28

18

(2006).  That is why both codes are crystal clear that they do not impose such a duty on the City.

19

SFC § 101.3 ("No provision or term used in this code is intended to impose any duty whatsoever

20

upon the City"); SMC § 15.02.025 ("Disclaimer of City liability").

21

22

requirements.  Had the City requested and approved a CHOP permit application, then by Plaintiffs' logic, there would
have been no failure to enforce—even though CHOP would have still existed.

23

[9] In the video Plaintiffs cite, Chief Scoggins conflates the dimensional requirements for private access roads with those
for public roads—which, as discussed *supra*, are governed by a different set of guidelines.

24

[10] The cases Plaintiffs cite are inapposite.  *Campbell v. City of Bellevue* involved an inspector who discovered
extensive noncompliant underwater electrical wiring and failed to follow up with the property owner before the system
electrocuted and killed a visitor to the property.  85 Wn.2d 1, 3-5 (1975).  Visitors to properties with noncompliant,

25

hazardous conditions are clearly within the "ambit of risk" that the electrical code is designed to protect.  *Livingston v.
City of Everett* involved a failure to follow up on repeated complaints of an aggressive dog, which eventually mauled a
third-party.  50 Wn. App. 655, 656-57 (1988).  The victim of a dog attack is also clearly within the "ambit of risk" that
dangerous dog regulations are designed to protect.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 7
(Case No. 20-cv-00983-TSZ)

1    Plaintiffs have not demonstrated that the "narrow" failure-to-enforce exception applies.

2    **2.      The City had discretionary immunity for its CHOP-related policy decisions.**

3    Plaintiffs allege that the City's "affirmative acts" negligently caused CHOP and that CHOP

4    harmed Plaintiffs.  *See* Dkt. 47, ¶ 210.  But every affirmative act the City took during the

5    unprecedented, dynamic, anti-police protest movement that erupted in May 2020 was a

6    discretionary policy decision, set against the backdrop of a global pandemic and widespread

7    violent protests around the country (including Minneapolis and Portland where less nuanced

8    responses had disastrous results).  These judgment calls and decisions were made at the highest

9    executive levels.  The pre-CHOP protest activity presented a fluid situation that required a nimble

10   policy response.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 186-87).  The City did not make a policy

11   decision to create the CHOP, which Plaintiffs incorrectly claim would be the only way for the City

12   to rely on discretionary immunity.  *See* Opp. at 15.  Rather, the City's reaction to protest activity

13   required a series of rapid policy decisions, followed by rapid implementation of those decisions.

14   This case is therefore unlike any discretionary immunity case Plaintiffs cite, which all

15   involve policy choices made in the ordinary course of executive deliberation, which are

16   implemented in due course—for example, the policy decision to build a nuclear energy plant and

17   the later implementation of financing for the project, *Haberman v. WPPSS*, 109 Wn.2d 107, 157

18   (1987), or a parole board's decision to release a prisoner followed by a parole officer's ministerial

19   supervision of the parolee, *Taggart v. State*, 118 Wn.2d 195, 215 (1992) (differentiating in dicta

20   between parole board decision and parole officer's supervision).[11]  Here, the fast-moving nature of

21   the First-Amendment-protected protest activity throughout the City and the CHOP, coupled with

22   the unique policy concerns presented by the pandemic (i.e., preserving public health), resulted in

___

[11] The other cases Plaintiffs cite merely recite basic principles of discretionary immunity and are distinguishable. *Emsley v. Army National Guard* involved an accidental gun death at the hands of a national guard artillery squad negligently carrying out weapons training—a far cry from policymaking.  106 Wn.2d 474, 480 (1986).

policy and implementation becoming inextricably intertwined.

