THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

                Plaintiffs,

vs.

CITY OF SEATTLE,

                Defendant.

No. 2:20-cv-00983-TSZ

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE**

**NOTE ON MOTION CALENDAR:**
November 15, 2022

**ORAL ARGUMENT REQUESTED**

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS
(No. 2:20-cv-00983-TSZ)

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

**TABLE OF CONTENTS**

Page

I. ARGUMENT IN REPLY ................................................................................................ 1

    A. The City Spoliated Evidence, Despite Its Deficient Reconstruction Efforts. ................................................................................................................. 1

    B. The City's Spoliation Was Intentional. ....................................................... 3

    C. Default Judgment Is the Only Way to Cure the Clear Prejudice Here. ............................................................................................................. 5

II. CONCLUSION .................................................................................................................. 6

PLAINTIFFS' REPLY FOR SANCTIONS                -i-
(No. 2:20-cv-00983-TSZ)

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

I. **ARGUMENT IN REPLY**

In its spoliation response brief, the City never denies that several key officials deleted their text messages during time periods relevant to this case, both through manual deletions and by taking intentional steps to wipe their phones. Nor does the City give *any* explanation—let alone a plausible one—for why the Mayor's and others' phones were set to automatically delete all texts during that time. Instead, the City pats itself on the back for its efforts to recover some deleted text messages. But the City's rosy descriptions of its "reconstruction" efforts—which were too little and too late—cannot hide the undisputed fact that numerous text messages most relevant to this case (like texts between Mayor Durkan and Chiefs Best and/or Scoggins sent during CHOP) *cannot* be recovered.

The City's claims that the officials did not act intentionally are belied by the myriad forms of deletions, the attempted coverups, their lack of credible explanations, and many other facts courts in this Circuit hold establish spoliation intent. Moreover, even *after* Plaintiffs filed their motion for spoliation, the City produced some, but not all, of the texts the Mayor had manually deleted from June 2020 that are indisputably about this very lawsuit—proving the Mayor's intent to delete *relevant* texts and indicating that she likely deleted other relevant texts.

Since the prejudice to Plaintiffs from these intentionally deleted and still-missing texts is clear, no sanction will suffice to remedy this harm besides default judgment.

A. **The City Spoliated Evidence, Despite Its Deficient Reconstruction Efforts.**

Puzzlingly, despite admitting that seven key officials deleted thousands of texts from time periods relevant to this case, the City begins by claiming it did not spoliate anything. Opp. 4-6. It argues that the City (i) issued "comprehensive" litigation holds (which coincidentally involved no mechanism for preserving texts, even though one was readily available);[1] (ii) turned over *other* non-spoliated ESI; and (iii) has "recovered" thousands of texts (without ever saying how many thousands more have not been and cannot be recovered). *Id.* None of these things comes close to

---

[1] *See* Opp. 12 (conceding City now uses "a City-wide text message archiving solution" which was a reasonable step that would have prevented the losses in this case if it was used when the City had a duty to preserve).

disproving spoliation. The City indisputably had a duty to preserve the relevant texts, and it did not do so. Mot. 4-7. The City's reliance on its production of texts that exist despite mass deletions is thus irrelevant, for the following reasons among others:

(i) It does not matter if the City issued litigation holds if they were brazenly violated, and they were. *See Musse v. King Cnty.*, 2021 WL 4709875, at *4 (W.D. Wash. 2021). And the City never disputes that it is liable for the spoliation of its employees (and policymakers). Mot. 6.

(ii) It does not matter if the City produced some ESI if it spoliated *other* texts, which are unrecoverable. *Youngevity Int'l v. Smith*, 2020 WL 7048687, at *4 (S.D. Cal. 2020). The City does not and cannot show the number or percentage of irretrievable deleted texts.

(iii) It does not matter if the City "recovered" some texts with other officials, given that it concedes many other texts have not been recovered. *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *12 (N.D. Cal. 2020). And it ignores that *no* texts between the mayor, fire, and police chiefs (and their spoliating subordinates) have been produced from the CHOP period—the most relevant texts to this case.[2] The City's expert, Faulkner, admitted that the City's reconstructions would not have any messages that were solely between those officials from June 1 to June 25, 2020 and messages between any combinations of the individuals would not be included in the City's reconstructions. *See* Supp. Calfo Decl., Ex. 3. Moreover, the City's recovery efforts were too little too late. The City initially covered up that texts were missing and that the Mayor and others had *manually* deleted texts, Dkt. 105, ¶¶39-43, 51-56, and *waited six months* after learning of missing texts to try to recover them or stop further deletions—allowing many more deletions in

