HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUNTERS CAPITAL, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SEATTLE, <br><br> Defendant. | Case No. 20-cv-00983 <br><br> CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL FOUNDATION'S AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

I.     INTRODUCTION

Amicus curiae Pacific Legal Foundation ("PLF") has missed the mark on Plaintiffs' takings claims.  First, Plaintiffs' *per se* takings claim fails because the "acts complained of are those of private parties, not the government."  *Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998).  Unless the City directly and expressly authorized the action, the City is not liable for third-party trespasses.  *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2080 (2021) (statutory requirement that private parties permit third-party entry onto their lands constituted a government taking).  Second, Plaintiffs' access claim fails because they suffered no "actual interfere[nce] with the right of access as that property interest has been defined" in Washington law.  *Keiffer v. King Cty.*, 89 Wn.2d 369, 372 (1977).  *Cedar Point* does not alter the analysis because the City did not directly authorize any physical invasion of Plaintiffs' property.  PLF's other arguments are simply mischaracterizations of the City's actions in addressing CHOP.  The Court should grant the City's motion for summary judgment.

II.     ARGUMENT

A.     **The City Did Not Authorize a Physical Invasion of Plaintiffs' Properties.**

Even if certain of Plaintiffs' properties experienced physical damage as a direct result of protest activity during CHOP, the City authorized no such "physical invasion" by third parties.  To salvage Plaintiffs' *per se* takings claim, PLF relies on cases involving either: (1) direct and express government authorization of third-party invasions of physical property; or (2) government action that resulted in a temporary physical possession of private property by the government itself.  *See generally* PLF Br. at 6-8.  PLF unsuccessfully seeks to extend these distinct lines of cases to argue that any government action that "result[s] in" a third-party trespass is an unconstitutional taking.  *Id.* at 6.  That is not the law.

The first line of cases PLF cites requires an express government "grant[] [of] a *formal entitlement* to physically invade the [plaintiffs'] land."  *Cedar Point*, 141 S. Ct. at 2080 (emphasis

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 1
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

added). In *Cedar Point*, the California regulation at issue required property owners to permit third-party entry onto their lands. *Id.* at 2069. The statute even threatened non-complying property owners with sanctions for refusing to accommodate a permitted third-party request for entry. *Id.* The Supreme Court made clear that the government cannot legislatively "appropriate" a property owner's right to exclude third parties from her property. *Id.* at 2072. Thus, a statute vesting the government with a private party's right to exclude was a compensable taking. *Id. Loretto v. Teleprompter Manhattan CATV Corp.*, is parallel: a New York statute authorized cable companies to install wiring on apartment buildings without the consent of the building's owner. 458 U.S. 419, 438, 440 (1982). The Court held that any such installation was "a permanent physical occupation of property" authorized by government regulation. *Id.* at 441. In *Arkansas Game & Fish Commission v. United States*, the invasive entity was floodwater, but the government had directly authorized the damage-causing floods over a period of years by deliberately deviating from an existing water control plan. 736 F.3d 1364, 1367-68 (9th Cir. 2013); *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 28 (2012). There was no question that the deviations would cause additional flooding, which subsequently damaged other property.[1]

In both *Cedar Point* and *Loretto*, the government expressly authorized a third party to take private property. In *Arkansas Game & Fish Commission*, the government directly authorized the release of the physically invasive floodwater. Plaintiffs in this case have not alleged that the City expressly authorized or instructed protesters to occupy, invade, or enter Plaintiffs' properties or that the City required local businesses and residences to permit CHOP protesters to use their properties. Instead, Plaintiffs argue that the City "encouraged" CHOP, that some Plaintiffs suffered third-party trespasses during CHOP, and therefore that the City effectuated a physical taking. *See* Dkt. 124 at 27. Even if Plaintiffs' characterization of the facts were accurate, the

---

[1] PLF relies heavily on several cases involving government-induced flooding. The Supreme Court has remained clear, as recently as its decision in *Cedar Point*, that such cases involve "unique considerations," particularly in the arena of temporary takings. *Cedar Point*, 141 S. Ct. at 2079. Although such cases may be instructive, any reliance on them outside the flood context should remain appropriately limited in scope.

