HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

Plaintiffs,

v.

CITY OF SEATTLE,

Defendant.

Case No. 20-cv-00983-TSZ

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT [DKT. 165]

**NOTED ON MOTION CALENDAR: JANUARY 27, 2023**

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

**TABLE OF CONTENTS**

I. INTRODUCTION AND RELIEF REQUESTED ........ 1

II. ARGUMENT ........ 1

A. Legal Standard. ........ 1

B. The Court Erred in Not Dismissing Plaintiffs' Temporary Lack of Access Claim Because Such a Claim is not Recognized under Washington Law. ........ 1

C. The Court Erred By Disregarding the City's Valid Exercise of Police Power to Manage Traffic and Temporary Street Closures for Public Safety........ 2

D. The Court Erred By Attributing the Unauthorized Acts of Third Parties to the City. 3

E. The Court Erred by Not Granting the City's Motion as to Those Plaintiffs' Properties as to Which There is No Evidence that the City Interfered with Access. 4

III. CONCLUSION ........ 6

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - i
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

## TABLE OF AUTHORITIES

### Cases

Page

*Case v. Miller-Stout*, 2015 WL 1538087 (W.D. Wash. Apr. 3, 2015) .......... 1

*Clear Channel Outdoor v. Seattle Popular Monorail Auth.*, 150 P.3d 649 (Wash. Ct. App. 2007) .......... 6

*Covell v. City of Seattle*, 905 P.2d 324 (Wash. 1995) .......... 3

*Keiffer v. King Cnty*, 572 P.2d 369 (Wash. 1977) .......... 1. 2, 3

*Lund v. Idaho & W.N.R.R.*, 97 P. 655 (Wash. 1908) .......... 2

*Mackie v. City of Seattle*, 576 P.2d 414 (Wash. Ct. App. 1978) .......... 4

*McMoran v. State*, 345 P.2d 598 (Wash. 1959) .......... 2

*Moline v. Driscoll*, 53 P.2d 622 (Wash. 1936) .......... 2

*Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Regl. Transit Auth.*, 610 F. Supp. 2d 1288 (W.D. Wash. 2009) .......... 1, 2

*Quicksilver Audio, Ltd. v. City of Kennewick*, 2008 WL 5170446 (E.D. Wash. Dec. 9, 2008) .......... 2

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) .......... 6

*Stern v. City of Spokane*, 131 P. 476 (Wash. 1913) .......... 1. 2

*Taylor v. Kahne Corp.*, 2006 WL 1587442 (W.D. Wash. June 5, 2006) .......... 2

*Walker v. State*, 295 P.2d 328 (Wash. 1956) .......... 4

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - ii
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

**Rules**

LCR 7(h)(1) ............ 1

**Statutes**

RCW 2.60.020 ............ 2

RCW 35.22.280(7) ............ 3

**Other Authorities**

SMC 11.10.040 ............ 3

SMC 11.16.125(1) ............ 3

SMC 15.04 ............ 3

SMC 15.52.005 ............ 3

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - iii
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

## I. INTRODUCTION AND RELIEF REQUESTED

The City of Seattle requests that the Court reconsider its denial of summary judgment on Plaintiffs' lack of access takings claim. The Court erred because Washington does not recognize takings claims based on *temporary* interference with access. The Court also erred because the City's modification of traffic flow to provide property access while protecting pedestrians from vehicular traffic is a valid exercise of the City's police powers. The Court further erred by citing unauthorized third-party actions to deny the City's motion. Finally, the Court erred by not dismissing Plaintiffs' claims regarding specific properties as to which access was never impaired.[1]

## II. ARGUMENT

### A. Legal Standard.

Motions for reconsideration may be granted upon a "showing of manifest error in the prior ruling." LCR 7(h)(1). "Manifest error is, effectively, clear error." *Case v. Miller-Stout*, 2015 WL 1538087 (W.D. Wash. Apr. 3, 2015).

### B. The Court Erred in Not Dismissing Plaintiffs' Temporary Lack of Access Claim Because Such a Claim is not Recognized under Washington Law.

The Court erred by not dismissing Plaintiffs' temporary lack of access takings claim under the first *Keiffer* step, which requires the Court to "determine if the government action in question has actually interfered with the right of access as that property interest has been defined by [Washington] law." *Keiffer v. King Cnty*, 572 P.2d 369, 372 (Wash. 1977). Whether such a property interest exists is a "question of law that may be resolved at summary judgment." *Pande Cameron*, 610 F. Supp. 2d at 1304 n.2. Proper application of the first *Keiffer* step requires dismissal of Plaintiffs' lack of access takings claim because Washington does not recognize a "property interest" when only a temporary deprivation of access occurred.

