1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

HUNTERS CAPITAL, LLC, et al.

                                    Plaintiffs,

        v.

CITY OF SEATTLE,

                                    Defendant.

No. 2:20-cv-00983-TSZ

**PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT
BATES MCKEE, III**

**NOTED ON MOTION
CALENDAR:**
February 17, 2022

**ORAL ARGUMENT
REQUESTED**

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD........................................................................................................ 3

ARGUMENT .................................................................................................................... 4

      A.     The Court Should Bar McKee from Testifying Because His
Opinions Are Unreliable and Not Helpful to the Trier of Fact ................. 4

      B.     If Not Excluded Entirely, McKee's Testimony Should be Strictly
Limited ...................................................................................................... 8

            1.     The Court Should Bar McKee from Offering Evidence
from His Survey Because it is Inadmissible Hearsay and
Expert Testimony ........................................................................ 8

            2.     The Court Should Bar McKee from Offering Legal
Opinions About Final Issues in This Case ................................. 10

            3.     The Court Should Bar McKee from Offering Unsupported
Speculation about Various Other Topics ..................................... 12

CONCLUSION.................................................................................................................. 12

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-i-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,

5
    984 F.Supp.2d 1021 (C.D. Cal. 2013) ...................................................................4

6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................................. *passim*

7

*Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*,

8
    2012 WL 761950 (D. Mont. Mar. 8, 2012) ..........................................................6

9

*Fontana v. City of Fed. Way*,

10
    2013 WL 12066144 (W.D. Wash. Sept. 25, 2013)..........................................11, 12

11

*Henricksen v. ConocoPhillips Co.*,
    605 F. Supp. 2d 1142 (E.D. Wash. 2009) ............................................................3

12

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*,

13
    387 F. Supp. 2d 794 (N.D. Ill. 2005), *amended*, 2005 WL 8178971 (N.D. Ill.

14
    Sept. 8, 2005) ........................................................................................6

15

*Pelster v. Ray*,
    987 F.2d 514 (8th Cir. 1993) ............................................................................9

16

*Rotman v. Progressive Ins. Co.*,

17
    955 F. Supp. 2d 272 (D. Vt. 2013).....................................................................4

18

*Shatkin v. McDonnel Douglas Corp.*,

19
    727 F.2d 202 (2d Cir. 1984)..............................................................................6

20

*Taber v. Allied Waste Sys., Inc.*,
    2015 WL 1119750 (W.D. Okla. Mar. 11, 2015)..................................................4

21

*Tubar v. Clift*,

22
    2009 WL 1325952 (W.D. Wash. May 12, 2009).............................................1, 11

23

*Union Pac. R. Co. v. McMican*,
    194 F. 393 (8th Cir. 1912) .............................................................................7, 9

24

*United States v. Gwaltney*,

25
    790 F.2d 1378 (9th Cir. 1986) ...........................................................................4

26

27

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-ii-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

1

*United States v. Rahm,*
   993 F.2d 1405 (9th Cir. 1993) ..................................................................................4

2

*United States v. Williams,*
   431 F.2d 1168 (5th Cir. 1970) ..................................................................................9

3

4

*Wendell v. GlaxoSmithKline LLC,*
   858 F.3d 1227 (9th Cir. 2017) ..................................................................................3

5

6

**Statutes**

7

Uniform Commercial Code..............................................................................................11

8

**Other Authorities**

9

Fed. R. Evid. 702 ...................................................................................................1, 3, 4

10

Pattern Jury Instructions 151.01 and 150.06.02...........................................................11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-iii-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

## INTRODUCTION

This is a motion to exclude the testimony of the City's expert witness, Bates McKee, III ("McKee").  His testimony should be barred for three reasons.

*First*, McKee constructs a damages analysis that is fundamentally unreliable and does not relate to the facts of this case.  McKee's analysis does not consider any rent related data from the Plaintiffs' properties at all, and in fact, he has no understanding of the specific locations of the properties he gathered data from, or their proximity to CHOP.  Rather, he relied on anonymized aggregated data sources for general areas.  Moreover, McKee used three different data sources that all used different geographic boundaries for the CHOP area that he compared to other Seattle neighborhoods, comparing apples to oranges.

