THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

HUNTERS CAPITAL, LLC, et al.

        Plaintiffs,

  v.

CITY OF SEATTLE,

        Defendant.

No. 2:20-cv-00983-TSZ

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT**

**NOTE ON MOTION CALENDAR:**

February 17, 2023

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2:20-cv-00983-TSZ)

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

**TABLE OF CONTENTS**

|     |     |     |                                                                                     | Page |
|-----|-----|-----|-------------------------------------------------------------------------------------|------|
| I.  | ARGUMENT | | | 1 |
|     | A.  | The Court Should Not Exclude Any Portion of Dr. Shane's Testimony | | 1 |
|     |     | 1.  | Dr. Shane is Not Offering Impermissible Legal Opinions | 1 |
|     |     | 2.  | Dr. Shane's Opinions Are Relevant | 3 |
|     |     | 3.  | Dr. Shane's Opinions Are Reliable and Grounded in the Facts of the Case | 4 |
|     | B.  | The Court Should Not Exclude Dr. Piza's Testimony | | 5 |
|     | C.  | The Court Should Not Exclude Arik Van Zandt's Testimony | | 7 |
| II. | CONCLUSION | | | 13 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(No. Case No. 2-20-cv-00983-TSZ) - i

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*Asia v. Pool*,
    47 Wash. 515 (1907) .................................................................................................... 10, 11

*Chambers-Castanes v. King Cty.*,
    100 Wn.2d 275, 284-85 (1983) ................................................................................................ 2

*Est. of Barabin v. AstenJohnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014), overruled by *United States v. Bacon*, 979 F.3d
    766 (9th Cir. 2020) ..................................................................................................... 7, 8

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*,
    482 U.S. 304 (1987) ........................................................................................................ 11

*Flores v. Pierce*,
    617 F.2d 1386 (9th Cir. 1980), cert. denied, 449 U.S. 875 (1980) ..................................... 12

*Fontana v. City of Fed. Way*,
    2014 WL 202104 (W.D. Wash. Jan. 17, 2014) ................................................................... 1

*Hangarter v. Provident Life & Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ............................................................................................... 1

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ........................................................................................... 11

*Memphis Community School District v. Stachura*,
    477 U.S. 299 (1986) ........................................................................................................... 11

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008) ............................................................................................. 1

*Riblet v. Spokane-Portland Cement Co.*,
    45 Wash. 2d 346 (1954) .................................................................................................... 10

*Stilwell v. City of Williams*,
    831 F.3d 1234 (9th Cir. 2016) ........................................................................................... 12

*Vance v. XXXL Dev. LLC*,
    150 Wn. App. 39 (2d Div. 2009) ......................................................................................... 9

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND
VAN ZANDT
(No. Case No. 2-20-cv-00983-TSZ) - ii

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

**Statutes**

42 U.S.C. § 1983 ................................................................................................................11, 12

**Other Authorities**

Seattle Municipal Code ..........................................................................................................2, 4

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - iii

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

# I. ARGUMENT

## A. The Court Should Not Exclude Any Portion of Dr. Shane's Testimony

Dr. Jon Shane is an indisputably qualified police-practices who has offered the opinions that the Seattle Police Department's abandoning of the East Precinct and subsequent adoption of the Red Zone were contrary to generally accepted police practices. His opinions are reliable, relevant, grounded in the facts of this case, and fully admissible.

### 1. Dr. Shane is Not Offering Impermissible Legal Opinions

The City contends that portions of Dr. Shane's opinion should be excluded because they are "improper legal opinions." Mtn. at 4. But the City's argument is based on a misconstruction of both the law and what Dr. Shane is expressing in the challenged portion of his analysis.

