HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

Plaintiffs,

v.

CITY OF SEATTLE,

Defendant.

Case No. 20-cv-00983-TSZ

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT BATES MCKEE, III

NOTED ON MOTION CALENDAR
FEBRUARY 17, 2023

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT BATES MCKEE, III
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  BACKGROUND .................................................................................................................. 2

III. ARGUMENT ........................................................................................................................ 5

    A.   McKee's Appraisal of the Real Estate Market During Covid and CHOP Is Relevant and Admissible................................................................................................ 5

    B.   McKee's Survey of Business Owners Is Helpful to the Jury and Admissible........... 9

    C.   The McKee Report Does Not Contain Any Improper Legal Opinions. .................. 11

IV.  CONCLUSION ................................................................................................................... 12

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - i
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

## I. INTRODUCTION

Plaintiffs seek damages based on the City's alleged facilitation of the Capitol Hill Occupied Protest ("CHOP"), which Plaintiffs claim devalued Plaintiffs' properties and businesses. As the City explained in its Motion to Exclude Plaintiffs' Experts, Dkt. 173 at 11-13, Plaintiffs' damages claims ignore the impact of the Covid-19 pandemic on the Seattle real estate market. Plaintiffs also have failed to substantiate the causal link between the City's alleged actions and Plaintiffs' claimed harms, in part by ignoring the overall market conditions in comparable neighborhoods in Seattle where businesses suffered enormous losses and commercial properties faced occupancy and vacancy challenges in 2020 and beyond. *Id.* Although businesses around the City faced substantial hardship in June 2020, only Plaintiffs claim that their harms can be attributed to the City due to the actions of third-party protesters during CHOP.

Given the hurdles Plaintiffs face in establishing a causal connection between the City's actions and Plaintiffs' harms, it is no surprise that Plaintiffs now seek to exclude testimony from Bates McKee—the only expert in this case who has sought to assess the state of the commercial and residential real estate markets in Seattle during Covid and CHOP. Rather than rely on a Q4 2021 market report derived from a single source to opine on the impacts of Covid (as Plaintiffs' damages expert did), McKee conducted a robust comparative analysis of property values in the CHOP area. McKee compared vacancy and occupancy data for CHOP-area properties to the same data available for properties in comparable neighborhoods of Seattle. McKee's resulting testimony is that the challenges experienced by businesses in the CHOP area were not unique to CHOP. McKee further developed his analysis of Plaintiffs' property value claims through a survey of Seattle-area business and property owners, gathering anecdotal information about their experiences during Covid and the civil unrest that swept the nation beginning in late May 2020. The results of McKee's survey informed his expert analysis of the real estate market impacts that occurred throughout the period of Plaintiffs' claimed damages.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 1
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    McKee's testimony is unquestionably relevant to Plaintiffs' claims, which have so far
2 sought to conflate the impacts of Covid and CHOP in an effort to avoid the fatal flaw in Plaintiffs'
3 causation arguments.  McKee's testimony will offer the jury an opportunity to disaggregate the
4 market impacts of Covid and CHOP.  This will, in turn, allow the jury to evaluate the proper
5 measure of compensation should Plaintiffs prevail on their takings claim.  McKee's testimony
6 easily satisfies the *Daubert* standard and should be admitted under FRE 702.  *Daubert v. Merrell*
7 *Dow Pharms Inc.,* 509 U.S. 579, 592 (1993) (expert testimony is admissible when it "will assist
8 the trier of fact to understand or determine a fact in issue").

## II.    BACKGROUND

10    As this Court is well-aware, Plaintiffs allege that the City took "affirmative acts" to
11 facilitate the CHOP and that Plaintiffs are entitled to damages for any claimed harms caused by
12 CHOP.  Dkt. 165 at 37.  Plaintiffs' only remaining causes of action are (1) nuisance; and (2) a
13 temporary taking-of-access theory.  *Id.* at 27, 37.  Plaintiffs retained an expert, Arik Van Zandt, to
14 opine on the damages Plaintiffs allegedly suffered due to CHOP.  Van Zandt did not explain
15 Plaintiffs' theory of just compensation for their novel temporary access claim or otherwise tie his
16 assessment of Plaintiffs' damages to any legal standard.  *See* Dkt. 173 at 12.  Nor did Van Zandt
17 conduct a commercial or residential real estate market appraisal to justify Plaintiffs' claimed
18 damages due to CHOP.  *See id.* at 13-14.  As the City explained in its motion to exclude testimony
19 of Plaintiffs' experts, Plaintiffs have repeatedly failed to disaggregate the market effects of Covid
20 from the market effects of CHOP.  *Id.*

