HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HUNTERS CAPITAL, LLC, et al.,

        Plaintiffs,

    v.

CITY OF SEATTLE,

        Defendant.

Case No. 20-cv-00983-TSZ

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SETH STOUGHTON

NOTED ON MOTION CALENDAR
FEBRUARY 17, 2023

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SETH STOUGHTON
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. ARGUMENT ..................................................................................................................... 5

    A. Professor Stoughton's Opinions Are Reliable and Grounded in His Extensive Academic Study of Policing. ................................................................................. 6

IV. CONCLUSION .................................................................................................................. 8

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - i
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

## I. INTRODUCTION

Plaintiffs attack Professor Stoughton's testimony as unreliable, not because it fails to apply a rigorous analytical framework to assess the reasonableness of the City's policing decisions prior to and during CHOP but because Plaintiffs do not agree with Professor Stoughton's conclusions. The purpose of Professor Stoughton's testimony is to assess the reasonableness of the decision-making that the SPD undertook when it was faced with the need to deescalate tensions during the mass protests that erupted in the wake of George Floyd's death. Professor Stoughton analyzed the SPD's decisions through the lens of generally accepted principles in policing. "Principles" rather than "practices" comprise the relevant analytical framework in this case because when the police face unprecedented, unique situations they have never faced before, "[t]here simply are no generally accepted tactical protocols to guide police decision-making under such circumstances." Dkt. 172 (Weaver Declaration), Ex. 2 ("Stoughton Report") at 28; *see id.* at 25-28.[1]

As a result, Professor Stoughton opined on the reasonableness of the SPD's decision-making using the framework of generally accepted police principles. Professor Stoughton is careful to minimize the risk of "hindsight bias" in his assessment by "reviewing the relevant decisions at the time they were made without regard for the ultimate outcome." *Id.* at 27. That is, the SPD's decision to vacate the East Precinct cannot be viewed as reasonable merely because "it contributed to a positive outcome" just as that decision cannot later be viewed as unreasonable merely because "it contributed to a negative outcome." *Id.* Professor Stoughton's analysis therefore avoids looking at the outcome of the SPD's decision-making to assess the reasonableness of the decisions that preceded the outcome. This approach resulted in a more measured assessment of the SPD's decision-making, bolstering the reliability of Professor Stoughton's opinions.

Plaintiffs nonetheless complain that Professor Stoughton's testimony should be excluded

---

[1] The City has not re-attached the Stoughton Report to this opposition because it is attached in full as Exhibit 2 to the Weaver Declaration filed in support of Plaintiffs' Motion to Exclude (Dkt. 172). Cites to the Stoughton Report in this opposition are therefore to Exhibit 2 of Docket 172 unless otherwise stated.

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SETH STOUGHTON - 1
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

because his analysis could lead to a determination that more than one of the choices available to the SPD was reasonable. Plaintiffs' criticism is, essentially, that the factfinder could conclude that the City acted reasonably in responding to mass protest events. This attack is plainly an attempt to exclude Professor Stoughton's expert testimony on the basis that Plaintiffs disagree with it, not on the basis that the expert's conclusions were reached based on an unreliable method. There is nothing unreliable about recognizing the reality that in a fast-moving, unprecedented, volatile situation, the government has more than one reasonable responsive decision available to it. Professor Stoughton's expert opinions that the SPD's actions fell within the range of reasonable response options available to it at the time should be admitted. *E.g.*, *id.* at 33, 37, 39.

## II.   BACKGROUND

Professor Stoughton has researched policing for over a decade, has published extensively on tactical decision-making by police officers, and has testified as an expert in cases involving police practices, including for the prosecution in the Derek Chauvin murder trial. Stoughton Rep. at 3, 8, 10. Professor Stoughton's work has not only been widely cited and publicized, but it also has been incorporated into policy decision-making efforts by legislators, law enforcement entities, and task forces across the country. *Id.* at 4. Plaintiffs do not, and cannot, directly attack Professor Stoughton's qualifications as an expert. Instead, Plaintiffs attempt to paint Professor Stoughton's opinions as divorced from any "documented" reality because neither Professor Stoughton nor any other police department had ever experienced a situation exactly like CHOP prior to the unrest that followed George Floyd's death in May 2020. Dkt. 171 at 1-3. Plaintiffs' insinuations do not implicate the admissibility of Professor Stoughton's testimony.