Particularly because Plaintiffs challenge "everything the City did," Opp. at 15, their challenge is more appropriately directed at the overarching policy the City established. Plaintiffs themselves characterize SFD's Red Zone as a "policy" choice. Opp. at 4. It was. As were the other fast-moving but deliberate policy choices the City made while engaging in "a conscious balancing of risks and advantages." *Avellaneda v. State*, 167 Wn. App. 474, 481 (2012). The City is entitled to discretionary immunity for its policy decisions.[12]

**B.   Plaintiffs' Nuisance Claim Fails as a Matter of Law.**

The nuisance claim is duplicative of the negligence claim and fails for that reason. To duck this problem, Plaintiffs perplexingly jettison all but the duty element of their negligence claim, insisting that it is based *only* on the City's "***failure to enforce*** two statutes," Opp. at 16 (emphasis in original), whereas their nuisance claim is based on the City's "encourage[ment]" of CHOP, *id.* at 17. The failure-to-enforce exception is relevant only to the question whether the City owed an actionable duty to Plaintiffs, not whether the City breached that duty, dooming Plaintiffs' attempt to distinguish the claims on that basis. In any case, the Third Amended Complaint is clear: Plaintiffs base their negligence claim on the City's "affirmative acts." Dkt. 47, ¶ 210. Plaintiffs describe these "affirmative acts," Opp. at 3, in detail in their opposition to this Motion. *See id.* at 3-7. Plaintiffs' nuisance claim is based on the same alleged conduct.

Plaintiffs' cases confirm that nuisance and negligence impermissibly overlap where a "negligence claim [is] presented in the garb of nuisance"—i.e., where the alleged conduct was negligent, and that same conduct created a nuisance. *Atherton Condo. Apt.-Owners Assoc. Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 527 (1990); *see also Mustoe v. Ma*, 193 Wn. App. 161, 163 (2016) (nuisance claim fails because it is "the result of [defendant's] breach of duty"). Here,

---

[12] Plaintiffs are wrong that the failure-to-enforce exception is dispositive of the discretionary immunity issue. Opp. at 14. The purpose of the failure-to-enforce exception is to identify whether the City owed a duty to Plaintiffs that could give rise to a negligence claim, which does not bear on the City's immunity for any resulting breach of that duty.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 9
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

any breach of duty by the City would necessarily involve the City's actions with respect to, for example, the placement of barricades or permitting protesters to "occupy public rights of way" even without a permit to do so. Opp. at 5. This is the precise conduct Plaintiffs claim created a nuisance. The claims are wholly duplicative.[13]

**C.    Plaintiffs' Substantive Due Process Claim Fails.**

**1.    The City did not expose Plaintiffs to danger they otherwise would not have faced.**

Plaintiffs misstate the state-created danger test, arguing that they must demonstrate "*only* that the City took some affirmative action that *increased the risk* Plaintiffs would be harmed." Opp. at 17 (emphases added). That is not the test. The proper inquiry is whether the City "create[d] or expose[d]" Plaintiffs "to an actual, particularized danger that [they] *otherwise would not have faced.*" *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (emphasis added). In *Martinez*, on which Plaintiffs heavily rely, officers who failed to arrest a domestic abuser and returned his victim to the house they shared were not liable for that conduct. *Id.* at 1272-73. Only by making comments that further "emboldened" or "provoked" the abuser could the officers be held liable for creating a danger the victim would not have otherwise faced. *Id.*

Likewise, here, Plaintiffs have failed to show that the City's affirmative conduct put them in a situation they would not have faced absent that conduct. Before CHOP, Plaintiffs' neighborhood was embroiled in nightly police-protester clashes, which exposed the Plaintiffs to the collateral harms of protest activities. The City took steps to *decrease* any danger that Plaintiffs and other residents of the Capitol Hill neighborhood may have faced by de-escalating the violence and defusing a potentially volatile situation. The Plaintiffs have not shown and cannot show that

---

[13] Plaintiffs' rebuttal to the City's argument that the statutory authority granted to it under the Street and Sidewalk Code precludes Plaintiffs' nuisance claim fails. Under RCW 7.48.160 there can be no nuisance where the City acts "under the express authority of a statute." Plaintiffs claim that RCW 7.48.160 requires a "direct authorization of action" and argue the Street and Sidewalk Code contains no such provision. But the Street and Sidewalk Code does grant the City authority "to regulate and control the use" of streets, sidewalks, "and other public grounds." RCW 35.22.280(7). Plaintiffs' concession is also fatal to their negligence claim because, as discussed *supra*, the failure-to-enforce exception applies only where the City is obligated to act.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 10
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

these actions designed to defuse the situation and reduce the risk of harm meet the legal test.