---

[2] *See Youngevity*, 2020 WL 7048687, at *4 (where multiple officials "have spoliated text messages over the same time periods," "it is not possible to obtain text messages that may have been exchanged between them…because both the sender and receiver have lost all text messages"). Moreover, the City offers no support for its assertion that the recovered messages do not "add anything material to discovery." Opp. 6. As just one example, twelve of Durkan's 191 manually deleted texts from June 25 and 26—which the City just produced *after* Plaintiffs' motion for spoliation and *after* the close of discovery—on October, 28, 2022—are relevant to this litigation. *See* Suppl. Decl. of Angelo J. Calfo, Ex. 1. In a text dated June 25, the Mayor asked which judge was assigned to this case. *See id.*, Ex. 1, lines 2-15. Other manually deleted texts discussed substantive relevant topics such as a thwarted fire-bombing of the East Precinct, and an operation to clear Cal Anderson Park,. *Id.*, Ex. 1, lines 18-21, 24-30, 58-75. The City indisputably is still missing texts from June to November 2020, and there is every reason to think many of Durkan's *unrecovered* deleted texts with Best, Scoggins, and others also discuss CHOP and/or this lawsuit. The Mayor continued to manually delete texts after the discovery that the Mayor was missing text messages on August 21, 2020.

PLAINTIFFS' REPLY FOR SANCTIONS -2-  
(No. 20-cv-983 TSZ)

MORGAN, LEWIS & BOCKIUS LLP  
Attorneys at Law  
1301 Second Avenue, Suite 2800  
Seattle, WA 98101  
+1.206.274.6400

the meantime, Dkt. 105-1, Ex. 7, 85-86.[3] And the City is still producing new texts, after the close of discovery. In addition, the City's expert could not determine the exact number of restored text messages from any custodian due to duplicate messages. *See* Supp. Calfo Decl., Ex. 3. Finally, the City conducted a forensic analysis on only Durkan and Best's phones, Dkt. 105-1, Ex. 8, 119, and may have uncovered more ESI if it reviewed the other key custodians' phones.

The key CHOP officials took no reasonable effort to preserve texts they concededly had a duty to preserve and the City does not dispute that an untold number of the texts cannot be restored.

### B. The City's Spoliation Was Intentional.

The City's protestations that there is no intent here blinks contrary case law, applies the wrong legal standard, and ignores the smorgasbord of clear evidence of intentional spoliation.

As an initial matter, the City ignores that in this Circuit intent may be shown by a "conscious disregard" of a duty to preserve. *Musse*, 2021 WL 4709875, at *4. Intent may be based on circumstantial evidence. *Est. of Hill v. NaphCare, Inc.*, 2022 WL 1464830, at *12 (E.D. Wash. 2022). Yet the City relies on out-of-circuit cases that applied irrelevant "direct evidence" standards.[4] Under the right standard, there are many badges of intentional spoliation here:

1. The officials failed to follow the City's own document retention policy under the PRA—Durkan, Best, Beauregard and Fisher by manually deleting texts; Durkan by using 30-day delete functions; and so on. Mot. 5; *Musse*, 2021 WL 4709875, at *4 (failure to preserve despite "record-retention policy," with "no explanation for why it did not follow its own policy," shows intent).

2. The officials received letters and litigation holds in June and July 2020 and failed to preserve texts afterwards. Mot. 1-2; *see First Fin. Sec., Inc. v. Freedom Equity Grp.*, 2016 WL 5870218, at *4 (N.D. Cal. 2016) (deleting texts problematic after receiving "preservation letter").[5]

3. The City's explanations for the deletions are weak or non-existent. Mot. 7-10; *see Musse*,

---

[3] The City discovered Durkan's text messages were missing on August 21, 2020, Chief Scoggins in late Feb. 2021, and Beauregard, Best, Fisher, Greening and Neafcy in March 2021. *See id.*

[4] *See* Opp. 8 n.12 (citing, e.g., *Marksman Sec. Corp. v. P.G. Sec., Inc.*, 2021 WL 5832329, at *2 (S.D. Fl. 2021), which asked for "direct evidence of the intent to deprive"—the wrong standard here).

[5] *See also Hill*, 2022 WL 1464830, at *12 (intent if on notice and allow deletion); *Leon v. IDX Sys.*, 464 F.3d 951, 959 (9th Cir. 2006) (deletion of files despite knowledge of duty is "willful spoliation"); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 581 (S.D.N.Y. 2017) (liable for deletion after receiving demand letter).