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 2
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1. City's actions do not come close to being an express authorization of a third-party invasion of
2. Plaintiffs' property.  In fact, once CHOP formed, the City actively sought to de-escalate tensions
3. while maintaining public health and safety in the neighborhood, with the goal of ending CHOP.
4. *See* Dkt. 111 at 2-5; *Alves*, 133 F.3d at 1458 ("It is also worth noting that the government has not
5. merely turned a blind eye to the [third-party] trespass . . . but instead has fought against the
6. trespass.").
7.     PLF's amicus brief does not cite a City regulation, proclamation, ordinance, or any other
8. document containing a formal grant of access to Plaintiffs' properties to CHOP participants.
9. Absent such formal authorization, the three cases PLF cites confirm that the City is not responsible
10. for any physical invasion committed by CHOP protesters—no such trespass was "undertaken
11. pursuant to a granted right of access."  *Cedar Point*, 141 S. Ct. at 2078.
12.     The second category of cases PLF cites merely reaffirms that certain government actions
13. that amount to physical occupations of private property *by the government* constitute takings—
14. even when the occupation does not involve a traditional condemnation of the land itself.  In *United
15. States v. General Motors Corp.*, the government coopted a company's leasehold for military use
16. during wartime—a textbook example of the federal sovereign's exercise of eminent domain, which
17. no party disputed.  323 U.S. 373, 375 (1945).  The issue before the courts was the amount of
18. compensation owed to a tenant for the temporary taking.  *Id.*  *United States v. Causby* involved a
19. different wartime government use: this time, use of a local airport that rendered a nearby business
20. virtually inoperable.  328 U.S. 256, 258-59 (1946).  The Court held that the government had
21. secured the equivalent of a temporary easement in the airspace above the plaintiff's property,
22. triggering the right to just compensation.  Finally, in *Portsmouth Harbor Land & Hotel Co. v.
23. United States*, the government erected a fort and guns on land adjacent to a sea resort and
24. continually fired the guns across the resort's airspace.  260 U.S. 327, 328 (1922).  Even in that
25. case, the Court did not find a taking until the government had fired guns over the resort multiple

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 3
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  times and, finally, established a fire control station on plaintiffs' land.  *Id.* at 329.

2  None of these cases stands for the proposition that merely "producing a third-party invasion
3  of property" subjects the government to takings liability.  PLF Br. at 6.  Indeed, "[t]he government
4  is not an insurer that private citizens will act lawfully with respect to property subject to
5  governmental regulation."  *Alves*, 133 F.3d at 1458.  Accepting PLF's extension of *Cedar Point* to
6  CHOP would have far-reaching consequences, supplanting tort claims with takings claims in any
7  situation where the government regulates or controls public property adjacent to the site of the
8  alleged trespass.  PLF's position should be rejected.

**B.   The City did not Unconstitutionally Restrict Plaintiffs' Access to Their Properties.**

Plaintiffs' access complaints are also based on actions of third parties in public rights of way—not on any act of the City directly blocking access to any Plaintiff's property.  *E.g.*, Dkt. 124 at 23-24 (Richmark "had to negotiate with protesters" to move barriers in public streets in front of loading dock; residents "had safe access . . . denied by crowds in the street").  Under the test articulated in *Keiffer v. King County*, Plaintiffs must demonstrate that "the government action in question has actually interfered with the right of access as that property interest has been defined by our law."  89 Wn.2d 369, 372, 572 P.2d 408 (1977).  PLF has characterized this step as requiring a determination of "whether the government action is legitimate."  PLF Br. at 10.  But focusing on the legitimacy of the government action misses the true issue: whether Plaintiffs have in fact suffered a compensable loss of the right of access.  *Keiffer* is clear that Plaintiffs have no compensable injury where the City engages in "an exercise of the police power" that "does not *directly* affect [Plaintiffs'] access."  89 Wn.2d at 372 (emphasis added).

PLF's argument fails to address how *Keiffer* applies to CHOP.  In *Keiffer*, the City installed a permanent curb abutting Plaintiffs' property, directly blocking plaintiffs' access to their property, and reducing the number of parking spaces previously available to them.  89 Wn.2d at 370-71.  The City's response to CHOP's formation involved, by contrast, a temporary adjustment of traffic

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 4
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

flow in public streets that never directly blocked any Plaintiffs from accessing their property and was in fact arranged to ensure access to Plaintiffs' properties. *See* Dkt. 111 at 3-4 (SDOT revised traffic design "to provide regular vehicular access to every business and resident in the area"); 25-26. To sidestep this fatal flaw in Plaintiffs' claims, PLF attempts to change the subject—to import into its analysis a test that applies only where the government directly takes property from one party (or takes public property) and gives it to another private party. PLF Br. at 10-11. Plaintiffs allege no such facts—i.e., that the City granted "the exclusive use of its streets" to CHOP protesters. *Id.* (quoting *Donovan v. Penn. Co.*, 199 U.S. 279, 302 (1905)); Dkt. 124 at 23 (complaining that City "modif[ied] streets and pedestrian access routes" not that City granted "exclusive use" of ingress and egress points to protesters). PLF's uncited assertion that the City "transferred the right to physically occupy roads to private persons for the benefit of the CHOP" is not supported by any fact in the record. PLF Br. at 11. In short, the cases involving government transfer of property from one private party to another are irrelevant to Plaintiffs' access claim.