In *Stern v. City of Spokane*, the Washington Supreme Court held that only actions that

[1] The City does not seek reconsideration of the nuisance ruling. As the Court noted, Plaintiffs can argue the use of barriers created a nuisance. Dkt. No. 165 at 33. But temporary interference with access is not a taking. *Pande Cameron & Co. of Seattle, Inc. v. Cent. Puget Sound Reg'l Transit Auth.*, 610 F. Supp. 2d 1288, 1300-01 (W.D. Wash. 2009), *aff'd*, 376 Fed. Appx. 672 (9th Cir. 2010) (taking claim requires greater showing of interference than nuisance).

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - 1
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

"permanently changed a physical condition, either destroyed the use of the street or added an additional servitude," could support a takings claim based on interference with access. 131 P. 476, 477 (Wash. 1913). In contrast, if there were only "a temporary obstruction … no recovery would have been allowed." *Id.* Courts after *Stern* recognize this limitation, dismissing temporary lack of access takings claims without reaching *Keiffer*'s "degree of impairment" step. *Pande Cameron*, 610 F. Supp. 2d at 1304 ("there is no authority under Washington law for a temporary 'right of access' takings claim"); *Quicksilver Audio, Ltd. v. City of Kennewick*, 2008 WL 5170446, *2 (E.D. Wash. Dec. 9, 2008) ("Under Washington law, a claim for 'interference with access' … is limited to damages arising from a complete, permanent loss of access.").

The second *Keiffer* step is irrelevant where the interference is not permanent because no cognizable "property right" has been impaired. *Pande Cameron*, 610 F. Supp. 2d at 1304 n.2 (refusing to reach second *Keiffer* step because "in this case the inquiry does not extend beyond the first step which is to be determined by the Court.").[2] Here, any impairments to access lasted no more than three weeks. Far longer impairments were considered temporary in *Pande Cameron*, 610 F. Supp. 2d at 1303 (nine months); *Quicksilver Audio*, 2008 WL 5170446, at *2 (18 months); and *Stern*, 131 P. at 476 (time necessary to build concrete bridge spanning river). Because any interference with Plaintiffs' access was temporary rather than permanent, Plaintiffs have not asserted a cognizable lack of access claim under Washington law. The Court clearly erred in denying the City's summary judgment motion on this claim.[3]

**C. The Court Erred By Disregarding the City's Valid Exercise of Police Power to Manage Traffic and Temporary Street Closures for Public Safety.**

The Court's order was based on its conclusion that "[t]his action does not involve the typical exercise of police power to regulate the flow of traffic in the Capitol Hill neighborhood,

---

[2] Cases where lack of access claims have succeeded involve permanent access impairments. *E.g.*, *Keiffer*, 572 P.2d at 409 (concrete curb); *McMoran v. State*, 345 P.2d 598 (Wash. 1959) (same); *State ex rel. Moline v. Driscoll*, 53 P.2d 622 (Wash. 1936) (lowered street grade); *Lund v. Idaho & W.N.R.R.*, 97 P. 665 (Wash. 1908) (railroad line).

[3] If the Court denies the City's motion, the City requests that the Court certify this question to the Washington Supreme Court under RCW 2.60.020, as it presents an important issue of state law. *See Taylor v. Kahne Corp.*, 2006 WL 1587442 (W.D. Wash. June 5, 2006) (certification ordered after the Court ruled on summary judgment).



LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

such as for routine road maintenance or construction." Dkt. 165 at 27. But cities have police power to modify traffic flow for reasons other than "routine road maintenance or construction." *Covell v. City of Seattle*, 905 P.2d 324 (Wash. 1995) (cities have broad police power).

The City has specifically been empowered "to regulate and control the use [of streets, alleys, avenues, and sidewalks], and to vacate the same…, and to prescribe the terms and conditions upon which the same may be so used, and to regulate the use thereof." RCW 35.22.280(7). SDOT is authorized "[t]o close, or authorize closure, of any street or alley or portion thereof to any or all traffic pursuant to the provisions of [the Seattle Traffic Code]," including where doing so would "protect and preserve the public peace, health, safety and welfare." SMC 11.16.125(1); 11.10.040. The City can also temporarily close streets and sidewalks to traffic for public and private events, including farmers markets, block parties, Lake Washington Boulevard bicycle weekends, and to create "play streets," under the Seattle Street Use ordinance (Ch. 15.04 SMC). As Plaintiffs recognized, the City can also authorize "special events," which necessarily "require the temporary closure of exclusive use of a public place." SMC 15.52.005.