*Second*, McKee relies upon a flawed "survey" of other real estate "experts" to support his opinions.  Only 4 of 13 of the participants opined at all about the effects of CHOP.  McKee admits that none of the survey respondents owned or managed any properties in the "subject area" near CHOP.[1]  Moreover, the "survey" contains hearsay "expert" testimony from other "experts" that does not satisfy Fed. R. Evid. 702 or the exceptions of Fed. R. Evid. 803.

*Third*, McKee's damages model rests on a series of predicate legal opinions about whether Plaintiffs have any legally compensable claims.  Courts regularly exclude expert testimony that purports to offer a legal conclusion or opine on the parties' state of mind.  *See, e.g.*, *Tubar v. Clift*, 2009 WL 1325952, at *3 (W.D. Wash. May 12, 2009).

## BACKGROUND

As this Court is aware, this case arises from the City's support and encouragement of the Capitol Hill Occupied Protest ("CHOP") from June 8 to July 1, 2020 ("CHOP period").  The Plaintiffs are local property owners, businesses and residents who allege that the City's response to CHOP violated their constitutional and other legal rights.  *See* Dkt. 47.  Plaintiffs seek

---

[1] Surprisingly, the majority of those who said anything about CHOP described facts that demonstrate that Capitol Hill was more adversely affected by CHOP than other areas dealing with Covid, including one person who noted that "Capitol Hill was hit hard."

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-1-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

1   damages for property damages, losses of revenue, rent abatements, and unpaid rent, among other

2   things.

3          The City has retained two expert witnesses to challenge Plaintiffs' claims for damages:

4   William Partin and Bates McKee, III.  The City produced McKee's expert report on April 28,

5   2022 ("McKee Report").  *See* Declaration of Gabriel Reilly-Bates ("Reilly-Bates Decl."), Ex. 1.[2]

6   McKee noted in his report that he sought to study whether Plaintiffs "experienced legally

7   compensable harm as a result of alleged actions and decisions by the City of Seattle."  *Id.* at 1.

8   He found that there was "temporary impact to access to specific properties arising from the

9   overall conditions in the CHOP…," but he concluded that they were no more than temporary and

10  that the City was not responsible.  *Id.* at 24.  He concluded that "each claim is *individual* and

11  should be *examined individually* relative to property location, tenant profile, specific date,

12  property use and sector, and the many other factors external to a location within the defined

13  boundaries of CHOP."  *Id.* at 24 (emphasis added).

14         But McKee failed to do just that.  Instead, he relied on his assistants' analysis of data

15  concerning vacancy rates and rent rates that were aggrandized and anonymized.  He used data

16  from three separate sources, Commercial Analytics, Yardi and Co-Star, who compiled and

17  anonymized real estate data for various geographic areas within the City of Seattle.  This data

18  has no references to specific addresses, and McKee did not produce the *individual* addresses of

19  *any* of his data points, notwithstanding his understanding that "each claim is *individual* and

20  should be *examined individually* relative to property location, etc."  *Id.*  Notwithstanding his

21  recognition of looking at individual properties, he admitted during his deposition that "[w]e're

22  relying on the aggregated data, obviously.  We – we weren't looking at specific properties."

23  Reilly-Bates Decl., Ex. 2 at 138:15-20.  McKee compared the area where the CHOP protests

24  occurred (defined in the McKee Report as the "Subject Area") with other Seattle neighborhoods,

25

26  [2] Exhibit 1 has been redacted on page 14 to preserve the confidentiality of a survey response.  The City subsequently issued an Amended expert report, which is attached to the Reilly-Bates Decl. as Ex. 5.

27  PLAINTIFFS' MOTION TO EXCLUDE                    -2-
    TESTIMONY OF DEFENDANT'S EXPERT
    BATES MCKEE, III
    (No. 2:20-cv-00983-TSZ)

such as Ballard, Fremont, Belltown, Upper Capitol Hill and Lower Capitol Hill.   Reilly-Bates Decl., Ex. 1 at 21-24.   As a result of this study, he concluded that "…there is no discernable or systematic difference between the subject neighborhood real estate performance, relative to other similar Seattle neighborhoods."  *Id.* at 24.