As the City's cases confirm, the standard for whether an opinion about a legal issue should be excluded is whether an expert's opinion is on an ultimate legal question such that it would invade the providence of the trial judge or usurp the role of the jury. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1058–59 (9th Cir. 2008) ("an expert witness cannot give an opinion as to … an ultimate issue of law"; expert testimony excluded because the opinions were on ultimate legal issues and "invaded the province of the trial judge"); *Fontana v. City of Fed. Way*, 2014 WL 202104, at *3 (W.D. Wash. Jan. 17, 2014) (same). By contrast, an expert can offer opinions on whether particular behavior violated industry standards, practices, and her understanding of what the law is, as long as she is not opining on an ultimate issue of law in the case or instructing a jury as to the law to be applied in deciding the case. *E.g., Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Indeed, "a witness may refer to the law in expressing an opinion without that reference rendering the testimony admissible." *Id.* at 1017, *quoting Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).

None of Dr. Shane's opinions violate this standard. The City's primary complaint appears to be that Dr. Shane has pointed to the City Charter as one of the sources of the principles he

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - 1

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

applied in this case, and that he believes based on the plain reading of it that the City's actions did not comply with it in this case. *See, e.g.,* Iverson Decl., Ex. 1 at 4. *See also* Declaration of Tyler Weaver in Support of Plaintiffs' Opposition to Defendant's Motion to Exclude Testimony of Plaintiffs' Experts Shane, Piza, and Van Zandt ("Weaver Decl."), Ex. 1, Jon M. Shane, Ph.D., Deposition, August 11, 2022 ("Shane dep.") at 126:2-12. Whether the City violated its own charter is not an ultimate issue in this case. As the City points out, Plaintiffs have "nowhere … alleged a violation of the City Charter as basis for their claims." Mtn. at 5. However, Dr. Shane has identified the City Charter as a basis for his opinions, and he is qualified to opine as to the whether certain standards affecting law enforcement have been complied with. Indeed, determining the parameters of statutes, city charters, ordinances, and constitutional limitations, and what comports with those standards, is something police officers do every single day on the streets.[1] *See* Weaver Decl., Ex. 1 (Shane dep.) at 126:2-12, 165:7-166:20, 176:16-23.

The City also takes issue with Dr. Shane pointing out that there is a generally accepted duty that the police should protect the public, and that the Seattle Municipal Code recognizes that. Mtn. 5. Iverson Decl., Ex. 1 at 19 n.48. The City remarkably claims that this is an impermissible comment on the "public duty doctrine" concerning municipal liability for negligence. Mtn. 5, *citing Chambers-Castanes v. King Cty.*, 100 Wn.2d 275, 284-85 (1983) (discussing negligence). To the contrary, Dr. Shane is again simply pointing out that the City's own laws support his opinions about the unreasonableness of its actions in this case. Iverson Decl., Ex. 1 at 19 n. 48 and Weaver Decl., Ex. 1 (Shane dep.) at 175:5-178:7. This is not an impermissible legal opinion going to an ultimate legal issue.[2]

---

[1] For example, police regularly decide if there is probable cause to arrest a suspect, whether a search is permitted, whether criminal statutes have been violated, etc.

[2] The City also claims Dr. Shane "ignores" that for part of June 2020, the City was subject to an injunction limiting its ability of less-lethal force, and that officers are required to de-escalate where possible. Mtn. 5-6. It is unclear what this has to do with whether Dr. Shane has stated a legal opinion, but he does not ignore what the City claims he did. Weaver Decl., Ex. 1 (Shane dep.) at 65:11-72:5 (recognizing general principle of de-escalation, explaining why it does not change his opinions); *Id.*, Ex. 1 at 113:11-115:13 (raising the injunction on his own and explaining why it did not render the response appropriate).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 2

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

### 2. Dr. Shane's Opinions Are Relevant

The City claims Dr. Shane's opinions about the City's actions with regard to the East Precinct and the Red Zone are irrelevant to Plaintiffs' nuisance claim in the same breath that the City makes clear it plans to defend the nuisance claim by attempting to prove that its actions at its effects on Plaintiffs were *reasonable*. Mtn. 7-9, *quoting (among other cases) Kitsap Cnty. v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 276 ("[i]f particular conduct interferes with the comfort and enjoyment of others, nuisance liability exists only when the conduct is unreasonable" as determined "by weighing the harm … against the social utility of the activity.") In assessing the reasonableness of a nuisance, the full context of an action is relevant; the jury will be asked to assess "the reasonableness or unreasonableness of … making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case." *Id.* at 277, *quoting Shields v. Spokane Sch. Dist. No. 81*, 31 Wash. 2d 247, 257 (1948).