21    The City, by contrast, retained Bates McKee to opine on the state of the business and real
22 estate markets during CHOP.  McKee subsequently produced a report detailing his expert opinions
23 ("McKee Report").  *See* Dkt. 170 (Decl. of Reilly-Bates), Ex. 5.[1]  The McKee Report engages in a

---

[1] The City has not re-attached the McKee Report to this opposition because it is attached in full as Exhibit 5 to the Reilly-Bates Declaration filed in support of Plaintiffs' Motion to Exclude (Dkt. 170).  Cites to the McKee Report in this opposition are therefore to Exhibit 5 of Docket 170 unless otherwise stated.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 2
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

thorough, detailed, data-driven analysis of market conditions during the relevant time period.  To set the stage, the McKee Report provides a comprehensive timeline of Covid-related closures and government restrictions and explains the impact that these closures had in Seattle.  McKee Rep. at 3-5.  The Covid information the McKee Report analyzes is highly relevant to any assessment of the measure of damages to which Plaintiffs are entitled because any "appraisal analysis of a constitutional loss for alleged access taking should reflect the actual market conditions at the date of the alleged taking."  McKee Rep. at 10.

To further develop his analysis of Plaintiffs' damages claims, McKee conducted a qualitative survey of business owners in the CHOP area.  McKee Rep. at 10-15.  The purpose of the survey was to gather information and observations from local market participants about the impacts of Covid, civil unrest in the area generally (including during CHOP), and other challenges that business owners faced during CHOP.  This information is integral to the analysis of the market conditions ongoing during the period of Plaintiffs' claimed damages—an analysis that Plaintiffs' expert failed to undertake despite its importance for any determination of the market value of Plaintiffs' properties.  Similarly, the McKee Report's observations of the business activities of several named plaintiffs (and key tenants of named plaintiffs) illuminate the impacts that Covid had on Capitol Hill, before and during CHOP.  These observations, too, were incorporated into McKee's assessment of market value.

Finally, McKee conducted a comparative real estate market analysis, using three data sources to extract information about the state of the multifamily and commercial real estate markets in Seattle during CHOP.  To analyze multifamily vacancy and occupancy rates, McKee

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 3
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

utilized Commercial Analytics ("CA")[2] and Yardi Matrix ("Yardi"),[3] both of which are established real estate tools used by professionals in the industry.  Iverson Dec., Ex. 3 (McKee Dep. 140:18-141:10); McKee Rep. at 22.  CA and Yardi "use slightly different methodology and have slightly different primary data sources," which allowed McKee to make a "broader extrapolation" of the data.  McKee Rep. at 22.  CA and Yardi thus complement each other, leading to a more robust analysis of multifamily data in the subject and comparison areas.  To analyze commercial real estate, McKee utilized CoStar, "an international data resource" that serves as a "data hub for commercial leases, sales, and some commercial auction activities."  McKee Rep. at 23.  As with CA and Yardi, CoStar is commonly used by real estate professionals and appraisers conducting valuation analyses.  Iverson Dec., Ex. 3 (McKee Dep. 152:8-153:10).

For both the commercial and multifamily analyses, McKee pulled data from each of the three sources (CA, Yardi, and CoStar) within certain boundaries designed to approximate the CHOP area.  McKee Rep. at 22-23.  He deemed these bounded areas the "subject areas."  *Id.*  The subject areas are not intended to represent the exact contours of CHOP because, as Plaintiffs admit, Dkt. 124 at 9, the CHOP area did not have exact contours.  Moreover, at the time McKee conducted his analysis, Plaintiffs' proposed class area had not yet been rejected by this Court.  Accordingly, although McKee attempted to adhere somewhat to the proposed class area in the event it was certified,[4] Plaintiffs' proposed CHOP boundaries did not adequately reflect the CHOP for purposes of a real estate market valuation analysis.