In their attempt to cast a pall on Professor Stoughton's experience, Plaintiffs repeatedly mischaracterize his expert opinions. Professor Stoughton was retained to opine on the reasonableness of the SPD's decision to withdraw from the East Precinct, the decision to modify police response protocols in a small area of CHOP known as the Red Zone, and the decision to

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - 2
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

deploy concrete barricades around the East Precinct.  Stoughton Rep. at 24.  In his report, Professor Stoughton assessed the reasonableness of each decision against the backdrop of generally accepted "principles in policing." *Id.*

Professor Stoughton explains the hierarchy of decision-making sources that police departments and individual officers use in various situations.  In ordinary encounters and regular decision-making, officers employ policing "tactics."  Stoughton Rep. at 25.  Professor Stoughton defines tactics as "a sequence of moves that limit the suspect's ability to inflict harm and [that] advance the ability of the officer to conclude the situation in the safest and least intrusive way." *Id.*  In deciding which tactics to employ, officers must make highly contextualized decisions while balancing a number of influencing factors, "including officers' reasonable perceptions, available resources, [and] imminent threats." *Id.*  Professor Stoughton further opines that there exists a "range of reasonable responses" to any given situation and therefore that "tactical decision-making can be fairly thought of as a spectrum with a number of specific points that individually represent the different ways that various priorities may be balanced." *Id.*  Professor Stoughton cites several publications to support his definitions of tactical decision-making.

Where, however, a situation presents an "unprecedented tactical situation," traditional tactical principles may not apply. *Id.* at 28.  Professor Stoughton does not cite to a guidebook for handling a *prolonged* siege of confrontational protesters because no similar situation has ever occurred.[2] *Id.*  In the absence of tactical guidance to address a multi-day mass protest specifically targeting the police and in response to police tactics that the protest movement challenged, Professor Stoughton opines on the reasonableness of turning to "generally accepted principles" of policing. *Id.*  Plaintiffs are simply wrong that Professor Stoughton did not specify "and apparently

---

[2] Even Plaintiffs' policing expert, Dr. Jon M. Shane, could not identify an analogous situation to CHOP or the protests leading up to it.  The situations he cites in his report are all inapposite; none involved a prolonged, police-targeted protest movement in a City where the police were constrained (by court order) in their response options.  *See* Dkt. 174 (Iverson Decl.), Ex. 1 (Shane Rep. at 22 n.57) (citing the WTO protests, which targeted the WTO not the SPD, the Rodney King riots, and a 1967 incident involving individuals attacking the Newark PD's Fourth Precinct Station).

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - 3
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  cannot specify[] the source of the principles" on which he bases his opinions.  Dkt. 171 at 1.  In the
2  opening sentences of its description of policing practices, the Stoughton Report cites to the Final
3  Report of the President's Task Force on 21st Century Policing, the Police Executive Research
4  Forum's Guiding Principles for Use of Force, and the United States Conference of Mayors' Report
5  on Police Reform and Racial Justice, to name three such sources.

6  From these and other sources, Professor Stoughton elicits several relevant policing
7  principles, including "the preservation of human life," a principle that the SPD in this case
8  repeatedly referenced when communicating the rationale behind its decision-making during
9  CHOP.  *E.g.*, Stoughton Rep. at 28 (quoting the SPD Incident Action Plan dated June 8, 2020); *id.*
10 at 29 (quoting then-Chief Carmen Best during an interview with the Office of Police
11 Accountability).  Another generally accepted principle set forth in the Stoughton Report is
12 stabilization—including the principle that withdrawal from a situation may be warranted
13 depending on the context.  Against that backdrop, Professor Stoughton opined that it was
14 "reasonable for the agency . . . to remove one focal point for protesters and reduce the potential for
15 confrontation."  *Id.* at 29.  Other generally accepted principles that Professor Stoughton identified
16 include "maintaining the integrity of police information and equipment," ensuring the "continued
17 delivery of police services," and respecting protesters' First Amendment rights.  *Id.*