*Accord Railroad 1900, LLC v. City of Sacramento*, 2022 WL 1693359, at *4 (E.D. Cal. May 26, 2022) ("municipalities and the officials who enforce their laws are routinely required to make decisions about whether and when to do so" and such decisions do not give rise to substantive due process claims). Had the City taken no action Plaintiffs would surely be actively suing the City to recover damages on the basis of City inaction.

Plaintiffs have produced no evidence to support the claim that the City's de-escalation tactics placed them "in a worse position than they would have been in *absent any City intervention whatsoever*." Dkt. 23 at 19 (emphasis added). Plaintiffs' causation expert does ***not*** recognize that the neighborhood in which CHOP arose had a long history of protest activity. Instead, Piza compares crime rates in the CHOP to crime rates in other Seattle neighborhoods that had neither an autonomous zone filled with protesters nor a history of substantial protest activity. No evidence Plaintiffs cite supports the claim that the City's CHOP interventions put Plaintiffs in greater danger than they would have faced had the City not intervened in CHOP at all. Nor can Plaintiffs show there was a feasible path to expelling First Amendment protesters and prohibiting their return. The City did not create an actual, particularized danger that Plaintiffs otherwise would not have faced.[14]

## 2. It was not foreseeable that the City's efforts to de-escalate tensions during CHOP and the City's eventual ending of CHOP would harm any Plaintiff.

For the Court to find a state-created danger, the City must have taken affirmative acts that "create[ed] a foreseeable danger to the [P]laintiff[s]." *Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998). To the extent CHOP is the source of the danger Plaintiffs claim to have suffered, CHOP was an "abnormal intervention" and by definition a consequence that the City could not have foreseen. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (intervening actions are unforeseeable and break chain of proximate causation). Plaintiffs

---

[14] This prong of the state-created-danger test also tends to "involve[] risks of bodily harm to individuals" and not "risks of purely economic injury to a corporation" as is the alleged case with several of the Plaintiffs. *Railroad 1900, LLC*, 2022 WL 1693359, at *4 (May 26, 2022).

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 11
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

conveniently ignore that their neighborhood was overrun with anti-police protesters in the week

prior to CHOP and City leaders received credible threats of an arson targeting the East Precinct.

The City took steps to *avoid* these continued clashes and threats.  It was not foreseeable that de-

escalation would result in the creation of an occupied protest in the middle of the City.

The facts Plaintiffs present do not create a genuine issue regarding foreseeability.  Plaintiffs

cite, for example, Zimbabwe's testimony that there was concern that "*after the police left*" the East

Precinct and *after* CHOP had already formed, the occupation might last for some time.  Opp. at 19.

But this testimony says nothing about the foreseeability of the *creation* of CHOP.[15]  Once the

CHOP formed, it was not foreseeable that the steps the City took to dismantle it would increase

any alleged danger to the Plaintiffs—just the opposite.  Had the City conducted business as usual,

it likely would have been faced with the same violent protests that plagued the neighborhood

before CHOP's formation.  Cramer Rep. Dec., Ex. 60 (Stoughton Dep. 113:14-114:5).  *See also*

*Hall v. City of Portland*, 2022 WL 3646994, at *3 (D. Ore. Aug. 22, 2022).[16]

### 3.     The City was not deliberately indifferent to Plaintiffs.

Plaintiffs have not shown that the City's actions to de-escalate tensions with protesters and

maintain sanitary conditions during CHOP (in the midst of a respiratory pandemic) "shock[ed] the

conscience."  *Tamas v. Dept. of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010).  Plaintiffs

decry the City's desire for "peaceful demonstration," its tolerance of a garden, and the provision of