2021 WL 4709875, at *4 (faulting county for giving "no explanation for why it did not follow" its record retention policy); *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431-32 (W.D.N.Y. 2017) (collecting cases finding intent "where spoliating party did not credibly explain failure to preserve"). The City brags that no one—not Durkan or anyone else—has admitted turning on her 30-day delete function. Opp. 7-8. But this "unexplained" deletion proves intent, not the opposite. *Hill*, 2022 WL 1464830, at *12.[6]  Nor has the City explained why multiple officials *manually* deleted their texts—an action that is *necessarily* intentional. Nor has it explained why the Mayor's IT failed to follow its normal practices with the Mayor's phone.[7] Nor has it credibly explained why *five officials* all "forgot" their passwords—and responded by wiping their phones—within just a few weeks a couple months after learning of their preservation duties. Dkt. 105, ¶¶ 67, 73, 79, 83, 89-90. Nothing more is needed for intent. *See First Fin.*, 2016 WL 5870218, at *3.

      4. But there is more. The City either failed to act when alerted to the deletions or, worse, took efforts to conceal them. Indeed, Best wiped her personal phone in May 2021 *after* the problems with her work phone and other phones were well known in March 2021; Durkan did not disclose the 30-day delete to IT; Durkan's phone was wiped on September 17, well after her other phone trouble. The City's expert knew that Mayor Durkan had *manually* deleted 191 text messages when he produced his report in February 2022, but he did not disclose the fact, and the City concealed it the Plaintiffs, despite discovery requests that sought that information. Dkt. 105, ¶¶ 40-41. These show intent to deprive. *Moody*, 271 F. Supp. 3d at 432 ("even if [the] initial error in [preserving the data] is excused, defendants' repeated failure…to confirm that the data had been properly preserved despite its ongoing [obligations]… evince[s] intentionality"). *Moody* also eviscerates the City's excuse that Best mistakenly thought her texts were preserved by the City.

---

[6] *See id.* ("Courts have found the requisite 'intent to deprive' when a litigant fails to provide a credible explanation for departing from standard operating procedure," and has not "identified the individual responsible for" the deletion.); *see also EEOC v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042, 1045-47 (W.D. Wash. 2012).

[7] IT failed to follow its normal practice of making a back-up of the Mayor's phone before switching her phone, Dkt. 105, ¶46—clear evidence of intent, *Musse*, 2021 WL 4709875, at *4. Shockingly, despite the Mayor's office allowing Durkan to keep her last iPhone 8 (Plus) (Verizon), IT instead wiped her cracked screen iPhone 8 (Plus) (First Net) before the City's own forensic examiner could inspect it. Dkt. 105, ¶¶ 44-49. The City also says *its own IT department* wiped multiple locked-out phones, Opp. 8, but IT are City employees, and none of the officials "confirm[ed] that the data had been preserved" before authorizing IT to reset the phones. *Moody*, 271 F. Supp. 3d at 431.

PLAINTIFFS' REPLY FOR SANCTIONS  
(No. 20-cv-983 TSZ)

-4-

Morgan, Lewis & Bockius LLP  
Attorneys at Law  
1301 Second Avenue, Suite 2800  
Seattle, WA  98101  
+1.206.274.6400

Opp. 8. Failure to confirm that (unreasonable) belief shows intent given the litigation holds and clear warnings otherwise, Dkt. 105-1, Ex. 7 at 97-114.[8]

Indeed, the City's cases (Opp. 6-7) also support finding intent. *Martinez v. Equinox Holdings, Inc.* notes that absence of a "credible explanation" makes it reasonable to infer intent. 2021 WL 6882152, at *3 (C.D. Cal. 2021). *Gault v. United States* confirms that circumstantial evidence suffices and intent to deprive is found where the act causing loss "cannot be credibly explained as not involving bad faith." 2022 WL 4292340, at *7 (C.D. Cal. 2022) (citing *Paisley Park Enters. v. Boxill*, 330 F.R.D. 226, 236-37 (D. Minn. 2019) (having "wiped and discarded their phones" while knowing how to backup information was enough to show intent)).

### C.  Default Judgment Is the Only Way to Cure the Clear Prejudice Here.

Plaintiffs showed why this Court should enter default judgment: no lesser sanctions can adequately ameliorate the prejudice from the City's deletions. Mot. 10-12. The City responds by claiming there is no prejudice despite an untold number of unrecoverable deleted text messages from these key officials because, according to the City, there was no non-duplicative information in the texts. Opp. 10-11. This naked assertion is both unsupported and wrong (*see supra* n. 2).

First, the City ignores that independent "[p]roof of prejudice" is not required if there is intent to deprive because intent "strongly suggests the information would have been favorable to the other party." *Gault*, 2022 WL 4292340, at *7. If the text messages are "potentially relevant," there is prejudice. *Volcan Grp. v. Omnipoint Commc'ns*, 552 F. App'x 644, 646 (9th Cir. 2014).