Even less relevant to this Court's analysis is the line of Texas cases PLF cites, which apply Texas law. PLF Br. at 11. The Texas test is not the law of this State. Here, any "intermittent inconveniences and annoyances" that Plaintiffs may have suffered with respect to their right of access "were incidental to" the CHOP and related to the City's attempt to "regulat[e] the flow of traffic on the public way" during a period of unprecedented unrest and police-targeted-protest tensions. *Pande Cameron and Company of Seattle, Inc. v. Central Puget Sound Regional Transit Authority*, 610 F. Supp. 2d 1288, 1304 (W.D. Wash. 2009). And Plaintiffs' right of access is not absolute—it is subject to "reasonable" limitations. *Kelly v. City of Port Townsend*, No. 10-cv-5508, 2011 WL 1868182 (W.D. Wash. May 16, 2011). The type of access impairment about which Plaintiffs complain—for example, that some residents felt their "safe access" was impaired despite being able to safely enter their residences, *see* Dkt. 124 at 24-25—does "not rise to the level of a constitutional taking" under Washington law. *Pande Cameron*, 610 F. Supp. 2d at 1304.

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 5
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**C.     PLF's Government Legitimacy Argument is a Red Herring.**

The City's argument is not that it can avoid liability for taking Plaintiffs' property because its CHOP-related decisions were legitimate. As described in detail in this response brief as well as in the City's moving papers, the City seeks the entry of summary judgment based on the fundamental legal flaws in Plaintiffs' takings claims. PLF's effort to question the legitimacy of the City's decisions is therefore misplaced.

In any event, this position taken by PLF is internally inconsistent. PLF itself characterizes (wrongly) the *Keiffer* test as requiring an analysis of the legitimacy of the government action in question, while simultaneously claiming that "the legitimacy of government action is irrelevant." *Compare* PLF Br. at 3-5 *to id.* at 10-11. The *per se* takings cases that PLF cites also focus on the purpose of the government action to the extent necessary to determine whether a taking was valid. *E.g.*, *Kelo v. City of New London*, 545 U.S. 469, 480 (2005) ("The disposition of this case therefore turns on the question whether the City's development plan serves a 'public purpose.'"). Only if a taking undeniably has occurred may the court look beyond the legitimacy of the government's purpose in taking the property. *E.g.*, *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 177-78 (1877) (government-controlled dam caused flooding on plaintiff's property that would not be excused merely because the dam project was for a legitimate government purpose). Here, and as discussed in Section II.A. *supra*, the City's argument that no *per se* taking occurred is based on the fact that the City did not directly "take" any private property of Plaintiffs, nor did the City directly and expressly authorize any third party to physically invade Plaintiffs' property. PLF's discussion of government legitimacy is irrelevant to the City's summary judgment motion.

## III.     CONCLUSION

For the reasons stated in this response, nothing in PLF's amicus brief alters the analysis of Plaintiffs' takings claims. The Court should accordingly grant the City's motion for summary judgment.

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 6
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  DATED this 2nd day of December, 2022.

2                                                     ANN DAVISON
                                                      Seattle City Attorney
3
4                                                     By: *s/ Joseph Groshong*
                                                          Joseph Groshong, WSBA# 41593
5                                                         Assistant City Attorney
                                                          Seattle City Attorney's Office
6                                                         701 Fifth Avenue, Suite 2050
                                                          Seattle, WA 98104
7                                                         Tel: (206) 684-8200
                                                          Fax: (206) 684-8284
8                                                         Joseph.Groshong@seattle.gov

9
10                                                    HARRIGAN LEYH FARMER & THOMSEN LLP

11                                                    By: *s/ Arthur W. Harrigan, Jr.*
                                                      By: *s/ Tyler L. Farmer*
12                                                    By: *s/ Shane P. Cramer*
                                                      By: *s/ Erica Iverson*
13                                                        Arthur W. Harrigan, Jr., WSBA #1751
                                                          Tyler L. Farmer, WSBA #39912
14                                                        Shane P. Cramer, WSBA #35099
                                                          Erica Iverson, WSBA #59627
15                                                        999 Third Avenue, Suite 4400
                                                          Seattle, WA 98104
16                                                        Tel: (206) 623-1700
17                                                        arthurh@harriganleyh.com
                                                          tylerf@harriganleyh.com
18                                                        shanec@harriganleyh.com
                                                          ericai@harriganleyh.com
19
                                                      *Attorneys for City of Seattle*
20

21

22

23

24

25

---

CITY OF SEATTLE'S RESPONSE TO PACIFIC LEGAL
FOUNDATION'S AMICUS CURIAE BRIEF - 7
(Case No. )

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717