Further, the Washington Supreme Court has recognized that "actions taken pursuant to the police power for the purpose of regulating the flow of traffic on the public way itself are generally not compensable." *Keiffer*, 572 P.2d at 410. There is no reason why the City's exercise of its police powers to regulate traffic in order to keep pedestrians safe and separate from vehicle traffic, while providing access to businesses and residents around CHOP (*see* Dkt. 165 at 5-6) would be an exception to this general rule. The Court clearly erred in ruling that the City's exercise of police powers could constitute a taking while other exercises of police power would not under *Keiffer.*[4]

**D. The Court Erred By Attributing the Unauthorized Acts of Third Parties to the City.**

"Government action" must impair access to the plaintiff's property for a cognizable taking to occur. *Keiffer*, 572 P.2d at 409-10. The Court's order misapprehends this requirement, allowing certain Plaintiffs to defeat summary judgment because third parties—rather than the

[4] The City also asks that the Court certify this issue if it denies the City's motion, as the Court's ruling could have wide ranging policy implications on how cities permit or implement temporary street closures for all manner of activities.

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - 3
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

City—impaired their access. *See,* Dkt. 165 at 26 (regarding Cure Cocktail and Richmark Label).

As with the dismissed *per se* takings claim, there is no evidence that the City authorized or granted a "formal entitlement" to protesters to use debris or City equipment to interfere with access to Plaintiffs' properties. On the contrary, the City worked to clear unauthorized blockages in order to ensure regularized access. *E.g.*, Dkt. 112-3 at 3; Dkt. 112-10 at 3, 125-5 at 68-72. The Court erred by denying the City's motion based on third-party actions.

**E. The Court Erred by Not Granting the City's Motion as to Those Plaintiffs' Properties as to Which There is No Evidence that the City Interfered with Access.**

The Court noted that "some property owners, businesses, and residents also experienced difficulty accessing their respective properties, businesses, and homes." Dkt. 165 at 9. Yet the Court denied the City's motion as to all Plaintiffs bringing takings claims. *Id.* at 27. The City requests that the Court reconsider, or clarify, whether access to each property was impeded.

***Bergman's, Car Tender, Onyx, and Olive ST:*** Bergman's, Car Tender, Onyx, and Olive ST's properties all were located around the intersection at 12th Avenue and East Olive Street.[5] The only City-installed barrier there was on 12th, south of Olive. Dkt. 125-26 at 8-13; Appendix A. Access was always available from the north, and Car Tender and Bergman's continued to service customers at their locations. *Id.*; Dkt. 112-28 at 5; 135 at ¶ 11. The City also never placed traffic barriers on Olive between 11th and 12th, but protesters periodically left debris and "CHOP barricades" in the road. Dkt. 112-17 at 3; 112-32 at 3; 130 at ¶ 2. Ultimately, Onyx and Olive ST residents were always able to access their homes via Olive. *Id*. The City's placement of traffic barricades on 12th Avenue, south of Olive, cannot support a taking claim where access was available to these properties from other routes. *Walker*, 295 P.2d 328 (Wash. 1956); *Mackie v. City of Seattle*, 576 P.2d 414 (Wash. Ct. App. 1978).

***Richmark Label:*** Richmark is located on East Pine Street, between 11th and 12th. Bill Donner, Richmark's owner, acknowledged that Richmark was accessible throughout June, with

[5] Attached hereto as Appendix A is a copy of the map that is included at page 3 of the Court's order, for reference.

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - 4
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

only large trucks occasionally having issues. Dkt. 125-36 at 6-11. He also attributed any access issues to debris and barriers placed by protesters, not the City. *See id.*, at 5-6, 11; Dkt. 137. The Court erred in not dismissing Richmark's claim because the City did not impair Richmark's access.

***Hunters Capital and Cure Cocktail:*** Hunters' Broadway Building is located at 1641 Nagle Place, and fronts Broadway to the west and Nagle Place to the east. Cure Cocktail was a tenant on the Nagle Place side. It is undisputed that access to the Broadway Building from Broadway was never impeded; the City made no traffic revisions there. Both Cure and Hunters do claim, however, that access to Nagle Place from the south (East Pine) was periodically blocked by protesters' misuse of barricades. Dkt. 134 at ¶17; 133 at ¶ 5. The north end of Nagle Place was never blocked. Access was always available from at least that direction. Dkt. 112-29 at 4. While Sheffer mischaracterizes Nagle as an "alley," it is a city street. And he concedes that any danger he perceived was due to the protesters, not any barriers installed by the City. Dkt. 133 at ¶¶ 5-6.[6]

Hunters' Pine Building is located next door to the Broadway Building, fronting Broadway (to the west), Nagle (to the east), and East Pine (to the south). The barriers set by the City were located east of the Pine Building, past Tenth Avenue. Hunters presented no evidence, via declaration or otherwise, that the City ever interfered with access to the Pine Building.