A second part of McKee's Report was based upon a survey that McKee's assistant conducted with "market participants."  *Id.* at 10.   McKee claims that he gained insight relating to "business challenges" during June 2020, Covid-19 impacts, state/local mandates and their effect on revenue and rent, civil unrest, rent concessions and development.  *Id.* at 12.   However, McKee admits that "[w]e did not survey market participants involved within the CHOP zone..."  *Id.* at 10.   So, for example, none of the "market participants" surveyed had to give any rent concessions due to CHOP, because they were simply outside of the CHOP area.   This effort also failed to provide any individualized analysis of any of Plaintiffs' damages.

A third part of McKee's Report was based upon several of his own personal observations of the "CHOP" area and documents produced in this case.  *Id.* at 16.[3] Such personal observations are not supported by any data or analysis by McKee, particularly where McKee was not even retained by the City until May of 2021, nearly a year after CHOP.

## LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702, the district court serves as a gatekeeper to admit only expert testimony that is both relevant and reliable.   *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017).   The proponent of an expert has the burden of proving the admissibility of the expert's proposed testimony. *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009).   Testimony must be helpful to the jury to be admissible.   Fed. R. Evid. 702(a).   Allowing "an expert to merely *speculate* as to a cause … poses the risk of confusing and misleading the jury as

---

[3] For example, although McKee was not even retained until May of 2021, he noted "[i]n my observation, street-level activation with pedestrians and workers was diminished everywhere, but particularly in the previously-vibrant, close-in neighborhoods such as Capitol Hill and the like." *Id.*

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-3-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

it lends the imprimatur of the expert's qualifications and a stamp of credibility to what is otherwise rank speculation." *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 283 (D. Vt. 2013) (citing *Daubert*, 509 U.S. at 590 (noting that expert opinions that reflect "subjective belief or unsupported speculation" must be excluded.)).  *See generally Taber v. Allied Waste Sys., Inc.*, 2015 WL 1119750, at *4 (W.D. Okla. Mar. 11, 2015) (in negligence case "it is not sufficient to introduce evidence of a state of facts simply *consistent with* or indicating a mere possibility.") (emphasis added).

Thus, to survive a *Daubert* challenge, the City must put forth sufficient evidence showing that its expert is: 1) qualified to give his opinions, and 2) that his opinions are both helpful and reliable.  *See In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1026 (C.D. Cal. 2013) ("The Rule 702 inquiry requires the Court to determine that the witness is qualified by special knowledge as an expert in the relevant area of expertise.  In addition, the Court must scrutinize the proffered expert testimony in order to assure that the expert had sufficient data, used reliable scientific methods, and applied those methods to the data in a reliable way.  Finally, the Court must determine if the proffered expert testimony is helpful to the trier of fact.").

## ARGUMENT

### A.    The Court Should Bar McKee from Testifying Because His Opinions Are Unreliable and Not Helpful to the Trier of Fact

The fundamental problem of McKee's Report is that he has not analyzed data relating to any of Plaintiffs' actual leases to determine how Plaintiffs' and their tenants' were actually affected.  Reilly-Bates Decl., Ex. 2 at 85:5-9.  The McKee Report provides no individualized analysis based on their location, circumstances etc.  Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the central concern of Fed. R. Evid. 702.  *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993); *see also United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986) ("The general test regarding

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-4-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

the admissibility of expert testimony is whether the jury can receive `appreciable help' from such testimony.").  Moreover, he is not aware of the proximity of any of his data points to CHOP or any of the individual circumstances of any of the individual data points that he relied upon.  *Id.* at 139:1-25; 154:16-156:2; 162:1-164:8.  Moreover, McKee's Report is replete with speculation, hearsay, legal conclusions, irrelevant testimony, unsupported personal observations, and matters wholly irrelevant to this case which is not reliable or helpful.

McKee relies upon aggregated and anonymized data from three separate data sources that look at (1) vacancy rates and (2) rental rates for the CHOP area as well as comparison neighborhoods in Seattle, such as Belltown, Ballard, Fremont, Upper Capitol Hill, and Lower Capitol Hill.  Reilly-Bates Decl., Ex. 1 at 21-65.  *First*, McKee concedes that he has not produced the address information for any of his data points because the data has been aggrandized, which means it has been added together and the average has been taken.  Reilly-Bates Decl., Ex. 2 at 138:15-20[4]; *Id*. at 154:16 – 155:11, 155:21 – 156:2.  In addition, the data he relied upon was anonymized.  Reilly-Bates Decl., Ex. 1 at 22 (". . . Commercial Analytics anonymizes data using pre-established market areas.").  McKee explained during his deposition that the anonymized data points were conglomerated together to create the "statistical average."  Reilly-Bates Decl., Ex. 2  at 163:4 – 164:8.  He also concede that he did not "have the level of detail that might be appropriate for a specific property investigation."  *Id.* at 226:5-9.  The problems with this methodology are myriad.  Although he himself (and this Court) have stressed the importance of considering individual circumstances of Plaintiffs in determining liability, McKee's approach and data cannot provide any detailed information about Plaintiffs' actual damages, and does not consider the actual location or circumstances of any single Plaintiffs' lease.