Unless the City forgoes that defense, Dr. Shane's opinions are directly relevant to the question of whether the nuisance created by the City's actions was reasonable under the circumstances. His opinions – whether the City acted in accordance with generally accepted police practices and the City's own standards in evacuating the East Precinct and creating the Red Zone – are directly relevant to whether the City's actions that created the nuisance were reasonable. Indeed, the City essentially concedes this point by arguing that the opinion of its expert Seth Stoughton on the same issues – to which Dr. Shane's opinion was a rebuttal – is relevant to establish the "reasonableness of the City's actions." Mtn. 8 n.4. The Court should not take seriously this weak argument that one of the opposing police-practices experts, but not the other, is relevant.

And to the extent the City suggests Plaintiffs have never claimed the City's actions with the East Precinct and the Red Zone caused or contributed to the nuisance, Mtn. 6-7, the City is wrong. Plaintiffs have pled a nuisance that included not just access problems, but "a series of

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 3

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

unlawful and/or unreasonable conditions, including excessive noise, public safety hazards, vandalism, and poor health and sanitation conditions." Dkt. 47 at ¶ 220. Plaintiffs have also made clear that these conditions were a result of all the City's alleged acts, *Id.* at ¶ 217, and that among other things, the City admitted it "facilitated" the nuisance by "modifying SPD … response protocols." *Id.* at ¶ 173. *Also, e.g. at* ¶¶ 3, 5, 6, 8, 36-40, 55-69, 167-172 (discussing modified police presence, including abandoning of the East Precinct, and how it caused a nuisance affecting public safety).

### 3. Dr. Shane's Opinions Are Reliable and Grounded in the Facts of the Case

The City also contends Dr. Shane has not used reliable methods in reaching his opinions, and that he has ignored key facts. Neither is correct.

As an initial matter, Dr. Shane's opinion is grounded on recognized principles. As he explained in his report and at his deposition, those principles are found in the City's own Charter and municipal code, the City's after-action report arising from the SPD's response to the 2000 World Trade Organization protests, the American Bar Association's standards for urban policing, the standards of the Commission for the Accreditation of Law Enforcement Agencies. Iverson Decl., Ex. 1 at 10-11, 18 & n.47, 19 & n.48, 21 n.54; Weaver Decl., Ex. 1 (Shane dep.) at 14:18-17:14, 20:7-22:25, 25:15-27:24, 28:25-29:24, 30:17-31:3, 126:2-126:17. Those principles include that crime investigations must happen as soon as possible, that police withdrawals for the purposes of de-escalation must be tactical and temporary, that 9-1-1 calls require in-person responses, that police have a duty to protect the public, that the police have a duty to protect the general public and identify crimes that have occurred, that police canvass neighborhoods and investigate situations involving armed individuals guarding barriers in street. Weaver Decl., Ex. 1 (Shane dep.) at 14:18-17:14, 20:7-22:25, 25:15-27:24, 28:25-29:24, 30:17-31:3, 126:8-126:17, 179:25-183:21. Finally, and critically in contrast to the City's police-practices expert,[3] Dr. Shane bases

---

[3] *See generally* Plaintiffs' motion to exclude Seth Stoughton's testimony. Dkt. 171

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 4

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

his opinion on his own experiences as well as what other police departments have and have not done in actual responses involving parallel situations. Iverson Decl., Ex. 1 at 1, 22 & n.57, 25-26; Weaver Decl., Ex. 1 (Shane dep.) at 85:11-21; 95:25-98:20; 211:18-212:10.  Dr. Shane's opinions and his methodology are firmly grounded in established police practices and actual application of those principles.