---

[2] Commercial Analytics "is dedicated to the accurate gathering, analysis and reporting of multifamily property data in the Pacific Northwest."  *See* Declaration of Erica R. Iverson in Support of City's Opposition to Motion to Exclude McKee Testimony (hereinafter "Iverson Dec.") at Ex. 1 (Commercial Analytics Homepage, *available at* https://www.commercial-analytics.com/) (last accessed February 13, 2023).

[3] Yardi promotes itself as offering tools "for real estate professionals" to "leverage the market data" regarding "multifamily, student housing, office, industrial and self storage properties."  *See* Iverson Dec., Ex. 2 (Market Data for Commercial Real Estate – Matrix Homepage, *available at* https://www.yardi.com/products/matrix/) (last accessed February 13, 2023).

[4] The CA tool is not susceptible to the same type of boundary drawing as Yardi and CoStar and so the CA "subject area" was the Capitol Hill neighborhood at large, not an approximation of CHOP.  *See* Iverson Dec., Ex. 3 (McKee Dep. 133:9-134:9).

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT BATES MCKEE, III - 4
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

For the analyses conducted *within* each data source, McKee used the same "subject area" boundaries. For example, every Yardi comparison between the Yardi-based subject area and a different Seattle neighborhood was applied using the same Yardi-based subject area boundaries. Every CoStar comparison between the CoStar-based subject area and a different Seattle neighborhood was applied using the same CoStar-based subject area boundaries. That is, within each data source, the subject area was consistent across comparisons.

These systematic, quantitative comparisons allowed McKee to observe differences between the subject areas and other neighborhoods in Seattle, which, in turn allowed McKee to draw conclusions about the impacts of Covid versus CHOP in the multifamily and commercial real estate markets.

### III.    ARGUMENT

**A.    McKee's Appraisal of the Real Estate Market During Covid and CHOP Is Relevant and Admissible.**

Plaintiffs seek to exclude McKee's report as unhelpful because (1) it uses "aggregated and anonymized data" from multiple data sources to conduct a robust data analysis; (2) McKee did not define identical subject area boundaries across data sources; and (3) McKee did not use Plaintiffs' proposed class area to define CHOP. None of these complaints is a valid basis to exclude McKee's market valuation analysis under FRE 702.

"Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.'" *Primiano v. Cook*, 598 F.3d 558, 565-66 (9th Cir. 2010). Although the Court has broad discretion to admit or exclude expert testimony, it should admit the testimony when it "will assist the trier of fact to understand the evidence." *Wood v. Stihl, Inc.*, 705 F.2d 1101, 1104 (9th Cir. 1983) (quoting Fed. R. Evid. 702). The cornerstone of the helpfulness inquiry for purposes of FRE 702 is the relevance of the expert testimony to the issues in the case. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). McKee's testimony is directly relevant to the measure of damages to which Plaintiffs

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT BATES MCKEE, III - 5
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

are entitled for their claimed temporary taking of property access. Plaintiffs are only entitled to recover damages for the "fair market rental value of the real estate for the period of occupation." *See* McKee Rep. at 8; *Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 811 (1985); *see also Miotke v. City of Spokane*, 101 Wn.2d 307, 332 (1984) ("Where the injury to land is temporary, the measure of damages is the diminished rental value if the property is to be rented, or the diminished value of its use if the property is to be used by the owner."), *abrogated in part by Blue Sky Advocates v. State*, 107 Wn.2d 112, 121 (1986).

As the City explained in its motion to exclude Plaintiffs' experts, Van Zandt did not appropriately disaggregate the market impacts of Covid from the market impacts of CHOP. McKee's valuation analysis, by contrast, provides a market-wide assessment of conditions during CHOP, including the separate impacts of Covid and civil unrest during the relevant time period. *E.g.*, McKee Rep. at 14-15 (survey of business owner impacts). McKee's analysis spotlights the fatal flaw in Van Zandt's analysis by offering the context Van Zandt failed to consider (crucially, Covid). This context is highly relevant to any jury determination of the appropriate level of compensation for Plaintiffs' alleged access impairments because it allows the factfinder to weigh the market conditions that Plaintiffs faced even without CHOP—otherwise, the jury would not be able to consider the fair market value of Plaintiffs' property. The McKee testimony is thus helpful to the jury because it speaks to a key issue of damages.