18 Using these generally accepted principles as a framework for assessing the reasonableness
19 of the SPD's decision-making, Professor Stoughton analyzed the decision sequence for each
20 decision he evaluated and then opined on what a reasonable spectrum of responses might look like.
21 *E.g.*, Stoughton Rep. at 32-33.  For example, Professor Stoughton analyzed the SPD's weighing of
22 the "foreseeable risks of evacuating the East Precinct" against the risk of "maintaining a significant
23 police presence in the East Precinct."  *Id.* at 30-31.  Based on the risk outlook available to the SPD
24 at the time, Professor Stoughton opined that it was reasonable for the SPD to expect that
25 maintaining a significant police presence in the midst of prolonged anti-police protests could put

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - 4
(Case No. 20-cv-00983-TSZ)

officers (and potentially bystanders) in harm's way and could potentially lead to loss of human life—results that are clearly at odds with generally accepted police practices and principles. *Id.* at 31-33.

Decision-making processes are complex and there is no singular guidebook for assessing them. Plaintiffs' attacks on Professor Stoughton's testimony are grounded in a fundamental complaint with that reality. Dkt. 171 at 3. "There is no tactical guidance indicating that withdrawal from a police precinct" is a reasonable decision in the face of unprecedented, police-targeted, prolonged, violent protests because, as Professor Stoughton explains, the situation is "so uncommon that policing has not developed a set of tactical precepts to guide officer decision-making." Stoughton Rep. at 27.

### III.   ARGUMENT

Plaintiffs attack the reliability of Professor Stoughton's testimony, claiming that he bases his opinions on "amorphous, abstract concepts" rather than what police "actually" do to respond to ordinary protest events. Dkt. 171 at 4. Plaintiffs' arguments are unavailing. As Plaintiffs admit, the crux of the reliability inquiry is whether "the knowledge underlying [the expert opinion] has a reliable basis in the knowledge and experience of the relevant discipline." *Elosu v. Middlefork Ranch Inc.*, 26 F. 4th 1017, 1024 (9th Cir. 2022). An expert's "specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion." *Id.* Moreover, "[t]he test of reliability is flexible" and should be evaluated "based on the particular circumstances of the particular case." *City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).

Professor Stoughton's testimony in this case is grounded in his extensive knowledge in the field of policing. Stoughton Rep. at 2-4. Professor Stoughton analyzed the circumstances surrounding the protests preceding CHOP and the City's decision timeline in responding to those protests (and, later, to CHOP). *Id.* at 10-23. Based on his review of the relevant materials and

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - 5
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

documents related to this case, Professor Stoughton then analyzed the SPD's decisions and assessed whether those decisions fell within a range of reasonable options available to the SPD. *Id.* at 24-39. This testimony is reliable, helpful, and admissible under FRE 702.

### A. Professor Stoughton's Opinions Are Reliable and Grounded in His Extensive Academic Study of Policing.

Here, Professor Stoughton unquestionably has specialized knowledge and experience in the academic field of police decision-making. Plaintiffs do not and cannot attack his qualifications, his research expertise, his publications, or any other aspects of the expertise underlying Professor Stoughton's opinions. *See generally* Dkt. 171 at 3-5. In short, they have not pointed to a single alleged flaw in the Stoughton Report that would implicate its reliability.

Instead, Plaintiffs argue, without support, that Professor Stoughton's testimony must be unreliable because it "reaches a conclusion that other experts in the field would not reach." *Id.* at 4. Plaintiffs do not point to a single conclusion in the Stoughton Report that other experts in the field would reject. *Id.* at 3-5. Nor is Plaintiffs' complaint a sufficient basis to exclude Professor Stoughton's testimony under *Daubert*. Merely because one expert "reaches a different conclusion" than another expert when analyzing the facts does not render the first expert's opinion invalid. *Bryant v. Wyeth*, 2012 WL 12844752, at *3 (W.D. Wa. Sept. 4, 2012). The "focus" under *Daubert* is reliability of the analysis, "not the conclusion" of the expert. *Id.*

This precept is particularly relevant in cases like this one, where the expert is faced with evaluating the reasonableness of a decision made in a unique and unprecedented context. Plaintiffs acknowledge that Professor Stoughton is opining on a situation that is "without precedent in the history of policing." Dkt. 171 at 1. Far from undermining the admissibility of Professor Stoughton's opinion, the unique context of the pre-CHOP protests—and, later, of CHOP—*favors* the admission of expert testimony that will assist the factfinder in parsing the reasonableness of the SPD's decision-making. *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010) (where expert

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SETH STOUGHTON - 6
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

opinion relies on application of "judgment—a process that is difficult to quantify or even to assess qualitatively," the testimony goes to weight not admissibility). "Especially when a relevant experience is unavailable," the expert's application of his "knowledge and experience" to "weigh[] known factors along with the inevitable uncertainties" leads to admissible testimony. *Id.* Plaintiffs may not weaponize the fact that the SPD faced an unprecedented and unpredictable situation to exclude expert testimony assessing the reasonableness of the SPD's response to that situation.