---

[15] Plaintiffs cannot have it both ways—either the creation of CHOP was the "state-created danger" or the ongoing support for the already-existing CHOP was the "state-created danger."  If Plaintiffs claim that CHOP itself was the state-created danger, then they must demonstrate that it was foreseeable CHOP would be formed.  Because they cite only post-CHOP concerns, their foreseeability analysis falls apart.  If their complaint is with the City's ongoing "support" for CHOP, then they must furnish evidence that the City's support created a greater danger to the Plaintiffs than would have existed had the City done *nothing* while CHOP was *already* ongoing—because they claim only that the City's "support" for CHOP created a greater danger than would have existed *without CHOP*, their "actual, particularized danger" analysis falls apart.

[16] Plaintiffs mischaracterize the City's argument that the doctrine applies only to the extent each Plaintiff can show that she was a foreseeable victim of danger.  *E.g.*, *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974-75 (9th Cir. 2011) ("The state actor must . . . actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.") (cleaned up).  The cases illustrate the individual nature of these claims: *Wood v. Ostrander* and *Martinez* speak only to foreseeable harms suffered by individuals 879 F.2d 583, 590 (9th Cir. 1989); *Martinez*, 943 F.3d at 1273-74.  Though *Hernandez v. City of San Jose* involves a group of protesters, each member faced identical circumstances.  897 F.3d 1125 (9th Cir. 2018).

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 12
(Case No. 20-cv-00983-TSZ)

1  port-a-potties as akin to leaving a victim of domestic violence with her abuser rather than arrest her

2  abusive police officer boyfriend or stranding a female passenger in a dark, remote area after

3  arresting her Intoxicated driver.  Those situations do not involve the complex, balancing

4  considerations that occurred before and during CHOP—i.e., the kind of "rational decision making

5  process that takes account of competing social, political, and economic forces" and defeats a claim

6  of deliberate indifference.  *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992).

7      Moreover, Plaintiffs cannot even explain what the City's supposed indifference was.

8  Plaintiffs claim both that the City acted with deliberate indifference by abandoning the area, *see*

9  Opp. at 22 (City allegedly kept employees out of CHOP entirely for their safety), and that the City

10  acted with deliberate indifference by visiting the area, *see* Opp. at 21 (decrying Durkan visit).  And

11  they ignore the hundreds of hours City officials spent on a daily basis to address the challenges of

12  CHOP.  Cramer Rep. Dec., Ex. 51 (Durkan Dep. 41, 161-62, 184-194); Cramer Dec., Ex. 6

13  (Mahaffey Dep. 94); Cramer Dec., Ex. 8 (Formas Dep. 131-132).  Plaintiffs' deliberate

14  indifference argument rings hollow.

15  **D.    Plaintiffs' Takings Claim Fails.**

16      **1.    The City did not unconstitutionally interfere with any Plaintiff's right of access.**

17      Plaintiffs skip the fundamental inquiry under *Keiffer*, which is to identify the legally

18  defined "property interest" Plaintiffs possess and with which the City allegedly interfered.  *Keiffer*

19  *v. King Cty.*, 89 Wn.2d 369, 371 (1972) ("The first step is to determine if the government action in

20  question has actually interfered with the right of access *as that property interest has been defined*

21  *by our law*.") (emphasis added).  Plaintiffs present a litany of alleged access issues regarding

22  public rights of way.  *E.g.*, Opp. at 23 (City allegedly "modif[ied] streets and pedestrian access

23  routes" to facilitate "people occupying the *neighborhood*" and "avoided confrontation" with

24  people "blocking streets" and "encouraged" occupation of "streets and sidewalks").  But Plaintiffs

25  have no property interest in the public roadways that were blocked during CHOP.  *Williams Place,*

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 13
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*LLC v. State ex rel. Dept. of Transp.*, 187 Wn. App. 67, 84 (2015); *Kelly v. City of Port Townsend*, 2011 WL 1868182, at *5 (W.D. Wa. May 16, 2011).