Moreover, the City tries to flip the presumption, claiming the thousands of deleted texts should be presumed duplicative or irrelevant unless Plaintiffs can "show what" Durkan, Best, and Scoggins "texted about in one-on-one messages regarding CHOP." Opp. 10. That is backwards: deleted texts' relevance "cannot be clearly ascertained because [they] no longer exist," so a party "can hardly assert any presumption of irrelevance." *Leon*, 464 F.3d at 959. Rather, the spoliator

---

[8] *See also Est. of Moreno v. Corr. Healthcare Cos.*, 2020 WL 5740265, at *10 (E.D. Wash. 2020) ("Defendants failed to notify Plaintiffs and the Court of the spoliation for approximately eight months while this litigation was ongoing.…[T]he Court finds that lesser sanctions are not warranted."); *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *19 (C.D. Cal. 2016) (wilfulness shown because "OS failed to undertake any actual search of its computer system for ESI for months" and told court "it had conducted a thorough search").

bears "the consequence of [the] uncertainty." *Kische USA v. Simsek*, 2018 WL 620493, at *5 (W.D. Wash. 2018); *Youngevity*, 2020 WL 7048687, at *3 ("cannot evade…relevance by simply speculating that the[] lost text messages are irrelevant"). Prejudice exists whether or not there is proof the texts "would have bolstered Plaintiffs' case." *Moreno*, 2020 WL 5740265, at *9.[9]

Rather than respond, the City deflects, claiming that because it produced emails and other officials' texts, and the officials did public "press conferences and interviews," Plaintiffs have "a comprehensive view into everything the Individuals were thinking and doing during CHOP." Opp. 10. That assertion is completely unsupported; and the idea that public press conferences reveal "everything" a politician is "thinking and doing" is laughable. The former Mayor Durkan texted former Chief Best on her personal phone, and yet the City refused to even collect Best's phone—let alone search it—before it was wiped in May 2021. Supp. Calfo Decl., ¶¶ 9-11. And the fact that other ESI has been produced does not lessen the prejudice, as it cannot "substitute for the potentially relevant information within lost text messages." *Youngevity*, 2020 WL 7048687, at *4.

Finally, the City talks out of both sides of its mouth—first claiming that City officials desperately needed to reset their phones because they were used for official business, Opp. 3; Dkt. 105, Ex. 12, 97-98, and then claiming (again, without support) those officials did not use texts "to convey substantive, important information." Opp. 11. Official CHOP policy decisions were made after "discussions and collaboration" among these officials, Mot. 11, and the City gives no reason to think this "collaboration" never happened via text.[10] *See* Supp. Calfo Decl., ¶¶ 9-11, Ex. 1 (Durkan's 2 texts to Best's personal phone asking for call, with other surrounding texts deleted).[11]

## II. CONCLUSION

Plaintiffs respectfully request that the Court impose spoliation sanctions against the City.

---

[9] The City also blames Plaintiffs for not better deposing officials, but that ignores that having the texts "would have been invaluable to Plaintiffs as they shaped their case theory and engaged in discovery" like "depositions." *Id.*

[10] That is why lesser sanctions will not suffice. Mot. 11. These communications go to the heart of Plaintiffs' case, and the City concedes it had no "text message archiving" during CHOP when all these texts are missing. Opp. 12. Moreover, the City misrepresents *Anheuser-Busch, Inc. v. Nat'l Beverage Distribs.*, 69 F.3d 337, 352 (9th Cir. 1995), which held "an explicit warning" of dismissal is unnecessary and serious misconduct like the City's justifies default.

[11] At the very least, the Court should issue adverse instructions. Mot. 12. The jury should be informed of the City's intentional spoliation. Plaintiffs also should be awarded fees. *Id.* The City's deletions are widespread, the City and its expert concealed the Mayor's manual deletion of 191 text messages, and its mitigation efforts fall far short.

DATED this 15th day of November, 2022.

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Angelo J. Calfo*
Patricia A. Eakes, WSBA #18888
Angelo J. Calfo, WSBA #27079
Tyler S. Weaver, WSBA #29413
Gabe Reilly-Bates, WSBA #52257
Andrew DeCarlow, WSBA #54471
Henry Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone:  (206) 474-6400
Fax:     (206) 474-6401
Email:  patty.eakes@morganlewis.com
           angelo.calfo@morganlewis.com
           tyler.weaver@morganlewis.com
           gabriel.reillybates@morganlewis.com
           andrew.decarlow@morganlewis.com
           henry.phillips@morganlewis.com

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY FOR SANCTIONS    -7-
(No. 20-cv-983 TSZ)

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400