Hunters' Pike Building is at the corner of 10th Ave. and East Pike. East Pike was always open to traffic during June 2020. *See* Dkt. 112-41 at 13; 125-25 at 7-8. Hunters presented no evidence that access to the Pike Building was ever impaired by the City.

The Colman, Dunn Motors, and Greenus Buildings are all located several blocks from the City's traffic control barriers during June 2020. Plaintiffs presented no evidence of lack of access to these buildings, instead claiming that these buildings were damaged because they are "in the Pike/Pine corridor, and large groups of protesters frequently passed up and down those streets,

[6] That Sheffer watched over Cure nightly from his car also indicates that access existed. *Id.* at ¶¶ 3, 11.

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - 5
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

smashing windows and tagging the buildings with graffiti." Dkt. 134 at ¶18.

The Ballou Wright Building is located on 12th Avenue, between Pike and Pine. The City always permitted vehicular access in front of this building. Appendix A; Dkt. 112-13. Hunters does not claim otherwise, arguing that "CHOP protesters," not the City, "blocked access to the …Ballou Wright Building." Dkt. 134 at ¶ 15. This cannot support a claim against the City.

***Madrona and Sway & Cake:*** Sway & Cake is located in Madrona's 12th and Pike building. Both the building and Sway & Cake front East Pike which was open to vehicular and pedestrian traffic as usual. Dkt. 112-31 at 3; 112-41 at 4-5, 7. While Madrona's owner submitted a declaration stating that access to Madrona's properties was "diminished," "conclusory, speculative testimony … in affidavits is insufficient to raise genuine issues of fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The only specific evidence about "diminished" access regarded the barriers on 12th (north of East Pike), and the presence of people "in the streets and sidewalks and guarding the barriers." Dkt No. 132 at ¶6. But the barrier on 12th did not impede access from Pike, and the presence of people nearby is not a taking by the City.

Madrona's two other buildings were on Pike, between 13th and 14th avenues, outside any traffic control barriers installed by the City. Appendix A. They were also always accessible as normal. Dkt. 112-41 at 4, 8-10. The Court erred in denying summary judgment to the City.

***Ploszaj:*** Ploszaj resided on East Pine, between 12th and 13th avenues. Dkt. 136 at ¶1. He was largely able to access his property as he normally did, by foot, since his parking spot was several blocks from his house. Dkt. 112-7 at 4, 7. Any impairment of access also was minor, and caused by CHOP protesters, not the City. Dkt. 112-7 at 7. This claim should be dismissed.[7]

## III. CONCLUSION

For all of the reasons set forth herein, the Court should grant the City's motion.

[7] While the City did not raise the argument in its motion, Ploszaj's takings claim also fails as a matter of law because he was a month-to-month tenant (Dkt. 157-12), and thus has no compensable property interest under Washington law. *Clear Channel Outdoor v. Seattle Popular Monorail Auth.*, 150 P.3d 649, 651 (Wash. Ct. App. 2007) ("A month-to-month tenancy creates no property interest that entitles the tenant to compensation.").

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - 6
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717

DATED this 27th day of January, 2023.

ANN DAVISON
Seattle City Attorney

By: *s/ Joseph Groshong*
Joseph Groshong, WSBA# 41593
Assistant City Attorney
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Tel: (206) 684-8200
Fax: (206) 684-8284
Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP

By: *s/ Arthur W. Harrigan, Jr.*
By: *s/ Tyler L. Farmer*
By: *s/ Shane P. Cramer*
By: *s/ Erica Iverson*
Arthur W. Harrigan, Jr., WSBA #1751
Tyler L. Farmer, WSBA #39912
Shane P. Cramer, WSBA #35099
Erica Iverson, WSBA #59627
999 Third Avenue, Suite 4400
Seattle, WA 98104
Tel: (206) 623-1700
arthurh@harriganleyh.com
tylerf@harriganleyh.com
shanec@harriganleyh.com
ericai@harriganleyh.com

*Attorneys for City of Seattle*

CITY OF SEATTLE'S MOTION FOR RECONSIDERATION OF ORDER [DOCKET 165] ON CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT - 7
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700 FAX (206) 623-8717