*Second*, McKee explains that he used different commercially available data sources, Co-Star, Yardi, and Commercial Analytics, to pull data about vacancy rates and rent rates, but he did

---

[4] "We're relying on the aggregated data, obviously.  We – we weren't looking at specific properties."

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-5-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

not define the <u>same</u> geographic boundaries of Seattle for each data set he used.   Reilly-Bates Decl., Ex. 2 at 135:7-11.[5]   Which means, of course, that he was comparing apples to oranges. So, for example, the definition of the "Subject Area" pulled from Co-Star's data included the area bound by Denny Avenue in the North, Broadway in the West, 13th Avenue in the East and Union in the South.  *Id*. at 133:9-24; *see also* Reilly-Bates Decl., Ex. 1 at 49 (graphic depiction of borders).   McKee conceded, however, that the geographic area of the "Subject Area" that was pulled from Yardi, extended all of the way to *14th Avenue* in the East.   Reilly-Bates Decl., Ex. 2 at 132:3-9; *see also Id*., Ex. 1 at 30 (graphic depiction of the Yardi "Subject Area").   The Commercial Analytics data, which shows vacancy and rental rates for apartments with 50 plus units, there was no geographic area comparable with the "Subject Area" but rather, a much larger swath of Capitol Hill, which would have included areas far away from CHOP.   Reilly-Bates Decl., Ex. 2 at 132:24-133:3, 133:9-24[6] (emphasis added); *see also* Reilly-Bates Decl., Ex. 3 (McKee Deposition Exhibits 11-17 that are a set of area maps of Seattle neighborhoods provided by Commercial Analytics that are not subject to customization, along with the data sets they include.   The Capitol Hill is a large area depicted in pink.).

"[T]o have the requisite predictive capacity and the reliability *Daubert* demands," [a methodology must] "select samples that are truly comparable.   To put it another way," [an expert must compare] "'apples and apples' rather than . . . 'apples and oranges.'"  *Loeffel Steel Prod., Inc. v. Delta Brands, Inc*., 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005), *amended*, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005); *see also Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2012 WL 761950, at *7–8 (D. Mont. Mar. 8, 2012) (excluding "apples-and-oranges" comparison); *Shatkin v. McDonnel Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (excluding "'apples and oranges' comparison").   McKee does not explain the geographic boundaries of the "subject area" of the Commercial Analytics data, and does not include a graphical representation of the much

---

[5] . "Three – three different subject areas, but each of the – each of these is different."

[6] "Q:. . . .[I]f I understand the data that comes from Commercial Analytics that refers to the subject area refers to the <u>entire area</u> of Capitol Hill.  A. Yes."

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-6-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

larger area, which could be very confusing and misleading to a juror.  Similarly, all of the comparison neighborhoods that McKee used to compare with his subject areas were different based upon the commercial data source.  He was comparing apples to oranges, and thus, his analysis should be discarded.

*Third*, even for the "Subject Area" for the commercial data sources that allowed customization, Yardi and Co-Star, McKee did not use the same area that Plaintiffs defined as their "Class Area," as he extended the area several blocks to the South and to the East.  *See* Plaintiffs' Motion for Class Certification dated January 13, 2022, Dkt. 65 at 2.  (". . . . the area bounded by Broadway Avenue, Denny Way, Thirteenth Avenue and E. Pike Street . . . . is referred to in this brief as the "Class Area.").   For the data that McKee received from Yardi, he defined the subject area as going south to Union and to 14th in the East, which overshot the "Class Area" by a block to the South and the East.  Reilly-Bates Decl., Ex. 2 at 132:3-12.  While extending the boundaries one additional block to the South and an additional block to the east may not seem like it would have a large impact in skewing the data.  However, the map that shows the Yardi data on page 30 of his Report (Reilly-Bates Decl., Ex. 1) shows that of the 19 balloons that represent anonymized data points for the Yardi data set, at least 7 of them (36%) appear to be outside of the Plaintiffs' "Class Area."   For the Co-Star data, McKee still extended the boundary of the "Subject Area" south to Union Avenue, even though he apparently had the ability to choose the "Class Area."  *Id.*, Ex. 2 at 133:9-24; and *Id.*, Ex. 1 at 49 (graphic depiction of borders).  The Co-Star maps do not include the same balloons that were included on the Yardi map, so we are not able to tell which portion of the Co-Star data set for the "subject area" lay outside of Plaintiffs' "Class Area."  McKee's use of areas larger than the Plaintiffs' "Class Area" was likely an intentional effort to dilute the statistical impact that CHOP had on the immediate area surrounding CHOP.