The City is also incorrect that Dr. Shane's opinions do not account for certain facts.  Mtn. 9-10.  Dr. Shane acknowledges that there is a well-accepted police practice of de-escalating where possible, but his opinions are not affected by that given what the SPD was facing in this case and the limits of any tactic of de-escalation.  Weaver Decl., Ex. 1 (Shane dep.) at 65:11-72:5.  Similarly, he has considered restraints placed by courts on SPD tactics for part of June 2020.  *Id.*, Ex. 1 at 113:11-115:13.  He has also fully recognized in his formulating his opinions that there were protests around the precinct on days before the SPD abandoned the East Precinct, but his opinion is that they did not justify what the SPD did in response.  *E.g.*, Iverson Decl., Ex. 1 at 11-13, 20-22; Weaver Decl., Ex. 1 (Shane dep.) at 32:6-35:24.  And finally, he also recognized that the SPD on occasion respond to crimes that were not "mass casualties," but only several blocks outside of CHOP, but he opines that such a response was not in keeping with accepted police practices. Iverson Decl., Ex. 1 at 17; Weaver Decl., Ex. 1 (Shane dep.) at 21:22-25:14; 136:14-140:17.  Every fact the City claims Dr. Shane ignored, he actually accounted for.  If the City believes he did not give those issue enough weight, they can cross-examine him about it at trial.  But his opinions are reliably grounded in the facts of this case, and there is no basis for excluding them.

**B.     The Court Should Not Exclude Dr. Piza's Testimony**

Dr. Piza has offered opinions in this case based on his independently generated, peer-reviewed study that was published in the journal CRIMINOLOGY AND PUBLIC POLICY in January 2022, which provides a scientific study about the relationship between CHOP and increased crime between June 8 and July 1, 2020, and in CHOP and in the City blocks near CHOP.  Iverson Decl.,

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - 5

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

Ex. 5 at 1 and Appx. A.  Well before he was retained by Plaintiffs in this case, Dr. Piza independently obtained historical crime data from the City and analyzed it using an advanced statistical technique known as a microsynthetic control matching.  Weaver Decl., Ex. 2, Eric L. Piza, Ph.D., Deposition, August 16, 2022 ("Piza dep.") at 31:13-32:20.  This technique allowed him to compare crime in the CHOP in June 2020 to other parts of Seattle, while controlling for numerous variables to get the best control group possible, and thus get clearest possible picture of the correlation between CHOP and crime levels.  *Id*., Ex. 2 at 39:25-41:5, 42:23-47:10, 50:2-51:15, 52:17-55:10.  His conclusion was that there was a statistically significant crime increase within and near CHOP – even within 24 hours of police first not responding to the area – as compared to the statistically determined control group.  Iverson Decl., Ex. 5 at 3.

The City does not appear to claim that Dr. Piza is not qualified to give his opinions, that his methods were unreliable, or that he had some error in his calculation.  And such an argument would be futile, given that this is a peer-reviewed, published study.  Instead, the City claims that he used an "invalid design" that does not draw a valid causal link between the City's actions and the increase on crime.  Mtn. 10.  But Dr. Piza is clear that his statistical analysis does demonstrate causal connections between what the City did (such as allowing a tent-camping occupation of a public park, providing portable toilets and barriers, and creating the Red Zone) and the increased crime, Weaver Decl., Ex. 2 (Piza dep.) at 64:22-65:18, and that his study controls for the crime effects of City action, rather than the crime effects of protest.  *Id*., Ex. 2 at 69:2-77:11.  To the extent the City's rebuttal expert disagrees – in highly technical, almost impenetrable terms (Iverson Decl., Ex. 6) – that is a battle for the experts best left for trial.