Plaintiffs' core complaint is that McKee's market appraisal is not specific to any particular Plaintiff. But the City is not required to prove each Plaintiff's damages. That burden rests with Plaintiffs, who have proffered an expert opinion that fails to account for the impact of Covid on the real estate market. McKee's report fills the gap Plaintiffs' expert left open and is undoubtedly helpful to any calculation of damages by the factfinder.

Plaintiffs further complain that McKee applied different geographical boundaries in each data source that sought to capture a "subject area" that approximated the CHOP area. Dkt. 169 at

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 6
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

5-7. Plaintiffs incorrectly claim that by using different data sources, McKee was somehow "comparing apples to oranges." *Id.* at 6. Of course, Plaintiffs ignore that McKee was not comparing the subject areas *to each other* to draw any conclusions. Rather, McKee compared each subject area to several other qualitatively comparable neighborhoods in Seattle. The "apples" on one side of the equation were the three subject areas (each designed to approximate the CHOP area of interest) and the "apples" on the other side of the equation were comparable neighborhoods like Belltown, Fremont, Ballard, and Lower and Upper Capitol Hill. Moreover, the CHOP area does not have a universally defined boundary line. Therefore, within the limits of each data source, McKee selected the appropriate geographic boundaries that would best approximate the CHOP subject area. McKee then observed the differences between the subject-area data and the comparison data and drew conclusions about the different impacts that Covid and CHOP had on the commercial real estate (CoStar data) and residential real estate (Yardi, CA data) markets in each area.[5]

The cases Plaintiffs cite merely stand for the proposition that an expert cannot draw conclusions about a plaintiff's damages by observing differences in samples that have nothing to do with the plaintiff's business. For example, in *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, the proffered expert testimony sought to predict plaintiff's business prospects by examining the financial histories of eight companies in plaintiff's general industry, without regard for the differences between those businesses and the plaintiffs. 387 F. Supp. 2d 794, 812-13 (N.D. Ill. July 22, 2005). The court rejected these comparisons because there were substantial, unaccounted-for differences between the plaintiff's business and the businesses of the eight comparison

---

[5] Plaintiffs appear to complain—regardless of the subject area differences—that McKee used three different data sources to conduct his analyses. McKee used different data sources because he sought to analyze different markets (commercial and multifamily residential real estate) and the different databases provide data that is more or less relevant to those markets. Using a commercial real estate database to analyze residential real estate trends or a residential database to analyze commercial trends would make little sense.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 7
(Case No. 20-cv-00983-TSZ)

companies. *Id.*[6] Here, by contrast, Plaintiffs do not complain that McKee selected comparison neighborhoods that are not comparable to the CHOP area. Nor could they because the comparison areas *are* comparable to the subject areas.

As the McKee Report explains, the comparison areas are Seattle neighborhoods that have developed into "mixed used office/retail/multifamily buildings" and areas like Belltown with a mix of residential and commercial real estate as well as "tourist centered retail." McKee Rep. at 21. These areas are comparable to the CHOP subject area, regardless of whether that area is bounded by 13th or 14th Avenue on the East, because the subject area, too, has a mix of "commercial, multifamily, and single family real estate" with "mixed use buildings, and newer multifamily properties with street retail." *Id.* Plaintiffs' unsupported and incorrect characterization of these comparisons as "apples to oranges" should be rejected.

Finally, Plaintiffs complain that McKee's comparative real estate analysis should be rejected because McKee did not adopt Plaintiffs' Class Area definition when drawing his CHOP subject area boundaries. Given that this Court rejected Plaintiffs' bid for class certification, Plaintiffs' challenge to the McKee testimony on this basis makes little sense. Even before the denial of class certification, McKee was not required to use Plaintiffs' *proposed* class area boundary to conduct his analysis. Now that there is no class area, there is no discernible reason why McKee's testimony should be constrained by Plaintiffs' arbitrary boundary lines. This is particularly true considering Plaintiffs' own arguments on summary judgment that "CHOP did not keep itself contained to a box on a map" and therefore that "[a]ny attempt to map precise barrier locations should not be taken seriously." Dkt. 124 at 9.