Plaintiffs further complain that Professor Stoughton's testimony analyzes the City's decisions within the framework of policing principles rather than policing practices. *See* Dkt. 171 at 4-5. The thrust of Plaintiffs' grievance is that utilizing principles rather than practices as the litmus test for assessing the reasonableness of the SPD's decision-making could lead to a finding that multiple possible responses to the protest activity are or would have been reasonable. *Id.* at 5. Professor Stoughton's rationale for using principles rather than practices is that there "simply are no generally accepted tactical protocols to guide police decision-making under" the circumstances the SPD faced prior to and during CHOP. Stoughton Rep. at 28. Plaintiffs do not explain why it would be more reliable to analyze the SPD's high-level decision-making efforts against the backdrop of tactical guidance that does not exist. Plaintiffs' attack on the reliability of Professor Stoughton's testimony should be rejected.

Plaintiffs' final criticism of Professor Stoughton's testimony is that he did not opine that the SPD's decisions were the only reasonable decisions that could have been made. Dkt. 171 at 4-5 (complaining that Professor Stoughton opines that it also would have been reasonable for the SPD to clear the CHOP earlier in June). Plaintiffs' critique unquestionably addresses the weight of Professor Stoughton's testimony, not its reliability. *City of Pomona*, 750 F.3d at 1044 ("Simply put, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.") (quotations omitted). The City is not required to prove that the *only* reasonable option available to it was the vacation of the

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - 7
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1  East Precinct and modification of police response protocols during CHOP.

2  Professor Stoughton's testimony reliably places the SPD's decisions within the spectrum of
3  reasonable decisions available under the circumstances. Plaintiffs attack that decision because in
4  their view, it resulted in an outcome they did not like. That Plaintiffs wanted the SPD to respond
5  differently, and that Plaintiffs were generally dissatisfied with the existence of CHOP is not a basis
6  for excluding Professor Stoughton's reliable expert opinion testimony under FRE 702. Professor
7  Stoughton's testimony should be admitted.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion and admit the expert testimony of Professor Stoughton.

DATED this 13th day of February, 2023.

I certify that this memorandum contains 2,401 words, in compliance with the Local Civil Rules.

ANN DAVISON
Seattle City Attorney

By: _s/ Joseph Groshong_
     Joseph Groshong, WSBA# 41593
     Assistant City Attorney
     Seattle City Attorney's Office
     701 Fifth Avenue, Suite 2050
     Seattle, WA 98104
     Tel: (206) 684-8200
     Fax: (206) 684-8284
     Joseph.Groshong@seattle.gov

HARRIGAN LEYH FARMER & THOMSEN LLP

By: _s/ Arthur W. Harrigan, Jr._
By: _s/ Tyler L. Farmer_
By: _s/ Shane P. Cramer_
By: _s/ Erica R. Iverson_
     Arthur W. Harrigan, Jr., WSBA #1751
     Tyler L. Farmer, WSBA #39912
     Shane P. Cramer, WSBA #35099

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT
SETH STOUGHTON - 8
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
HARRIGAN LEYH FARMER & THOMSEN LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

|   |   |
|---|---|
| 1 | Erica R. Iverson, WSBA #59627 |
| 2 | 999 Third Avenue, Suite 4400 |
|   | Seattle, WA 98104 |
| 3 | Tel: (206) 623-1700 |
|   | arthurh@harriganleyh.com |
| 4 | tylerf@harriganleyh.com |
|   | shanec@harriganleyh.com |
| 5 | ericai@harriganleyh.com |

*Attorneys for City of Seattle*

CITY OF SEATTLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SETH STOUGHTON - 9
(Case No. 20-cv-00983-TSZ)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717