As the City explained in its opening brief, no Plaintiff testified that access to its property was blocked between June 8 and July 1.  Noticeably absent from Plaintiffs' opposition is testimony controverting these facts.[17]  Instead, Plaintiffs complain that third parties—i.e., CHOP protesters— occasionally made it more difficult for them to access their properties.  Stripped to its core, Plaintiffs' access complaint is that the City placed barricades that did *not* block access; some third parties then occasionally moved those barricades to other public rights of way (though still without blocking access); and that other third parties entered the area and occasionally made Plaintiffs feel unsafe.  Opp. at 24.  None of these "intermittent inconveniences and annoyances" rise to the level of an unconstitutional taking.  *Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Regional Transit Auth.*, 610 F. Supp. 2d 1288, 1304 (W.D. Wa. 2009).[18]

## 2.      The City did not effectuate a *per se* taking of any Plaintiff's property.

Under Plaintiffs' logic, *Cedar Point* would apply to any situation where a private party trespasses on another private party's land, so long as the government did not affirmatively stop the trespass-in-progress.  *See* Opp. at 26-27.  Plaintiffs' reading goes too far.  In *Cedar Point*, the government *mandated* that the private property owner grant access to third parties.  *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2069 (2021).  The government even authorized the imposition of monetary sanctions on the property owner if he refused to permit entry onto his property.  *Id.* Plaintiffs have not pointed to an analogous law, municipal code provision, regulation, or even statement by a government official that comes close to a mandate that businesses in the CHOP area

---

[17] In opposition to the City's motion, several Plaintiffs have submitted self-serving declarations claiming generally that there was "diminished access" to their properties, contravening prior deposition testimony that access was *not* physically blocked.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

[18] Plaintiffs quibble with the map attached to the City's moving brief, which was drawn from the City's class certification opposition.  The revised map was updated to reflect facts developed during discovery and the boundaries are based on the *Plaintiffs'* claimed damages area.  Though Plaintiffs could not sufficiently identify a class area, the City never admitted that "its actions and its effects" were broader than Plaintiffs' claim.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 14
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

permit CHOP protesters on their private property or face liability.

**E.     Plaintiffs' Procedural Due Process Claim Fails.**

Plaintiffs argue that the City's actions affected only a "narrow, easily identifiable" group of individuals and therefore they were entitled to notice and a hearing on the City's actions taken pursuant to an emergency executive order in the midst of a fluid protest situation.  Opp. at 27. Plaintiffs' argument is at odds with their own, earlier attempt in these proceedings to represent a class consisting of everyone in the CHOP area (and beyond).  Even setting that aside, Plaintiffs still have not defined the allegedly affected area.  Opp. at 28.  Plaintiffs seek damages for harms felt outside the "few blocks" they claim as the "narrow" affected area.  *Compare* Opp. at 28 with Cramer Dec., Ex. 49.  In short, Plaintiffs challenge an executive policy implemented to handle protests across a large neighborhood.  Just as in *Halverston*, Plaintiffs had information about this policy in the form of an executive order and communicated with City officials about the impacts of the policy.  *Halverston v. Skagit Cty.*, 42 F.3d 1257, at 1261 (9th Cir. 1994).  As in that case, Plaintiffs have the protection of their "[voting] power, immediate or remote, over those who make the rule."  *Id.  Accord Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("[N]o one would suggest that the 14th Amendment was violated unless every person affected had been allowed an opportunity to raise his voice.").