As McKee presumably had the ability to choose the same area as the "Class Area," but he chose not to for the Yardi and Co-Star data sources, we can only presume that the data for that

PLAINTIFFS' MOTION TO EXCLUDE        -7-
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

1   area did not fit the City's narrative.   And as previously noted in the section above, the

2   "Commercial Analytics" data provider did not allow for customization, so a much larger

3   geographic area of Capitol Hill had to be selected.   Because McKee's data is completely

4   unrelated to Plaintiffs' actual circumstances and locations, and because he has defined different

5   geographic areas for each data source he uses, his testimony ought to be barred, or, at the very

6   least, he should be barred from offering testimony as to the vacancy rates and rent rates in

7   various Seattle neighborhoods.[7]

8       **B.   If Not Excluded Entirely, McKee's Testimony Should be Strictly Limited**

9       **1.   The Court Should Bar McKee from Offering Evidence from His**
10      **Survey Because it is Inadmissible Hearsay and Expert Testimony**

11      McKee has compiled an inadmissible survey of 13 real estate professionals with whom

12  he has previously worked, only four of which even comment upon CHOP, and the rest of who

13  likely did not have any first-hand information about the effects of CHOP.   Reilly-Bates Decl.,

14  Ex. 1. McKee explains his survey in pages 10 – 16 of his report, where he notes that "we

15  conducted an informal survey of market participants within comparable Seattle area

16  neighborhoods.   Market participants included landlords, tenants, tenant representatives,

17  commercial brokers, developers and property owners.   *Id.* at 10.   He further explained that

18  "[c]omparable neighborhoods included North Capitol Hill, Ballard, Freemont, CBD ["Central

19  Business District"], Waterfront, Belltown, Queen Anne, Greenlake, and [the] U district."   *Id.*

20  The survey, which appears on pages 14 and 15 of McKee's Report, includes a number of

21  statements attributed to market participants about real estate issues in Seattle.   McKee claims that

22

---

23  [7] Somewhat ironically, McKee's charts in his Report (*see* Reilly-Bates Decl., Ex. 1) show that the "Subject Area"
    had a *higher* rate of vacancy than the other neighborhoods that McKee examined, a fact which McKee largely
24  conceded. *See* Reilly-Bates Decl., Ex. 1 at 31, 34, 37, 40, 43, 46, 50, 51, 54, 55, 58, 59, 62, 63 (charts showing
    higher vacancy rates for the subject area under several data sources).   This higher vacancy rate cuts through
25  McKee's conclusion that the "subject area" was affected no differently by civil unrest in 2020.   One exception to
    that general trend was for Belltown, but the Belltown neighborhood housed Amazon, which adopted a "work-from-
26  home" policy for its estimated 40,000 employees who worked in the Belltown Towers.   Reilly-Bates Decl., Ex. 2 at
    176:11 – 177:4.

27  PLAINTIFFS' MOTION TO EXCLUDE                    -8-
    TESTIMONY OF DEFENDANT'S EXPERT
    BATES MCKEE, III
    (No. 2:20-cv-00983-TSZ)

he gained insight relating to "business challenges" during June 2020, Covid-19 impacts, state/local mandates and their effect on revenue and rent, civil unrest, rent concessions and development.  *Id.* at 12.  All of these topics are opinions that require a specialized expertise in real estate.