Dr. Piza's report is relevant not only to show that the City's actions resulted in a nuisance that included increased crime and decreased safety, but also to show the extent to which Plaintiffs were harmed by that nuisance.  The City again tries to make it appear that Plaintiffs' nuisance claim is not based on police actions, or anything other than a loss of access.  Mtn. 11. And again,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 6

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

as already discussed above, Plaintiffs' nuisance claim is far broader and encompasses everything the City did to contribute to the nuisance, including abandoning the East Precinct and adopting the Red Zone. Dkt. 47 at ¶¶ 3, 5, 6, 8, 36-40, 55-69, 167-173, 217, 220. Dr. Piza's testimony is directly relevant to that claim.

### C. The Court Should Not Exclude Arik Van Zandt's Testimony

The City claims that Van Zandt's opinions concerning Covid-19's effects on Plaintiffs' damages lacks a "proper foundation" which it insists could only be done through a robust "market valuation analysis." However, just like Bates McKee III's analysis has very little relevance to the Plaintiffs' specific properties located exclusively within the Capitol Hill neighborhood, a "market valuation analysis" would yield little information about Plaintiffs' properties. The cases cited by the City only further support the Plaintiffs' position. In *Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 466 (9th Cir. 2014), overruled by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020), the Ninth Circuit noted that ". . . laying a proper foundation means establishing relevancy and reliability rather than mere general acceptance." The Ninth Circuit further explained that "[r]elevancy simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'" (*Id.* at 463 (citation omitted)) and reliability requires "'a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)). The Ninth Circuit emphasized that the reliability inquiry is "a flexible one" and that it is not concerned with "the correctness of the expert's conclusions but the soundness of his methodology." *Id.* (citing *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).

Van Zandt laid a proper foundation for the accounting of the effects of Covid-19 in his analysis of Plaintiffs' damages. First of all, the City does not contest the *relevance* of Mr. Van Zandt's opinions concerning the effect of Covid-19. After all, an analysis of the effects of Covid-

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - 7

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

19 serves to decrease the damages that Plaintiffs can claim for lost rents or lost profits caused by the City's encouragement of CHOP.

Second, Mr. Van Zandt's opinions about the effects of Covid-19 on Plaintiffs' damages are reliable. Mr. Van Zandt considered the effects of Covid-19 on Hunters Capital's commercial unit losses on pages 9 – 11 of his expert report and on Hunters Capital's residential losses on page 11 – 12 of his expert report. Weaver Decl., Ex. 4, at 9-12 (Excerpts of Van Zandt's 4/28/22 Expert Report). In his report he noted that he had reviewed a report by Colliers of the Puget Sound real estate market which had included that the Covid-19 pandemic had created a "wait and see" approach for many commercial tenants. Weaver Decl., Ex. 4, at 10 (Van Zandt 4/28/22 Expert Report). He further noted that he accounted for the "wait and see" approach by extending the budgeted vacancy period for commercial tenants by 50%. *Id.* In response to the City's Motion for Summary Judgment, Van Zandt noted that in order to come up with his 50% figure, he focused primarily on the historical financials and rent rolls related to the specific buildings in question, including pre-CHOP pandemic months, rather than taking a generalized survey of the City. Dkt. 131 at 2-3, ¶¶7-8 (Decl. of Van Zandt ISO Response to City's Motion for Summary Judgment). He further explained that he was able to speak with the owners and managers of the properties in question to determine what effects Covid-19 had on their buildings as opposed to CHOP. *Id.* At his deposition, Van Zandt further explained that the 50% longer vacancy period was also for informed by his valuation experience of other businesses during Covid-19. Weaver Decl., Ex. 3 at 60:15 – 62:6 (Excerpts of Dep. Transcript of A. Van Zandt dated 9/14/22). Increasing the amount of budgeted time for vacancy periods had the effect of decreasing the amount of damages for lost rent that the Hunters Capital is seeking. For other Plaintiffs, such as Sway & Cake, Car Tender and Cure Cocktail, Van Zandt analyzed annual and monthly financial statements before and after CHOP to come up with his reductions. Dkt. 131 at 2, ¶4.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - 8