---

[6] The "apples to oranges" comparison in *Education Logistics, Inc. v. Laidlaw Transit, Inc.* involved a damages expert analysis that compared the subject business to another business based on a faulty assumption regarding the future predicted size of the subject business. 2012 WL 761950, at *8 (D. Mont. Mar. 8, 2012). In *Shatkin v. McDonnell Douglas Corp.*, the damages expert based his opinion on a comparison between discounted projected income contributions made by one family member and *undiscounted* projected contributions made by another family member. 727 F.2d 202, 208 (2d Cir. 1984). These cases do not support Plaintiffs' contention that McKee engaged in an "apples to oranges" analysis when he compared properties in CHOP to properties in comparable Seattle neighborhoods.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 8
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1    At best, Plaintiffs' complaints go to the weight of McKee's testimony, *see, e.g.*, Dkt. 169 at 8 n.7 (suggesting that McKee's occupancy analysis actually supports Plaintiffs' damages and causation claims), not its admissibility. McKee's testimony comparing the CHOP subject area to comparable Seattle neighborhoods should be admitted.

Plaintiffs contest other observations in the McKee report that underpin his opinions regarding the state of the commercial and residential real estate markets in CHOP and the greater Seattle area during the relevant period. Dkt. 169 at 12. These protestations, too, should fail. Plaintiffs complain that McKee offered his opinions regarding real estate impacts in the CHOP area, which are based on observations he made in connection with this report and other appraisals. Plaintiffs do not attack McKee's qualifications as a real estate professional yet seek to exclude his opinion testimony based on his substantial expertise. Indeed, Plaintiffs simultaneously complain that only someone with "a specialized expertise in real estate" can give opinions on the effect of Covid on rents, revenues, and real estate development—and therefore any statements by survey respondents who are not experts must be excluded. *Id.* at 9. Yet, in the same breath, Plaintiffs seek to exclude substantially similar statements based on the observations of an expert (McKee) with that very specialized expertise. *Id.* at 12. Plaintiffs cannot have it both ways. McKee's expert testimony should be admitted.

**B.    McKee's Survey of Business Owners Is Helpful to the Jury and Admissible.**

Plaintiffs also seek to exclude the qualitative survey of business owners that McKee conducted. *See* Dkt. 169 at 8-10; McKee Rep. at 10-15. McKee developed the survey based on an analysis of the Plaintiffs' damages claims. For example, Plaintiffs seek to recover for rent concessions made allegedly due to the City's actions during CHOP and for business lost allegedly because of the City's facilitation of CHOP. *E.g.*, Dkt. 47, ¶ 134. Accordingly, McKee asked survey respondents to provide anecdotal information about rent concessions and lost business the respondents experienced in comparable Seattle neighborhoods during the CHOP timeframe.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 9
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1 McKee Rep. at 12. The purpose of the survey was to allow McKee—an appraiser with "a specialized expertise in real estate," Dkt. 169 at 9—to gain additional insight into the market conditions and impacts that local business owners faced during an unprecedented pandemic and period of national civil unrest. That information, in turn, allowed him to draw conclusions about the potential causes of Plaintiffs' claimed damages (e.g., the effects of CHOP vs. Covid), which is undoubtedly relevant to the jury's factfinding. McKee Rep. at 12-13.

Plaintiffs complain that the survey is inadmissible hearsay and therefore that McKee's opinions based on the survey should be excluded. Dkt. 169 at 9. But the City is not offering the survey results for their underlying truth value. The survey results instead inform the basis for McKee's expert opinion regarding the commercial and real estate markets during CHOP and Covid. This is the "type of information upon which experts may reasonably rely" in forming their opinions and is admissible. *See United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975). Plaintiffs' hearsay challenge to the survey should be rejected.