Nor is Plaintiffs' physical proximity to CHOP alone sufficient to show that executive actions responding to protests "specifically target[ed]" them, as required to find a due process violation.  *Flint v. Cty. of Kuai*, 521 F. Supp. 3d 978, 994 (D. Haw. 2021).  Where an executive or legislative act affects everyone in a "distressed area" and is not targeted at "one or only a few individuals," due process is not offended.  *Id.*  The CHOP executive order was more akin to the type of executive action that takes place after a natural disaster, *see id.*, or the type of executive action taken in connection with a public health disaster, *Calm Ventures LLC v. Newsom*, 548 F. Supp. 3d 966, 982-83 (C.D. Cal. 2021) (declining to find Covid-19 shutdown order violated due

process rights of businesses forced to close).  "Indeed, deprivation of property to protect the public health and safety is one of the oldest examples of possible summary action" that does not require notice and opportunity to be heard.  *Id.* at 982 (quoting *Hodel v. Viginia Surface Mining & Reclamation Assoc.*, 452 U.S. 264, 300 (1981)).  This is not a case involving a zoning decision targeting Plaintiffs specifically, *see Harris v. Cty. of Riverside*, 904 F.2d 497, 499 (9th Cir. 1990), and accordingly Plaintiffs' procedural due process claim must be dismissed.[19]

## F.   Plaintiffs' Causation Deficiencies Require Dismissal of Their Claims on Summary Judgment.

Causation need not be put to the jury if "reasonable minds could not differ" as to the lack of proximate cause.  *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 864 (2006).  The common deficiency running through all Plaintiffs' claims is that, as a matter of law, none of their claimed harms can be connected to the City's alleged acts.  Plaintiffs confirm that their CHOP expert relied on the self-serving assessments of Plaintiffs to determine whether damages were caused by CHOP or Covid.  *See* Opp. at 30-31.  And even if Plaintiffs could have had damages due to CHOP and Covid during CHOP, Van Zandt did not disaggregate those alleged losses.

Nor, for all the reasons explained in Section II.C, *supra*, have Plaintiffs shown how the City's "affirmative acts" of, for example, placing Sanicans in Cal Anderson Park during a pandemic when other restroom facilities were not generally open to the public "created or exposed [Plaintiffs] to a recognizably high degree of risk of harm."  *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 757-58 (2013).

## III.   CONCLUSION

For the foregoing reasons, the Court should grant the City's motion.

---

[19] Plaintiffs offer no serious rebuttal to the City's argument that the procedural due process claim is superfluous of the takings claim.  *Sinaloa Lake Owners Assoc. v. City of Simi Valley* observed in the context of exhaustion of remedies that a procedural due process claim would not be judged unripe even where the takings claim was.  882 F.2d 1398, 1404 (9th Cir. 1989).  *Harris v. County of Riverside* permitted a procedural process claim to proceed alongside a taking claim because the due process challenge "although related to [the] taking claim" required different findings. 904 F.2d 497, 500-01 (9th Cir. 1990).  Here, by contrast, Plaintiffs' due process claim alleges the same deprivation of their right to access as alleged in the takings claim and the proffered facts are identical.

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 16
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

DATED this 15th day of November, 2022.

ANN DAVISON
Seattle City Attorney

By: _s/ Joseph Groshong_____
    Joseph Groshong, WSBA# 41593
    Assistant City Attorney
    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
    Seattle, WA 98104
    Tel: (206) 684-8200
    Fax: (206) 684-8284
    Joseph.Groshong@seattle.gov


HARRIGAN LEYH FARMER & THOMSEN LLP

By: _s/ Arthur W. Harrigan, Jr._____
By: _s/ Tyler L. Farmer_____
By: _s/ Shane P. Cramer_____
By: _s/ Erica Iverson_____
    Arthur W. Harrigan, Jr., WSBA #1751
    Tyler L. Farmer, WSBA #39912
    Shane P. Cramer, WSBA #35099
    Erica Iverson, WSBA #59627
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Tel: (206) 623-1700
    arthurh@harriganleyh.com
    tylerf@harriganleyh.com
    shanec@harriganleyh.com
    ericai@harriganleyh.com

*Attorneys for City of Seattle*

CITY OF SEATTLE'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 17
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717