Yet, none of the survey participants in McKee's survey was disclosed by the City as an expert witness in this case, and the City has otherwise failed to meet the strict requirements of the *Daubert* test.  In addition, all of these statements in the survey are inadmissible hearsay statements. *United States v. Williams*, 431 F.2d 1168, 1170–74 (5th Cir. 1970) (expert's opinion that was based solely on inadmissible hearsay, was improper); *Pelster v. Ray*, 987 F.2d 514, 526–27 (8th Cir. 1993) (expert testimony that relied solely upon inadmissible hearsay was improperly admitted).

Moreover, McKee's survey is not helpful in understanding the extent of Plaintiffs' damages.   Most of McKee's survey participants lacked any firsthand knowledge of the conditions in the "subject area" during and after CHOP.  McKee admitted that he could not identify a single property that was owned or managed by one of the survey participants in the "subject area."  Reilly-Bates Decl., Ex. 2 at 99:11-15.[8]  He acknowledged that his market participants were not necessarily familiar with the neighborhood around the subject area.  Reilly-Bates Decl., Ex. 1 at 3-11.  He further admitted that only four of the survey participants even mentioned the word "CHOP."  He acknowledged that if his survey did not mention CHOP that they did not talk about CHOP or have an opinion.  Reilly-Bates Decl., Ex. 2 at 100:1-14.[9]  Of those market participants who discussed CHOP, several of them observed, contrary to McKee's opinion that the "subject area" fared no differently than other areas, that "Capitol Hill hit harder. . . crime/fear issue[s]",  and that various restaurants in the CHOP subject area and the Pike / Pine

---

[8] "Q:…[Y]ou can't identify a single property that was within the subject area that was owned or managed by one of the individuals listed on [the survey].  A. That's correct….".
[9] "Q: And we can assume that if there's nothing about CHOP in the other entries that they didn't talk about CHOP, correct? A. Or didn't respond or didn't have an opinion, correct.".

corridor were hit hard.  Reilly-Bates Decl., Ex. 1 at 14-15 (in the Notes column of McKee's survey).  When asked about Melrose Market Place that was "hit hard" in the Pike/Pine area, where some of Plaintiffs' properties are located, McKee quickly conceded that "… the Pike/Pine corridor, obviously, was, you know – was hit hard." Reilly-Bates Decl., Ex. 2 at 107:7-11.  There were no survey participants who opined that CHOP did not have any effect on the residents and businesses in the "subject area," but that is exactly what the City will use McKee's Report to suggest.

Finally, the survey is tainted by the survey respondents' connections to McKee's appraisal business, and any formal rigorous protocols.  McKee readily admitted that he had worked with some of the witnesses.  Reilly-Bates Decl., Ex. 2 at 97:9-98:6.  McKee admitted that his assistant used a list "of people that he had previously interacted with or that he was comfortable calling. . . ." implying that the survey participants were not randomly selected, but that had some connection with McKee's appraisal business.  *Id.* at 122:20 – 123:14.  Moreover, one individual did not want to share his/her full name.  Reilly-Bates Decl., Ex. 1 at 14.  After McKee was questioned about this individual, the City issued an amended report that removed the survey response from that individual.  *Id.*, Ex. 5.  For many reasons, McKee's "informal survey" of his cronies does not clear the hurdle of *Daubert* and its use should be barred.

### 2.  The Court Should Bar McKee from Offering Legal Opinions About Final Issues in This Case

At his deposition, McKee agreed that he did not want to offer any legal opinions in this case.  Reilly-Bates Decl., Ex. 2 at 44:8-10; 45:2-5.[10]  But his report is replete with legal opinions and statements of law that invade the province of the court and the jury.  McKee intends to offer several sweeping legal conclusions about ultimate issues, such as:

---

[10] Later in his deposition, McKee backtracked on his answers and changed his testimony to state that he was not sure if he could answer a question of whether he was qualified to offer a legal opinion in this case. He refused to answer a "yes" or "no" question of whether he was qualified to offer a legal opinion in this case.  Reilly-Bates Decl., Ex. 2 at 60:2-62:8.

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-10-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

- ". . . [T]here was nothing approaching a taking of all, or even a significant part, of access to and utility of the properties." Reilly-Bates Decl., Ex. 1 at 6.

- "There can be no consequential damages or business loss for the alleged temporary takings claim." Reilly-Bates Decl., Ex 1 at 7.

- Plaintiffs have not substantiated any losses resulting from a taking of "access" to their respective properties. Reilly-Bates Decl., Ex. 4 (McKee 6-3-2022 Rebuttal Report).