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

Van Zandt also analyzed the effects of Covid-19 on the residential damages that Hunters Capital is seeking, but he determined that Covid-19 did not have a negative effect on the residential real estate damages, because the residential units were actually performing *above* budget for a number of months *after* the onset of the Covid-19 pandemic. Weaver Decl., Ex. 4 at 11-12 (Excerpts of Van Zandt's 4/28/22 Expert Report). Specifically, he noted that he had reviewed the variance between Hunters Capital's actual performance and the budget and "Hunters outperformed the budget in each month for both the Lots II building and the Dunn Automotive building despite not being able to foresee the impact of the Covid-19 pandemic. . ." *Id.* at 12. Based on that analysis, he determined that no adjustment to the residential real estate losses was necessary. *Id.* Thus, the methods that Van Zandt used to calculate the effects of Covid-19 on Plaintiffs' damages relating to lost rent from their commercial and residential real estate are reliable.

Finally, the City includes several incorrect and misleading statements about the types of damages available to Plaintiffs in this case, which is more akin to a motion in limine rather than a *Daubert* motion. However, the City's explanations of the types of damages available to Plaintiffs for their remaining claims are both inaccurate and incomplete. The City misstates the holding of *Vance v. XXXL Dev. LLC*, 150 Wn. App. 39, 43 (2d Div. 2009) when they state that "Plaintiffs are entitled to nuisance damages only for the period during which the nuisance actually existed." Mot. at 11. *Vance* contains no such holding, but merely held that a plaintiff who sold their house following the abatement of a nuisance still had an ability to "maintain her nuisance suit." *Vance*, 150 Wash.App. at *45.

Moreover, the City's explanation that damages for a nuisance are limited to "the 'diminished rental or use value'" are incomplete and misleading. *See* Motion, Dkt. 173 at 11:17-24. While diminished rental or use value is certainly a component of nuisance damages, Washington courts have also considered other normal tort-related damages to be available in cases involving nuisance. *See Riblet v. Spokane-Portland Cement Co.*, 45 Wash. 2d 346, 353 (1954).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 9

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

In *Riblet* the Washington Supreme Court recognized that "recovery may be had for 'sickness, suffering, mental anguish and bodily infirmities' resulting from nuisance, *in addition to property damage*." *Id.* (citation omitted) (emphasis added).  In *Riblet*, where the nuisance involved cement dust infiltrating plaintiff's property, the Court held that the trial court had erred when it excluded evidence of damages for personal discomfort and annoyance. *Id.* at 353-54.  The court noted that plaintiff had presented evidence of sludge on the bottom of his swimming pool, which caused plaintiff to slip and slide, cement dust on tables, chairs automobiles etc, and waking with "a feeling that our nostrils were breathing dust." *Id.* at 355.  Thus, the Court should disregard the City's unnecessarily restrictive view of the types of damages available in a nuisance claim.

Washington Courts have also allowed lost profit damages relating to nuisance claims.  In *Asia v. Pool*, the Washington Supreme Court expressed the view that a nuisance claim should not be dismissed due to the lack of precise evidence showing exactly how much business had been lost due to nuisance.  47 Wash. 515, at 518 (1907).  In *Asia*, a seller of general merchandise had complained of a nuisance caused by a fishmonger, in the form of offensive odors that emanated from the neighboring fishmonger's shop. *Id.* at 516.  The Supreme Court affirmed the conclusion that the fish market, as operated by the fishmonger, constituted a nuisance. *Id.* at 517-18.  The plaintiff had produced evidence of a decline in sales as a result of the foul odors. *Id.* at 518.  The Supreme Court noted that the plaintiff's:

> "evidence showed a large falling off of sales during the time the market was there. How much of this was due to the presence of respondent's business cannot be determined, but that some of it was attributable thereto is beyond question.. . . The very nature of the injury shows that the damage could not be calculated with any considerable degree of accuracy; but that such conditions wrought a substantial injury to the appellant could not well be doubted; and it is the law that in cases of this character the injured party shall not be sent from the court remediless because the precise amount of damages is not ascertainable.  In such cases the court or jury is called upon to make such an award as under all the circumstances would seem to be equitable and just without being excessive to the end that substantial justice may be approximated, although impossible of accurate measurement."