Plaintiffs' final strike is that the survey should be excluded because McKee has preexisting relationships with a handful of the survey respondents. Plaintiffs do not provide any basis for their hollow concern that the responses provided by the survey participants might somehow be "tainted" by these relationships. Dkt. 169 at 10. First, and as Plaintiffs critique elsewhere in their motion, most responses were gathered and recorded by McKee's colleagues, not by McKee himself. *Id*. Any valid concern (and there is none) that McKee's relationships with the respondents would affect the quality of the information gathered should be resolved by the use of intermediaries. Second, Plaintiffs have not provided any rationale that would explain why a preexisting relationship with a survey respondent would affect the responses, let alone how it would "taint" them. If anything, a preexisting relationship indicates a degree of trust between surveyor and

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 10
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

respondent that would encourage candor by the respondent.[7]

In short, Plaintiffs cannot point to any flaws in McKee's survey that implicate the Court's gatekeeping function. At most, Plaintiffs' critiques are directed at the weight, not the admissibility, of McKee's opinions. McKee's testimony should be admitted under FRE 702.

### C. The McKee Report Does Not Contain Any Improper Legal Opinions.

Plaintiffs' final line of attack is that McKee improperly opines on the law. Although experts "may not give opinions as to legal conclusions, experts may testify about industry standards" provide opinions regarding "reasonableness." *King v. GEICO Indemn. Co.*, 712 Fed. Appx. 649, 651 (9th Cir. 2017). Plaintiffs have not pointed to any improper legal conclusion in the McKee Report. McKee opines that "based on the information we have reviewed it appears that almost all, if not all, of the subject properties within the CHOP zone were in fact accessible by various means and at various times, if not the entire time." McKee Rep. at 6. Based on his experience appraising the value of property that has been subject to access impairments, McKee is opining on the facts available to him (i.e., the lack of documentation demonstrating any access impairments), not on an ultimate legal issue.

Similarly, McKee's reference to the Washington Pattern Jury Instructions is not improper. The instructions he cites delineate the scope of just compensation for temporary takings and explain the standard for access impairments. *See* McKee Rep. at 6-7. The McKee Report merely sets forth the standard McKee applied in his assessment of the property value impacts to Plaintiffs' property assuming there was a temporary taking of access.[8] McKee's testimony does not improperly instruct the jury on any issue of law and should not be excluded on that basis. *See*

---

[7] Plaintiffs attempt to manufacture a conflict regarding the information provided by a respondent who asked to remain confidential out of an abundance of caution regarding their own internal business considerations. Plaintiffs' suggestion that a desire for confidentiality regarding sensitive business information—which Plaintiffs have repeatedly sought to maintain on their own behalf—is indicative of a flaw in McKee's expert opinion should be disregarded.

[8] Particularly given the novel nature of Plaintiffs' access claim, it makes sense that McKee's opinion would recite the various standards pursuant to which he analyzed the market impacts of CHOP and Covid.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
BATES MCKEE, III - 11
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("A witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.").

### IV.     CONCLUSION

For the foregoing reasons, the testimony of Bates McKee should be admitted in its entirety and Plaintiffs' motion to exclude should be denied.

DATED this 13th day of February, 2023.

I certify that this memorandum contains 3,973 words, in compliance with the Local Civil Rules.

ANN DAVISON
Seattle City Attorney
By: *s/ Joseph Groshong*
    Joseph Groshong, WSBA# 41593
    Assistant City Attorney
    Seattle City Attorney's Office
    701 Fifth Avenue, Suite 2050
    Seattle, WA 98104
    Tel: (206) 684-8200
    Fax: (206) 684-8284
    Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP
By: *s/ Arthur W. Harrigan, Jr.*
By: *s/ Tyler L. Farmer*
By: *s/ Shane P. Cramer*
By: *s/ Erica R. Iverson*
    Arthur W. Harrigan, Jr., WSBA #1751
    Tyler L. Farmer, WSBA #39912
    Shane P. Cramer, WSBA #35099
    Erica R. Iverson, WSBA #59627
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Tel: (206) 623-1700
    arthurh@harriganleyh.com
    tylerf@harriganleyh.com
    shanec@harriganleyh.com
    ericai@harriganleyh.com

*Attorneys for City of Seattle*

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT BATES MCKEE, III - 12
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717