- There was not an "unreasonable impairment of access rising to the level of legally compensable damages to Plaintiffs' real estate." *Id.* at 2.

Moreover, McKee's Report contains several statements of the law, some of which have no application in this case, including Washington Pattern Jury Instructions 151.01 and 150.06.02 and its commentary.

It is well-settled that "an expert witness cannot give an opinion as to his legal conclusion, i.e., an opinion on an ultimate issue of law." *Tubar*, 2009 WL 1325952, at *3.  In *Nationwide Transport Finance v. Cass Information Systems, Inc.*, the Ninth Circuit affirmed the district court's exclusion of an expert's opinions regarding the application of the Uniform Commercial Code (UCC) to the facts of the case.  *See* 523 F.3d 1051, 1058–60 (9th Cir. 2008).  In particular, the Ninth Circuit affirmed the district court's decision to prohibit the expert from opining on "the parties' legal rights, duties, and obligations under the law"… whether the "parties' actions [were] 'wrongful' or 'intentional' under the law," and "the appropriate formula to calculate damages under the law." *Id.* at 1058.  That was because "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.*  So too here.  Because McKee's opinions on the whether the City's denial of a temporary lack of access is legally compensable "applie[s] to the facts of the case" and how Defendants' "conduct violated" those provisions "would, in effect, instruct the jury regarding how it should decide . . . key question[s]" in this case, it should be excluded.  *Id.* at 1059; *see also Fontana v. City of Fed. Way*, 2013 WL 12066144, at *2–3 (W.D. Wash. Sept. 25, 2013).  The court should bar McKee from offering legal opinions about Plaintiffs' constitutional right of access takings claims in this case, particularly in light of the

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-11-

unhelpful, speculative and unreliable bases for his opinions discussed above.

       **3.**    **The Court Should Bar McKee from Offering Unsupported Speculation about Various Other Topics**

McKee's Report contains additional unsupported conclusions that are based on his personal observations and not supported by any data.

McKee's opined that "street-level activity with pedestrians and workers was diminished everywhere" (Reilly-Bates Decl., Ex. 1 at 9) was not supported by any data that was appended to his report, but McKee contended that the basis was his "constantly observing." Reilly-Bates Decl., Ex. 2 at 75:3 – 78:9. ("I cited specifically my observation which is a data point.") But McKee was not even retained by the City until May of 2021. *Id.* at 35:1-13.

McKee's further observed that "[a]s a further consequence of the pandemic, in our appraisal experience, parking revenues are significantly impacted by any downturn" (Reilly-Bates Decl., Ex. 1 at 10) was not supported by empirical leases or other data that was produced in this case, but only supported by McKee's "personal observation." Reilly-Bates Decl., Ex. 2 at 87:12 – 89:2. McKee admitted that he could not have made the observations relating to the subject neighborhood before he was retained in May of 2021. *Id.* at 89:3-12. Moreover, he conceded that he did not analyze any of the parking revenues for the subject area. *Id.* at 87:12-14.

Based on McKee's cavalier shoot-from-the-hip approach, these opinions and his entire testimony should be barred.

## CONCLUSION

For these reasons, Plaintiffs respectfully request the Court to enter an order barring Bates McKee, III, from testifying at trial. However, if he is allowed to testify, Plaintiffs request that Mr. McKee be barred from giving personal opinions that are inadmissible as a matter of law.

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-12-

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

DATED this 2nd day of February, 2023.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**MORGAN, LEWIS & BOCKIUS LLP**


By: */s/ Gabriel Reilly-Bates*
Patricia A. Eakes, WSBA #18888
Angelo J. Calfo, WSBA #27079
Tyler S. Weaver, WSBA #29413
Gabriel Reilly-Bates, WSBA #52257
Andrew DeCarlow, WSBA #54471
Henry Phillips, WSBA #55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone:  (206) 474-6400
Fax:      (206) 474-6401
Email:  patty.eakes@morganlewis.com
        angelo.calfo@morganlewis.com
        tyler.weaver@morganlewis.com
        gabriel.reillybates@morganlewis.com
        andrew.decarlow@morganlewis.com
        henry.phillips@morganlewis.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION TO EXCLUDE
TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III
(No. 2:20-cv-00983-TSZ)

-13-