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 10

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA  98101
+1.206.274.6400

*Id.* at 518. Thus, the scope of allowed damages for a nuisance claim is broader than simply the "diminished rental or use value."

In addition, the City also improperly asserts that "[b]ecause no claim for a temporary taking of access exists under Washington law, the appropriate measure of damages is unclear." (Motion, Dkt. 173 at 12). However, this Court has already denied the City's motion for summary judgment seeking to bar Plaintiffs' claim for a temporary taking of access. Dkt. 165. Moreover, the City filed a motion to reconsider on this issue (Dkt. 167) which the Court denied, affirming that there were "genuine disputes of material fact." Dkt. 175.

The City is further misguided when it asserts that the appropriate measure of damages is unclear. The U.S. Supreme Court has noted that "'temporary' takings . . . are not different in kind from permanent takings, for which the Constitution clearly requires compensation. *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 318 (1987). Moreover, the City's own real estate expert, Bates McKee III, improperly included an incomplete standard for a regulatory temporary denial of access in his expert report.[4] *See* Weaver Decl., Ex. 4 (Excerpts of Van Zandt's 4/28/22 Expert Report), at 7-8.

The Ninth Circuit has noted that because 42 U.S.C. § 1983 is silent with regard to damages, damages are to be determined in accordance with principles of the common law of torts. *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986); *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1156–57 (9th Cir. 2016). "Compensatory damages in §1983 suits may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Stilwell v. City of Williams*, 831 F.3d 1234, 1247 (9th Cir. 2016) (citing *Memphis*, 477 U.S. at 307) (emphasis added). Lost profits have been awarded and acknowledged as an appropriate measure of compensatory damages in section 1983 cases. *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 760 (9th Cir. 1985)

---

[4] Plaintiffs have filed a *Daubert* motion challenging Mr. McKee's expert opinions, for, among other things, his recitation of the law and legal opinions on ultimate issues in the case.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - 11

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

(affirming district court's award of $15,723 in lost profits for street vendor plaintiff who was unable to sell King Tut t-shirts in front of King Tut exhibit); *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980), cert. denied, 449 U.S. 875 (1980) (where the Ninth Circuit affirmed a $48,500 judgment in favor of plaintiff liquor store that included lost profits for the period that the liquor store was deprived of a liquor license due to officials' discrimination based on owners' Mexican-American heritage). The Court should decline to adopt the narrow the scope of available damages that the City has requested in its *Daubert* motion.

///

///

///

///

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OF
PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN
ZANDT
(Case No. 2-20-cv-00983-TSZ) - 12

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400

## II. CONCLUSION

For the reasons stated above, the Court should deny the City's Motion to Exclude the testimony of Shane, Piza and Van Zandt.

I certify that this Response is in compliance with this Court's January 31, 2023, Minute Order, and local rules and that it contains only 4,312 words.

DATED this 13th day of February 2023.

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Tyler S. Weaver*
Patricia A. Eakes, WSBA No. 18888
Angelo J. Calfo, WSBA No. 27079
Tyler S. Weaver, WSBA No. 29413
Gabe Reilly-Bates, WSBA No. 52257
Andrew DeCarlow, WSBA No. 54471
Henry Phillips, WSBA No. 55152
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone:  (206) 474-6400
Fax:      (206) 474-6401
Email:   patty.eakes@morganlewis.com
             angelo.calfo@morganlewis.com
             tyler.weaver@morganlewis.com
             gabriel.reillybates@morganlewis.com
             andrew.decarlow@morganlewis.com
             henry.phillips@morganlewis.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS SHANE, PIZA, AND VAN ZANDT
(Case No. 2-20-cv-00983-TSZ) - 13

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Avenue, Suite 2800
Seattle, WA 98101
+1.206.274.6400